IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | ) | Case No. 18-12808 (KG) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

### MOTION OF DEBTORS FOR ORDER AUTHORIZING (A) CONTINUANCE OF EXISTING CASH MANAGEMENT SYSTEM, (B) INTERCOMPANY TRANSACTIONS, (C) LIMITED WAIVER OF SECTION 345(b) DEPOSIT AND INVESTMENT REQUIREMENTS, AND (D) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (the "Debtors") file this motion (the "Motion") for the entry of an order authorizing: (a) the Debtors to continue using their existing cash management system and related bank accounts in the ordinary course of business; (b) the Debtors to make intercompany transactions; and (c) a limited waiver of section 345(b) deposit and investment requirements. In support of the Motion, the Debtors respectfully represent as follows:

### JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-l(f) to the entry of a final order by the Court in connection with this Motion to the

---

[1]      The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738). The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The statutory bases for the relief sought in this Motion are sections 105, 345, 363, 503, 1107, and 1108 of Title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rules 2015-2 and 4001-3 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules").

## BACKGROUND

### A.      Case Background

4.      On November 14, 2018 (the "Petition Date"), White Eagle General Partner, LP and Lamington Road Designated Activity Company ("LRDA") commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

5.      On the date hereof, White Eagle Asset Portfolio, LP ("WEAP") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in these chapter 11 cases.

6.      The Debtors are indirect subsidiaries of Emergent Capital, Inc. ("ECI"), a publicly traded company.  ECI is a global leader in the life settlements industry.

7.      Debtor WEAP owns a portfolio of 586 life insurance policies – also known as life settlements – with an aggregate death benefit of approximately $2.8 billion.

DOCS_SF:98216.7

8.      A more detailed description of the business and operations of the Debtors, and the events leading to the commencement of these chapter 11 cases, is provided in the *Declaration of Miriam Martinez, Chief Financial Officer, in Support of First Day Motions*, filed concurrently herewith (the "Declaration") and incorporated herein by reference.[2]

**B.      Cash Management System**

9.      The Debtors' cash management system (the "Cash Management System") is maintained consistent with the requirements of the *Second Amended and Restated Loan and Security Agreement* dated as of January 31, 2017 (the "Prepetition Loan Agreement"), by and between WEAP, as borrower, LNV Corporation ("LNV"), as lender, Imperial Finance & Trading, LLC as initial portfolio manager, Lamington Road Bermuda Ltd., as portfolio manager, and CLMG Corp., as administrative agent ("CLMG" or "Prepetition Agent").

10.     The Cash Management System facilitates the timely and efficient collection, management, and disbursement of funds used in the Debtors' business. The Cash Management System currently consists of four accounts (the "Domestic Accounts" and, together with the Foreign Accounts (as defined below), the "Accounts") held in the name of WEAP at Wilmington Trust, N.A. ("WT" or "Securities Intermediary"), as custodian for CLMG pursuant to that certain *Second Amended and Restated Account Control and Custodian Agreement* dated as of January 31, 2017 (the "Account Control Agreement").[3]  In addition, there are two Irish bank accounts held in the name of LRDA at Ulster Bank (Republic of Ireland) (the "Foreign Accounts").  WT and Ulster Bank are together referenced herein as the "Banks."

---

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Declaration.

[3]  Pursuant to the Prepetition Loan Agreement and the Account Control Agreement, the Debtors also maintain a policy account with WT (the "Policy Account").  The Policy Account (Account No. 104671-005) is a non-interest bearing account.  Pursuant to the Account Control Agreement, the Debtors delivered or caused to be delivered the Policies that were purchased in the ordinary course of business to WT, which holds the Policies in the Policy Account.  WT may not debit or release the Policies held in the Policy Account except as permitted by the terms of the Account Control Agreement.

