IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | Case No. 18-12808 (KG) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (A) AUTHORIZING THE USE OF CASH COLLATERAL, (B) PROVIDING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING

The debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors") hereby submit this motion (this "Motion") for entry of an interim order on an expedited basis (the "Interim Order")[2] substantially in the form attached hereto as **Exhibit A** and, following a final hearing to be set by the Court (the "Final Hearing"), entry of a final order (the "Final Order"), pursuant to sections 105, 361, 362, 363, and 507 of title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"):  (a) authorizing the Debtors to use Cash Collateral (as defined below), (b) providing adequate protection to the Prepetition Secured Parties (as defined below), and (c) modifying the automatic stay.  The Prepetition Secured Parties are affiliates of Beal Financial Corporation.

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738).  The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

[2]  Capitalized terms used but not defined herein shall have the meanings set forth in the Interim Order.

The Debtors believe that only the Prepetition Secured Parties assert an interest in the Cash Collateral. **The Debtors have negotiated the terms of the Interim Order in substantially the form attached hereto and are informed that the Prepetition Secured Parties will support entry of the Interim Order on a consensual basis (with all rights reserved with respect to any final or further interim cash collateral order).**

In support of this Motion, the Debtors represent as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2.    Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicates for the relief sought herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code.

## RELIEF REQUESTED

4.    By this Motion, the Debtors seek the entry of the Interim Order and the Final Order, which:

     a.     authorize the Debtors to use cash collateral (the "Cash Collateral") in which LNV Corporation ("LNV"), as lender, and CMLG Corp., as administrative agent (the "Prepetition Agent" and, together with LNV and any other lenders party to the Prepetition Loan Agreement from time to time, the "Prepetition Secured Parties"), have, or assert, an interest;

     b.     authorize the Debtors to provide adequate protection to the Prepetition Secured Parties for any decrease in the value (such decrease being a "Diminution in Value") of their interests in the Debtors' property resulting from (i) the use, sale or lease of the Debtors' property (including the use of Cash Collateral) or (ii) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code;

     c.     modify the automatic stay imposed pursuant to section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the Interim Order and the Final Order;

     d.     waive any applicable stays under the Bankruptcy Rules and provide for the immediate effectiveness of the Interim Order and the Final Order; and

     e.     schedule a Final Hearing to allow for entry of the Final Order within forty-five (45) days following entry of the Interim Order.

## **SUMMARY OF PROPOSED ORDERS**

     5.     In accordance with Bankruptcy Rules 4001(b) and (d) and Local Rule 4001-(2), below is a summary[3] of the terms of the proposed use of Cash Collateral:

     a.     Amount of Cash Collateral to Be Used.  (Interim Order ¶ 5, ¶ 6).  The Debtors seek to use Cash Collateral in an amount consistent with the expenditures described in the budget, the initial form of which is attached to the proposed Interim Order as Exhibit 1 (the "Budget").

     b.     Parties with an Interest in Cash Collateral.  The Prepetition Secured Parties assert an interest in the Cash Collateral under the Prepetition Loan Agreement (as defined below).

     c.     Use of Cash Collateral.  (Interim Order ¶ 5, ¶ 6, ¶ 8).  The Debtors seek authority to use Cash Collateral, wherever such Cash Collateral may be located, in accordance with the terms of the Interim Order to, among other

---

[3] The summary of the Interim Order, the Final Order, and the terms and conditions for the use of Cash Collateral set forth in this Motion is intended solely for informational purposes to provide the Court and parties in interest with an overview of the significant terms thereof.  The summary is qualified in its entirety by the Interim Order and the Final Order.  In the event that there is any conflict between this Motion and the Interim Order or the Final Order, the Interim Order or the Final Order, as applicable, will control in all respects.

things, (a) satisfy postpetition operating expenses of the Debtors as more fully described in the Budget, including the payment of ongoing policy premiums, (b) pay certain prepetition obligations of the Debtors as further described in any first day motions, and (c) pay reorganization expenses, including but not limited to allowed fees and expenses incurred by the professionals retained under sections 327, 328, 363, and/or 1102 of the Bankruptcy Code by the Debtors and any statutory committees appointed in the Debtors' chapter 11 cases pursuant to section 1102 of the Bankruptcy Code (each, a "Committee"), in accordance with the Budget. Disbursements by the Debtors on an aggregate basis during the Interim Budget Period may not exceed 15% from the amounts specified in the Budget, other than disbursements to the Debtors' professionals which variance is capped at 5%.

