IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | ) | Case No. 18-12808 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket No. 7** |

## INTERIM ORDER (A) AUTHORIZING THE USE OF CASH COLLATERAL, (B) PROVIDING ADEQUATE PROTECTION, (C) MODIFYING THE AUTOMATIC STAY, AND (D) SCHEDULING A FINAL HEARING

Upon the motion (the "Motion")[2] of the debtors and debtors in possession in the

above-captioned cases (collectively, the "Debtors") under sections 105, 361, 362, 363 and 507 of

title 11 of the United States Code (the "Bankruptcy Code"), Rule 4001 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Rules of the

United States Bankruptcy Court for the District of Delaware (the "Local Rules"), for interim

and final orders: (a) authorizing the Debtors to use Cash Collateral (as defined below), (b)

providing adequate protection to the Prepetition Secured Parties (as defined below), and (c)

modifying the automatic stay.

The Debtors have served notice of the Motion as is appropriate under the

circumstances, as required under sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy

Rule 4001(b), and Local Rule 4001-2.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738).  The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

[2] Capitalized terms not defined herein shall have the meanings set forth in the Motion.

The Interim Hearing having been held by this Court on December 17, 2018 and, upon the record made by the Debtors at the Interim Hearing, after considering the Motion and the arguments and evidence presented at the Interim Hearing, and after due deliberation and consideration and sufficient cause appearing therefor,

IT IS HEREBY FOUND, DETERMINED, ORDERED AND ADJUDGED that:

1.    *Disposition*.  The Motion is granted on an interim basis on the terms set forth herein.  Any objections to the interim relief sought in the Motion, and any reservations of rights with respect to such interim relief, that have not been previously resolved or withdrawn, are overruled on the merits.  This Interim Order shall be valid, binding and enforceable on all parties in interest and fully effective immediately upon entry. The rights of all parties in interest to object to the entry of a final order, or any further interim order, on the Motion are reserved.

2.    *Jurisdiction and Venue*.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtors have confirmed their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with the Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  No request has been made for the appointment

- 2 -

of a trustee or examiner and no statutory committee has yet been appointed in the chapter 11

cases.

        3.     *Stipulations and Related Reservations*.

        a.     Subject to the provisions of paragraph 3(b) below, the Debtors and

all of the Debtors' affiliates permanently, immediately, and irrevocably acknowledge, represent,

stipulate and agree to the following:

> (i)     Debtor White Eagle Asset Portfolio, LP ("White Eagle"), as
>
> borrower, LNV Corporation ("LNV"), as lender, and CLMG
>
> Corp., as administrative agent (the "Prepetition Agent" and,
>
> together with LNV and any other lenders party to the Prepetition
>
> Loan Agreement from time to time, the "Prepetition Secured
>
> Parties"), are party to that certain Second Amended and Restated
>
> Loan and Security Agreement, dated as of January 31, 2017 (as
>
> amended, restated, supplemented or otherwise modified from time
>
> to time, the "Prepetition Loan Agreement").  Under the Prepetition
>
> Loan Agreement and other related Transaction Documents (as
>
> defined in the Prepetition Loan Agreement, the "Prepetition Loan
>
> Documents"), the Prepetition Secured Parties provided a revolving
>
> facility to White Eagle of up to $370 million.

- 3 -

(ii)     As of the Petition Date, the Debtors were indebted and liable to the

Prepetition Secured Parties under the Prepetition Loan Agreement

in the aggregate principal amount of not less than $367.9 million

(all of which reflects funds advanced by the Prepetition Secured

Parties to White Eagle) plus accrued (both before and after the

Petition Date) and unpaid interest, fees, and all other obligations

under the Prepetition Loan Documents (collectively, the

"Prepetition Obligations"); *provided* that the Debtors expressly

reserve any and all rights to:  (A) assert rights, claims, and

defenses against the Prepetition Secured Parties with respect to the

Prepetition Obligations and the Prepetition Loan Documents and

(B) contest, dispute, or otherwise challenge any Prepetition

Obligations including with respect to the "Aggregate Participation

Interest", the "Participation Interest", and any other terms utilized

to reflect such component of the Prepetition Obligations in the

Prepetition Loan Agreement (collectively, the "Participation

Interest").

(iii)    The Prepetition Loan Documents were duly authorized and

properly executed.

- 4 -

(iv)    The Prepetition Loan Documents and Prepetition Obligations are legal, valid, binding and enforceable against the Debtors; *provided* that the Debtors expressly reserve any and all rights to:  (A) assert rights, claims, and defenses against the Prepetition Secured Parties with respect to the Prepetition Obligations and the Prepetition Loan Documents and (B) contest, dispute, or otherwise challenge any Prepetition Obligations including with respect to the Participation Interest.

