IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12808 (KG)<br><br>Jointly Administered |

**Objection Deadline: January 9, 2019 at 4:00 (ET)**
**Hearing Date: January 16, 2019 at 10:00 a.m. (ET)**

**DEBTORS' APPLICATION PURSUANT
TO SECTION 327(e) OF THE BANKRUPTCY CODE FOR
AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT
OF KASOWITZ BENSON TORRES LLP, AS SPECIAL LITIGATION
COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") hereby file this application (the "Application") for the entry of an order substantially in the form annexed hereto as Exhibit A (the "Proposed Order"), pursuant to section 327(e) of Title 11 of the United States Code (the "Bankruptcy Code"), Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2014-1 of the Local Rules of Bankruptcy Practice and Procedure for the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), authorizing the Debtors to retain and employ Kasowitz Benson Torres LLP (the "Firm"), as special litigation counsel to the Debtors *nunc pro tunc* to the petition date. In support of the Application, the Debtors rely upon and incorporate by reference the declaration of Sheron Korpus (the "Firm Declaration"), a copy of which is attached hereto as Exhibit C. In further support of the Application, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738). The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

DOCS_SF:96999.3

**JURISDICTION AND VENUE**

1. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Debtors confirm their consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection with this Application to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief sought herein are sections 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014(a), and Local Rule 2014-1.

**BACKGROUND**

3. On November 14, 2018, White Eagle General Partner, LP and Lamington Road Designated Activity Company ("LRDA") commenced their cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

4. On December 13, 2018 (the "Petition Date"), White Eagle Asset Portfolio, LP ("WEAP") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors have continued in the possession of their property and have continued to operate and manage their business as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or committee has been appointed in these chapter 11 cases.

DOCS_SF:96999.3

5. The Debtors are indirect subsidiaries of Emergent Capital, Inc. ("ECI"), a publicly traded company. ECI is a global leader in the life settlements industry.

6. Debtor WEAP owns a portfolio of 586 life insurance policies – also known as life settlements – with an aggregate death benefit of approximately $2.8 billion.

7. A more detailed description of the business and operations of the Debtors, and the events leading to the commencement of these chapter 11 cases, is provided in the *Declaration of Miriam Martinez, Chief Financial Officer, in Support of First Day Motions* [Docket No. 3] and fully incorporated herein by reference.

## RELIEF REQUESTED

8. By this Application, the Debtors seek the entry of the Proposed Order pursuant to section 327(e) of the Bankruptcy Code, Bankruptcy Rule 2014, and Local Rule 2014-1 (a) authorizing the Debtors to employ and retain the Firm as special litigation counsel to the Debtors, *nunc pro tunc* to the Petition Date, and (b) approving the terms and conditions under which the Debtors will retain and compensate the Firm for its services.

## BASIS FOR RELIEF

9. Section 327(e) of the Bankruptcy Code authorizes a debtor, with court approval, to retain

> for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). Clarifying the statute, Bankruptcy Rule 1107(b) provides that "a person is not disqualified for employment under section 327 of this title by a debtor in possession solely

3

because of such person's employment by or representation of the debtor before the commencement of the case."

10. Accordingly, retention of special counsel is permissible so long as: (a) the appointment is in the best interest of the debtor's estate, (b) counsel does not hold an interest adverse to the estate with respect to the subject matter of its retention, and (c) the engagement does not amount to conducting the bankruptcy case for the debtor in possession. *See In re DeVlieg, Inc.*, 174 B.R. 497 (N.D. Ill. 1994); *In re Carla Leather, Inc.*, 44 B.R. 457, 474 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985) ("[section] 327(e) bars engagement of special counsel only in the presence of an actual conflict of interest concerning the subject matter of the engagement.").

11. The Firm's retention as special litigation counsel falls squarely within the scope of section 327(e) of the Bankruptcy Code. *See, e.g., In re Bertucci's Holdings, Inc.*, Case No. 18-10894 (MFW) (Bankr. D. Del. May 31, 2018) (authorizing retention of special counsel under section 327(e) of the Bankruptcy Code); *In re Dex Liquidating Co.*, Case No. 17-12913 (KJC) (Bankr. D. Del. Jan. 19, 2018) (same).

