**Exhibit A**

**Document Requests**

## DEFINITIONS

1. Terms used but not defined herein shall have the meanings ascribed to them in the *Motion of CLMG Corp. and LNV Corporation for Entry of an Order Directing Discovery from the Debtors Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure* (the "Motion").

2. Each reference to a natural person shall be deemed to include that person's agents, attorneys and any other person who acted on that person's behalf.

3. References to the singular shall include the plural and references to the plural shall include the singular; the conjunctive shall include the disjunctive and the disjunctive shall include the conjunctive; and the present tense shall include the past tense and the past tense shall include the present tense.

4. "And" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

5. "Any," "all," and "each" shall be construed broadly, and shall mean each, any, and all as necessary to bring within the scope of the discovery request all responses that otherwise could be construed to be outside of its scope.

6. "All documents" means any and every Document or group of Documents, as defined below, that are known to you or that can be located or discovered through reasonably diligent efforts.

7. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

8. "Boards" means the boards of directors or boards of managers, as the case may be, and any committees thereof, of Emergent Capital, Inc., Imperial Finance and Trading, LLC,

White Eagle Asset Portfolio, L.P., Lamington Road Designated Activity Company and White Eagle General Partner, LLC and their respective subsidiaries and affiliates.

9. "Chapter 11 Cases" means, collectively, all or each of the chapter 11 cases of White Eagle, Lamington Road Designated Activity Company and White Eagle General Partner, LLC, currently being jointly administered under Case No. 18-12808 (KG) (Bankr. D. Del.).

10. "Communication" shall mean the transmittal of information (in the form of facts, ideas, inquiries or otherwise) including, without limitation, all discussions, dialogues, conversations, interviews, negotiations, cablegrams, mailgrams, telegrams, telexes, cables, correspondence, facsimiles, electronic mail, or other forms of written or verbal interchange, however transmitted, including reports, notes, memoranda, lists, agenda, proposals, opinions and other Documents and records of communication.

11. "Concerning," "referencing," "in connection with," "relating to," and/or "referring to" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

12. "Debtors" means, collectively, all or each of White Eagle Asset Portfolio, LP, White Eagle General Partner, LLC, and Lamington Road Designated Activity Company, and any advisors, agents, attorneys, accountants, consultants, officers, directors, employees, experts, investment bankers, representatives, and other persons acting, or who have acted, on behalf of the foregoing entities or individual referenced in this definition.

2

13. "Debtors' Professionals" means any law firms and other professionals (whether "ordinary course" professionals or otherwise) retained by or representing Debtors, or proposed to be retained by or to represent the Debtors, including, without limitation, Kasowitz Benson Torres LLP and Pachulski Stang Ziehl & Jones LLP.

14. "Document" is used in the broadest sense and means any written, typed, printed, graphic or recorded matter of any kind or character, however produced or reproduced; any electronically or magnetically recorded matter of any kind or character, however produced or reproduced; and any other matter of any kind or character constituting a recording upon any medium by any means of communication or representation. The foregoing includes, but is not limited to, all originals, including drafts, masters, duplicates or copies of: papers, conversations, letters, correspondence, memoranda, summaries, messages, voice mail messages, e-mail messages, Communications, data, databases, minutes, notes, transcripts, statements, circulars, manuals, treatises, books, notebooks, catalogs, pamphlets, flyers, advertisements of any kind, books of account, ledgers, balance sheets, bank deposit slips, bank checks, canceled checks, wire transfers, financial Documents of any kind, files, diaries, diary entries, telephone logs, appointment books, desk or other calendars and similar records of any kind, sound or visual recordings on film, tape, disc, drum, wire or other medium, transcriptions of the foregoing, photographs, sketches, diagrams, drawings, microfilm or microfiche, agreements, contracts, teletype, telegrams, cables, memorials or oral Communications, whether by telephone or face-to-face, notices, bulletins, polls, surveys, findings of fact, observations of facts or circumstances, reports, studies, tables, statistics, pleadings, objects, any data, information or statistics contained within any data storage modules, tapes, discs or other memory device or other information retrievable from storage systems, including without limitation computer generated reports and

3

print-outs. The term "Document" also includes data compilations or databases, including metadata, from which information can be obtained, and translated, if necessary, through detection devices in a reasonably usable form. If any Document has been modified by the addition of notations or otherwise, or has been prepared in multiple copies which are not identical, each modified copy or non-identical copy is a separate "Document."

