**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | ) Case No. 18-12808 (KG) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |
| | ) **Re: Docket No. 11** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS OF CLMG CORP.
AND LNV CORPORATION TO APPLICATION OF DEBTORS
PURSUANT TO SECTION 327(a) OF THE BANKRUPTCY CODE,
RULE 2014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE
AND LOCAL RULE 2014-1 FOR AUTHORIZATION TO EMPLOY AND RETAIN
PACHULSKI STANG ZIEHL & JONES LLP AS COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION *NUNC PRO TUNC* TO THE PETITION DATE**

CLMG Corp. ("CLMG") and LNV Corporation ("LNV" and, together with CLMG, the "Lender Parties"), as administrative agent and sole lender, respectively, under the Second Amended and Restated Loan and Security Agreement, dated as of January 31, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "Loan Agreement"), submit this limited objection and reservation of rights to the *Application of Debtors Pursuant to Section 327(a) of the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure and Local Rule 2014-1 for Authorization to Employ and Retain Pachulski Stang Ziehl & Jones LLP as Counsel for the Debtors and Debtors in Possession Nunc Pro Tunc to the Petition Date* [Docket No. 11] (the "Application")[2] and respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, where applicable, include: White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738). The Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

[2] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Application.

**LIMITED OBJECTION AND RESERVATION OF RIGHTS**

1. These are not conventional chapter 11 cases. The Debtors do not have independent management; rather, their decision-makers are all officers and employees of the Debtors' indirect non-Debtor parent, Emergent Capital, Inc. ("Emergent").[3] There are significant conflicts of interest as between the Debtors and Emergent. For example, White Eagle should have an interest in using excess cash after approved operating expenses to pay down debt under the Loan Agreement to create additional borrowing capacity and ensure maximum liquidity going forward. This interest should be particularly strong because White Eagle derives its income from life settlement assets with cash flows that are uneven, are difficult to predict, and can easily result in liquidity issues if such cash flows are insufficient to cover operating expenses.[4] Emergent, which – by virtue of relying on White Eagle for income – is subject to the same vulnerabilities regarding unpredictable cash flows, has an at least equally strong interest in having as much of White Eagle's cash as possible circumvent the requirements of the Loan Agreement's waterfall provisions and be dividended and made available to pay Emergent's independent obligations. Further, to maximize value, White Eagle should have an interest in being operated efficiently, including by paying only necessary operating expenses at a market rate. Nonetheless, Emergent directed White Eagle to attempt to pay operating expenses created by non-Debtor Imperial Finance and Trading, LLC ("Imperial Finance") to cover all of Emergent's expenses (including, among other things, the costs of being a public company and the salary of Emergent's CEO, CFO and all other employees) even though such additional costs

---

[3] *See Declaration of Miriam Martinez, Chief Financial Officer, in Support of First Day Motions* [Docket No. 3] (the "First Day Declaration"), ¶¶ 1, 9.

[4] *See* First Day Declaration, ¶ 7.

are of limited, if any, benefit to White Eagle and result in White Eagle paying above-market rates.

2. In light of the foregoing, it is critically important that the Debtors' counsel be truly independent and be able to serve as a watchdog regarding the conflicts and potential conflicts between the Debtors and their non-Debtor affiliates, including Emergent and Imperial Finance. As a general matter, the Lender Parties are familiar with Debtors' proposed counsel, Pachulski Stang Ziehl & Jones LLP ("Pachulski"), and believe that Pachulski should be able to navigate this difficult terrain. However, the Lender Parties have concerns regarding Pachulski's independence given the following:

- Pachulski also represents non-Debtor Imperial Finance (a fact that Pachulski did not disclose in the Application, has not – to date – disclosed to the Court, and that the Lender Parties came to realize only through discovery provided in connection with the Debtors' cash collateral motion), which is a wholly-owned subsidiary of Emergent that the Debtors have sought to make payments to for alleged services that are of dubious (if any) value to the Debtors and is by far, the largest purported unsecured creditor of the Debtors;[5]

- Pachulski's prepetition retainer was paid by Emergent;[6] and

- Pachulski is named as counsel for the Debtors in the adversary complaint filed against the Lender Parties where Emergent is a co-plaintiff.[7]

---

[5] See White Eagle's *Summary of Assets and Liabilities, Schedule E/F: Creditors Who Have Unsecured Claims* [Docket No. 62, 8-9] (scheduling a purported claim of approximately $5.39 million claim in favor of Imperial Finance against White Eagle, while all other unsecured creditors are collectively owed approximately $702,000). The Lender Parties reserve all rights with respect to such purported claims, including as to their amount and as to their status as a claim and recharacterization to equity.

