IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | Case No. 18-12808 (KG) |
| Debtors. | Jointly Administered |
| | **Related Docket Nos. 53 and 103** |

**DEBTORS' REPLY TO OBJECTION OF CLMG CORP. AND LNV CORPORATION TO DEBTORS' APPLICATION PURSUANT TO SECTION 327(e) OF THE BANKRUPTCY CODE FOR AN ORDER AUTHORIZING THE RETENTION AND EMPLOYMENT OF KASOWITZ BENSON TORRES LLP, AS SPECIAL LITIGATION COUNSEL TO THE DEBTORS *NUNC PRO TUNC* TO THE PETITION DATE**

The above-captioned debtors and debtors in possession (the "Debtors") file this reply to the *Objection of CLMG Corp. and LNV Corporation to Debtors' Application Pursuant to Section 327(e) of the Bankruptcy Code for an Order Authorizing the Retention and Employment of Kasowitz Benson Torres LLP, as Special Litigation Counsel to the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 103] (the "Objection").[2] LNV Corporation ("LNV") and its administrative and collateral agent, CLMG Corp. ("CLMG"), filed the Objection and are referenced herein as the "Lender Parties." The Debtors have also received informal comments to the Application from the U.S. Trustee, which are in the process of being addressed. In support of this reply, the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738). The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Objection.

1

# **REPLY**

1.      The Lender Parties' objection to the Debtors' proposed retention of Kasowitz Benson Torres LLP ("Kasowitz"), as special litigation counsel to the Debtors, is a blatant litigation tactic in retaliation for the adversary proceeding (the "Adversary Proceeding") commenced against LNV and its cohorts about two weeks ago.   Through the Adversary Proceeding, LNV and certain other defendants are accused of a wide variety of wrongs, including, among other things: (a) artificially inflating the loan-to-value ratio under the parties' prepetition loan agreement (the "Loan Agreement"), (b) preventing the Debtors from participating in the payment waterfall under the Loan Agreement from proceeds of their own valuable life insurance portfolio, which is the Debtors' only source of income, and (c) ultimately, forcing the Debtors to commence these chapter 11 cases.  The Debtors also seek to disallow and/or subordinate LNV's claims.

2.      With the filing of the Adversary Proceeding, the Lender Parties are on the defensive and, as such, they have decided to employ the litigation tactic of attempting to disqualify the Debtors' choice of special litigation counsel, Kasowitz.  To be clear, Kasowitz's role in these bankruptcy cases is limited to pursuing the various claims in the Adversary Proceeding, both on behalf of the Debtors and their non-debtor ultimate parent, Emergent Capital, Inc. ("Emergent"). The Debtors' general bankruptcy counsel, Pachulski Stang Ziehl & Jones LLP ("PSZJ"), also will be involved in the Adversary Proceeding, but solely on behalf of the Debtors, to address issues arising under bankruptcy law, and as Delaware counsel.  Hence, there is a clear delineation between the tasks that each of Kasowitz and PSZJ will perform in the context of the Adversary Proceeding, which is akin to countless general counsel/special counsel arrangements in this district.  Separately, PSZJ has been, and will continue to be, general bankruptcy counsel to the

Debtors, including on any other issues effecting the Lender Parties.  PSZJ has been front and center in these bankruptcy cases to date in the context of the various first day motions filed and approved by this Court, including a contested cash collateral motion (against the Lender Parties) that was subsequently resolved primarily through PSZJ's efforts.  PSZJ will continue to be responsible as counsel for all aspects of the administration of these bankruptcy cases, including ongoing reporting obligations to the Lender Parties and this Court, any administrative or substantive relief that may be needed as part of the bankruptcy process, responding to Bankruptcy Rule 2004 requests, and, ultimately, the formulation and confirmation of a chapter 11 plan of reorganization – the hallmark of a chapter 11 case.  Despite the fact that Kasowitz has not been involved in any aspect of the administration of these cases over the last two months since they commenced, and ignoring the substantial role that PSZJ has played in these cases, the Lender Parties now suggest that Kasowitz should be deemed general bankruptcy counsel for purposes of section 327(a) of the Bankruptcy Code.  That position makes no sense.  Kasowitz did not actively participate in the first day hearing (or any other hearing) and has not filed a single document with the Court other than in the Adversary Proceeding.  Kasowitz is special litigation counsel in the Adversary Proceeding, and nothing more.