11.     The following chart sets forth the list of Accounts and balances as of December 12, 2018:

| Debtor | Account Name | Bank | Account Type | Account No. | Balance |
|--------|--------------|------|--------------|-------------|---------|
| WEAP | Borrower Account | Wilmington Trust | Trust | XXXXX1-001 | $4,132,227.87 |
| WEAP | Collection Account | Wilmington Trust | Trust | XXXXX1-002 | $28,092,987.34 |
| WEAP | Escrow Account | Wilmington Trust | Trust | XXXXX1-003 | $0.00 |
| WEAP | Payment Account | Wilmington Trust | Trust | XXXXX1-004 | $969,363.70 |
| WEAP | Policy Account | Wilmington Trust | Trust | XXXXX1-005 | N/A |
| LRDA | Euro Account | Ulster Bank | Checking | XXXX-3983 | €1,408.12 |
| LRDA | USD Account | Ulster Bank | Checking | XXXX-7129 | $23,989.92 |

### i.     The Domestic Accounts

12.     The function of the Domestic Accounts is mandated and delineated in the Prepetition Loan Agreement and Account Control Agreement.  All funds, securities, and insurance policies held in the Domestic Accounts are maintained at WT, as custodian under the Prepetition Loan Agreement and Account Control Agreement.  The Debtors have signature authority for the Borrower Account.  For the remaining Domestic Accounts, the Debtors are required to send payment instructions to WT, which then makes all disbursements and transfers between the Accounts in accordance with the Prepetition Loan Agreement and Account Control Agreement.

13.     Pursuant to Section 9.2(e) of the Prepetition Loan Agreement, any change to the Cash Management System requires the prior written consent of LNV.  Section 9.1(k) of the Prepetition Loan Agreement further mandates that WEAP not maintain any bank accounts other than the Domestic Accounts and prohibits WEAP from closing any of the Domestic Accounts without the prior consent of LNV.

4

14.    The Prepetition Loan Agreement requires the Debtors to maintain the following Accounts to be used as described below:

a.    <u>Payment Account (Account 004)</u>.  The Payment Account receives funds from LNV pursuant to the Prepetition Loan Agreement.  The funds in the Payment Account are used to pay the premiums of the Policies and other fees approved by LNV.  WT disburses the funds in the Payment Account in accordance with the Account Control Agreement.

b.    <u>Collection Account (Account 002)</u>.  The Collection Account is the central account whereby all collections from the sale of the Policies, death benefits received from the Policies, and any other cash or other proceeds received with respect to the Policies is deposited.  In accordance with the Account Control Agreement, the funds in the Collection Account are swept by LNV on a quarterly basis and distributed pursuant to a waterfall set forth in the Prepetition Loan Agreement.  Postpetition, the Debtors will not make draws under the Prepetition Loan Agreement.  Accordingly, by this Motion, the Debtors seek authority to transfer funds from the Collection Account to the Payment Account for disbursements in accordance with the Budget.[4]

c.    <u>Borrower Account (Account 001)</u>.  The Borrower Account is an operating account used to pay, among other things, (a) accrued interest under the Prepetition Loan Agreement when there are insufficient funds available in the Collection Account and (b) the ordinary course business expenses of WEAP, including legal expenses.

d.    <u>Escrow Account (Account 003)</u>.  The Escrow Account is a dormant account that was originally established and maintained to receive the residual amount of any distributions from the Collection Account.

**ii.    The Foreign Accounts**

15.    Debtor LRDA is an Irish entity that maintains two bank checking accounts – a Euro denominated account and a U.S. dollar denominated account – at Ulster Bank, an Irish bank.  In the aggregate, the balance of the Foreign Accounts is less than $25,000.  The funds in

---

[4]  The Debtors have filed concurrently herewith the Motion of Debtors for Entry of Interim and Final Orders (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, (C) Modifying the Automatic Stay, and (D) Scheduling a Final Hearing (the "<u>Cash Collateral Motion</u>").  Pursuant to the Cash Collateral Motion, the Debtors seek authority to use cash collateral pursuant to the budget annexed to the proposed interim order attached thereto (the "<u>Budget</u>").

the Foreign Accounts are used by LRDA for general corporate expenses (*e.g.*, director fees,

annual corporate filing fees, and professional fees).  In addition, the Foreign Accounts are not

controlled accounts or otherwise subject to the Account Control Agreement.