d.    Termination Date.  (Interim Order, ¶ 5).  The Debtors' ability to use Cash Collateral pursuant to the Interim Order shall end on the earliest of: (i) entry of the Final Order, (ii) forty-five (45) days following entry of the Interim Order if the Final Order shall not have been entered by such date, (iii) the effective date of a confirmed plan of reorganization in the chapter 11 cases, (iv) the closing of a sale of all or substantially all assets of the Debtors; (v) the dismissal of any of these chapter 11 cases or the conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, (vi) any material provision of the Interim Order having ceased to be valid or binding for any reason, (vii) the Debtors having attempted to modify the Interim Order without the prior written consent of the Prepetition Agent and (viii) five (5) business days following receipt by the Debtors and the United States Trustee for the District of Delaware (the "U.S. Trustee") of a notice (a "Termination Notice") from the Prepetition Agent of a breach by any of the Debtors of (x) any of the terms or provisions of the Interim Order or (y) any covenant or undertaking in any of the Prepetition Loan Documents relating to the servicing, preservation or maintenance of the Prepetition Collateral so long as the Prepetition Secured Parties do not take any action in violation of the Interim Order that would prevent or hinder the Debtors from satisfying such covenant or undertaking (the "Interim Budget Period").

e.    Adequate Protection.  (Interim Order ¶ 7).  The Debtors propose to provide adequate protection to the Prepetition Secured Parties as follows, subject in all respects to payment of the Carve-Out: (i) a continuing security interest in and lien on all collateral of the Debtors of the same type and nature that exists as of the Petition Date with the same validity (or invalidity) and priority as exists as of the Petition Date, including the income and proceeds thereof (the "Replacement Lien"), (ii) solely to the extent of any Diminution in Value, an additional and replacement security interest in and lien on all property and assets of the Debtors' estates (the "Adequate Protection Lien"), *provided however*, that (a) such security interest and lien shall be junior only to any existing, valid, senior,

enforceable and unavoidable prior perfected security interests and liens, and (b) such security interest and lien shall not attach to any commercial tort claims or any claims, defenses, causes of action or rights of the Debtors arising under chapter 5 of the Bankruptcy Code or applicable state fraudulent transfer law (including all proceeds thereof, the "Avoidance Actions") but shall, upon entry of the Final Order, attach to any proceeds of commercial tort claims and Avoidance Actions except for any proceeds of commercial tort claims and Avoidance Actions recovered from any Prepetition Secured Party, and (iii) to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code, an allowed administrative claim in the chapter 11 cases (the "Adequate Protection Claim"), *provided however*, that such claim shall not extend to any commercial tort claims and Avoidance Actions but shall, upon entry of the Final Order, extend to any proceeds of commercial tort claims and Avoidance Actions except for any proceeds of commercial tort claims and Avoidance Actions recovered from any Prepetition Secured Party.

Further, the Debtors shall provide the Prepetition Secured Parties with copies of all reports, information and other materials that are required to be provided under the Prepetition Loan Agreement, and the Debtors shall endeavor to obtain updated life expectancy reports from certain underwriters.

In terms of adequate protection payments, the Interim Order provides for payment, up to the amounts set forth in the Budget, of accrued interest, fees, and expenses due and owing under the Prepetition Loan Agreement and as such obligations are incurred (the "Adequate Protection Payments"). Specifically, the interim Budget provides for payment of $1,200,000 on account of interest payments to the Prepetition Secured Parties and $300,000 for reimbursement of legal fees incurred by the Prepetition Agent, subject to a reservation of rights by the Debtors.

f.  Carve-Out:  (Interim Order ¶ 8).  Payment of any amounts on account of the Prepetition Obligations, the Prepetition Liens, the Replacement Lien, the Adequate Protection Lien, and the Adequate Protection Claim shall be subject and subordinate in all respects to the payment of the following (collectively, the "Carve-Out"):  (i) U.S. Trustee Costs; (ii) the unpaid and outstanding reasonable fees and expenses actually incurred by Professionals on or after the Petition Date and through the day of delivery of a Termination Notice under this Interim Order, up to the amounts set forth for each Professional in the Budget for such period, to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order; and (iii) the unpaid and outstanding reasonable fees and expenses actually incurred by the Professionals from or after the day following the delivery of a Termination Notice under this Interim Order, to the extent allowed by Court order and payable under sections 326, 328, 330, and 331 of the

Bankruptcy Code and any interim procedures order, in an aggregate amount not to exceed $250,000 (the "Post-Termination Carve-Out Cap").