(v)    Under the Prepetition Loan Documents, the Debtors granted (i) liens and security interests in favor of the Prepetition Agent on substantially all assets of White Eagle to the extent set forth in the Prepetition Loan Documents, including its interests in life insurance policies and the proceeds therefrom, and (ii) pledges of the equity interests of White Eagle by its limited partner, Debtor Lamington Road Designated Activity Company, and its general partner, Debtor White Eagle General Partner, LLC (clauses (i) and (ii), collectively, the "Prepetition Collateral").  Such liens, security interests and pledges (the "Prepetition Liens") are legal, valid, binding, enforceable, non-avoidable and properly perfected; *provided* that the Debtors expressly reserve any and all rights to:

- 5 -

(A) assert rights, claims, and defenses against the Prepetition

Secured Parties with respect to the Prepetition Obligations and the

Prepetition Loan Documents and (B) contest, dispute, or otherwise

challenge any Prepetition Obligations including with respect to the

Participation Interest.  As of the Petition Date, the Debtors are not

aware of any liens or security interests having priority over the

Prepetition Secured Parties' liens.

b.      Subject to the provisions of this paragraph 3(b), the foregoing

stipulations in paragraph 3(a) (the "Stipulations") are and shall be binding upon the Debtors, all

of the Debtors' affiliates, and any of the Debtors' successors, including, without limitation, any

chapter 7 or chapter 11 trustee, responsible person, examiner with expanded powers, or other

estate representative.  The Stipulations shall also be binding on each other party-in-interest in

these chapter 11 cases and all of its successors-in-interest and assigns, including without

limitation, any official committee appointed in these chapter 11 cases (a "Committee"), except

(and solely) to the extent that such party-in-interest has requisite standing (subject in all respects

to any agreement or applicable law which may limit such entity's right or ability to do so) and (i)

has timely filed the proper pleadings, and timely commenced the appropriate proceedings under

the Bankruptcy Code and Bankruptcy Rules, challenging the Stipulations (each such proceeding

or appropriate pleading commencing a proceeding or other contested matter, a "Challenge") by

the date that is (x) with respect to any Committee, no later than sixty (60) calendar days

- 6 -

following the formation of such Committee and (y) with respect to any other party with standing, no later than seventy-five (75) days following entry of this Interim Order (the "Challenge Period Termination Date"), as such date may be extended in the sole discretion of the Prepetition Agent and any other Prepetition Secured Party that is the subject of a Challenge, provided, however, that in the event that a Chapter 7 or Chapter 11 trustee is appointed  prior to the Challenge Period Termination Date, the Challenge Period Termination Date shall be extended for the Chapter 7 or Chapter 11 trustee to 45 days after their appointment, and (ii) this Court enters judgment in favor of the plaintiff or movant in any such timely and properly commenced Challenge proceeding, and any such judgment has become final and is not subject to any further review or appeal.  Any Stipulation that is not subject to a timely and properly filed Challenge shall remain binding and preclusive on all persons and entities, including the Committee (if any).  All remedies or defenses of any party with respect to any Challenge are hereby preserved.  Nothing in this Interim Order vests or confers on any person, including the Committee (if any), standing or authority to pursue any Challenges.  The filing of a motion seeking standing to file a Challenge before the Challenge Period Termination Date, which attaches a proposed Challenge action, shall extend the Challenge Period Termination Date with respect to that party until two business days after the Court approves the standing motion, or such other time period ordered by the Court in approving the standing motion.  To the extent any Challenge proceeding is timely and properly commenced, the Prepetition Secured Parties shall be entitled to reimbursement or payment of the related costs and expenses, including but not limited to reasonable attorneys' fees, incurred in

defending themselves in any such proceeding, consistent with the provisions of paragraph 7(c) hereof; *provided* that such reimbursement shall not available with respect to any Challenge that is successful.

        c.      Other than with respect to the Stipulations, the Debtors make no representation, warranty, acknowledgement or admission regarding whether they have (or do not have) any defenses, setoffs, counterclaims or recoupments that could be asserted against the Prepetition Secured Parties and the Debtors reserve all rights, claims and defenses with respect thereto.  Without limitation, the Debtors believe that they have certain affirmative claims against the Prepetition Secured Parties that will be the subject of further litigation.

        d.      This Interim Order is without prejudice to, and nothing contained in this Interim Order constitutes or shall be deemed a waiver (expressly or implicitly) by any Prepetition Secured Party of, any rights, claims or defenses that it may have against the Debtors or any other party-in-interest in these chapter 11 cases or otherwise.  The Prepetition Secured Parties reserve all such rights, claims and defenses in all respects, including, without limitation, the right to contest or object on any basis to (i) any right, claim, defense or proceeding asserted by the Debtors or any other party-in-interest against the Prepetition Secured Parties, (ii) any further request by the Debtors for the use of Cash Collateral beyond the terms of this Interim Order (whether on a final or further interim basis), including any proposed budget in connection therewith, on the terms set forth in the Motion or otherwise, and (iii) any other motion, application, or other request or pleading by the Debtors, whether or not related to line items set

- 8 -

forth in the Budget.