## SERVICES TO BE PROVIDED BY THE FIRM

12. The Firm was initially employed and retained by the Debtors and its parent, ECI, on October 18, 2018, in connection with a dispute with LNV Corporation ("LNV"), as lender under that certain *Second Amended and Restated Loan and Security Agreement*, dated as of January 31, 2017 (as subsequently amended or restated, the "Prepetition Loan Agreement"). The Debtors believe that LNV has (a) abused the discretion that it was granted under the terms of the Prepetition Loan Agreement to starve WEAP and its parent of the cash flows to which they are rightfully entitled and which are necessary to administer WEAP's

4

insurance portfolio and (b) improperly exercised its discretion by undervaluing the insurance portfolio. Moreover, the Debtors believe that LNV has charged excessive fees in order to disallow any distributions to WEAP. The Debtors believe that LNV's conduct with respect to the Prepetition Loan Agreement is actionable. Accordingly, the Debtors and ECI as co-plaintiff engaged the Firm to prosecute a lawsuit against LNV and its co-conspirators for, among other things, breaches of contract, breaches of fiduciary duty, and other claims.

13.    Prior to the Petition Date, the Firm drafted an initial complaint against LNV (the "Complaint"), which the Debtors shared with LNV. By this Application, the Debtors seek authority to retain the Firm to commence and prosecute the lawsuit against LNV (the "LNV Action"). It is the intention of the Debtors that the services to be performed by the Firm will not be duplicative of other professionals retained by the Debtors, but rather will ensure the most economic and effective means for the Debtors to prosecute their claims against LNV. Specifically, Pachulski Stang Ziehl & Jones LLP will serve as the Debtors' section 327(a) counsel, and the Firm will serve as litigation counsel. The Firm has discussed this division of responsibilities and believes it will avoid duplication of services.

14.    The Firm has stated its desire and willingness to continue to act as special litigation counsel to the Debtors, and to render the necessary professional services required in connection therewith. Moreover, the retention and employment of the Firm as special litigation counsel would prevent these estates from incurring the unnecessary cost of employing a new firm to prosecute claims that the Firm is already familiar with. Accordingly, the employment and retention of the Firm as special litigation counsel is in the best interest of the Debtors and their estates and creditors and should be approved.

## **COMPENSATION**

15. The Firm intends to apply to the Court for allowance of compensation and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and the guidelines promulgated by the United States Trustee, and pursuant to any additional procedures that may be established by the Court in these cases. The Firm's fees for professional services are based upon its hourly rates, which are periodically adjusted. The Firm's current range of standard hourly rates are: (a) $650 to $1,800 for partners, (b) $550 to $1,400 for special counsel, (c) $350 to $675 for associates, (d) $345 to $500 for staff attorneys, and (e) $230 to $355 for paralegals and legal staff.

16. The Firm will maintain records in support of any actual and necessary costs and expenses incurred in connection with the rendering of its services in these cases. Subject to application for and allowance by the Court, the Firm will receive reimbursement for reasonable and documented out-of-pocket expenses incurred in connection with the services rendered to the Debtors.

17. The Firm's hourly billing rates are subject to periodic adjustments to reflect economic and other conditions and generally are adjusted in January of each year. The Firm's hourly billing rates for professionals are not intended to cover out-of-pocket expenses and certain elements of overhead that are typically billed separately. Accordingly, the Firm regularly charges its clients for the expenses and disbursements incurred in connection with the client's case, including, *inter alia*, word processing, telecommunications, photocopying, postage and package delivery charges, court fees, transcript costs, travel expenses, expenses for "working meals" and computer-aided research. The Firm will abide by the Bankruptcy Code, the

Bankruptcy Rules, the Local Rules, and all other rules and regulations that have been adopted by this Court in connection with all services provided and expenses incurred.

18. The Debtors submit that the foregoing rates and charges are fair and reasonable in light of (a) industry practice, (b) market rates charged for comparable services both in and out of bankruptcy, and (c) the Firm's experience with respect to these services.

## QUALIFICATIONS

19. The Debtors seek to retain the Firm as special litigation counsel because of the Firm's extensive experience and reputation of its professionals in complex commercial litigation matters, including those in Bankruptcy Court.

20. The Firm is a law firm with over 300 attorneys with its principal office in New York, New York, and other offices in Atlanta, Georgia, Houston, Texas, Los Angeles, California, Miami, Florida, Newark, New Jersey, Redwood Shores, California, San Francisco, California, and Washington, D.C.

21. Attorneys at the Firm have served as counsel and litigation counsel to debtors, trustees, creditors' committees, creditors and equity interest holders in many of the country's largest bankruptcy proceedings including, but not limited to: *In re Toys "R" Us, Inc.*, Case No. 17-34665 (KLP) (Bankr. E.D.V.A. 2017); *In re Hercules Offshore, Inc.*, Case No. 16-11385 (KJC) (Bankr. D. Del. 2016); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. 2014); *In re LightSquared Inc.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. 2012), and as special litigation counsel in, *inter alia*, *In re Nine West Holdings, Inc.*, Case No. 18-10947 (SCC) (Bankr. S.D.N.Y. 2018); *In re Relativity Fashion, LLC*, Case No. 15-11989 (MEW) (Bankr. S.D.N.Y. 2015); and *In re Capmark Financial Group, Inc.*, Case No. 09-13684 (CSS) (Bankr. D. Del. 2009).