15. "Document Requests" means the requests for production of documents contained herein.

16. "Emergent" means Emergent Capital, Inc., and each and all of its subsidiaries, affiliates, predecessors and successors (but excluding White Eagle), and any advisors, agents, attorneys, accountants, consultants, officers, directors, shareholders, employees, experts, investment bankers, representatives, special committee and other persons acting, or who have acted, on behalf of the foregoing entities or individual referenced in this definition.

17. "Federal Rules" means the Federal Rules of Civil Procedure.

18. "Imperial Finance" means Imperial Finance and Trading, LLC, and any advisors, agents, attorneys, accountants, consultants, officers, directors, employees, experts, investment bankers, or representatives acting, or who have acted, on behalf of the foregoing entities or individual referenced in this definition.

19. "Loan Agreement" means the Second Amended and Restated Loan and Security Agreement, dated as of January 31, 2017 (as amended, restated, supplemented or otherwise modified from time to time).

20. "White Eagle" means White Eagle Asset Portfolio, LP, and any advisors, agents, attorneys, accountants, consultants, officers, directors, employees, experts, investment bankers,

or representatives acting, or who have acted, on behalf of the foregoing entities or individual referenced in this definition.

21.     "You" or "Your" means the Debtors including without limitation their respective officers, directors, parents, subsidiaries, divisions, affiliates, predecessors, successors, employees, accountants, agents and representatives.

## INSTRUCTIONS

1.     You are to produce the original and all non-identical copies, including but not limited to, all drafts, of each Document requested.  If you are not able to produce the original of any Document, please produce the best available copy and all non-identical copies, including but not limited to drafts.

2.     When Documents, data, knowledge, or information in Your possession are requested, such request includes the knowledge of your attorneys, accountants, agents, representatives, and experts, and any professional employed or retained by you, concerning any of the facts or issues involved in this matter.

3.     Each request herein extends to all Documents and Communications in the possession, custody or control of You or anyone acting on Your behalf.  A Document is deemed to be in Your possession, custody, or control if it is in Your physical custody, or if it is in the physical custody of any other person and You: (1) own such Document in whole or in part; (2) have a right, by contract, statute or otherwise, to use, inspect, examine or copy such Document on any terms; (3) have an understanding, express or implied, that You may use, inspect, examine, or copy such Document on any terms; or (4) as a practical matter, have been able to use, inspect, examine, or copy such Document when You sought to do so.  If any requested Document was, but no longer is, in Your control, state the disposition of each such Document.

4.      In responding to each request, You are to review and search all relevant files of appropriate entities and persons.

5.      All Document requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the Documents.

6.      Notwithstanding anything else to the contrary herein, each word, term or phrase is intended to have the broadest meaning permitted under the Federal Rules, the Bankruptcy Rules, and any or all other applicable rules or procedures.

7.      To the extent that You deem or consider any request to be ambiguous, You should construe the request to require the fullest and most complete disclosure of all information and requested Documents.

8.      The Documents responsive to these Requests shall be produced in such a fashion as to indicate clearly the (i) identity of the party making such production and (ii) the identity of the file from which the Documents were produced.

9.      *E-mails*: E-mails shall be produced as single-page TIFF images accompanied by Document-level full text and Relativity and opticon load files.  The following metadata shall be produced for each e-mail: starting bates, ending bates, to, from, other recipients (cc and bcc), date sent, subject, body, attachments, begattach, endattach, source, and any applicable confidentiality designation (e.g., Confidential, Highly Confidential).  E-mail attachments shall be handled according to the provisions stated below applicable to other electronic Documents.

10.     *Other electronic Documents*: Parties shall produce Excel Documents in native form accompanied by Document-level full text and load files.  Word and other electronic Documents shall be produced as single-page TIFF images accompanied by Document-level full text and Relativity and opticon load files.  The following metadata shall be produced for each

6

electronic Document: starting bates, ending bates, author, source, date created, last modified date, extracted text, original filename, source, and any applicable confidentiality designation (e.g., Confidential, Highly Confidential).