[6] See Application, ¶ 13.

Case law suggests that these facts may well create a conflict of interest that would preclude retention as debtor's counsel.[8]

3.      As such, although the Lender Parties do not object to the Application as a general matter at this time, the Lender Parties request that any order approving the Application include language reserving the Lender Parties' right to seek relief with respect to Pachulski's retention, including (without limitation) disqualification, if it later becomes apparent that Pachulski is unable to be independent.

[*Remainder of Page Intentionally Left Blank*]

---

[7]   *See Complaint* [Docket No. 90].

[8]   *See In re Huntmar Beaumeade I Ltd. P'ship*, 127 B.R. 363 (Bankr. E.D. Va. 1991) (holding counsel not disinterested where fees were paid by the principal owner and guarantor of the debtor's bank debt with means to control, and personal interests directly adverse to, the debtor); *In re Star Broad., Inc.*, 81 B.R. 835, 841 (Bankr. D.N.J. 1988) (holding that an actual conflict of interests exists "where one estate is indebted to the other, there exist two groups of creditors which have conflicting claims and payment for one group is necessarily at the expense of the other."); *see also In re eToys, Inc.*, 331 B.R. 176, 201 (Bankr. D. Del. 2005) ("[R]epresentation of a creditor in matters relating to the debtor [is] a direct conflict of interest precluding [a professional's] retention by the debtor under section 327(a) ."); *In re Wheatfield Bus. Park LLC*, 286 B.R. 412, 418 (Bankr. C.D. Cal. 2002) ("Where a bankruptcy debtor is a creditor of a related debtor, it is presumptively improper for the same attorney (or law firm) to be general counsel for the related debtors."); *In re Harris Agency, LLC*, 468 B.R. 702, 709 (Bankr. E.D. Pa. 2010) (finding actual conflict of interest under section 327(a) of the Bankruptcy Code and disqualifying counsel where counsel accepted payment of fees from a non-debtor creditor and affiliate who, under the proposed plan, was to receive substantial equity in the reorganized debtor and reimbursement of such payments); *In re Glenn Elec. Sales Corp.*, 89 B.R. 410, 418 (Bankr. D.N.J. 1988), *aff'd*, 99 B.R. 596 (D.N.J. 1988) (granting motion to disqualify counsel; concluding receipt of retainer from debtors' shareholder, a potential plan proponent, presented appearance that counsel would not execute responsibilities as counsel for the debtor in an impartial manner).

| | |
|---|---|
| Dated: February 7, 2019<br>Wilmington, Delaware | Respectfully submitted, |
| */s/ Courtney A. Emerson*<br>Jeffrey M. Schlerf (No. 3047)<br>Carl D. Neff (No. 4895)<br>Courtney A. Emerson (No. 6229)<br>**FOX ROTHSCHILD LLP**<br>919 North Market St., Suite 300<br>Wilmington, DE 19801<br>Telephone: (302) 654-7444<br>Facsimile: (302) 463-4971<br>jschlerf@foxrothschild.com<br>cneff@foxrothschild.com<br>cemerson@foxrothschild.com | Thomas E Lauria (admitted *pro hac vice*)<br>Jesse L. Green (admitted *pro hac vice*)<br>**WHITE & CASE LLP**<br>Southeast Financial Center<br>200 S. Biscayne Boulevard, Suite 4900<br>Miami, FL 33131<br>Telephone: (305) 371-2700<br>Facsimile: (305) 358-5744<br>tlauria@whitecase.com<br>jgreen@whitecase.com<br><br>–and–<br><br>David M. Turetsky (admitted *pro hac vice*)<br>Andrew T. Zatz (admitted *pro hac vice*)<br>Kimberly A. Haviv (admitted *pro hac vice*)<br>**WHITE & CASE LLP**<br>1221 Avenue of the Americas<br>New York, NY 10020-1095<br>Telephone: (212) 819-8200<br>Facsimile: (212) 354-8113<br>dturetsky@whitecase.com<br>azatz@whitecase.com<br>khaviv@whitecase.com<br><br>–and–<br><br>Jason N. Zakia (admitted *pro hac vice*)<br>**WHITE & CASE LLP**<br>227 West Monroe Street, Suite 3900<br>Chicago, IL 60606-5055<br>Telephone: (312) 881-5400<br>Facsimile: (312) 881-5450<br>jzakia@whitecase.com<br><br>*Attorneys for CLMG Corp.*<br>*and LNV Corporation* |