3. Next, the Lender Parties argue that Kasowitz should be disqualified from representing the Debtors in the Adversary Proceeding because the firm has an inescapable conflict of interest in its dual representation of the Debtors and Emergent.  ***But what is the conflict?***  There is a complete unity of interests among the Debtors and Emergent in the context of the Adversary Proceeding.  Both the Debtors and Emergent were harmed by the same conduct of the defendants as alleged in the Adversary Proceeding.  Both the Debtors and Emergent have common claims against the defendants and seek the highest possible recovery in terms of damages and reduction

or recharacterization of the outstanding obligations under the Loan Agreement.  The Lender Parties offer no credible explanation for why the Debtors and Emergent cannot be represented by Kasowitz, aside from challenging the whole basis of the lawsuit from the Debtors' perspective and hypothesizing that Emergent needs cash from the Debtors (even though the Application has nothing to do with that).[3]  Moreover, given that the Debtors are solvent and all allowed claims will be paid in full under a plan of reorganization, the interests of these estates and Emergent are aligned.

4.    The Lender Parties also take issue with how Kasowitz will be paid.  One thing is certain:  the Lender Parties (despite being asked to) refused to allow any funding in connection with the retention, and the Debtors thus do not currently have authority to use cash collateral under section 363 of the Bankruptcy Code (or to borrow funds under section 364) to pay Kasowitz.  Although the Debtors reserve the right to do so at a later date, the Debtors are not currently asking to use cash collateral of the Lender Parties to pay Kasowitz, whether through the Application or otherwise.  That should be the end of any argument with respect to payment – the issue here is retention, not payment.  Emergent, as a non-debtor, will pay Kasowitz's fees, and the Debtors may later seek to reimburse an allocated portion of Kasowitz's fees and expenses pursuant to further order of the Court.[4]  Inasmuch as three of the plaintiffs were Debtors, for

---

[3]  The Lender Parties assert that a conflict exists because these bankruptcy cases and the Adversary Proceeding are effectively a two-party dispute, but they ignore that there are other parties involved in these cases, including various unsecured creditors, and the Adversary Proceeding, including two other defendants, Silver Point Capital L.P. and GWG Holdings, Inc.  They are also asking the Court to accept their conclusions on these presumably to-be-litigated issues, in the context of a retention application.

[4]  The Lender Parties make much of the fact that Emergent paid Kasowitz's retainer, but without such payment, the Debtors would have been left with no special litigation counsel at all, which would have been very convenient for the Lender Parties.  Given that the interests of the Debtors and Emergent are aligned with respect to the Adversary Proceeding, there is no conflict as a result of such payment.  *See, e.g., In re Chardon, LLC*, 536 B.R. 791, 795 (Bankr. N.D. Ill. 2015) (retainer funded by non-debtor affiliate to debtor's counsel did not disqualify debtor's counsel under section 327(a)); *In re Lotus Props. LP*, 200 B.R. 388, 390, 392 (Bankr. C.D. Cal. 1996) (finding that payment of prepetition retainer and ongoing counsel fees by general partner of debtor did not constitute

simplicity's sake, given that Emergent is the only current source of payment, and in recognition

that any and all fees to be paid by the Debtors are subject to allowance or a reasonableness

standard, the Debtors suggested a 50/50 allocation between the Debtors and Emergent in the

Application, but that is not a matter that needs to be addressed now.[5]  The Lender Parties can

object later, when a fee request actually is made – indeed, they already negotiated with PSZJ for

that very reservation of rights in the *Order Establishing Procedures for Interim Compensation*

*and Reimbursement of Expenses of Professionals* [Docket No. 79], entered on January 15, 2019

(the "Compensation Order").[6]  For now, the Lender Parties' objection is nothing more than a

litigation tactic in an effort to prevent the Debtors from retaining their special litigation counsel

of choice.[7]

A.       **The Debtors' Retention of Kasowitz Under Section 327(e) is Appropriate**

                5.       Notwithstanding the specialized nature of Kasowitz's retention as special

litigation counsel in the Adversary Proceeding, the Lender Parties argue that section 327(a) of the

---

impermissible conflict of interest, even where partner's and debtor's interests were "united," but "not absolutely identical").

[5]  This allocation provision will be deleted from the proposed form of order approving the Application.