16.     The Cash Management System described above implements a controlled

system of collections and disbursements consistent with the terms of the Prepetition Loan

Agreement and Account Control Agreement.  The Cash Management System manages the

payment of premiums for 586 insurance policies.  Any disruption caused by requiring the

Debtors to close their existing bank accounts and establish new bank accounts and implement a

new cash management system is unnecessary under the circumstances here and could jeopardize

the Debtors' ability to timely pay insurance premiums and other administrative obligations –

putting at risk the primary assets of these estates.

**C.      Intercompany Transactions**

17.     As set forth more fully in the Declaration, the Debtors do not have any

employees and are instead operated and administered by employees of non-debtor Imperial

Finance & Trading, LLC ("Imperial Finance"), a direct subsidiary of ECI, under an

administrative services agreement.  Prior to the Petition Date, Imperial Finance would invoice

the Debtors for services provided under the administrative services agreement.  Historically,

because the Prepetition Agent would not consent to the release of funds from the Accounts, ECI

would contribute capital to Imperial Finance in satisfaction of these invoices.

18.     Pursuant to the Cash Collateral Motion, the Debtors seek authority to fund

these chapter 11 cases with the use of cash collateral pursuant to the Budget, which among other

items, contemplates payments from the Debtors to Imperial Finance on account of services

rendered on behalf of the Debtors pursuant to the administrative services agreement (the "Intercompany Transactions").

19.     By this Motion, and out of an abundance of caution, the Debtors seek authority to make the Intercompany Transactions (*i.e.*, directly pay Imperial Finance on account of costs incurred postpetition under the administrative services agreement) and to satisfy postpetition administrative obligations associated with the Intercompany Transactions, in accordance with the Budget.  Moreover, the Debtors seek authority, as described above, to transfer funds between Accounts in accordance with the Budget.

### RELIEF REQUESTED

20.     By this Motion, the Debtors seek (a) authority to continue the use of its existing Cash Management System, (b) authority to make the Intercompany Transactions, (c) a limited waiver of the requirements pursuant to section 345(b) of the Bankruptcy Code to the extent required, and (d) the related relief set forth herein.

### BASIS FOR RELIEF

A.      **The Court Should Authorize the Debtors to Maintain Existing Accounts**

21.     The United States Trustee for the District of Delaware has established certain operating guidelines (the "UST Guidelines") for debtors in possession.  One such provision requires chapter 11 debtors in possession to close all existing bank accounts and open new bank accounts.  The guidelines also require that debtors maintain new bank accounts in certain financial institutions designated as authorized depositories by the United States Trustee. This requirement, designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, helps protect against the inadvertent payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.

22.     The Debtors seek a waiver of the United States Trustee's requirement for the closure of the Accounts and opening of new postpetition bank accounts at depositories authorized by the United States Trustee.  If strictly enforced in these chapter 11 cases, the requirement to close and open new bank accounts could cause a severe disruption in the Debtors' activities and could impair the Debtors' ability to operate under chapter 11 of the Bankruptcy Code.  Maintenance of the Accounts and the Cash Management System will greatly facilitate the Debtors' operations for the duration of these chapter 11 cases.

23.     Other than the Foreign Accounts with *de minimis* balances, the Accounts are maintained by financial institutions that are on the United States Trustee's approved depository list for the District of Delaware.[5]  If the Accounts were closed, the Debtors would need to undertake the laborious effort of opening new bank accounts and, with respect to the Domestic Accounts, establishing automatic payments for the premiums of 586 life insurance policies.  Any disruption to the Debtors' operations would severely impact their ability to operate at this critical juncture.  As previous discussed, the operation of the Domestic Accounts is mandated and delineated in the Prepetition Loan Agreement and Account Control Agreement.  If the Debtors were required to close the Domestic Accounts and open new debtor in possession accounts, the Debtors would be forced to reconstruct their cash management system in its entirety.  Moreover, the closure of any Domestic Account and/or opening of any new bank accounts would violate the terms of the Prepetition Loan Agreement.