Funding of Carve-Out. Upon delivery of a Termination Notice, the Debtors shall deposit into the trust account for the Debtors' general bankruptcy counsel or other segregated reserve or escrow account (the "Carve-Out Account") in an aggregate amount equal to the sum of the Post-Termination Carve-Out Cap plus all unpaid and outstanding reasonable fees and expenses actually incurred by all of the Professionals prior to the delivery of the Termination Notice in an amount not to exceed the amounts set forth in the Budget for the payment of such Professionals through the date of delivery of the Termination Notice. The funds in the Carve-Out Account shall be used solely to pay Professional Fees as and when allowed by order of the Court in accordance with paragraph 8(b) above. To the extent the Court does not approve any of the Professional Fees that were to be paid from funds segregated in the Carve-Out Account, or any amounts in the Carve-Out Account are ultimately not used for such purposes, such unused amounts shall be returned to the Debtors, subject to the rights, liens and claims of the Prepetition Secured Parties under this Interim Order and the Prepetition Loan Documents.

g.    Automatic Perfection. (Interim Order ¶ 9). The Replacement Lien and the Adequate Protection Lien shall be valid, binding, enforceable, non-avoidable and automatically perfected, notwithstanding the automatic stay, without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which otherwise may be required under the laws of any jurisdiction to validate or perfect such security interests and liens.

## DISCLOSURES

6.    Pursuant to Bankruptcy Rule 4001(d) and Local Rule 4001-2, a debtor in possession seeking authority to use cash collateral or to obtain financing must disclose the presence and location of certain provisions contained in the documentation evidencing the cash collateral usage or financing. The debtor in possession must also justify the inclusion of such provisions. Set forth below are the disclosures required in accordance with such rules:

a.    Local Rule 4001-2(a)(i)(A) requires a debtor to disclose whether it has granted cross-collateralization to prepetition secured creditors in connection with the debtor's cash collateral usage or additional financing. **The proposed Interim Order and the Final Order do not provide for the granting of cross-collateralization protection to any prepetition**

              **secured creditors, except in the form of the Replacement Lien and the Adequate Protection Lien.**

b.      Local Rule 4001-2(a)(i)(B) and Bankruptcy Rule 4001(c)(1)(B)(iii) require the disclosure of provisions or findings of fact that (i) bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or (ii) the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order and the Committee at least sixty (60) days from the date of its formation to investigate such matters. **The proposed Interim Order and the Final Order, at ¶ 3, contain certain stipulations by the Debtors relating to the validity and amount of the prepetition liens and claims of the Prepetition Secured Parties, subject to standard challenge provisions by parties in interest and certain reservations of rights by the Debtors.**

c.      Local Rule 4001-2(a)(i)(C) and Bankruptcy Rule 4001(c)(1)(B)(x) require the disclosure of provisions that seek to waive a debtor's rights without notice under section 506(c) of the Bankruptcy Code. **The proposed Interim Order and the Final Order, at ¶ 12, provide for a waiver of the Debtors' rights under section 506(c) of the Bankruptcy Code, upon entry of the Final Order.**

d.      Local Rule 4001-2(a)(i)(D) requires disclosure of provisions that immediately grant to the prepetition secured creditor liens on the debtor's claims and causes of action arising under sections 544, 545, 547, 548 and 549 of the Bankruptcy Code. **The proposed Interim Order and the Final Order, at ¶ 7, provide that, upon entry of the Final Order, the Prepetition Secured Parties are granted liens on the Debtors' claims and causes of action arising under chapter 5 of the Bankruptcy Code, except for avoidance actions against the Prepetition Secured Parties.**

e.      Local Rule 4001-2(a)(i)(E) requires disclosure of provisions that deem prepetition secured debt be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code). **The proposed Interim Order and the Final Order do not contain provisions that deem prepetition secured debt to be postpetition debt or use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt (other than as provided in section 552(b) of the Bankruptcy Code).**

f.      Local Rule 4001-2(a)(i)(F) requires disclosure of provisions that provide disparate treatment for the professionals retained by a creditors' committee from those professionals retained by the Debtors with respect to a professional fee carve-out. **The proposed Interim Order and the Final Order do not provide for disparate treatment for the**