    4.    *Findings Regarding the Use of Cash Collateral.*

    a.    <u>Cause Shown</u>.  Good cause has been shown for the entry of this Interim Order.

    b.    <u>Business Justification</u>.  The Debtors have an immediate and critical need to use "cash collateral" as such term is defined in section 363 of the Bankruptcy Code in which the Prepetition Secured Parties have an interest (subject to paragraph 3 above) (the "<u>Cash Collateral</u>"), including, without limitation, the proceeds of Prepetition Collateral, in order to permit, among other things, maintenance of the Debtors' assets.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral is vital to maximizing the value of the Debtors' estates and funding their reorganization efforts.

    c.    <u>Fair and Reasonable Terms</u>.  Based on the record presented to the Court at the Interim Hearing, the terms of use of the Cash Collateral herein are fair and reasonable and reflect the Debtors' exercise of prudent business judgment.

    d.    <u>Immediate and Irreparable Harm</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rule 4001(b)(2) and the Local Rules.  Absent granting the relief sought by this Interim Order, the Debtors' estates will be immediately and irreparably harmed.  Authorization of the use of the Cash Collateral in accordance with this Interim Order is therefore in the best interests of the Debtors' estates.

e.      Adequate Protection.  The Prepetition Secured Parties are entitled, pursuant to sections 361 and 363(e) of the Bankruptcy Code, and as a condition for the use of the Prepetition Collateral, including the Cash Collateral, to the adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral (subject to paragraph 3 above).  The Prepetition Secured Parties have negotiated in good faith regarding the Debtors' use of the Cash Collateral.  Based on the Motion and on the record presented to the Court at the Interim Hearing, the terms of the proposed adequate protection arrangements are fair and reasonable, reflect the Debtors' prudent business judgment, and constitute reasonably equivalent value and fair consideration for the Prepetition Secured Parties' consent to the use of Cash Collateral as set forth herein.

5.      *Authorization to Use Cash Collateral.*

a.      Subject to the terms of this Interim Order, the Debtors are hereby authorized to use Cash Collateral from the date hereof through the earliest of:  (i) entry of an order approving the Motion on a final basis (a "Final Order"), (ii) forty-five (45) days following entry of this Interim Order if the Final Order shall not have been entered by such date, (iii) the effective date of a confirmed plan of reorganization in the chapter 11 cases, (iv) the closing of a sale of all or substantially all assets of the Debtors; (v) the dismissal of any of these chapter 11 cases or the conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code, (vi) any material provision of this Interim Order having ceased to be valid or binding for any reason, (vii) the Debtors having attempted to modify this Interim Order without

- 10 -

the prior written consent of the Prepetition Agent and (viii) five (5) business days following receipt by the Debtors and the United States Trustee for the District of Delaware (the "U.S. Trustee"), and any official committee appointed in these cases, of a notice (a "Termination Notice") from the Prepetition Agent of a breach by any of the Debtors of (x) any of the terms or provisions of this Interim Order or (y) any covenant or undertaking in any of the Prepetition Loan Documents relating to the servicing, preservation or maintenance of the Prepetition Collateral so long as the Prepetition Secured Parties do not take any action in violation of this Interim Order that would prevent or hinder the Debtors from satisfying such covenant or undertaking (the "Interim Budget Period"). Upon the expiration of the Interim Budget Period, the Debtors' authorization to use Cash Collateral shall automatically terminate; *provided*, *however*, the Debtors reserve the right to seek authority from this Court to use cash collateral on a nonconsensual basis and the Prepetition Secured Parties reserve the right to object to, contest, or otherwise respond to any such request.

b.      Upon and after the delivery of a Termination Notice, the Debtors and the Prepetition Secured Parties consent to a hearing on an expedited basis to consider whether the automatic stay may be lifted so that the Prepetition Secured Parties may exercise any and all of their respective rights and remedies with respect to the Adequate Protection Collateral (as defined below) in accordance with this Interim Order, the applicable Prepetition Loan Documents, or applicable law, or to consider any other appropriate relief (including the Debtors' use of Cash Collateral on a nonconsensual basis); *provided* that the rights of the Debtors to