22. Accordingly, the Debtors believe that the Firm is well-qualified and has the necessary legal expertise to represent the Debtors on the matters set forth herein in an effective, efficient, and timely manner.

## DISCLOSURE OF CONNECTIONS

23. No commitment has been made or received by the Firm, nor any member thereof, as to compensation or payment in connection with these chapter 11 cases other than in accordance with the provisions of the Bankruptcy Code and orders of the Court, and as set forth in this Application. Further, the Firm has no agreement with any other entity to share with such entity any compensation received by the Firm in connection with the these chapter 11 cases.

24. To the best of the Debtors' knowledge, information, and belief, other than as set forth in the Firm Declaration, the Firm: (a) has no connection with the Debtors, their creditors, other parties in interest, or the attorneys or accountants of any of the foregoing, or the United States Trustee or any person employed in the Office of the United States Trustee; and (b) does not represent or hold any interest adverse to the Debtors or to the estates with respect to the matter on which the Firm is to be employed

25. As set forth above, the Firm also represents ECI in connection with the Debtors' and ECI's common dispute with LNV concerning the Prepetition Loan Agreement, and ECI, along with the Debtors, will be a named plaintiff on the Complaint. However, the Debtors do not believe that there is representation of an adverse interest or that there is a conflict between the respective interests of the Debtor-plaintiffs and ECI as co-plaintiff, because the plaintiffs have a unity of interest in prosecuting their claims as against LNV with respect to the Prepetition Loan Agreement.

DOCS_SF:96999.3

26.  In terms of allocating the Firm's fees and expenses between the three Debtors, on the one hand, and ECI, on the other, the Debtors propose that their estates be liable for 50% of the fees and 50% of the expenses approved pursuant to this Application. The other 50% would be due from ECI pursuant to arrangements between the Firm and ECI. Indeed, inasmuch as three of the four plaintiffs are Debtors, and the Debtors' and ECI's assets reside at WEAP, the Debtors respectfully submit that this 50/50 allocation is more than fair and, indeed, disproportionately benefits the Debtors' estates at ECI's expense. The Debtors would not be liable for services rendered or expenses incurred solely on behalf of ECI (though the Debtors do not believe there will be any such services or expenses).[2]

27.  Inasmuch as LNV is an indirect subsidiary of Beal Bank Financial Corporation, and the Debtors' lenders (the "Lenders") likewise are affiliates of Beal Financial Corporation, the Lenders have advised the Debtors that they will not permit their cash collateral to fund the LNV Action. Accordingly, ECI has agreed to advance the Debtors' share of the Firm's compensation and expenses, to the extent the Debtors cannot pay the same – subject, of course, to the filing of fee applications and allowance by the Court. Upon eventual repayment by the Debtors to the Firm for the Debtors' allocation, the Firm will, in turn, reimburse ECI for any such amounts fronted.

28.  The Firm will review its files periodically during the pendency of these chapter 11 cases to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new relevant facts or relationships are discovered or arise in such review, the Firm will use

---

[2]  See, e.g., In re Gawker Media LLC, Case No. 16-11700 (SMB) (Bankr. S.D.N.Y. Sept. 23, 2016) [Docket No. 287], ¶ 6 (authorizing § 327(e) retention where counsel would also represent non-debtor co-defendants, and fee allocation between debtors and non-debtors).

reasonable efforts to identify such further developments and will promptly file a supplemental affidavit, as required by Bankruptcy Rule 2014(a).

## NOTICE

29. Notice of the hearing of this Motion has been provided to: (a) the United States Trustee; (b) counsel to the Debtors' prepetition lender; (c) those parties listed on the list of creditors holding the 20 largest unsecured claims against the Debtors, as identified in their chapter 11 petitions; (d) counsel to any statutory committees appointed in these cases; and (e) parties requesting notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## NO PRIOR REQUEST

30. No prior request for the relief sought in the Motion has been made to this Court or any other court.

WHEREFORE, the Debtors respectfully request the entry of the Proposed Order granting the relief requested and any other relief as is just and proper.

Dated: December 21, 2018

_____
Miriam Martinez
Chief Financial Officer