11. *Hard copy Documents*: All hard copy Documents shall be produced as single-page TIFF images accompanied by Document-level full text and Relativity and opticon load files. The following metadata shall be produced for each Document: starting Bates, ending Bates, custodian, and any applicable confidentiality designation (e.g., Confidential, Highly Confidential).

12. *TIFF images generally*: Any TIFF images produced shall consist of (a) single page, black and white, group IV TIFF images, one per image named after the bates number with extension ".tif"; and (b) text files, one file per Document (doc level text files with page breaks), named after the starting bates number of the Document, with extension ".txt." The .tif and .txt files shall reside in the same directory. Metadata shall be provided in a Relativity-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier. The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document. All images should be 300 dpi resolution, all black and white images should be single page Group IV TIFF (.tif), and all color images should be JPEG (.jpg). For each Document, a Document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file and each text file should be named using its corresponding image files (e.g., BATES000001.TXT).

13. The Documents responsive to this request shall be produced as they have been kept in the usual course of business or shall be organized and labeled to correspond with the enumerated categories in this request.

14. If there are no Documents responsive to a particular Request, state so in writing.

15. If any Document is withheld under any claim of privilege, including, without limitation, attorney-client privilege and attorney work product, You should provide the following information with respect to such Document:

   a. The date of the Document;

   b. The title and description of the Document sufficient to identify it without revealing the information for which privilege is claimed;

   c. The claim of privilege under which it is withheld; and

   d. A description of the subject matter of the Document in sufficient detail to support Your contention that the Document is privileged.

16. If after exercising due diligence to secure them, You cannot provide some or any of the requested Documents, so state and provide all Documents to the extent possible, specifying the reason for Your inability to produce the remainder of the Documents, and stating whatever information or knowledge You have concerning each Document not produced.

17. If any requested Document or other Document potentially relevant to this action is subject to destruction under any Document retention or destruction program, the Document should be exempted from any scheduled destruction and should not be destroyed until the conclusion of this action or unless otherwise permitted by the Court.

18. If an objection is made to any request, state Your objection and the ground or grounds with particularity in Your written response. If an objection is made only to part of the request, identify that part in Your written response and state Your objection and the ground(s).

19. An objection or claim of privilege directed to part of a request does not constitute an excuse for failure to respond to the parts of a request for which no objection or claim of privilege is made. No part of any Request should be left unanswered merely because an objection is

8

interposed to another part of the Request. If a partial or incomplete answer is provided, You shall state that the answer is partial or incomplete.

20. Unless otherwise indicated in a particular request, the time period covered by these requests is from January 1, 2017 to the present date and shall encompass all Documents and information concerning in whole or in part such period, or events or circumstances during such period, even though dated, prepared, generated, or received prior to that date.

## DOCUMENT REQUESTS

The definitions and instructions set forth above apply to the following Document Requests:

1. All Documents related to or otherwise evidencing Communications concerning the decision to commence the Chapter 11 Cases.

2. All Documents related to or otherwise evidencing the retention of Debtors' Professionals.

3. All Documents demonstrating a determination by an independent fiduciary of the Debtors to retain each of the Debtors' Professionals and the protections in place to prevent Emergent from abusing its discretion in connection with such decisions.

4. All Documents related to or otherwise evidencing Communications regarding any current or prior effort to raise capital or reduce debt, including (in each case) the potential sale of any of the Debtors' life insurance policies.

5. All Documents demonstrating a determination by an independent fiduciary of the Debtors to raise capital or reduce debt, including (in each case) the potential sale of any of the Debtors' life insurance policies, and the protections in place to prevent Emergent from abusing its discretion in connection with such decisions.

6. All Documents related to or otherwise evidencing any opinions or analysis concerning the solvency of any of the Debtors.

7. All Documents related to or otherwise evidencing any opinions or analysis concerning the value of the Debtors and/or their assets.

8. All Documents related to or otherwise evidencing the Debtors' operating expenses.

9. All Documents related to or otherwise evidencing the Debtors' legal and other professional fees.

10. All Documents related to or otherwise evidencing any transfers of funds or other property from the Debtors to any non-Debtor affiliate of the Debtors, including transfers to Emergent and/or Imperial Finance (directly or indirectly).