[6]  *See* Compensation Order ¶ 9 ("Notwithstanding anything to the contrary in this Order, to the extent a Professional provides services to the Debtors and any non-Debtor(s), the rights of CLMG Corp. and LNV Corporation with respect to the appropriate allocation of any fees and expenses of such Professional, as among the Debtors and any non-Debtor(s), are expressly reserved.  Consistent with the terms of this Order, CLMG Corp. and LNV Corporation may object to the allocation of any such fees and expenses or any related payment by or purported liability of the Debtors, which objection, if not resolved consensually, shall be adjudicated by the Court.  To the extent that any objections with respect to the allocation of any fees and expenses are asserted by CLMG and LNV, the Debtors reserve all rights to respond to any such objections as appropriate.").

[7]  The Lender Parties' remaining objections are moot: (1) the Application does not adequately disclose the proposed arrangement for Kasowitz's compensation (although not required by Bankruptcy Rule 2014(a), Kasowitz's engagement letter with the Debtors and Emergent has now been provided to counsel for the Lender Parties), and (2) retention under section 328(a) of the Bankruptcy Code is improper (reference to section 328(a) will be deleted from the proposed form of order).

Bankruptcy Code should govern the firm's retention, rather than section 327(e), because the Adversary Proceeding is a significant component of these chapter 11 cases.

6.      In support of this novel position, the Lender Parties cite a non-binding, single asset real estate case from more than 20 years ago: *In re Argus Group 1700*, 199 B.R. 525 (Bankr. E.D. Pa. 1996). In *Argus*, the debtor sought to retain special counsel under section 327(e) to defend the debtor and a non-debtor against prepetition actions commenced by the Securities & Exchange Commission. The law firm in question was the debtor's largest unsecured creditor and, because it was a single asset real estate case where the secured lender consented to the use of cash collateral, general bankruptcy counsel effectively had no role in the case. Under these unique circumstances, the *Argus* court found that the special counsel would be the primary legal advisor to the debtor and the more rigorous standards for retention under section 327(a) should apply.

7.      *Argus* is readily distinguishable from the instant chapter 11 cases because these cases are not single asset real estate cases and there is a meaningful and clearly delineated role to be played by general bankruptcy counsel. The Debtors have retained PSZJ as general bankruptcy counsel to handle all aspects of these chapter 11 cases (and certain aspects of the Adversary Proceeding). Indeed, over the last two months, PSZJ has been solely responsible for: (a) obtaining Court approval of various first day motions, (b) handling the first day hearing in the case, (c) resolving all matters for purposes of the second day hearing, including a cash collateral objection asserted by the Lender Parties, (d) coordinating the retention of ordinary course and other professionals, (e) defending against and filing an objection to the Lender Parties' pending motion to conduct discovery under Bankruptcy Rule 2004, and (f) otherwise administering the numerous reporting and disclosure obligations associated with these cases, such as assisting the Debtors with the preparation and filing of their schedules of assets and liabilities and monthly operating reports

and defending the Debtors at the section 341 meeting of creditors.  Kasowitz has not had (and will

not have) any ongoing involvement in such bankruptcy matters and, of course, Kasowitz will not

be presenting or confirming a chapter 11 plan in these cases.  *See Stapleton v. Woodworkers*

*Warehouse, Inc. (In re Woodworkers Warehouse, Inc.)*, 323 B.R. 403, 407 (D. Del. 2005) (court

authorized debtor to retain special counsel under section 327(e) where debtor had retained separate

general bankruptcy counsel to conduct the basics of its chapter 11 case including formulating,

negotiating, finalizing, and seeking confirmation of a plan of reorganization).

8.    Under these circumstances, retention of Kasowitz as special litigation

counsel pursuant to section 327(e) of the Bankruptcy Code is entirely appropriate and consistent

with numerous other cases in this district.  *See, e.g.*, *In re Aerogroup Int'l, Inc.*, Case No. 17-

11962 (KJC), Order dated September 14, 2018 [Docket No. 1086]; *In re Jumio Inc.*, Case No.

16-10682 (BLS), Order dated April 27, 2016 [Docket No. 169]; *In re Capsule Int'l Hldgs. LLC*,

Case No. 13-13281 (CSS), Order dated October 20, 2014 [Docket No. 789].[8]

**B.    Kasowitz Does Not Represent an Interest Adverse to the Debtors**

9.    The Lender Parties urge the Court to find a debilitating conflict of interest

between the Debtors and Emergent, such that Kasowitz may not jointly represent them as

plaintiffs in the Adversary Proceeding.  The Lender Parties' reliance on *Argus* for support is

again misplaced.  In *Argus*, on its unique facts described above, the court found that the

simultaneous representation of a debtor and its non-debtor principals gave rise to a potential

conflict of interest where the debtor and non-debtor principals were defendants in a securities