24.     To minimize expenses to these chapter 11 estates, the Debtors also request permission to maintain and continue to use their business forms, including check stock, electronic forms and paper forms, preprinted labels, letterhead, and related documents

---

[5] WT is an affiliate of Manufacturer's & Trader's Trust Company, which is an approved depository for the District of Delaware.

8

(collectively, the "Business Forms") substantially in the forms existing immediately before the Petition Date. Strict compliance with the UST Guidelines, which require reprinting such documents, would increase the expenses to the estates. Accordingly, the Debtors believe that it is appropriate to continue to use all Business Forms as such forms were in existence prior to the Petition Date, without any reference to the Debtors' current status as debtor in possession.

26. Courts in this district have consistently allowed debtors to use their prepetition checks and other forms without the "debtor in possession" label. *See, e.g., In re Aquion Energy, Inc.,* Case No. 17-10500 (KJC) (Bankr. D. Del. March 10, 2017); *In re Malibu Lighting* Corporation*, et al.*, Case No. 15-12082 (KG) (Bankr. D. Del. Oct. 9, 2015).

26. The Debtors respectfully submit that any benefits of their strict compliance with the UST Guidelines or Local Rule 2015-2(a) would be far outweighed by the resulting expense, inefficiency, and disruption to the Debtors' business. Accordingly, the Debtors request authority to maintain their Accounts and Business Forms during these chapter 11 cases.

**B.    The Court Should Authorize the Debtors to
        Continue Their Existing Cash Management System**

27. The Debtors seek authority to continue to use the Cash Management System as such system may need to be modified by the Debtors in accordance with the relief requested in the Cash Collateral Motion and Budget. For the reasons set forth above, the Cash Management System constitutes an essential business practice and was created and implemented by agreement between the Debtors and the Prepetition Agent, as set forth in the Prepetition Loan Agreement. The continued use of the Cash Management System will avoid unnecessary distractions that would inevitably be associated with a substantial disruption of the Cash Management System.

28.    Bankruptcy courts routinely grant chapter 11 debtors authority to continue utilizing existing cash management systems and treat requests for such authority as a relatively "simple matter." *In re Baldwin-United Corp.*, 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987). This is particularly true where, as here, the chapter 11 cases involve affiliated entities with complex financial affairs. In *In re Charter Co.*, 778 F.2d 617 (11th Cir. 1985), for example, the bankruptcy court entered an order authorizing the debtors and 43 of their subsidiaries "to continue to consolidate the management of their cash as has been usual and customary in the past, and to transfer monies from affiliated entity to entity, including operating entities that are not debtors." *Id.* at 620. The Eleventh Circuit Court of Appeals then affirmed a subsequent district court decision denying a creditor's motion for leave to appeal the bankruptcy court's cash management order, holding that authorizing the debtors to utilize their prepetition "routine cash management system" was "entirely consistent" with applicable provisions of the Bankruptcy Code. *Id.* at 621.

29.    Likewise, in another context, the bankruptcy court in the *Columbia Gas* chapter 11 case explained that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticability of maintaining separate cash accounts for the many different purposes that require cash." *In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1993), *aff'd in part*, *rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 114 S. Ct. 1050 (1994). The Third Circuit agreed, emphasizing that a requirement to maintain all accounts separately "would be a huge administrative burden and economically inefficient." *Columbia Gas*, 997 F.2d at 1061. *See also In re Southmark Corp.*, 49 F.3d 111, 114 (5th Cir. 1995) (cash

management system allows debtors "to administer more efficiently and effectively their financial operations and assets"); *In re UNR Indus., Inc.*, 46 B.R. 25, 27 (Bankr. N.D. Ill. 1984).