**professionals retained by a Committee from those professionals retained by the Debtors, except that the Budget does not currently project any Committee professional fees.**

g.    Local Rule 4001-2(a)(i)(G) requires disclosure of provisions that provide for the priming of any secured lien without the consent of that lienholder. **The proposed Interim Order and the Final Order do not provide for the priming of any secured lien without the consent of that lienholder.**

h.    Local Rule 4001-2(a)(i)(H) requires disclosure of provisions that seek to affect the Court's power to consider the equities of the case under 11 U.S.C. § 552(b)(1).  **The proposed Interim Order and the Final Order, at ¶ 11, provide for a waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code, upon entry of the Final Order.**

i.    Bankruptcy Rule 4001(c)(1)(B)(ii) requires disclosure of the provision of adequate protection or priority for claims arising prior to the commencement of the case.  **The proposed Interim Order and the Final Order, at ¶ 7, describe the forms of adequate protection provided to the Prepetition Secured Parties.**

j.    Bankruptcy Rule 4001(c)(1)(B)(iv) requires disclosure of provisions that constitute a waiver or modification of the automatic stay.  **The proposed Interim Order and the Final Order, at ¶ 9, describe the modification of the automatic stay to the extent necessary to implement the Interim Order.**

k.    Bankruptcy Rule 4001(c)(1)(B)(vii) requires disclosure of provisions that waive or modify the applicability of nonbankruptcy law relating to the perfection of a lien on property of the estate.  **The proposed Interim Order and the Final Order, at ¶ 9, include provisions that provide for the automatic perfection and validity of the Replacement Lien and the Adequate Protection Lien without the necessity of any further filing or recording under the laws of any jurisdiction.**

## BACKGROUND

7.    On November 14, 2018 (the "<u>Petition Date</u>"), White Eagle General Partner, LP and Lamington Road Designated Activity Company commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

8.       On the date hereof, White Eagle Asset Portfolio, LP ("WEAP") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors are operating their business and managing their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

9.       The Debtors are indirect subsidiaries of Emergent Capital, Inc. ("ECI"), a publicly traded company.  ECI is a global leader in the life settlements industry.

10.      Debtor WEAP owns a portfolio of 586 life insurance policies – also known as life settlements – with an aggregate death benefit of approximately $2.8 billion.  The partnership interests in WEAP are owned by Debtors White Eagle General Partner, LLC ("WEGP") and Lamington Road Designated Activity Company ("LRDA").  WEGP is the general partner of WEAP, manages WEAP, and holds 0.10% of the interests therein.  LRDA is the limited partner of WEAP and holds 99.90% of the interests therein.

11.      The Debtors do not have any employees.  The Debtors are operated and administered by employees of non-Debtor Imperial Finance & Trading, LLC ("Imperial Finance"), a direct subsidiary of ECI, under an administrative services agreement.

12.      A more detailed description of the Debtors' business and operations, and the events leading to the commencement of these chapter 11 cases, is provided in the *Declaration of Miriam Martinez, Chief Financial Officer, in Support of First Day Motions*, filed concurrently herewith (the "Declaration") and incorporated herein by reference.[4]

---

[4] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Declaration.

## PREPETITION CAPITAL STRUCTURE

13.    WEAP, as borrower, and the Prepetition Secured Parties are party to that certain *Second Amended and Restated Loan and Security Agreement*, dated as of January 31, 2017 (as subsequently amended and/or restated, the "Prepetition Loan Agreement").  Additional parties to the Prepetition Loan Agreement are non-debtor affiliates of ECI:  Imperial Finance, as initial servicer, initial portfolio manager, and guarantor of certain portfolio management obligations, and Lamington Road Bermuda, Ltd., as portfolio manager.  The Prepetition Secured Parties are affiliates of Beal Financial Corporation.

14.    Under the Prepetition Loan Agreement, the total aggregate lending commitment of LNV was $370 million.  As of the date hereof, approximately $367.9 million in principal obligations is due and owing to LNV.  The Prepetition Loan Agreement also provides LNV with a "Participation Interest" equal to forty-five percent (45%) of the revenue generated by WEAP's life settlement portfolio (after interest, expenses, and required amortization has been paid).  Such Participation Interest, as addressed in the Declaration, is disputed.