- 11 -

oppose any relief requested by the Prepetition Secured Parties and the rights of any Prepetition

Secured Party to oppose any request for relief by the Debtors (including the use of Cash

Collateral on a nonconsensual basis) are, in each case, fully reserved.  During the five (5)

business day period after delivery of a Termination Notice, the Debtors' right to use Cash

Collateral pursuant to this Interim Order shall be limited to payment of (i) any expenses set forth

in the Budget that were incurred prior to, and remain unpaid as of, delivery of the Termination

Notice, including Professional Fees, to the extent set forth in paragraph 8 below, (ii) Statutory

Fees (as defined in paragraph 8 below), and (iii) any other critical business-related expenses

necessary to operate the Debtors' business or preserve the Prepetition Collateral, as determined

by the Debtors in their reasonable discretion and in good faith, and in each case, with prior notice

to the Prepetition Agent and subject in all respects to the Budget.  The delay or failure to exercise

rights and remedies under this Interim Order or any Loan Document shall not constitute a waiver

of the Prepetition Secured Parties' rights hereunder, thereunder or otherwise.

   6. *Disbursements Subject to Budget*.  The Debtors are only authorized to use

Cash Collateral during the Interim Budget Period in a manner consistent with the budget attached

hereto as **<u>Exhibit 1</u>** (as such budget may be modified from time to time by the Debtors with the

prior written consent of the Prepetition Agent and with notice to counsel to any Committee, the

"<u>Budget</u>"); *provided that*, disbursements may occur later than the dates forecasted in the Budget

so long as such disbursements occur during the Interim Budget Period.  Cash Collateral shall be

only used for the purposes permitted under the Budget, including (i) to provide working capital

needs of the Debtors and general corporate purposes of the Debtors, (ii) to make the payments or fund amounts otherwise permitted in this Interim Order and the Budget, and (iii) to fund amounts necessary to pay Statutory Fees;  and (iv) to fund amounts necessary to pay Professional Fees (as defined below) in accordance with the Budget and paragraph 8 hereof, and for no other purpose. Each of the Debtors shall not be permitted to transfer any Cash Collateral, directly or indirectly, to any other Debtor or to any non-Debtor affiliate of the Debtors other than as (a) explicitly set forth in the Budget and only in the amounts necessary to pay for such actual expenses or (b) consented to in writing beforehand by the Prepetition Agent.  Notwithstanding the foregoing, disbursements by the Debtors for "Total Disbursements" on an aggregate basis during the Interim Budget Period may not exceed 15% from the amounts specified in the Budget; *provided* that (i) disbursements to any of the Debtors' Professionals (as defined below) may not exceed 5% from the amounts specified in the Budget for such line items and (ii) the Debtors may not use surplus amounts from any line item in the Budget to pay amounts for any other line item in the Budget; *provided*, *further*, that the Debtors may only use Cash Collateral for the purposes set forth in the Budget and the Carve-Out.

7.      *Adequate Protection*.

a.      Each of the Prepetition Secured Parties is entitled, pursuant to sections 361, 362(d) and 363(e) of the Bankruptcy Code, to adequate protection of its respective interests in the Debtors' property for an amount equal to the aggregate diminution in the value of such Prepetition Secured Party's interests in the Debtors' property (including Cash Collateral)

- 13 -

(the "Diminution in Value") resulting from, or arising from, or which is attributable to, among other things, the use, sale or lease by the Debtors of the Cash Collateral and any other Prepetition Collateral and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted the following:

(i)     subject in all respects to payment of the Carve-Out, a continuing valid, binding, enforceable, fully-perfected, and non-avoidable security interest in and lien on all Prepetition Collateral of the same type and nature that exists as of the Petition Date with the same validity and priority as exists as of the Petition Date, and all proceeds thereof (the "Replacement Lien"),

(ii)    solely to the extent of any Diminution in Value and subject in all respects to payment of the Carve-Out, an additional and replacement valid, binding, enforceable, fully-perfected, and non-avoidable senior security interest in and lien (the "Adequate Protection Lien") on all property and assets of the Debtors' estates (the "Adequate Protection Collateral"); *provided*, *however*, that (a) such security interest and lien shall be junior only to any existing, valid, senior, enforceable and unavoidable prior perfected security interests and liens in existence on or as of the Petition Date or that