11. All Documents demonstrating a determination by an independent fiduciary of the Debtors to transfer funds or other property from the Debtors to any non-Debtor affiliate of the Debtors, including transfers to Emergent and/or Imperial Finance (directly or indirectly), and the protections in place to prevent Emergent from abusing its discretion in connection with such decisions.

12. Documents sufficient to identify any directors, managers, officers, employees and/or contractors of (i) the Debtors; (ii) Emergent and (iii) Imperial Financing.

13. All Documents related to overhead and operating expenses charged to White Eagle, including with respect to audit and tax services, data processing services, travel and entertainment services, insurance expenses, and professional fees and contractor services, including how such charges were determined and any negotiation concerning same.

14. All Documents related to salaries, wages, and other compensation charged to White Eagle, including how such charges were determined and any negotiation concerning same.

15. All Documents related to any efforts or analysis to determine whether the amounts charged to White Eagle described in requests numbers 13 and 14 are consistent with the fair market value of the services provided.

16. All Documents related to the negotiation of any agreements between the Debtors and any non-Debtor affiliate of the Debtors.

17. Documents sufficient to identify any employees of Imperial Financing who have performed work for the Debtors and the work they performed.

18. All Documents related to or otherwise evidencing any decision by or among any Boards or members of any Boards to rely on employees from Imperial Finance to perform work for the Debtors.

19. All Documents related to any potential alternative providers of any tasks and services provided to the Debtors by Imperial Finance and any Communications between the Debtors and such potential alternative providers.

20. All Documents reflecting payment of invoices for services charged to White Eagle, including original invoices, evidence of payment, and, where the invoice is from an affiliate of Emergent or Imperial Finance, the basis for the calculation of the invoice.

21. Documents sufficient to identify the Independent Manager, as defined in the Loan Agreement, and that person's responsibilities and work performed (including, without limitation, the Independent Manager's consent to the commencement of the Chapter 11 Cases).

22. Documents sufficient to identify the Independent Director, as defined in the Loan Agreement, and that person's responsibilities and work performed (including, without limitation, the Independent Director's consent to the commencement of the Chapter 11 Cases).

23. All Documents considered by the Independent Manager in approving the filing of the Chapter 11 Cases.

24. All Documents considered by the Independent Director in approving the filing of the Chapter 11 Cases.

25. All Documents related to or otherwise evidencing the retention of Miriam Martinez as an officer of White Eagle or any of the other Debtors.

26. All Documents related to or otherwise evidencing any work Miriam Martinez has performed for the Debtors in her capacity as an officer of White Eagle or any of the other Debtors.

27. All Documents that form the basis for the Debtors' allegation that LNV has abused the discretion it was granted under the terms of the Loan Agreement to starve White Eagle and Emergent of the cash flows to which they are rightfully entitled.[1]

28. All Documents that form the basis for the Debtors' allegation that LNV has improperly exercised its discretion by undervaluing the insurance portfolio.[2]

29. All Documents that form the basis for the Debtors' allegation that LNV has charged excessive fees in order to disallow any distributions to White Eagle.[3]

30. All Documents that form the basis for the Debtors' allegation that LNV's conduct with respect to the Loan Agreement is actionable.[4]

---

[1] *Declaration of Miriam Martinez, Chief Financial Officer, in Support of First Day Motions* [Docket No. 3] (the "First Day Declaration") ¶ 15.

[2] *Id.*

[3] *Id.*

31. All Documents that form the basis for the Debtors' allegation that the Debtors were required to commence the Chapter 11 Cases for White Eagle GP and Lamington Road on November 14, 2018.[5]

32. All Documents identifying any "stakeholders" in the Debtors, Emergent, and Imperial Finance, including the amount and type of each stakeholder's interest in the Debtors, Emergent, and Imperial Finance, as applicable.

33. All Documents related to or otherwise evidencing any efforts by the Debtors to obtain post-petition financing.

34. All Documents related to or otherwise evidencing "intercompany administrative obligations" owed by the Debtors.

35. All Documents prepared by the Debtors or any non-Debtor affiliates of the Debtors concerning the structuring of the Debtors and the tax implications and risks thereof.

---

[4] *Id.* ¶ 16.

[5] *Id.* ¶ 17.