---

[8]  The Lender Parties also seek to reserve the right to object to Kasowitz's engagement under section 327(e) to the
extent that Kasowitz did not represent the Debtors prepetition.  As stated in the Application, Kasowitz was retained
prepetition in October 2018 to represent the Debtors and prepared the complaint on behalf of each of the Debtors
and Emergent that was subsequently provided to the Lender Parties prior to the filing of these cases in draft form
and later filed to commence the Adversary Proceeding.

fraud case and the debtor was *not named* in certain causes of action – indeed, the "principal

charges" – *and* where the debtor actually was *adverse* to its co-defendants with respect to a

mismanagement claim.  *Id*. at 532.    Moreover, the retention application in *Argus* sought

permission to pay all litigation expenses out of the debtor's estate, including expenses incurred in

pursuing litigation that would only benefit the non-debtor principals.

    10.  Unlike the situation in *Argus*, the Debtors and Emergent are plaintiffs in the

Adversary Proceeding, pursuant to which both the Debtors (consistent with their duties to their

estates) and Emergent seek the highest possible recovery in terms of damages and reduction or

recharacterization of the outstanding obligations under the Loan Agreement.    Under these

circumstances, Kasowitz's joint representation of the Debtors and Emergent does not present an

actual or potential conflict of interest.  Where there is a single set of facts and a unity of interests

underlying a complaint, such as those asserted in the Adversary Proceeding, there is no conflict

and joint representation is permitted.  *See*, *e.g.*, *Kittay v. Kornstein*, 230 F.3d 531, 538-39 (2d Cir.

2000) ("'Where the interest of the special counsel and the interest of the estate are identical *with

respect to the matter for which special counsel is retained*, there is no conflict and the

representation can stand.'") (quoting *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176

F.3d 610, 620 (2d Cir. 1999)) (emphasis in original); *In re Milford Group, Inc.*, 164 B.R. 899, 902-

03 (Bankr. M.D. Pa. 1993) (authorizing special counsel employment where purported conflict

raised by opposition was a potential, rather than an actual, conflict, and the interests of the plaintiffs

in the litigation, rather than being adverse to one another, were "parallel").

    11.  In *In re Covenant Fin. Group of Amer., Inc.*, 243 B.R. 450 (Bankr. N.D.

Ala. 1999), special litigation counsel was permitted to represent the debtor, its shareholder, and

other affiliates, as co-plaintiffs in a legal malpractice action against defendant – who, like the

Lender Parties, strategically objected to the proposed retention of special litigation counsel under section 327(e). The *Covenant* court found no adverse interest because, as in these chapter 11 cases, the lawsuit was "based on a solitary set of facts," so the attorney "has no reason or opportunity to favor one plaintiff over another in prosecuting the liability portion of the lawsuit . . ." *Id.* at 457. Because "from the plaintiffs' collective perspective . . . the only human actor in the circumstances which resulted in the lawsuit" was the same, the court found "no danger of cross-claims being filed between the co-plaintiffs, or of evidence being submitted in support of the lawsuit by one or more plaintiffs that conflicts with evidence that might be submitted by one or more of the other plaintiffs." *Id.* at 457. "The evidence would be the same, whether the lawsuit was prosecuted by one plaintiff or all of the named plaintiffs or whether one lawyer represented all plaintiffs or each was represented separately." *Id.* (footnote omitted). The court also acknowledged that:

> [o]ften times a trustee may seek to employ an attorney to represent the estate in a cause of action designed to generate a recovery of money or property for an estate where . . . the attorney represents other persons involved in the same cause of action who will share in any recovery, (such as insider co-plaintiffs) . . . In those circumstances, the interests of the bankruptcy estate are parallel with or identical to, rather than adverse to, the interests of the attorney and the other parties that he or she represents. Consequently, section 327 will not ordinarily preclude the employment of the attorney in such circumstances, despite the fact that the attorney . . . may represent the debtor, an insider co-plaintiff, or a creditor.

*Id.* at 458 n.11.