30.     Section 363(c)(1) of the Bankruptcy Code authorizes the debtors in possession to "use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).  The purpose of section 363(c)(1) of the Bankruptcy Code is to provide a debtors in possession with the flexibility to engage in the ordinary transactions required to operate their business without undue oversight by creditors or the court.  *Medical Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir.  1997).  Included within the purview of section 363(c) is a debtors' ability to continue the "routine transactions" necessitated by a debtors' cash management system.  *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).  Accordingly, the Debtors seek authority under section 363(c)(1) of the Bankruptcy Code to continue the collection and disbursement of cash pursuant to their existing Cash Management System.  Additionally, the Court may exercise its equitable powers to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a).  Continuing the Cash Management System without interruption is vital to the success of these chapter 11 cases.

31.     In other cases in the District of Delaware, this Court has granted relief substantially similar to that requested in this Motion.  *See, e.g., In re Life Settlements Absolute Return I, LLC, et al.*, Case No. 17-13030 (MFW) (Bankr. D. Del. February 1, 2018); *In re Aquion Energy, Inc.,* Case No. 17-10500 (KJC) (Bankr. D. Del. March 10, 2017); *In re Basic Energy Services, Inc., et al.,* Case No.  16-12320 (KJC) (Bankr. D. Del. October 26, 2016); *In re Key Energy Services, Inc., et al.,* Case 16-12306 (BLS) (Bankr. D. Del. October 25, 2016); *In re*

*Malibu Lighting Corporation, et al.*, Case No. 15-12082 (KG) (Bankr. D. Del. Oct. 9, 2015).

Accordingly, the Debtors request that the Court approve the continued use of the Cash

Management System and Accounts.

**C.      The Court Should Authorize the Payment
         of Outstanding Routine Prepetition Expenses
         <u>Relating to the Operation of the Cash Management System</u>**

        32.      In the ordinary course of the operation and maintenance of the Cash

Management System, the Debtors incur routine charges and fees relating to the administration of

the Cash Management System, primarily payable to WT.  While it is difficult to readily

determine the aggregate amount of unpaid prepetition account fees and charges as of the Petition

Date, on average, the Debtors pay approximately $85,000 in quarterly fees and charges.  The

Debtors seek authority, in their sole discretion, to pay any such routine and ordinary course

prepetition fees and charges, and to continue the postpetition payment of such fees and charges

in the ordinary course of business.

**D.      The Debtors Should Be Allowed to Continue Certain
         <u>Intercompany Transactions</u>**

        33.      The Debtors may utilize the Cash Management System for the

Intercompany Transactions.  Other than described herein, no other Intercompany Transactions

occur.  The Debtors believe that the Intercompany Transactions described herein are beneficial to

their estates and creditors and other parties in interest and, therefore, should be authorized by the

Court.

**E.      The Court Should Grant a Waiver**
**        Pursuant to Section 345(b) of the Bankruptcy Code**

34.      Section 345(a) authorizes deposits or investments of money "as will yield

the maximum reasonable net return on such money, taking into account the safety of such

deposit or investment."  Section 345(b) provides:

> Except with respect to a deposit or investment that is insured or
> guaranteed by the United States or by a department, agency, or
> instrumentality of the United States or backed by the full faith and
> credit of the United States, the trustee shall require from an entity
> with which such money is deposited or invested --
>
> 1)      a bond –
>
>         A.      in favor of the United States;
>
>         B.      secured by the undertaking of a corporate
>                 surety approved by the United States trustee
>                 for the district in which the case is pending;
>                 and
>
>         C.      conditioned on --
>
>                 i)      a proper accounting of all money so
>                         deposited or invested and for any
>                         return on such money;
>
>                 ii)     prompt repayment of such money
>                         and return; and
>
>                 iii)    faithful performance of duties as a
>                         depository; or
>
> 2)      the deposit of securities of the kind specified in
>         section 9303 of title 31 unless the court for cause
>         orders otherwise.

35.      As noted above, the Domestic Accounts are with WT, an affiliate of

Manufacturer's & Trader's Trust Company, which is approved as a depository for funds of

debtors in possession by the United States Trustee for Region 3.  Therefore, the Debtors submit

that the Accounts are in compliance with the security or bonding requirements prescribed by

DOCS_SF:98216.7

section 345(b) of the Bankruptcy Code and no security or bonds are necessary to secure the funds in such accounts.