15.    The obligations under the Prepetition Loan Agreement are secured by purported liens in favor of the Prepetition Agent on substantially all of the assets of WEAP, including its interests in life insurance policies and the proceeds therefrom.  The Prepetition Agent also has purported control of WEAP's funds and collections from insurance policies through a custodial arrangement with Wilmington Trust, N.A. ("WT")

16.    Although Debtors WEGP and LRDA are not obligors under the Prepetition Loan Agreement, they are pledgors under that certain *Partnership Interest Pledge*

*Agreement*, dated as of May 16, 2014 (as subsequently amended and/or restated, the "Partnership Pledge"), pursuant to which WEGP and LRDA pledged their interests in WEAP in favor of the Prepetition Agent, as secured party, in order to secure WEAP's obligations under the Prepetition Loan Agreement.  Under the Partnership Pledge, WEGP and LRDA were required to deliver the pledged certificates representing their interests in WEAP to WT as securities intermediary for the benefit of the Prepetition Agent.  Upon the occurrence of an event of default and absent a bankruptcy filing, the Prepetition Agent could instruct WT to deliver the pledged certificates to the Prepetition Agent, effectively taking ownership of WEAP and its valuable life insurance policies.

17.    Notwithstanding the recent changes in life expectancy projections as described more fully in the Declaration, it should be undisputed that LNV is substantially oversecured.  LNV's own valuation firm has concluded that the fair value of the insurance portfolio is $552 million as of October 31, 2018, an equity cushion of approximately $184 million, subject to a reservation of rights to assert a downward adjustment based on revised life expectancy models that are currently pending.  The Debtors also filed these cases with an aggregate cash balance of approximately $33 million.

## NEED FOR THE CONTINUED USE OF CASH COLLATERAL

18.    As more fully set forth in the Declaration, the Debtors have an urgent and immediate need for the use of Cash Collateral.  The Debtors have not obtained postpetition financing and, without the use of Cash Collateral, the Debtors will not be able to preserve their assets or to effectuate a reorganization that will maximize value for creditors.

19.     Although the Debtors do not have any employees, Debtor WEAP has ongoing premium obligations under its portfolio of life insurance policies and intercompany administrative obligations to its affiliates, and also incurs various servicing obligations and professional fees as part of its ordinary course operations.  Without immediate access to Cash Collateral, WEAP would be forced to cease payments to carriers, abandon its assets, and otherwise cease operations, causing immediate and irreparable harm to these estates.  In order to preserve and maximize the value of the Debtors' assets, the Debtors urge the Court to approve this Motion.

20.     As noted above, LNV has the benefit of a substantial equity cushion in these cases.  LNV also will be adequately protected by the Replacement Lien, the Adequate Protection Lien, the Adequate Protection Claim, and the Adequate Protection Payments to avoid any risk in the diminution in the value of the Prepetition Collateral.

## APPLICABLE AUTHORITY

21.     Section 361 of the Bankruptcy Code provides, in pertinent part, as follows:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –
>
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property; . . .
>
> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

11 U.S.C. § 361.

22.    Section 362 of the Bankruptcy Code provides, in pertinent part, as

follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .

(1) for cause . . . .

11 U.S.C. § 362.

23.    Section 363 of the Bankruptcy Code provides, in pertinent part, as

follows:

(a) In this section "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use of occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 522(b) of this title, whether existing before or after the commencement of a case under this title.

*            *            *

(c)(1) If the business of the Debtors is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the

estate in the ordinary course of business without notice or a hearing.

(2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless –

(A)  each entity that has an interest in such cash collateral consents; or

(B)  the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

(3) Any hearing under paragraph (2)(B) of this section may be a preliminary hearing . . . but shall be scheduled in accordance with the needs of the Debtors.  If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section.  The court shall act promptly on a request for authorization under paragraph (2)(B) of this subsection.

*          *          *

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363.

24.     Section 507 of the Bankruptcy Code provides, in pertinent part, as

follows:

(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the Debtors and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.

11 U.S.C. § 507.

      25.     Rule 4001 of the Bankruptcy Code provides, in pertinent part, as follows:

(d) *Agreement relating to . . . use of cash collateral . . .*

(1) *Motion; Service.*

(A) A motion for approval of any of the following shall be accompanied by a copy of the agreement and a proposed form of order: . . . (iv) an agreement to use cash collateral;

(B) *Contents.*

The motion shall consist of or (if the motion is more than five pages in length) begin with a concise statement of the relief requested, not to exceed five pages, that lists or summarizes, and sets out the location within the relevant documents of, all material provisions of the agreement. In addition, the concise statement shall briefly list or summarize, and identify the specific location of, each provision in the proposed form of order, agreement, or other document of the type listed in subdivision (c)(1)(B). The motion shall also describe the nature and extent of each such provision.