- 14 -

are perfected after the Petition Date as permitted by section 546(b) of the Bankruptcy Code (other than the Replacement Lien) and (b) such security interest and lien shall not attach to any commercial tort claims or the proceeds thereof or any claims, defenses, causes of action or rights of the Debtors arising under chapter 5 of the Bankruptcy Code and applicable state fraudulent transfer law (the "Avoidance Actions") but shall, effective upon entry of the Final Order, attach to any proceeds of commercial tort claims and Avoidance Actions except for any proceeds of commercial tort claims and Avoidance Actions recovered from any Prepetition Secured Party, and

(iii)   solely to the extent of any Diminution in Value and subject in all respects to payment of the Carve-Out, an allowed superpriority administrative claim in each of the Debtors' chapter 11 cases having, to the fullest extent permitted under the Bankruptcy Code, priority over any and all administrative expenses, adequate protection claims and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code (the

- 15 -

"Adequate Protection Claim"), *provided* that such claims shall not have priority over claims of the type specified in section 507(a)(1) of the Bankruptcy Code, and *provided further* however, that such claim shall not, by virtue of this Interim Order extend to any commercial tort claims or the proceeds thereof or any Avoidance Actions but shall, upon entry of the Final Order, extend to any proceeds of commercial tort claims and Avoidance Actions except for any proceeds of commercial tort claims and Avoidance Actions recovered from any Prepetition Secured Party.

b.      As further adequate protection and up to the amounts set forth in the Budget, the Debtors shall pay to the Prepetition Agent (on behalf of the Prepetition Secured Parties) in cash (a) upon the entry of this Interim Order, all accrued and unpaid interest on the Prepetition Obligations at the rates provided for in the Prepetition Loan Agreement, and all other accrued and unpaid fees and disbursements (including legal and advisory fees and expenses) owing to the Prepetition Secured Parties under the Prepetition Loan Agreement and incurred prior to the Petition Date, and (b) when due, all accrued but unpaid interest on the Prepetition Obligations, and all fees and disbursements owing by the Debtors under the Prepetition Loan Agreement, at the rates provided for therein; *provided* that to the extent that any such interest, fees and disbursements exceed the amounts set forth in the Budget, such interest, fees and

- 16 -

disbursements shall continue to accrue subject to the terms of the Prepetition Loan Documents and the Prepetition Secured Parties and the Debtors reserve all rights with respect thereto.

c.    As further adequate protection and up to the amounts set forth in the Budget, the Debtors shall pay all reasonable and documented fees, costs, and expenses (excluding any success fees, completion fees, or bonus compensation) incurred by the Prepetition Secured Parties' respective legal, financial, and other advisors (including: (a) White & Case LLP, (b) any Delaware counsel to the Prepetition Secured Parties; (c) any financial advisor and/or investment banker to the Prepetition Secured Parties; and (d) such other consultants or other professionals as may be retained by the Prepetition Secured Parties) (collectively, the "Secured Party Professionals") after the Petition Date in connection with the Debtors' chapter 11 cases (the "Secured Party Professional Fees"); *provided* that to the extent that any Secured Party Professional Fees exceed the amounts set forth in the Budget, such Secured Party Professional Fees shall continue to accrue subject to the terms of the Prepetition Loan Documents and the Prepetition Secured Parties and the Debtors reserve all rights with respect thereto.  The Prepetition Secured Parties and the Secured Party Professionals (x) shall not be required to comply with the U.S. Trustee fee guidelines or file any fee applications with the Court, and (y) shall provide copies of invoices for Secured Party Professionals to counsel to the Debtors, with a copy to the U.S. Trustee and counsel to any Committee (collectively, the "Fee Notice Parties").  The invoices to be provided to the Fee Notice Parties shall contain a general description of the nature of the matters worked on (other than any privileged, confidential or

- 17 -

commercially or strategically sensitive information), a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law school graduation for each attorney; *provided* that the U.S. Trustee reserves the right to seek to obtain copies of invoices with detailed time entries and/or unredacted copies of such invoices and the Prepetition Secured Parties and the Secured Party Professionals reserve the right to contest, or otherwise respond to, any such request.  The provision of such invoices shall not constitute a waiver of the attorney-client privilege or any benefits of the attorney work product doctrine.  If no objection to payment of the requested Secured Party Professional Fees are made, in writing, by any of the Fee Notice Parties within ten (10) calendar days after delivery of such invoices (the "Fee Objection Period"), then, without further order of, or application to, the Court or notice to any other party, such Secured Party Professional Fees shall be promptly paid by the Debtors up to the amounts set forth in the Budget (but, in any event, by no later than four (4) business days after the expiration of the Fee Objection Period).  If an objection (solely as to reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to payment of the requested fees and expenses, then only the disputed portion of such fees and expenses shall not be paid until the objection is resolved by the applicable parties in good faith or by order of the Court.  Nothing in this Interim Order shall be construed to limit the Prepetition Secured Parties' respective rights and remedies under the Prepetition Loan Documents or applicable law regarding engagement and reimbursement of expenses of professionals and advisors.