12.    Contrary to the pages of speculative and hypothetical scenarios offered by the Lender Parties, the interests of the Debtors and Emergent with respect to the Adversary Proceeding are aligned. In addition, the Debtors are solvent. Accordingly, as the Lender Parties highlight, any equity in the Debtors (net of liabilities) may be upstreamed to Emergent in the form

of a dividend, as is common corporate practice.[9]   This possibility does not create an adverse interest, but rather supports a finding that there is a complete unity of interests between the Debtors and Emergent with respect to the claims asserted in the Adversary Proceeding.   In other words, because the Debtors are solvent, Emergent does not need to "swing for the fences" in litigation. *See id.* at 458 n.11 (quoting *Moore v. Kumer (In re Adam Furniture Indus.)*, 191 B.R. 249, 259 (Bankr. S.D. Ga. 1996)) ("Simply stated, 'There is no conflict where the interests represented by special counsel are parallel, rather than adverse.'"); *see also In re American Avia Associates-Sea*, 150 B.R. 24 (Bankr. S.D. Tex. 1992) (firm representing debtor and non-debtor plaintiffs in state court action was not representing any interest adverse to the estate because the plaintiffs had a complete unity of interest in finding the defendants liable for their alleged actions and any settlement of the litigation would require bankruptcy court approval).   In any event, the Court should not be influenced by the Lender Parties' numerous "what if" scenarios which all pre-suppose their views on various issues which they may choose to formally raise in these cases.

13.   In *In re AroChem Corp.*, 181 B.R. 693 (Bankr. D. Conn. 1995), *appeal dism'd*, 198 B.R. 425 (D. Conn. 1996), *aff'd*, 176 F.3d at 610, the chapter 7 trustee of consolidated corporate-debtor cases sought to employ a law firm as special counsel to represent the estates in certain non-bankruptcy lawsuits against various defendants, who themselves were creditors of the debtors.   At the time, in separate lawsuits pending against the same defendants named in the trustee's lawsuit, the law firm represented an individual who was a shareholder and former director

---

[9]   The fact that LNV asserts a participation interest in the proceeds of the Debtors' life insurance portfolio (even after LNV's debt is repaid) does not alter this analysis.  Both the Debtors and Emergent want LNV to recover nothing more than what LNV is legally entitled to recover under the Loan Agreement and applicable law.  Such result benefits both the Debtors and Emergent and maximizes the value of the Debtors' estates for all constituents, which in this solvent case includes Emergent.

of the debtors (and a creditor of the estates) and also represented certain corporate affiliates of that individual.  The creditor-defendants in the non-bankruptcy actions objected.

14.     The *Arochem* court concluded that, because the application was brought under section 327(e), the disinterestedness standard of section 327(a) was not applicable, and the only issue was whether the prospective applicant represented an interest that was adverse either to the debtor or the estate upon the matter on which it was to be engaged.  "[T]he question of adverse interest ultimately turns on whether the particular facts at issue within the scope of the proposed employment call into question the incentive of counsel to act with undivided loyalty to the estate."  *Id.* at 700.  Based on this standard, the court concluded that the law firm that the trustee sought to employ did not represent an interest adverse to the bankruptcy estate because, with respect to the trustee's action, there was an identity, rather than a conflict, of the interests represented by the law firm.  The court concluded:  "[Law firm] has an incentive to vigorously pursue the [individual] and the Trustee claims against their common adversaries."  *Id.* at 703.  Likewise, Kasowitz has an incentive to vigorously pursue the Debtors' claims and Emergent's claims against their common adversaries, LNV and the other defendants in the Adversary Proceeding.  The Court should not give any credence to the Lender Parties' fanciful musings to the contrary.

15.     Given that the interests of the Debtors and Emergent are aligned with respect to the Adversary Proceeding, Kasowitz does not represent an interest adverse to the estates "with respect to the matter on which [Kasowitz] is to be employed," 11 U.S.C. § 327(e), and may be retained by the Debtors as special counsel under section 327(e) of the Bankruptcy Code in connection with the prosecution of the Adversary Proceeding.

**C.**    **The Application Satisfies Bankruptcy Rule 2014**

16.    The Lender Parties trying to conjure up some wrongdoing suggest that the Application fails to comply with Bankruptcy Rule 2014(a) because the Application does not include a copy of the Kasowitz engagement agreement.  However, Bankruptcy Rule 2014(a) only requires that the Application "state . . . any proposed arrangement for compensation."  In the Application, Kasowitz has stated that it will be paid on a traditional hourly basis and disclosed the hourly rates of its attorneys and staff.  Nothing more is required under Bankruptcy Rule 2014(a) nor the precedents of this Court.