36.     Notwithstanding the foregoing, the Debtors seek a waiver of section 345(b) of the Bankruptcy Code to the extent required.  The Debtors specifically seek a waiver of section 345(b) of the Bankruptcy Code with respect to the Foreign Accounts, which maintain a *de minimis* balance and are Irish bank accounts held by an Irish entity.  The waiver would permit the Debtors to maintain the Accounts without posting a bond or other security, as would otherwise be required under section 345(b) whenever the funds on deposit exceed the amount permitted under section 345(b).

37.     As discussed above, the Debtors maintain the Domestic Accounts with WT under the terms of the Prepetition Loan Agreement and Account Control Agreement. Pursuant to Section 2.1(f) of the Account Control Agreement, funds held in the Collection Account may be invested in certain permitted investments.  In accordance with the Account Control Agreement, and at the direction of WEAP, WT invests the funds held in the Collection Account in the Federated U.S. Treasury Cash Reserves money market fund with ticker number UTIXX (the "Fund").

38.     The Debtors respectfully submit that the Fund satisfies each of the requirements of Local Rule 4001-3 and cause exists for relief from the requirements of section 345(b).  The "umbrella" paragraph of Local Rule 4001-3 provides for "cause" for relief from the requirements of section 345(b) where money of estate funds is invested in an "open-end management investment company, registered under the Investment Company Act of 1940, that is regulated as a 'money market fund' pursuant to Rule 2a-7 under the Investment Company Act of

1940," so long as the fund is identified and the debtor provides information regarding the account(s) to the Court.

39.     Under Rule 2a-7, a "government money market fund" is defined as "a money market fund that invests 99.5 percent or more of its total assets in cash, government securities, and/or repurchase agreements that are collateralized fully." *See* 17 C.F.R. § 270.2a-7(a)(14).

40.     Attached hereto as **Exhibit A** is a true and correct copy the Fund's prospectus (the "Prospectus").  Attached hereto as **Exhibit B** is a true and correct copy of the Fund's certified shareholder report (Form N-CSR) filed on September 25, 2018 (the "Certification").  As stated in the Certification, Money Market Obligations Trust, of which the Fund is a part, "is an open-end, management investment company."  Certification at p. 14.  As stated in the Prospectus, the Fund operates as a "government money market fund," as such term is defined in or interpreted under Rule 2a-7 under the Investment Company Act of 1940.  Accordingly, the Fund is in compliance with the "umbrella" paragraph of Local Rule 4001-3.

41.     Subsection (a) of Local Rule 4001-3 requires that the Fund "[i]nvests exclusively in United States Treasury bills[6] and United States Treasury Notes[7] owned directly or through repurchase agreements."  As discussed in the Prospectus, the Fund's principal investment strategy is to "invest[] in a portfolio of U.S. Treasury securities maturing in 397 days

---

[6]  Black's Law Dictionary defines a "treasury bill" as "[a] short-term debt security issued by the federal government, with a maturity of 13. 26, or 52 weeks.  These bills—auctioned weekly or quarterly—pay interest in the form of the difference between their discounted purchase price and their par value at maturity".

[7]  Blacks' Law Dictionary defines a "treasury note" as "[a]n immediate-term debt security issued by the federal government, with a maturity of two to ten years.  These notes are considered risk-free, but they usually pay relatively little interest."

or less that pay interest exempt from state personal income tax." Accordingly, the Debtors respectfully submit that the Fund is in compliance with subsection (a) of Local Rule 4001-3.

42.     Subsection (b) of Local Rule 4001-3 requires that the Fund "[h]as received the highest money market fund rating from a nationally recognized statistical rating organization, such as Standard & Poor's or Moody's." Attached hereto as **Exhibit C** is a true and correct copy of the Fund's Fact Sheet, which evidences that the Fund has been rated AAAm by S&P and Aaa-mf by Moody's. These ratings are the highest ratings given by the respective organizations. Accordingly, the Fund is in compliance with subsection (b) of Local Rule 4001-3.