(C) *Service.*

The motion shall be served on: (1) any committee elected under § 705 or appointed under § 1102 of the Code, or its authorized agent, or, if the case is a chapter 9 municipality case or a chapter 11 reorganization case and no committee of unsecured creditors has been appointed under § 1102, on the creditors included on the list filed under Rule 1007(d); and (2) on any other entity the court directs.

(2) *Disposition; Hearing.* If no objection is filed, the court may enter an order approving or disapproving the agreement without conducting a hearing. If an objection is filed or if the court determines a hearing is appropriate, the court shall hold a hearing on no less than seven days' notice to the objector, the movant, the parties on whom service is required by paragraph (1) of this subdivision and such other entities as the court may direct.

Fed. R. Bankr. P. 4001.

      26.     Section 105(a) of the Bankruptcy Code provides, in relevant part, as

follows:

> The court may issue any order, process, or judgment that is
> necessary or appropriate to carry out the provisions of this title.

11 U.S.C. § 105(a).

## BASIS FOR RELIEF

27.     Without immediate access to Cash Collateral, the repercussions to the

Debtors' restructuring efforts will be catastrophic and likely irreparable, ending their ability to

maximize value for the benefit of all constituents.  The Debtors need to fund, among other

things, premium payments to insurers, servicing obligations, and other administrative costs.

28.     If the Motion is not approved, the Debtors' only alternative would be a

piecemeal liquidation that would substantially handicap recoveries by creditors and negatively

impact recoveries from WEAP's life settlement portfolios, which need to be serviced, monitored,

and maintained on an ongoing basis.  Hence, the relief sought in this Motion should be granted.

## A.     The Debtors Have an Immediate Need to Use Cash Collateral

29.     Bankruptcy Rule 4001(b) permits a court to approve a Debtors' request for

use of cash collateral during the 14-day period following the filing of a motion requesting

authorization to use cash collateral, "only . . . as is necessary to avoid immediate and irreparable

harm to the estate pending a final hearing."  Bankruptcy Rule 4001(b)(2).  In examining requests

for interim relief under this rule, courts apply the same business judgment standard applicable to

other business decisions.  *See, e.g., In re Simasko Production Co*., 47 B.R. 444, 449 (D. Colo.

1985); *see also In re Ames Dep't Stores Inc*., 115 B.R. 34, 38 (Bankr. S.D.N.Y. 1990).  After the

14-day period, the request for use of cash collateral is not limited to those amounts necessary to

prevent harm to the debtor's business.

30.    As previously noted, in order to address their working capital needs and fund other costs and expenses associated with their reorganization efforts, the Debtors require access to Cash Collateral.  The use of Cash Collateral will provide the Debtors with the necessary capital with which to maintain their assets, including funding the Debtors' obligations to insurance carriers and other administrative expenses.  Access to Cash Collateral will:  (a) preserve the Debtors' interests in life settlements, (b) allow the Debtors to continue to generate cash flow from their inventory of life settlements, and (c) maximize the value of the Debtors' assets as part of an ongoing reorganization process.  The Debtors do not have adequate available sources of working capital or financing without the use of Cash Collateral.

31.    Further, the alternative in this case is "to force the Debtors to close down their operations and thus doom any effort at reorganization which will hopefully extract the maximum value of the assets involved to the benefit of all classes of creditors and other constituencies involved in this case."  *In re Dynaco Corp*., 162 B.R. 389, 396 (Bankr. D.N.H. 1993).  Because this result would be at fundamental odds to the rehabilitative purposes of chapter 11, approval of this Motion is warranted.  *Id*. at 394 (noting that "it is apparent that the Congress intended business under reorganization to proceed in as normal a fashion as possible") (quoting *In re Prime, Inc*., 15 B.R. 216, 219 (Bankr. W.D. Mo. 1981)).

**B.    <u>Section 363 of the Bankruptcy Code Authorizes the Debtors' Use of Cash Collateral</u>**

32.    Section 363(c)(2) of the Bankruptcy Code provides that a debtor in possession may not use cash collateral unless (i) each entity that has an interest in such cash collateral provides consent, or (ii) the court approves the use of cash collateral after notice and a

hearing.  *See* 11 U.S.C. § 363(c).  Section 363(e) of the Bankruptcy Code provides that, "on

request of an entity that has an interest in property used . . . or proposed to be used . . . by the

[Debtors in possession], the court . . . shall prohibit or condition such use . . . as is necessary to

provide adequate protection of such interest."  11 U.S.C. § 363(e).