- 18 -

d.      As further adequate protection, the Debtors shall (i) provide the Prepetition Agent with copies of all reports, information and other materials that are required to be provided under the Prepetition Loan Agreement at the times set forth in the Prepetition Loan Agreement, (ii) provide the Prepetition Agent, on Friday of each calendar week starting from the week following the entry of this Interim Order, a variance report comparing, on a line item basis, actual results for the previous individual week and cumulative weeks to the amounts set forth in the Budget for such previous week and since the Petition Date, including a narrative explanation with reasonable detail for each material variance, (iii) within two (2) business days of entry of this Interim Order, instruct MLF LexServ, L.P. ("LexServ") to (A) obtain, as soon as is reasonably practicable, updated life expectancy reports from ITM TwentyFirst LLC for each insured life which has been previously underwritten by ITM TwentyFirst LLC, using the new underwriting methodology and mortality tables announced and adopted by ITM TwentyFirst LLC during October 2018 and (B) provide such reports to the Debtors and the Prepetition Agent within one (1) business day after receipt, and (iv) within two (2) business days of entry of entry of this Interim Order, instruct LexServ to (A) obtain as soon as is reasonably practicable, updated life expectancy reports from AVS Underwriting, LLC for each insured life which has been previously underwritten by AVS Underwriting, LLC, using the new underwriting methodology and mortality tables announced and adopted by AVS Underwriting, LLC during October and November 2018, and (B) to provide such reports to the Debtors and the Prepetition Agent within one (1) business day after receipt.

- 19 -

e.       All parties' rights are reserved to seek to set aside Replacement
Liens and Adequate Protection Liens granted herein, disallow Adequate Protection Claims
granted herein, and/or recharacterize or disgorge any adequate protection payments made under
this Interim Order if the underlying Prepetition Liens or prepetition claims of the Prepetition
Secured Parties are successfully challenged pursuant to paragraph 3(b) of this Interim Order, and
the Prepetition Secured Parties reserve all rights to contest any such request.

8.       *Payment of Statutory Fees; Professionals; Carve-Out; Funding Thereof.*

a.       <u>Payments of Professional Fees and Statutory Fees</u>.  Prior to the
delivery of the Termination Notice under this Interim Order, the Debtors shall be permitted to
pay (x) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6), together
with the statutory rate of interest, and any fees payable to the Clerk of the Court, which shall not
be subject to any budget (collectively, "Statutory Fees") and (y) professional fees and expenses
incurred by attorneys, accountants and other professionals, including ordinary course
professionals, retained by the Debtors and any Committee under sections 327 or 1103(a) of the
Bankruptcy Code (together, the "<u>Professionals</u>" and each, a "<u>Professional</u>"), including any
expenses of the members of such Committee, (the "<u>Professional Fees</u>") solely (i) to the extent
allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy
Code and any interim procedures order and (ii) in amounts not exceeding the amounts set forth in
the Budget for each such Professional's Professional Fees.

- 20 -

b.      Carve-Out.  Payment of any amounts on account of the Prepetition Obligations, the Prepetition Liens, the Replacement Lien, the Adequate Protection Lien, and the Adequate Protection Claim, and any other claims and liens granted by this Interim Order, shall be subject and subordinate in all respects to the payment of the following (collectively, the "Carve-Out"):  (i) Statutory Fees; (ii) the unpaid and outstanding reasonable fees and expenses actually incurred by Professionals on or after the Petition Date and through the day of delivery of a Termination Notice under this Interim Order, up to the amounts set forth for each Professional in the Budget for such period, to the extent allowed by Court order and payable under sections 326, 328, 330 and 331 of the Bankruptcy Code and any interim procedures order; and (iii) the unpaid and outstanding reasonable fees and expenses actually incurred by the Professionals from or after the day following the delivery of a Termination Notice under this Interim Order, to the extent allowed by Court order and payable under sections 326, 328, 330, and 331 of the Bankruptcy Code and any interim procedures order, in an aggregate amount not to exceed $250,000 (the "Post-Termination Carve-Out Cap").

c.      Funding of Carve-Out.  Upon delivery of a Termination Notice, the Debtors shall deposit into the trust account for the Debtors' general bankruptcy counsel or other segregated reserve or escrow account (the "Carve-Out Account") in an aggregate amount equal to the sum of the Post-Termination Carve-Out Cap plus all unpaid and outstanding reasonable fees and expenses actually incurred by all of the Professionals prior to the delivery of the Termination Notice in an amount not to exceed the amounts set forth in the Budget for the