17.    Nonetheless, the Debtors have now produced the Kasowitz engagement agreement to the Lender Parties.  Not surprisingly, it simply states that Kasowitz will be (a) retained by the Debtors and Emergent; (b) compensated by the hour; (c) reimbursed for reasonable expenses; and (d) paid a retainer as previously disclosed, and that Kasowitz will cap its fees for preparation of the complaint.

**D.**    **The Objection is an Improper Litigation Tactic**

18.    The timing and motives behind the Objection are, at best, suspect, and more likely, deeply tactical and disturbing.[10]  The Lender Parties filed the Objection just two weeks after the commencement of the Adversary Proceeding, and they did so in retaliation for the lawsuit and also as a litigation tactic to replace the Debtors' choice of counsel.  The Lender Parties' position appears to be that the Debtors hire counsel separate from Emergent, while not being able to pay

---

[10]  The Lender Parties were provided the draft Complaint in or about mid-November 2018 (prior to the commencement of these cases) which bore a signature block of Kasowitz representing Emergent and each of the three Debtors.  PSZJ, on behalf of the Debtors, filed the Application seeking to retain Kasowitz on December 21, 2018.  The notice set an objection deadline of January 9, 2019.  Due to the government shutdown, the agenda cancelling the January 16, 2019 hearing, and adjourning the hearing until February 14, 2019 [Docket No. 82], stated that the objection deadline was "[e]xtended to January 11, 2019 at 12:00 p.m. (Eastern Time) for the UST, CLMG, and LNV."  Nevertheless, following the filing of the Adversary Proceeding and just days before the February 14, 2019 hearing, the Lender Parties filed the Objection, raising issues that have never been raised in any context before.

such new counsel out of the Debtors' estates because the Lender Parties will not allow their cash collateral to be used for this purpose.  Such an outcome would be very advantageous for the Lender Parties (and extremely prejudicial to the Debtors' estates) because it would mean that there would be no one to prosecute the Adversary Proceeding on behalf of the Debtors.

19.    The Debtors' choice of special litigation counsel is to be respected.  Given that the Objection was filed for strategic litigation purposes, it should be subjected to heightened judicial scrutiny and overruled.  *See Signature Apparel Group LLC v. Laurita (In re Signature Apparel Group LLC)*, 2013 Bankr. LEXIS 3748, at *1 (Bankr. S.D.N.Y. Sept. 10, 2013) ("Motions to disqualify are often prosecuted for tactical reasons to place an adversary at a disadvantage . . . .  [S]uch motions must be evaluated with care and properly are subjected to heightened judicial scrutiny."); *In re A&T Paramus Co.*, 253 B.R. 606, 615 (Bankr. D.N.J. 1999) (quoting *Alexander v. Primerica Hldgs., Inc.*, 822 F. Supp. 1099, 1118-19 (D.N.J. 1993)) ("It is noted that when a motion to disqualify appears to have been made primarily for strategic purposes or would provide the movant with undue tactical advantage, courts have been extremely reluctant to disqualify attorneys."); *In re Ampal-American Israel Corp.*, 534 B.R. 569, 585 (Bankr. S.D.N.Y. 2015) (overruling litigation parties' objection to chapter 7 trustee's application to retain law firm where it was "strategic"); *Ogle v. Wells Fargo Fin. Leasing, Inc. (In re Agway, Inc.)*, 2005 Bankr. LEXIS 2945, at *13 (Bankr. N.D.N.Y. Dec. 9, 2005) (quoting *Chemical Bank v. Affiliated FM Ins. Co.*, 1994 WL 141951, at *14 (S.D.N.Y. Apr. 20, 1994)) ("Courts must discourage [disqualification] motions born of little more than hardball litigation strategy sessions and advanced where there is no threat of actual prejudice.").

20.    The Objection represents a calculated, tactical decision by the Lender Parties to disqualify Kasowitz, the Debtors' counsel of choice.  This Court should not countenance such litigation tactics and should respect the Debtors' choice.

## CONCLUSION

21.    For the foregoing reasons, the Debtors respectfully submit that:  (a) the Application should be approved, (b) the Objection should be overruled, and (c) the Debtors should be authorized to retain Kasowitz as special litigation counsel under section 327(e) of the Bankruptcy Code for the limited purpose of prosecuting the Adversary Proceeding.

Dated:  February 11, 2019        PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Richard M. Pachulski (CA Bar No. 62337)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box. 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone:  (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:  rpachulski@pszjlaw.com
ikharasch@pszjlaw.com
mlitvak@pszjlaw.com
crobinson@pszjlaw.com

*Proposed Counsel to the Debtors*