43.     Subsection (c) of Local Rule 4001-3 requires that the Fund "[h]as agreed to redeem the fund shares in cash, with payment being made no later than the business day following a redemption request by a shareholder, except in the event of an unscheduled closing of Federal Reserve Banks or the New York Stock Exchange." As discussed in the Prospectus, redeemed shares are paid in cash within one business day and will be wired on the same day if redeemed by 2:00 p.m. Eastern Time. Accordingly, the Fund is in compliance with subsection (c) of Local Rule 4001-3.

44.     Subsection (d) of Local Rule 4001-3 requires that the Fund "[h]as adopted a policy that it will notify its shareholders sixty (60) days prior to any change in its investment or redemption policies under (a) and (c) above." As discussed in the Prospectus, the Fund has adopted such a policy with respect to its investment policies: "The Fund will notify shareholders at least 60 days in advance of any change in its investment policy that would enable the Fund to invest, under normal circumstances, less than 80% of its net assets (plus any borrowings for investment purposes) in U.S. Treasury investments." Prospectus at p. 2. Accordingly, the Fund is in compliance with subsection (d) of Local Rule 4001-3.

45.     Based upon the foregoing, the Fund meets each of the requirements set forth in Local Rule 4001-3.  Accordingly, the Debtors respectfully request a waiver from the requirements of section 345(b) of the Bankruptcy Code, to the extent applicable.

**F.     Waiver of Bankruptcy Rules 6003 and 6004**

46.     Pursuant to Bankruptcy Rule 6003(b), "a motion to pay all or part of a claim that arose before the filing of the petition" shall not be granted by the Court within 21 days of the Petition Date "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm . . . ."  Fed. R. Bankr. P. 6003(b).  For the reasons described more fully above, and to the extent that the relief requested herein implicates Bankruptcy Rule 6003(b), the Debtors submit that the requirements of Bankruptcy Rule 6003 have been met and that the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

47.     Finally, to implement the foregoing successfully, the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h), to the extent these rules are applicable.

**NOTICE**

48.     The Debtors will provide notice of this Motion to the following parties, or their counsel, if known:  (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Debtors' twenty largest unsecured creditors; (iv) counsel to CMLG and LNV; (v) Wilmington Trust, N.A.; and (vi) all other known parties asserting a lien against the Debtors' assets, by telecopy, email, overnight courier and/or hand delivery.  Because of the nature of the relief requested, the Debtors respectfully submit that no other or further notice of the relief requested in this Motion need be given.

17

## **CONCLUSION**

49.     The Debtors respectfully request that the Court enter an order,

substantially in the form attached hereto as **Exhibit D**, granting the relief requested herein.


Dated:  December 13, 2018                    PACHULSKI STANG ZIEHL & JONES LLP


                                          */s/ Colin R. Robinson*
                                         Richard M. Pachulski (CA Bar No. 62337)
                                         Robert J. Feinstein (NY Bar No. 1767805)
                                         Jeffrey N. Pomerantz (CA Bar No.143717)
                                         Ira D. Kharasch (CA Bar No. 109084)
                                         Maxim B. Litvak (CA Bar No. 215852)
                                         Colin R. Robinson (DE Bar No. 5524)
                                         919 North Market Street, 17th Floor
                                         P.O. Box. 8705
                                         Wilmington, Delaware 19899-8705 (Courier 19801)
                                         Telephone: (302) 652-4100
                                         Facsimile:  (302) 652-4400
                                         E-mail:     rpachulski@pszjlaw.com
                                                     rfeinstein@pszjlaw.com
                                                     jpomerantz@pszjlaw.com
                                                     ikharasch@pszjlaw.com
                                                     mlitvak@pszjlaw.com
                                                     crobinson@pszjlaw.com

                                         Proposed Counsel for the Debtors
                                         and Debtors-in-Possession