33.    Neither section 361 nor any other provision of the Bankruptcy Code

defines the nature and extent of the "interest in property" of which a secured creditor is entitled

to adequate protection under section 361.  However, the statute plainly provides that a qualifying

interest demands protection only to the extent that the use of the creditor's collateral will result in

a decrease in "the value of such entity's interest in such property."  11 U.S.C. §§ 361, 363(e); *see*

*also General Elec. Mortgage Corp. v.  South Village, Inc.* (*In re South Village, Inc.*), 25 B.R.

987, 989-90 & n.4 (Bankr. D. Utah 1982).

34.    The phrase "value of such entity's interest," although not defined in the

Bankruptcy Code, was addressed by the Supreme Court in the landmark *Timbers* decision,

*United Savings Ass'n of Texas v. Timbers of Inwood Forest Assocs, Ltd.*, 484 U.S. 365, 108 S.Ct.

626 (1988).  For the meaning of "value of such entity's interest," the Supreme Court was guided

by section 506(a), which defines a creditor's allowed secured claim:

> The phrase 'value of such creditor's interest' in § 506(a) means
> 'the value of the collateral.'  H.R. Rep. No. 950-595, pp. 181, 356
> (1977); *see also* S. Rep. No. 95-989, p. 68 (1978), U.S. Code
> Cong. & Admin. News, 1978 pp. 5787, 5854, 6141, 6312.  *We*
> *think the phrase 'value of such entity's interest' in § 361(1) and*
> *(2), when applied to secured creditors, means the same*.

*Id*. at 630 (emphasis added).

35.    *Timbers* teaches that a secured creditor is entitled to "adequate protection" only against diminution in the value of the collateral securing the creditor's allowed secured claim.  Under *Timbers*, therefore, where the "value of the collateral" is not diminishing by its use, sale, or lease, the creditor's interest is adequately protected.  This conclusion flows directly from the equivalency of "value of such entity's interests" with "value of the collateral."

36.    Here, the Prepetition Secured Parties' interests in the Debtors' assets are adequately protected for the following reasons.

37.    First, the Prepetition Secured Parties are adequately protected by a substantial equity cushion.  It is black letter law that a sufficient equity cushion in excess of 20% constitutes adequate protection of a secured lender.  *See, e.g., Jay Vending Inc. v. McGowan* (*In re McGowan*), 6 B.R. 241, 243 (Bankr. E.D. Pa. 1980) (10% cushion is sufficient to be adequate protection); *Heritage Sav. & Loan Ass'n v. Rogers Dev. Corp.* (*In re Rogers Dev. Corp.*), 2 B.R. 679, 685 (Bankr. E.D. Va. 1980) (approximately 15% to 20% was sufficient adequate protection to the creditor); *Pistole v. Mellor* (*In re Mellor*), 734 F.2d 1396, 1400 (9th Cir. 1984) (equity cushion of 20% is clear adequate protection of a secured creditor's interest in cash collateral, at least for some period of time).  In the instant case, WEAP's life settlements portfolio is worth substantially more than 20% above the outstanding principal obligations owed to LNV.  LNV's own valuation firm has concluded that the fair value of the insurance portfolio is $552 million as of October 31, 2018, an equity cushion of approximately $184 million, subject to a reservation of rights to assert a downward adjustment based on revised life expectancy models that are

currently pending.  The Debtors also filed these cases with an aggregate cash balance of approximately $33 million.

38.     Second, access to Cash Collateral will maximize the value of the Debtors' assets by allowing WEAP to continue to make ordinary course premium payments to insurance carriers in order to maintain the valuable policies and otherwise allow the Debtors to continue to service and maintain the value of their life settlements portfolio.

39.     Third, the Debtors have proposed further adequate protection in favor of the Prepetition Secured Parties in the form of the Replacement Lien, the Adequate Protection Lien, the Adequate Protection Claim, and the Adequate Protection Payments.  Section 361 of the Bankruptcy Code authorizes a debtor to provide adequate protection by granting replacement liens, making periodic cash payments, or granting such other relief "as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property." *See* 11 U.S.C. § 361.