- 21 -

payment of such Professionals through the date of delivery of the Termination Notice. The funds in the Carve-Out Account shall be used solely to pay Professional Fees as and when allowed by order of the Court in accordance with paragraph 8(b) above. To the extent the Court does not approve any of the Professional Fees that were to be paid from funds segregated in the Carve-Out Account, or any amounts in the Carve-Out Account are ultimately not used for such purposes, such unused amounts shall be returned to the Debtors, subject to the rights, liens and claims of the Prepetition Secured Parties under this Interim Order and the Prepetition Loan Documents.

            d.      Notwithstanding the provisions of this Interim Order (including this paragraph 8), the rights of the Prepetition Secured Parties, the U.S. Trustee and all other parties in interest to object to the allowance of any fees and expenses, whether or not such fees and expenses were incurred in accordance with the Budget, are reserved. The Prepetition Secured Parties shall not be responsible for the direct payment or reimbursement of any Professional Fees, any Statutory Fees or the fees or expenses of any other party incurred in connection with these chapter 11 cases or any successor case. The appearance of any Professional Fees in the Budget are for purposes of estimated accruals only and (x) shall not be deemed an authorization for the Debtors to pay any Professional Fees absent a Court order authorizing such payment and (y) shall not, in any way, be probative (or otherwise have any impact) with respect to the allowance of the payment of any such Professional Fees or any party's right to object to the payment of such Professional Fees. This Interim Order does not,

- 22 -

and shall not be deemed to, itself authorize the payment of any Professional Fees.

        9.    *Perfection of Replacement Lien and Adequate Protection Lien*.

        a.    <u>Further Assurances</u>.  The Prepetition Secured Parties are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, notices of lien or similar instruments in any jurisdiction, or take possession of or control over, or take any other action (including taking or releasing any liens or pledges granted by this Interim Order) in order to validate and perfect the liens granted to them hereunder.  Whether or not any of the Prepetition Secured Parties, in its respective sole discretion, chooses to file such financing statements, trademark filings, copyright filings, notices of lien or similar instruments that may be otherwise required under federal or state law in any jurisdiction, or take any action, including taking possession, to validate and perfect such security interests and liens, and/or take possession of or control over, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, as of the date of entry of this Interim Order.

        b.    <u>Modification of Automatic Stay</u>.  If any of the Prepetition Secured Parties, each in their respective sole discretion, decides to file any financing statements, trademark filings, copyright filings, notices of lien or similar instruments, or otherwise to confirm perfection of the liens granted hereby, the Debtors shall cooperate with and assist in such process, the Prepetition Agent is hereby granted a special power of attorney to act in name,

place and stead of the applicable Debtors for the purposes of taking any such actions, the stay imposed under section 362 of the Bankruptcy Code is hereby lifted to permit the filing and recording of a certified copy of this Interim Order or any such financing statements, trademark filings, copyright filings, notices of lien or similar instruments, and all such documents shall be deemed to have been filed and recorded at the time of and on the date of this Interim Order.

c.    <u>Certified Copy of Interim Order</u>.  A certified copy of this Interim Order may, in the discretion of any of the Prepetition Secured Parties, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Interim Order for filing and recording.

10.    *No Marshaling/Applications of Proceeds*.  Subject to entry of the Final Order, the Prepetition Secured Parties shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or Adequate Protection Collateral, as the case may be.  The proceeds of any Prepetition Collateral or Adequate Protection Collateral shall be received and applied in accordance with this Interim Order and the Prepetition Loan Documents notwithstanding any other agreement or provision to the contrary.

11.    *Section 552(b)*.  The Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, including in respect of postpetition revenues and payment in connection with (and as proceeds of) any Prepetition

- 24 -

Collateral and, effective upon entry of the Final Order, the "equities of the case" exception under

section 552(b) of the Bankruptcy Code shall not apply to any of the Prepetition Secured Parties

with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

12.    *Section 506(c) Waiver*.  Subject to, and effective upon, entry of the Final

Order, no costs or expenses of administration that have been or may be incurred in any of these

chapter 11 cases or any successor cases at any time shall be charged against any Prepetition

Secured Party, any of their respective claims, any Prepetition Obligations, the Adequate

Protection Lien, the Adequate Protection Claim, any Prepetition Liens or any Prepetition

Collateral, including any Cash Collateral, pursuant to sections 506(c) or 105(a) of the

Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Agent.