40.     The Debtors believe that the proposed adequate protection components described above are fair and reasonable and compensate the Prepetition Secured Parties for any possible Diminution in Value of the Debtors' assets.  Given the significant value that the Debtors stand to lose in the event that they are denied access to continued use of Cash Collateral, such protections are wholly appropriate and justified.

## INTERIM ORDER AND FINAL HEARING

41.     Pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2), the Debtors request that the Court set a date for the Final Hearing within forty-five (45) days after entry of

the Interim Order, and fix the time and date prior to the final hearing for parties to file objections

to this Motion.

42.     The urgent need to preserve the Debtors' business, and avoid immediate

and irreparable harm to the Debtors' estates, makes it imperative that the Debtors are authorized

to use Cash Collateral as of the Petition Date, pending the Final Hearing, in order to continue

their business and administer the chapter 11 cases.  Without the ability to use Cash Collateral, the

Debtors would be unable to meet their postpetition obligations or to fund their working capital

needs, thus causing irreparable harm to the value of the Debtors' estates and effectively ending

the Debtors' reorganization efforts.  Accordingly, the Debtors respectfully request that, pending

the hearing on a Final Order, the Interim Order be approved in all respects and that the terms and

provisions of the Interim Order be implemented and be deemed binding and that, after the Final

Hearing, the Final Order be approved in all respects and the terms and provisions of the Final

Order be implemented and be deemed binding.

## NOTICE OF MOTION

43.     Notice of this Motion will be provided to:  (i) the Office of the United

States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the

Debtors' twenty largest unsecured creditors; (iv) counsel to CMLG and LNV; (v) Wilmington

Trust, N.A.; and (vi) all other known parties asserting a lien against the Debtors' assets, by

telecopy, email, overnight courier and/or hand delivery.  Because of the nature of the relief

requested, the Debtors respectfully submit that no other or further notice of the relief requested in

this Motion need be given.

## NOTICE WITH RESPECT TO FINAL HEARING

44.     No trustee, examiner or statutory committee has been appointed in the chapter 11 cases.  Pursuant to Bankruptcy Rule 4001, the Debtors respectfully request that they be authorized to provide notice of the Final Hearing by serving a copy of this Motion, together with the Interim Order, by hand or overnight mail or courier service (or for those set up to receive electronic transmissions, by electronic transmission), upon:  (i) the Office of the United States Trustee; (ii) the Office of the United States Attorney for the District of Delaware; (iii) the Debtors' twenty largest unsecured creditors; (iv) counsel to CMLG and LNV; (v) Wilmington Trust, N.A.; and (vi) all other known parties asserting a lien against the Debtors' assets, by telecopy, email, overnight courier and/or hand delivery.  The Debtors respectfully submit that such notice is sufficient and that this Court finds that no further notice of the Final Hearing and Final Order is required.

## NO PRIOR REQUEST

45.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, based upon the foregoing, the Debtors request entry of the

Interim Order and the Final Order under sections 105, 361, 362, 363, and 507 of the Bankruptcy

Code, Bankruptcy Rule 4001, and Local Rule 4001-2:  (a) authorizing the Debtors to use Cash

Collateral; (b) providing adequate protection to the Prepetition Secured Parties; and (c)

modifying the automatic stay.


Dated:  December 13, 2018                PACHULSKI STANG ZIEHL & JONES LLP


                                  */s/ Colin R. Robinson*
                                  Richard M. Pachulski (CA Bar No. 62337)
                                  Robert J. Feinstein (NY Bar No. 1767805)
                                  Jeffrey N. Pomerantz (CA Bar No.143717)
                                  Ira D. Kharasch (CA Bar No. 109084)
                                  Maxim B. Litvak (CA Bar No. 215852)
                                  Colin R. Robinson (DE Bar No. 5524)
                                  919 North Market Street, 17th Floor
                                  P.O. Box. 8705
                                  Wilmington, Delaware 19899-8705 (Courier 19801)
                                  Telephone: (302) 652-4100
                                  Facsimile:  (302) 652-4400
                                  E-mail:        rpachulski@pszjlaw.com
                                                 rfeinstein@pszjlaw.com
                                                 jpomerantz@pszjlaw.com
                                                 ikharasch@pszjlaw.com
                                                 mlitvak@pszjlaw.com
                                                 crobinson@pszjlaw.com
                                  Proposed Counsel for the Debtors
                                  and Debtors-in-Possession