13.    *Credit Bid*.  All rights of the Prepetition Secured Parties and the Debtors

are reserved with respect to the ability of the Prepetition Agent, on behalf of Prepetition Secured

Parties, to exercise the right to credit bid under section 363(k) of the Bankruptcy Code in

connection with a sale of the Debtors' assets under section 363 of the Bankruptcy Code or under

a chapter 11 plan.  Nothing in this Interim Order shall affect, impair, or prejudice any rights that

the Prepetition Secured Parties may have under section 363(k) of the Bankruptcy Code, or that

the Debtors may have to contest such rights under section 363(k) of the Bankruptcy Code.

14.    *Good Faith*.  Each of the Prepetition Secured Parties has acted in good

faith (including, without limitation, for the purposes of section 363(m) of the Bankruptcy Code)

- 25 -

in connection with this Interim Order and its reliance on this Interim Order has been and is in good faith.

15.    *Modification of Automatic Stay*.  The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to: (a) permit the Debtors to grant the Replacement Lien and the Adequate Protection Lien and incur the Adequate Protection Claim; (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations under the terms of this Interim Order; and (d) authorize the Debtors to pay, and the Prepetition Secured Parties to retain and apply, any payments made in accordance with the terms of this Interim Order.

16.    *Preservation of Rights Granted Under This Interim Order*.  The liens and claims granted by the provisions of this Interim Order shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the chapter 11 cases to a case under chapter 7 or dismissing such chapter 11 case, or (ii) the entry of an order confirming a chapter 11 plan in the chapter 11 cases.

17.    *Binding Effect; Successors and Assigns*.  The provisions of this Interim Order, including all findings herein, shall be binding upon all parties in interest in the chapter 11 cases, including, without limitation, the Prepetition Secured Parties, any Committee, and the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11

- 26 -

trustee hereinafter appointed or elected for the Debtors' estates) and shall inure to the benefit of the Prepetition Secured Parties and the Debtors, and their respective successors and assigns.

18. *Reservation of Rights*. The Debtors reserve all rights to seek other or additional use of Cash Collateral on such further or different terms and conditions as may be approved by the Court and the Prepetition Secured Parties reserve all rights with respect to any such request. This Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Secured Parties to request additional forms of adequate protection at any time or the rights of the Debtors or any other party to contest such request. The Debtors and the Prepetition Secured Parties reserve all rights with respect to whether the Prepetition Obligations and the Prepetition Liens extend to the proceeds of any commercial tort claim or Avoidance Action recovered from any Prepetition Secured Party.

19. *No Third Party Rights*. Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

20. *Amendments*. Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, the Debtors and the Prepetition Agent, and approved by the Court after notice to parties-in-interest.

21. *Effectiveness*. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil

Procedure, this Interim Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Interim Order as provided in such Rules.

22.     *Objections.*  Objections to the entry of the Final Order shall be in writing and shall be filed with the Clerk of this Court, on or before 4:00 p.m. (prevailing Eastern time) on the date that is five (5) business days prior to and excluding the date of the Final Hearing set forth in paragraph 23 below, with a copy served upon: (i) counsel for the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899-8705, Attn: Colin R. Robinson, Esq. (crobinson@pszjlaw.com); (ii) counsel for CLMG Corp. and LNV Corporation, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095 (Attn: Thomas Lauria, Esq. (tlauria@whitecase.com), David Turetsky, Esq. (david.turetsky@whitecase.com) and Andrew Zatz, Esq. (azatz@whitecase.com); (iii) counsel to be selected by any Committee upon its formation if selected by such date; and (iv) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801, Attn: Juliet Sarkessian (juliet.m.sarkessian@usdoj.gov).

23.     *Final Hearing.*  The Final Hearing is scheduled for **January 16, 2019 at 10:00 a.m. (Eastern time)** before this Court.   This Interim Order, and the notice of the final hearing and objection deadline related thereto shall be served on the largest 20 unsecured creditors of the Debtors; any Committee (if and when it is appointed); all parties known to the Debtors to be asserting liens against or security interest in, any of the Cash Collateral or

Prepetition Collateral; the Internal Revenue Service; all state taxing authorities in the states in

which the Debtors have any tax liabilities; any federal or state regulatory authorities governing

the Debtors' industry; the Securities and Exchange Commission, the U.S. Attorney's Office,

Delaware Attorney General; the United States Trustee; and any party filing a request for service

under Bankruptcy Rule 2002 in these cases.

- 2 -

**KEVIN GROSS**
**UNITED STATES BANKRUPTCY JUDGE**

**Dated: December 17th, 2018**
**Wilmington, Delaware**

DOCS_SF:98916.6 73864/002