IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | ) | Case No. 18-12808 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

---

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

---

Dated:  March 13, 2019

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:   rpachulski@pszjlaw.com
          ikharasch@pszjlaw.com
          mlitvak@pszjlaw.com
          crobinson@pszjlaw.com

Proposed Counsel for the Debtors

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738).  The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

ARTICLE I. RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS ............................................... 1

    A.    Rules of Interpretation, Computation of Time and Governing Law .................... 1

    B.    Defined Terms ........................................................................................................ 2

ARTICLE II. ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS .................. 9

    A.    Administrative Expense Claims ............................................................................ 9

    B.    Professional Fee Claims ...................................................................................... 10

    C.    Priority Tax Claims ............................................................................................. 10

ARTICLE III. CLASSIFICATION AND TREATMENT OF  CLASSIFIED CLAIMS AND EQUITY INTERESTS ......................................................................... 10

    A.    Summary ............................................................................................................. 10

    B.    Elimination of Vacant Classes ........................................................................... 11

    C.    Unimpairment of Claims and Equity Interests; No Solicitation or Voting ................................................................................................................ 11

    D.    Cramdown ........................................................................................................... 11

    E.    Classification and Treatment of Claims and Equity Interests ............................ 11

    F.    Special Provision Governing Unimpaired Claims .............................................. 14

    G.    Subordinated Claims ........................................................................................... 14

ARTICLE IV. DEEMED ACCEPTANCE OF THE PLAN ...................................................... 14

    A.    Presumed Acceptance of Plan ............................................................................. 14

    B.    No Presumed Rejection of Plan .......................................................................... 14

    C.    No Voting Classes ............................................................................................... 14

ARTICLE V. MEANS FOR IMPLEMENTATION OF THE PLAN ....................................... 14

    A.    General Settlement of Claims .............................................................................. 14

    B.    Corporate Existence ............................................................................................ 15

    C.    Vesting of Assets in the Reorganized Debtors ................................................... 15

**Page**

D.      New Exit Facility ................................................................................15

E.      Authorized Financing..........................................................................16

F.      Treatment of Vacant Classes ..............................................................16

G.      No Substantive Consolidation.............................................................16

H.      Release of Liens, Claims and Equity Interests....................................16

I.      Certificate of Incorporation and Bylaws.............................................17

J.      Management of Reorganized Debtors ..................................................17

K.      Company Action ..................................................................................17

L.      Cancellation of Notes, Certificates and Instruments...........................18

M.      Cancellation of Existing Instruments Governing Security Interests....18

N.      Restructuring Transactions ..................................................................19

O.      Plan Supplement and Other Plan Documents ......................................19

ARTICLE VI. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
            LEASES ..............................................................................................19

A.      Assumption and Rejection of Executory Contracts and Unexpired
            Leases..............................................................................................19

B.      Assignment of Executory Contracts or Unexpired Leases ..................20

C.      Rejection of Executory Contracts or Unexpired Leases ......................20

D.      Claims on Account of the Rejection of Executory Contracts or
            Unexpired Leases............................................................................20

E.      Cure of Defaults for Assumed Executory Contracts and Unexpired
            Leases..............................................................................................21

F.      Assumption of Insurance Policies........................................................21

G.      Indemnification Provisions ..................................................................21

ARTICLE VII. PROVISIONS GOVERNING DISTRIBUTIONS...........................................22

A.      Dates of Distributions .........................................................................22

**Page**

B.      Distribution Agent ........................................................................................22

C.      Cash Distributions ........................................................................................23

D.      Rounding of Payments ..................................................................................23

E.      *De Minimis* Distribution ..............................................................................23

F.      Distributions on Account of Claims Allowed After the Effective Date ............23

G.      General Distribution Procedures ....................................................................23

H.      Address for Delivery of Distributions ............................................................24

I.      Undeliverable Distributions and Unclaimed Property ......................................24

J.      Withholding Taxes .......................................................................................24

K.      Setoffs .......................................................................................................24

L.      Surrender of Cancelled Instruments or Securities ...........................................24

M.      Lost, Stolen, Mutilated or Destroyed Securities .............................................25

ARTICLE VIII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND DISPUTED CLAIMS ...........................................25

A.      No Filing of Proofs of Claim Except for Rejection Claims ...............................25

B.      Disputed Claims ..........................................................................................25

C.      Procedures Regarding Disputed Claims .........................................................25

D.      Allowance of Claims and Equity Interests ......................................................26

ARTICLE IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN ...................................................................................................26

A.      Conditions Precedent to Consummation .........................................................26

B.      Waiver of Conditions ...................................................................................28

C.      Effect of Non-Occurrence of Conditions to Consummation ..............................28

ARTICLE X. RELEASE, INJUNCTION AND RELATED PROVISIONS ..............................28

A.      General ......................................................................................................28

**Page**

B.      Release by Debtors ...................................................................................... 28

C.      Release by Holders of Claims and Equity Interests ................................... 29

D.      Discharge of Claims ................................................................................... 30

E.      Exculpation ................................................................................................ 30

F.      Preservation of Rights of Action ............................................................... 31

G.      Injunction ................................................................................................... 31

ARTICLE XI. BINDING NATURE OF PLAN ....................................................................... 32

ARTICLE XII. RETENTION OF JURISDICTION ............................................................... 32

ARTICLE XIII. MISCELLANEOUS PROVISIONS ............................................................. 34

A.      Dissolution of the Committee .................................................................... 34

B.      Payment of Statutory Fees ......................................................................... 34

C.      Modification of Plan ................................................................................... 34

D.      Revocation of Plan ..................................................................................... 34

E.      Entire Agreement ....................................................................................... 34

F.      Closing of Chapter 11 Cases ...................................................................... 34

G.      Successors and Assigns .............................................................................. 35

H.      Reservation of Rights ................................................................................. 35

I.      Further Assurances ..................................................................................... 35

J.      Severability ................................................................................................ 35

K.      Service of Documents ................................................................................ 36

L.      Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code ................................................................................... 36

M.      Governing Law ........................................................................................... 36

N.      Tax Reporting and Compliance ................................................................. 37

O.      Schedules ................................................................................................... 37

**Page**

P.   No Strict Construction ........................................................................37

Q.   Controlling Document ........................................................................37

## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

WHITE EAGLE ASSET PORTFOLIO, LP and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), propose the following joint chapter 11 plan of reorganization (the "Plan") for, among other things, the resolution of the outstanding Claims against, and Equity Interests in, the Debtors.  Unless otherwise noted, capitalized terms used in this Plan have the meanings set forth in Article I of the Plan.  The Debtors are the proponents of this Plan within the meaning of section 1129 of the Bankruptcy Code.  Reference is made to the Disclosure Statement (as such term is defined herein and distributed contemporaneously herewith) for a discussion of the Debtors' history, business, results of operations, historical financial information, projections and assets, and for a summary and analysis of this Plan and the treatment provided for herein.  There also are other agreements and documents that will be Filed with the Bankruptcy Court that are referenced in this Plan, the Plan Supplement, or the Disclosure Statement as Exhibits and Plan Schedules.  All such Exhibits and Plan Schedules are incorporated into and are a part of this Plan as if set forth in full herein. Subject to the requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, the Debtors reserve the right to alter, amend, modify, revoke or withdraw this Plan prior to its Consummation.

If the Plan cannot be confirmed as to some or all of the Debtors, then subject to the terms set forth herein, (a) the Plan may be revoked as to all of the Debtors, or (b) the Debtors may revoke the Plan as to any Debtor and confirm the Plan as to the remaining Debtors to the extent required.

## ARTICLE I.
## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.    Rules of Interpretation, Computation of Time and Governing Law

For purposes hereof:  (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document, as previously amended, modified or supplemented, if applicable, shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented in accordance with its terms; (d) unless otherwise specified, all references herein to "Articles," "Sections," "Exhibits" and "Plan Schedules" are references to Articles, Sections, Exhibits and Plan Schedules hereof or hereto; I unless otherwise stated, the words "herein," "hereof," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) any reference to an Entity as a Holder of a Claim or Equity Interest includes such Entity's successors and assigns; (h) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (i) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; and (j) "$" or "dollars" means Dollars in lawful currency of the United States of America.  The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

**B.** <u>**Defined Terms**</u>

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.     "*Accrued Professional Compensation*" means, with respect to a particular Professional, an Administrative Expense Claim of such Professional for compensation for services rendered or reimbursement of costs, expenses or other charges incurred after the Petition Date and prior to and including the Effective Date.

2.     "*Administrative Expense Claim*" means any Claim for costs and expenses of administration of the Chapter 11 Cases that is Allowed pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), 507(b) or 1114I(2) of the Bankruptcy Code, including, without limitation, (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estates and operating the business of the Debtors; (b) the Accrued Professional Compensation; and (c) all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code.

3.     "*Administrative Expense Claims Bar Date*" means the Business Day which is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

4.     "*Affiliate*" means an "affiliate" as defined in section 101(2) of the Bankruptcy Code.

5.     "*Allowed*" means any Claim or Equity Interest (a) expressly allowed under the Plan, (b) that is not Disputed, (c) that is either allowed or determined by order of the Bankruptcy Court, or (d) that is agreed to by the Debtor or Reorganized Debtor and the holder of such Claim or Interest.

6.     "*Allowed Claim or Equity Interest*" means a Claim or an Equity Interest of the type that has been Allowed.

7.     "*Amended Organizational Documents*" means the amended and restated certificate of incorporation and by-laws or other applicable organizational documents of the Reorganized Debtors, which shall be Filed with the Plan Supplement.

8.     "*Assets*" means all of the right, title, and interest of a Debtor in and to property of whatever type or nature (including, without limitation, real, personal, mixed, intellectual, tangible, and intangible property).

9.     "*Avoidance Actions*" means any and all avoidance, recovery, subordination or other actions or remedies that may be brought by and on behalf of the Debtors or their Estates under the Bankruptcy Code or applicable nonbankruptcy law, including, without limitation, actions or remedies arising under sections 502, 510 or 542-553 of the Bankruptcy Code.

10.     "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as amended from time to time and as applicable to the Chapter 11 Cases.

11.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware, or any other court having jurisdiction over the Chapter 11 Cases.

12.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, in each case as amended from time to time and as applicable to the Chapter 11 Cases.

13.     "*Business Day*" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

14.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

15.     "*Causes of Action*" means any action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license and franchise of any kind or character whatsoever, in each case whether known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including, without limitation, under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity or pursuant to any other theory of law.  For the avoidance of doubt, Cause of Action includes: (a) any right of setoff, counterclaim or recoupment and any claim for breach of contract or for breach of duties imposed by law or in equity; (b) the right to object to Claims or Equity Interests; (c) any claim pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claim or defense including fraud, mistake, duress and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (d) any claims under any state or foreign law, including, without limitation, any fraudulent transfer or similar claims.

16.     "*Chapter 11 Cases*" means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code, and styled *In re White Eagle Asset Portfolio, LP, et al.*, Case No. 18-12808 (KG).

17.     "*Claim*" means any "claim" against any Debtor as defined in section 101(5) of the Bankruptcy Code.

18.     "*Class*" means a category of Holders of Claims or Equity Interests as set forth in Article III hereof pursuant to section 1122(a) of the Bankruptcy Code.

19.     "*Committee*" means any committee of unsecured creditors in the Chapter 11 Cases appointed pursuant to section 1102 of the Bankruptcy Code.

20.     "*Confirmation Date*" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

21.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

22.     "*Confirmation Order*" means the order of the Bankruptcy Court both confirming this Plan pursuant to section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

23.     "*Consummation*" means the occurrence of the Effective Date.

24.     "*Debtor(s)*" means, individually, White Eagle Asset Portfolio, LP, Lamington Road Designated Activity Company, and White Eagle General Partner, LLC, in each case, in their capacities as debtors in the Chapter 11 Cases.

25.     "*Debtor(s) in Possession*" means, individually, each Debtor, as debtor in possession in their Chapter 11 Cases as of the Petition Date and, collectively, all Debtors, as debtors in possession in the Chapter 11 Cases.

26.     "*Disclosure Statement*" means that certain *Disclosure Statement for Debtors' Joint Chapter 11 Plan of Reorganization*, as amended, supplemented, or modified from time to time and describes this Plan, including all exhibits and schedules thereto and references therein that relate to this Plan.

27.     "*Disputed*" means, as to any Claim (or portion thereof) or Equity Interest against the Debtors, a Claim or Equity Interest to the extent the allowance of such Claim or Equity Interest is the subject of (i) a timely objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Confirmation Order, and which objection, request for estimation or dispute has not been withdrawn, with prejudice, or determined by an order of the Bankruptcy Court, or (ii) a dispute that is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law.

28.     "*Distribution Agent*" means the Reorganized Debtors or any party designated by the Reorganized Debtors to serve as distribution agent under this Plan.

29.     "*Distribution Record Date*" means the date for determining which Holders of Claims and Equity Interests are eligible to receive distributions hereunder, which date shall be the Confirmation Date.

30.     "*Effective Date*" means the Business Day as determined by the Debtors that this Plan becomes effective as provided in Article IX hereof.

31.     "*Entity*" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

32.     "*Equity Interest*" means any Equity Security in any Debtor, including, without limitation, all issued, unissued, authorized or outstanding partnership interests, shares of stock or limited company interests, *provided that* the term "Equity Interest" does not include any "Participation Interest" (as defined in the Prepetition Loan Agreement) or any other interest that may be asserted by the Prepetition Agent or the Prepetition Lender in connection with the Prepetition Loan Agreement.

33.     "*Equity Security*" means an "equity security" as defined in section 101(16) of the Bankruptcy Code.

34.     "*Estates*" means the bankruptcy estates of the Debtors created by virtue of section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

35.     "*Exculpated Parties*" means, collectively, the Debtors, the Reorganized Debtors, and their Related Persons who served in such capacity during the Chapter 11 Cases.

36.     "*Executory Contract*" means a contract to which any Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

37.     "*Exhibit*" means an exhibit annexed hereto, to the Plan Supplement, or as an appendix to the Disclosure Statement (as such exhibits are amended, modified or otherwise supplemented from time to time), which are incorporated by reference herein.

38.     "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court or its authorized designee in the Chapter 11 Cases.

39.     "*Final Order*" means an order or judgment of the Bankruptcy Court, which is in full force and effect, and as to which the time to appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument or rehearing shall then be pending or as to which any right to appeal, petition for *certiorari*, new trial, reargument, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors or the Reorganized Debtors, or, in the event that an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order of the Bankruptcy Court shall have been determined by the highest court to which such order was appealed, or *certiorari*, new trial, reargument or rehearing shall have been denied and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be Filed with respect to such order shall not preclude such order from being a Final Order.

40.     "*General Unsecured Claim*" means any prepetition Claim against any Debtor, including an Intercompany Claim, that is not a/an:  (a) Administrative Expense Claim; (b) Priority Tax Claim; (c) Other Priority Claim; (d) Other Secured Claim; (e) Prepetition Secured Lender Claim; or (f) Equity Interest.

41.     "*Governmental Unit*" means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

42.     "*Holder*" means an Entity holding a Claim against, or Equity Interest in, any Debtor.

43.     "*Impaired*" means, when used in reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

44.     "*Initial Distribution Date*" means, subject to the "Treatment" sections in Article III hereof, the date that is on or as soon as reasonably practicable after the Effective Date, when distributions under this Plan shall commence to Holders of Allowed Claims and Equity Interests.

45.     "*Intercompany Claims*" means any Claims of a Debtor or an Affiliate thereof against any other Debtor.

46.     "*Insurance Policies*" means all insurance policies maintained by the Debtors as of the Petition Date, including all life insurance policies or life settlements pursuant to which any of the Debtors is beneficiary.

47.     "*Lien*" means a "lien" as defined in section 101(37) of the Bankruptcy Code and, with respect to any asset, includes, without limitation, any mortgage, lien, pledge, charge, security interest or other encumbrance of any kind, or any other type of preferential arrangement that has the practical effect of creating a security interest, in respect of such asset.

48. "*Litigation Claims*" means the claims, rights of action, suits or proceedings, whether in law or in equity, whether known or unknown, that any Debtor or Estate may hold against any Entity, including, without limitation, the Causes of Action of the Debtors.

49. "*Local Rules*" means the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware.

50. "*New Exit Facility*" means a new credit facility to be provided to the Reorganized Debtors upon the Effective Date by the New Exit Facility Lenders pursuant to the New Exit Facility Documents.

51. "*New Exit Facility Documents*" means the credit agreement governing the New Exit Facility, if applicable, and the related notes, guarantees, and security documents, as the case may be, which may be Filed with the Plan Supplement.

52. "*New Exit Facility Lenders*" means the parties identified as lenders in the New Exit Facility Documents from time to time.

53. "*Ordinary Course Professionals Order*" means any Order approving the motion to employ ordinary course professionals to be Filed on or after the Petition Date in the Chapter 11 Cases.

54. "*Other Priority Claim*" means any Claim accorded priority in right of payment under section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Expense Claim.

55. "*Other Secured Claim*" means any Secured Claim other than a Prepetition Lender Secured Claim.

56. "*Participation Interest*" shall have the meaning set forth in Article III.B(3) hereof.

57. "*Person*" means a "person" as defined in section 101(41) of the Bankruptcy Code and also includes any natural person, corporation, general or limited partnership, limited liability company, firm, trust, association, government, governmental agency or other Entity, whether acting in an individual, fiduciary or other capacity.

58. "*Petition Date*" means the date on which each Debtor commenced its respective Chapter 11 Case.

59. "*Plan*" means this *Debtors' Joint Chapter 11 Plan of Reorganization*, including the Exhibits and Plan Schedules and all supplements, appendices, and schedules thereto, either in its present form or as the same may be altered, amended, modified or otherwise supplemented from time to time.

60. "*Plan Distribution*" means the payment or distribution of consideration to Holders of Allowed Claims and Equity Interests under this Plan.

61. "*Plan Documents*" means any of the documents, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including, without limitation, the documents to be included in the Plan Supplement and the New Exit Facility Documents, and as may be modified consistent with the terms hereof.

62.    "*Plan Schedule*" means a schedule annexed to either the Plan Supplement or as an appendix to the Disclosure Statement (as amended, modified or otherwise supplemented from time to time), or Filed as part of the Plan Supplement.

63.    "*Plan Supplement*" means, collectively, the compilation of documents and forms of documents, and all exhibits, attachments, schedules, agreements, documents and instruments referred to therein, ancillary or otherwise, including, without limitation, the Exhibits and Plan Schedules, all of which are incorporated by reference into, and are an integral part of, this Plan, as all of the same may be amended, modified, replaced and/or supplemented from time to time, which shall be Filed with the Bankruptcy Court on or before five (5) Business Days (unless otherwise ordered by the Bankruptcy Court) prior to the Confirmation Hearing.

64.    "*Postpetition*" means the time period beginning immediately upon the filing of the Chapter 11 Cases and ending on the Effective Date.

65.    "*Prepetition Agent*" means CLMG Corp. in its capacity as administrative agent and collateral agent under the Prepetition Loan Agreement, and its successors and assigns.

66.    "*Prepetition Lender*" means LNV Corporation, in its capacity as lender under the Prepetition Loan Agreement, and any successors and assigns thereof.

67.    "*Prepetition Loan Agreement*" means the Second Amended and Restated Loan and Security Agreement dated as of January 31, 2017 by and among White Eagle, as borrower, the Prepetition Agent, Imperial Finance & Trading, LLC, as initial servicer, initial portfolio manager, and as guarantor, Lamington Road Bermuda Ltd., as portfolio manager, the Prepetition Lender, as sole lender, and the Prepetition Agent, as administrative agent (as amended, waived, supplemented, or as otherwise modified from time to time).

68.    "*Prepetition Lender Secured Claim*" means any Claim arising under the Prepetition Loan Agreement and the documents ancillary thereto.

69.    "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

70.    "*Pro Rata*" means the proportion that (a) the Allowed amount of a Claim or Equity Interest in a particular Class bears to (b) the aggregate Allowed amount of all Claims or Equity Interests in such Class, unless this Plan provides otherwise.

71.    "*Professional*" means (a) any Entity employed in the Chapter 11 Cases pursuant to section 327, 363 or 1103 of the Bankruptcy Code or otherwise and (b) any Entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

72.    "*Professional Fee Claim*" means a Claim under sections 328, 330(a), 331, 363, 503 or 1103 of the Bankruptcy Code for Accrued Professional Compensation.

73.    "*Professional Fees Bar Date*" means the Business Day that is sixty (60) days after the Effective Date or such other date as approved by order of the Bankruptcy Court.

74.    "*Proof of Claim*" means a proof of Claim or Equity Interest Filed against any Debtor in the Chapter 11 Cases.

75.      "*Reinstated*" means, with respect to any Claim, (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:  (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) of the Bankruptcy Code expressly does not require to be cured; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; (iv) if such Claim arises from any failure to perform a non-monetary obligation, other than a default arising from failure to operate a non-residential real property lease subject to section 365(b)(1)(A) of the Bankruptcy Code, compensating the Holder of such Claim (other than any Debtor or an insider of any Debtor) for any actual pecuniary loss incurred by such Holder as a result of such failure; and (v) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the Holder of such Claim.

76.      "*Rejected Executory Contract/Unexpired Lease List*" means the list, if any (as may be amended), as determined by the Debtors, identifying Executory Contracts and/or Unexpired Leases that will be rejected by the Reorganized Debtors pursuant to the Plan, and which shall be Filed with the Plan Supplement.

77.      "*Related Persons*" means, with respect to any Person, such Person's predecessors, successors, assigns and Affiliates (whether by operation of law or otherwise), and each of their respective officers, directors, employees, managers, managing members, financial advisors, attorneys, accountants, investment bankers, and other representatives, in each case acting in such capacity.

78.      "*Releasing Debtor Parties*" means the Debtors and Reorganized Debtors, in their individual capacities and as debtors-in-possession, and their respective Related Persons.

79.      "*Released Parties*" means, collectively, each in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the New Exit Facility Lenders; and (d) the Related Persons of each of (a) through (c) of the foregoing.

80.      "*Releasing Parties*" means, collectively, each in its capacity as such, Holders of Claims and Equity Interests that are Unimpaired under this Plan and the Related Persons thereof.

81.      "*Reorganized Debtors*" means each of the Debtors, as reorganized pursuant to this Plan on or after the Effective Date.

82.      "*Restructuring*" means the financial restructuring of the Debtors, the principal terms of which are set forth in this Plan, the Disclosure Statement, and the Plan Supplement.

83.      "*Restructuring Transactions*" means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code to occur on the Effective Date or as soon as reasonably practicable thereafter that may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate this Plan, including (a) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with or reasonably necessary to implement the terms of this Plan and that satisfy the requirements of applicable law; (c) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any property, right, liability, duty, or

obligation on terms consistent with the terms of the Plan and the Plan Documents; and (d) all other actions that the Debtors or Reorganized Debtors, as applicable, determine are necessary or appropriate and consistent with the Plan and the Plan Documents.

84. "*Schedules*" means the schedules of Assets and liabilities, statements of financial affairs, lists of Holders of Claims and Equity Interests and all amendments or supplements thereto Filed by the Debtors with the Bankruptcy Court.

85. "*Secured Claim*" means a Claim that is secured by a Lien on property in which any Debtor's Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or, in the case of setoff, pursuant to section 553 of the Bankruptcy Code.

86. "*Security*" or "*security*" means any security as such term is defined in section 101(49) of the Bankruptcy Code.

87. "*Stamp or Similar Tax*" means any stamp tax, recording tax, personal property tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales tax, use tax, transaction privilege tax (including, without limitation, such taxes on prime contracting and owner-builder sales), privilege taxes (including, without limitation, privilege taxes on construction contracting with regard to speculative builders and owner builders), and other similar taxes imposed or assessed by any Governmental Unit.

88. "*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

89. "*Unimpaired*" means, with respect to a Class of Claims or Equity Interests that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

90. "*White Eagle*" means Debtor White Eagle Asset Portfolio, LP.

## ARTICLE II.
## ADMINISTRATIVE EXPENSES AND PRIORITY TAX CLAIMS

### A.    Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; *provided, however*, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtors or Reorganized Debtors in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

B.    **Professional Fee Claims**

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within sixty (60) days after the Effective Date, and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim; *provided* that the Reorganized Debtors will pay Professionals in the ordinary course of business, for any work performed after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order(s) relating to or allowing any such Professional Fee Claim; *provided, further*, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by the later of (a) ninety (90) days after the Effective Date and (b) thirty (30) days after the Filing of the applicable request for payment of the Professional Fee Claim.  Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim.

C.    **Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or Reorganized Debtors:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtors may prepay any or all such Claims at any time, without premium or penalty.

**ARTICLE III.**
**CLASSIFICATION AND TREATMENT OF**
**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

A.    **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a

different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

### Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Lender Secured Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 5 | Equity Interests in Debtors | Unimpaired | Deemed to Accept |

**B.**     **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

**C.**     **Unimpairment of Claims and Equity Interests; No Solicitation or Voting**

All Holders of Allowed Claims and Equity Interests are Unimpaired, are not entitled to vote on this Plan, and are deemed to accept this Plan.

**D.**     **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject this Plan or is determined to be entitled to vote on this Plan and does not vote to accept this Plan, the Debtors may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

**E.**     **Classification and Treatment of Claims and Equity Interests**

> 1.     Class 1 – Other Priority Claims
>
> > • *Classification*:  Class 1 consists of the Other Priority Claims.
> >
> > • *Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date or (ii) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such

Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

2.    Class 2 – Other Secured Claims

- *Classification*:  Class 2 consists of the Other Secured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (C) return of such portion of the collateral securing such Allowed Class 2 Claim with a value sufficient to fully satisfy such Claim; or (D) such other treatment rendering such Claim Unimpaired.  Except with respect to Claims that are treated in accordance with the preceding clause (C), each Holder of an Allowed Other Secured Claim will retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment of such Allowed Other Secured Claim is made as provided herein.

- *Impairment and Voting*:  Class 2 is Unimpaired, and the Holders of Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

3.    Class 3 – Prepetition Lender Secured Claims

- *Classification*:  Class 3 consists of the Prepetition Lender Secured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 3 Claim or (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 3 Claim will have

agreed upon in writing.  Upon payment of such Allowed Prepetition Lender Secured Claim as provided herein, all Liens securing the Allowed Prepetition Lender Secured Claim shall be extinguished and released.  Notwithstanding the foregoing, the Debtors expressly reserve any and all rights to:  (A) assert rights, claims, and defenses against the Prepetition Agent and the Prepetition Lender with respect to the Prepetition Lender Secured Claims or otherwise and (B) contest, dispute, or otherwise challenge any Prepetition Lender Secured Claims including with respect to the "Aggregate Participation Interest", the "Participation Interest", and any other terms utilized to reflect such component of the Prepetition Lender Secured Claims in the Prepetition Loan Agreement (collectively, the "Participation Interest").

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

4.      Class 4 – General Unsecured Claims

- *Classification*:  Class 4 consists of the General Unsecured Claims.

- *Treatment*:  Each Holder of an Allowed Class 4 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive Cash in an amount equal to such Allowed Class 4 Claim on the later of: (a) the Effective Date, or as soon as practicable thereafter; or (b) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 4 Claim.  Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

5.      Class 5 – Equity Interests in the Debtors

- *Classification*:  Class 5 consists of the Equity Interests in the Debtors.

- *Treatment*:  On the Effective Date, the Holders of the Equity Interests in each of the Debtors as of the Petition Date shall retain such Equity Interests in each of the Reorganized Debtors.

- *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Equity Interests in the Debtors will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 5 Equity Interests in the Debtors are not entitled to vote to accept or reject the Plan and will not be solicited.

**F.**    **Special Provision Governing Unimpaired Claims**

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to contracts to be assumed under the Plan.

**G.**    **Subordinated Claims**

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Under section 510 of the Bankruptcy Code, upon written notice, the Reorganized Debtors reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

**ARTICLE IV.**
**DEEMED ACCEPTANCE OF THE PLAN**

**A.**    **Presumed Acceptance of Plan**

All Classes of Claims and Equity Interests are Unimpaired under the Plan, and are, therefore, presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

**B.**    **No Presumed Rejection of Plan**

No Class of Claims or Equity Interests is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**C.**    **No Voting Classes**

No Class of Claims or Equity Interests will be entitled to vote to accept or reject the Plan.

**ARTICLE V.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.**    **General Settlement of Claims**

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

## B.    Corporate Existence

The Debtors will continue to exist after the Effective Date as separate legal entities, with all of the powers of corporations, limited liability companies, and partnerships pursuant to the applicable law in their states or country of incorporation or organization pursuant to the Amended Organizational Documents.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may take such action not inconsistent with the Plan and as permitted by applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing:  (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter.

On the Effective Date or as soon thereafter as is reasonably practicable, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate this Plan, including, without limitation:  (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of this Plan and the Plan Documents and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of this Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation and amendments thereto; (iv) reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including, without limitation, making filings or recordings that may be required by applicable law.

## C.    Vesting of Assets in the Reorganized Debtors

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action and, unless otherwise waived or released pursuant to an order of the Bankruptcy Court or the Plan, Avoidance Actions) and any property and Assets acquired by the Debtors pursuant to the Plan will vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances.  Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors will pay the charges that they incur after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

## D.    New Exit Facility

The Debtors shall enter into the New Exit Facility on or before the Effective Date.  The Confirmation Order shall be deemed approval of the New Exit Facility and the New Exit Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken,

undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the New Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the New Exit Facility.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Exit Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Exit Facility Documents, (c) shall be deemed perfected and first priority on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Exit Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

The New Exit Facility shall provide, as of the Effective Date, sufficient funding or deemed funding, together with the Debtors' Cash on hand, to satisfy the Allowed Prepetition Lender Secured Claims in full.

### E.    Authorized Financing

On the Effective Date, the applicable Reorganized Debtors shall be and are authorized to execute and deliver the New Exit Facility Documents and any related loan documents, and shall be and are authorized to execute, deliver, file, record and issue any other notes, guarantees, deeds of trust, security agreements, documents (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity, subject to the lien limitations set forth herein.  Any holder of a lien or security interest whose claim is satisfied under the Plan, shall be required to file terminations of any perfection instruments.

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be obtained from the New Exit Facility and the Reorganized Debtors' Cash balances, including Cash from operations.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors.

### F.    Treatment of Vacant Classes

Any Claim or Equity Interest in a Class considered vacant under Article III.B. of this Plan shall receive no Plan Distribution.

### G.    No Substantive Consolidation

The Plan does not provide for substantive consolidation of the Debtors.  Each of the Estates of the Debtors shall remain separate and distinct for all purposes under the Plan, including for purposes of classifying and treating Claims under the Plan.

### H.    Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates will be fully released, terminated, extinguished and discharged, in each

case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  Any Entity holding such Liens or Equity Interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

## I.    Certificate of Incorporation and Bylaws

The Amended Organizational Documents shall amend or succeed the certificates or articles of incorporation, by-laws and other organizational documents of the Reorganized Debtors to satisfy the provisions of the Plan and the Bankruptcy Code, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein.  After the Effective Date, the Reorganized Debtors may amend and restate their certificates or articles of incorporation and by-laws, and other applicable organizational documents, as permitted by applicable law.

## J.    Management of Reorganized Debtors

As of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date.  Except as set forth in the Plan, any other directors, managers, or officers of the Debtors shall be deemed removed as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, prior to the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial board of directors or as a manager or officer of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director, manager or officer, the nature of any compensation for such Person.  Each such director and each officer will serve from and after the Effective Date pursuant to applicable law and the terms of the Amended Organizational Documents and the other constituent and organizational documents of the Reorganized Debtors.

## K.    Company Action

Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors and as applicable or by any other Person (except for those expressly required pursuant to the Plan).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, managers or members of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to

applicable law and without any requirement of further action by the stockholders, directors, managers or members of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtor, as applicable, and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtor, as applicable, or by any other Person. On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtor, as applicable, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and each Reorganized Debtor, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The secretary and any assistant secretary of each Debtor and each Reorganized Debtor, as applicable, will be authorized to certify or attest to any of the foregoing actions.

**L.    Cancellation of Notes, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under this Plan and except as otherwise set forth in this Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. Notwithstanding such cancellation and discharge, the Prepetition Loan Agreement shall continue in effect to the extent necessary to: (1) allow the Prepetition Lender and the Prepetition Agent to receive Plan Distributions on account of the Allowed Prepetition Lender Secured Claims and (2) allow the Reorganized Debtors to make distributions pursuant to the Plan. The commitments and obligations (if any) of the Prepetition Lender to extend any further or future credit or financial accommodations to any of the Debtors or any of their respective successors or assigns under the Prepetition Loan Agreement shall fully terminate and be of no further force or effect on the Effective Date.

**M.    Cancellation of Existing Instruments Governing Security Interests**

Upon payment or other satisfaction of an Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim, or promptly thereafter, the Holder of such Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

**N.**    **Restructuring Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with this Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with this Plan.

**O.**    **Plan Supplement and Other Plan Documents**

The documents to be Filed as part of the Plan Supplement and the other Plan Documents, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I hereof) and fully enforceable as if stated in full herein.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including, without limitation, employment agreements) and Unexpired Leases that:

- have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

- have been rejected by order of the Bankruptcy Court;

- are the subject of a motion to reject pending on the Effective Date;

- are identified in the Rejected Executory Contract/Unexpired Lease List; or

- are rejected pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

**B.**    **Assignment of Executory Contracts or Unexpired Leases**

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtors will serve upon counterparties to such Executory Contracts and Unexpired Leases a notice of the proposed assumption and assignment that will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors will file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts.  Any applicable cure amounts will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be Filed, served and actually received by the Debtors at least three (3) Business Days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease.  The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  The Reorganized Debtors, in their sole option, reserve the right to reject such Executory Contract or Unexpired Lease at any time in lieu of assuming and assigning it.

**C.**    **Rejection of Executory Contracts or Unexpired Leases**

All Executory Contracts and Unexpired Leases identified in the Rejected Executory Contract/Unexpired Lease List shall be deemed rejected as of the Effective Date.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections identified in the Rejected Executory Contract/Unexpired Lease List and this Article of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**D.**    **Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after notice of such rejection.  The Debtors or Reorganized Debtors, as the case may be, will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as

otherwise provided in the Plan. All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article X.G. of the Plan. All Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

## E.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or Reorganized Debtors, as applicable, upon assumption thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Following the Petition Date, the Debtors may serve a notice on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with this Plan and setting forth the proposed Cure Amount (if any). If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized Debtors, as applicable intend to assume does not receive such a notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0).

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption must be Filed, served and actually received by the Debtors at least five (5) Business Days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged cure amount, which may be asserted at any time. In the event of a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. The Debtors or Reorganized Debtors, as applicable, in their sole option, reserve the right to reject such Executory Contract or Unexpired Lease at any time in lieu of assuming it.

## F.    Assumption of Insurance Policies

The Debtors and, upon the Effective Date, the Reorganized Debtors, will assume all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and all such Insurance Policies shall vest in the Reorganized Debtors. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies and all such Insurance Policies shall continue in full force and effect thereafter in accordance with their respective terms. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under the Insurance Policies.

## G.    Indemnification Provisions

All indemnification provisions currently in place (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the directors, officers and managers of the Debtors who served in such capacity as of the Petition Date with respect to or based upon any act or omission taken or omitted in such capacities, for or on behalf of the Debtors, will be Reinstated (or assumed, as the case may be), and will survive effectiveness of the Plan. No such

Reinstatement or assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable.

# ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

### A.    Dates of Distributions

Except as otherwise provided in the plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Equity Interests in the applicable Class and in the manner provided herein.  In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.  If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in the Plan.  Except as otherwise provided in the Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Reorganized Debtors shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Confirmation Order.  All payments and all distributions made by the Distribution Agent under the Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Reorganized Debtors.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtors and the Equity Interests in the Debtors shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests.  The Reorganized Debtors and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the Transfer of any Claims against the Debtors or Equity Interests in the Debtors occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

### B.    Distribution Agent

Except as provided therein, all distributions under the Plan shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Debtors as a Distribution Agent on the Effective Date or thereafter.  The Reorganized Debtors, or such other Entity designated by the Debtors to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with

respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions hereof.

### C.    Cash Distributions

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

### D.    Rounding of Payments

Whenever the Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash to be distributed under the Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under the Plan.

### E.    *De Minimis* Distribution

Except as to any Allowed Claim that is Unimpaired under the Plan, none of the Reorganized Debtors or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in Article XIII.K. hereof within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall revert to the Reorganized Debtors. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Notwithstanding any other provision of the Plan, none of the Reorganized Debtors or any Distribution Agent shall have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

### F.    Distributions on Account of Claims Allowed After the Effective Date

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### G.    General Distribution Procedures

The Reorganized Debtors, or any other duly appointed Distribution Agent, shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

## H.    Address for Delivery of Distributions

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim Filed by such Holders (to the extent such proofs of claim are Filed in the Chapter 11 Cases), (2) at the addresses set forth in any written notices of address change delivered to the Debtors, or (3) at the addresses in the Debtors' books and records.

## I.    Undeliverable Distributions and Unclaimed Property

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder, unless and until the Reorganized Debtors is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within one (1) year from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

## J.    Withholding Taxes

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Reorganized Debtors shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  As a condition to receiving any distribution under the Plan, the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

## K.    Setoffs

The Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and causes of action that the Reorganized Debtors possesses against such Holder.

## L.    Surrender of Cancelled Instruments or Securities

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to Article V of the Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable

instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Reorganized Debtors or another applicable Distribution Agent unless waived in writing by the Debtors or the Reorganized Debtors, as applicable.

**M.** **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Reorganized Debtors and other applicable Distribution Agent: (x) evidence reasonably satisfactory to the Reorganized Debtors and other applicable Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Reorganized Debtors and other applicable Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim. Upon compliance with Article VII.L of the Plan as determined by the Debtors or Reorganized Debtors by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to Reorganized Parent and other applicable Distribution Agent.

**ARTICLE VIII.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED AND DISPUTED CLAIMS**

**A.** **No Filing of Proofs of Claim Except for Rejection Claims**

Except with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases or as otherwise provided under the Plan, Holders of Claims shall not be required to file a Proof of Claim and no parties should file a Proof of Claim. Unless disputed by the Holder of a Claim, the amount set forth in the applicable Debtor's books and records, subject to any limitations on allowance imposed by section 502 of the Bankruptcy Code, shall constitute the Allowed amount of such Holder's Claim.

**B.** **Disputed Claims**

The Reorganized Debtors intend to attempt to resolve Disputed Claims, aside from Prepetition Lender Secured Claims, consensually or through judicial means outside the Bankruptcy Court. The Allowed amount, if any, of the Prepetition Lender Secured Claims will be determined by the Bankruptcy Court. The Reorganized Debtors may, in their discretion, file with the Bankruptcy Court an objection to the allowance of any other Disputed Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, *provided, however*, that the Reorganized Debtors, may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court. Unless otherwise provided in the Confirmation Order, the Reorganized Debtors are authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of any Claim that is not an Allowed Claim.

**C.** **Procedures Regarding Disputed Claims**

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim

becomes an Allowed Claim and the amount of such Allowed Claim is determined by order of the Bankruptcy Court or by stipulation between the Debtors and the Holder of the Claim.

## D.    **Allowance of Claims and Equity Interests**

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

The Equity Interests in the Debtors existing as of the Petition Date are deemed allowed.

### 1.    Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim will become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

### 2.    Estimation

The Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another.  Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.  The rights and objections of all parties are reserved in connection with any such estimation proceeding.

## ARTICLE IX.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

## A.    **Conditions Precedent to Consummation**

Consummation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.B. of the Plan of the following:

- The Bankruptcy Court shall have determined that the Debtors are indebted and liable to the Holders of the Prepetition Secured Lender Claims in an amount not to exceed:  (i) the aggregate principal amount of $367.9 million (all of which reflects funds advanced by the Prepetition Lender to White Eagle), plus (ii) accrued (both before and after the Petition Date) and unpaid interest and fees payable under the Prepetition Loan Agreement and related documentation as of the Effective Date, including any distributions to which the Prepetition Lender is entitled on account of the Participation Interest as of the Effective Date, based on actual

recoveries from the proceeds of White Eagle's insurance policies realized as of such date.

- The Bankruptcy Court will have entered a Final Order in form and in substance satisfactory to the Debtors approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Confirming the Plan.

- The Plan and Plan Supplement and all schedules, documents, supplements and exhibits to the Plan will have been Filed in form and substance acceptable to the Debtors.

- The Confirmation Order shall have been entered, shall be a Final Order, and shall be in form and substance acceptable to the Debtors.  The Confirmation Order shall provide that, among other things, (a) the Debtors or the Reorganized Debtors, as appropriate, are authorized to take all actions necessary or appropriate to consummate the Plan and the Restructuring Transactions, including, without limitation, (i) entering into, implementing and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in the Plan, (ii) making all distributions and issuances as required under the Plan; and (iii) entering into any agreements and transactions as set forth in the Plan Supplement, including the New Exit Facility; (b) the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent; (c) the implementation of the Plan in accordance with its terms is authorized; and (d) pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under the Plan, shall not be subject to any Stamp or Similar Tax.

- All documents and agreements necessary to implement the Plan, including without limitation, the New Exit Facility Documents, in each case in form and substance acceptable to the Debtors, will have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements will have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement the Plan, including, without limitation, the Amended Organizational Documents, will have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent Consummation of the Restructuring.

**B.**    <u>**Waiver of Conditions**</u>

The conditions to Consummation of the Plan set forth in this Article IX may be waived by the Debtors without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.  The failure to satisfy or waive a condition to Consummation may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied.  The failure of the Debtors or Reorganized Debtors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

**C.**    <u>**Effect of Non-Occurrence of Conditions to Consummation**</u>

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will:  (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

**ARTICLE X.**
<u>**RELEASE, INJUNCTION AND RELATED PROVISIONS**</u>

**A.**    <u>**General**</u>

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

**B.**    <u>**Release by Debtors**</u>

EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY ACKNOWLEDGED AND CONFIRMED, THE RELEASING DEBTOR PARTIES SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER PROVIDED A FULL DISCHARGE, WAIVER AND RELEASE TO THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FOREVER RELEASED, WAIVED AND DISCHARGED BY THE RELEASING DEBTOR PARTIES) AND THEIR RESPECTIVE PROPERTIES FROM ANY AND ALL CLAIMS, INTERESTS, CAUSES OF ACTION, LITIGATION CLAIMS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR

IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY IN WHOLE OR IN PART TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, OR THE PLAN THAT SUCH RELEASING DEBTOR PARTIES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTORS, THEIR ESTATES OR THE REORGANIZED DEBTORS (WHETHER DIRECTLY OR DERIVATIVELY) AGAINST ANY OF THE RELEASED PARTIES; *PROVIDED, HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT; (II) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; (III) THE RIGHTS OF SUCH RELEASING DEBTOR PARTY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT; AND/OR (IV) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY OF THE RESTRUCTURING TRANSACTIONS, OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.  THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.  NOTWITHSTANDING THE FOREGOING, THE DEBTORS ARE NOT RELEASING THE DEBTORS (BUT THEY ARE RELEASING THE RELATED PERSONS TO THE DEBTORS PURSUANT TO THIS PARAGRAPH).

## C.     Release by Holders of Claims and Equity Interests

EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING AND THE RESTRUCTURING TRANSACTIONS, AND EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR IN THE CONFIRMATION ORDER, THE RELEASED PARTIES SHALL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS, INTERESTS, CAUSES OF ACTION, LITIGATION CLAIMS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH RELEASING PARTIES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE RELEASING PARTIES, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY

CLAIM OR INTEREST THAT IS TREATED IN THIS PLAN, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIM OR EQUITY INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, THE RESTRUCTURING TRANSACTIONS, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE DISCLOSURE STATEMENT, THE RESTRUCTURING SUPPORT AGREEMENT, THE PLAN, THE NEW EXIT FACILITY DOCUMENTS, AND RELATED AGREEMENTS, INSTRUMENTS, AND OTHER DOCUMENTS (INCLUDING THE PLAN DOCUMENTS), OR ANY OTHER ACT OR OMISSION; *PROVIDED, HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; (II) THE RIGHTS OF SUCH RELEASING PARTY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT; AND/OR (III) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY OF THE RESTRUCTURING TRANSACTIONS, OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.  THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.

### D.    Discharge of Claims

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

### E.    Exculpation

The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or Consummation of the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to

have constituted gross negligence or willful misconduct; *provided, further*, that each Exculpated Party will be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

## F.   Preservation of Rights of Action

### 1.   Maintenance of Causes of Action

Except as otherwise provided in Article X or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases.  The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court.

### 2.   Preservation of All Causes of Action Not Expressly Settled or Released

Unless a Cause of Action or Litigation Claim against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action or Litigation Claim for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the confirmation of the Plan or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action or Litigation Claims have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article X of the Plan) or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

## G.   Injunction

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.  BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE

PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST WILL BE
DEEMED TO HAVE SPECIFICALLY CONSENTED TO THIS INJUNCTION.  ALL
INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER
SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN
EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND
EFFECT UNTIL THE EFFECTIVE DATE.

## ARTICLE XI.
## BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE,
THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF
CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS AND SUCH
HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT
PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH
HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY
UNDER THE PLAN.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding the entry
of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall,
after the Effective Date, retain such jurisdiction over the Chapter 11 Cases and all Entities with
respect to all matters related to the Chapter 11 Cases, the Debtors and this Plan as legally
permissible, including, without limitation, jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate or establish the
priority, secured, unsecured, or subordinated status of any Claim or Equity Interest, including,
without limitation, the resolution of any request for payment of any Administrative Expense
Claim and the resolution of any and all objections to the allowance or priority of any Claim or
Equity Interest;

2.      grant or deny any applications for allowance of compensation or
reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan, for periods
ending on or before the Confirmation Date; *provided*, *however*, that, from and after the Effective
Date, the Reorganized Debtors shall pay Professionals in the ordinary course of business for any
work performed after the Effective Date and such payment shall not be subject to the approval of
the Bankruptcy Court;

3.      resolve any matters related to the assumption, assignment or rejection of
any Executory Contract or Unexpired Lease to which any Debtor is party or with respect to
which any Debtor or Reorganized Debtor may be liable and to adjudicate and, if necessary,
liquidate, any Claims arising therefrom, including, without limitation, (a) those matters related to
any amendment to this Plan after the Effective Date to add Executory Contracts or Unexpired
Leases to the list of Executory Contracts and Unexpired Leases to be assumed; and (b) any
dispute regarding whether a contract or lease is or was executory or expired;

4.      resolve any issues related to any matters adjudicated in the Chapter 11
Cases;

5.      ensure that distributions to Holders of Allowed Claims and Equity
Interests are accomplished pursuant to the provisions of this Plan;

6.    decide or resolve any motions, adversary proceedings, contested or litigated matters and any other Causes of Action that are pending as of the Effective Date or that may be commenced in the future, and grant or deny any applications involving the Debtors that may be pending on the Effective Date or instituted by the Reorganized Debtors after the Effective Date, *provided* that the Reorganized Debtors shall reserve the right to commence actions in all appropriate forums and jurisdictions;

7.    enter such orders as may be necessary or appropriate to implement or consummate the provisions of this Plan and all other contracts, instruments, releases, and other agreements or documents adopted in connection with this Plan, the Plan Supplement or the Disclosure Statement;

8.    resolve any cases, controversies, suits or disputes that may arise in connection with the Consummation, interpretation or enforcement of this Plan or any Entity's obligations incurred in connection with this Plan; *provided*, *however*, that any dispute arising under or in connection with the New Exit Facility Documents shall be dealt with in accordance with the provisions of the applicable document;

9.    hear and determine all Causes of Action that are pending as of the Effective Date or that may be commenced in the future;

10.    issue injunctions and enforce them, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of this Plan, except as otherwise provided in this Plan;

11.    enforce the terms and condition of this Plan and the Confirmation Order;

12.    resolve any cases, controversies, suits or disputes with respect to the release, exculpation, indemnification and other provisions contained in Article X hereof and enter such orders or take such others actions as may be necessary or appropriate to implement or enforce all such releases, injunctions and other provisions;

13.    hear and determine the Litigation Claims by or on behalf of the Debtors or Reorganized Debtors;

14.    enter and implement such orders or take such others actions as may be necessary or appropriate if the Confirmation Order is modified, stayed, reversed, revoked or vacated;

15.    resolve any other matters that may arise in connection with or relate to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document adopted in connection with this Plan or the Disclosure Statement; *provided*, *however*, that any dispute arising under or in connection with the New Exit Facility Documents shall be dealt with in accordance with the provisions of the applicable document; and

16.    enter an order concluding or closing the Chapter 11 Cases.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

**A.**     **Dissolution of the Committee**

On the Effective Date, the Committee (if any) and any other statutory committee formed in connection with the Chapter 11 Cases shall dissolve automatically and all members thereof shall be released and discharged from all rights, duties and responsibilities arising from, or related to, the Chapter 11 Cases.

**B.**     **Payment of Statutory Fees**

All outstanding fees payable pursuant to 28 U.S.C. § 1930 shall be paid on the Effective Date.  All such fees payable after the Effective Date shall be paid when due or as soon thereafter as practicable until the Chapter 11 Cases are closed, converted, or dismissed.

**C.**     **Modification of Plan**

Effective as of the date hereof and subject to the limitations and rights contained in this Plan:  (a) the Debtors reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify this Plan prior to the entry of the Confirmation Order; and (b) after the entry of the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, may, after notice and hearing and entry of an order of the Bankruptcy Court, amend or modify this Plan, in accordance with section 1127(b) of the Bankruptcy Code or remedy any defect or omission or reconcile any inconsistency in this Plan in such manner as may be necessary to carry out the purpose and intent of this Plan.

**D.**     **Revocation of Plan**

The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to File subsequent chapter 11 plans.  If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan or Consummation of this Plan does not occur, then:  (1) this Plan shall be null and void in all respects; (2) any settlement or compromise embodied in this Plan, assumption or rejection of Executory Contracts or Unexpired Leases effected by this Plan and any document or agreement executed pursuant hereto shall be deemed null and void except as may be set forth in a separate order entered by the Bankruptcy Court; and (3) nothing contained in this Plan shall:  (a) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Entity; (b) prejudice in any manner the rights of the Debtors or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by the Debtors or any other Entity.

**E.**     **Entire Agreement**

Except as otherwise described herein, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**F.**     **Closing of Chapter 11 Cases**

The Reorganized Debtors shall, promptly after the full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Cases.

**G.**     **Successors and Assigns**

This Plan shall be binding upon and inure to the benefit of the Debtors and their respective successors and assigns, including, without limitation, the Reorganized Debtors. The rights, benefits, and obligations of any Person or Entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such Person or Entity.

**H.**     **Reservation of Rights**

Except as expressly set forth herein, this Plan shall have no force or effect unless and until the Bankruptcy Court enters the Confirmation Order and this Plan is Consummated. Neither the filing of this Plan, any statement or provision contained herein, nor the taking of any action by the Debtors or any other Entity with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of: (1) the Debtors with respect to the Holders of Claims or Equity Interests or other Entity; or (2) any Holder of a Claim or an Equity Interest or other Entity prior to the Effective Date.

Neither the exclusion or inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, will constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors or the Reorganized Debtors or their respective affiliates has any liability thereunder.

Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors or the Reorganized Debtors under any executory or non-executory contract or unexpired or expired lease.

Nothing in this Plan will increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors or the Reorganized Debtors, as applicable, under any executory or non-executory contract or unexpired or expired lease.

If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors or Reorganized Debtors, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

**I.**     **Further Assurances**

The Debtors or the Reorganized Debtors, as applicable, all Holders of Claims and Equity Interests receiving distributions hereunder and all other Entities shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan or the Confirmation Order. On or before the Effective Date, the Debtors shall File with the Bankruptcy Court all agreements and other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**J.**     **Severability**

If, prior to the Confirmation Date, any term or provision of this Plan is determined by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to

be invalid, void, or unenforceable, and such term or provision will then be applicable as altered or interpreted, provided, however, that any such altered form must be consistent with the Restructuring Support Agreement.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order will constitute a judicial determination and will provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**K.**      **Service of Documents**

All notices, requests, and demands to or upon the Debtors or the Reorganized Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> White Eagle Asset Portfolio, LP, et al.
> 5355 Town Center Road, Suite 701
> Boca Raton, FL 33486
> Telephone: (561) 995-4200
> Facsimile:  (561) 566-5073
> Attention:   Miriam Martinez

> **with copies to:**

> Pachulski Stang Ziehl & Jones LLP
> 919 North Market Street, 17th Floor
> Wilmington, DE  19899-8705 (Courier 19801)
> Attn:   Richard M. Pachulski, Esq., Ira D. Kharasch, Esq.,
>            Maxim B. Litvak, Esq., Colin R. Robinson, Esq.

**L.**      **Exemption from Certain Transfer Taxes Pursuant to Section 1146(a) of the Bankruptcy Code**

To the extent permitted by applicable law, pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto shall not be subject to any Stamp or Similar Tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate federal, state or local governmental officials or agents or taxing authority to forego the collection of any such Stamp or Similar Tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property without the payment of any such Stamp or Similar Tax or governmental assessment.  Such exemption specifically applies, without limitation, to (i) all actions, agreements and documents necessary to evidence and implement the provisions of and the distributions to be made under this Plan, including the New Exit Facility Documents; (ii) the maintenance or creation of security or any Lien as contemplated by the New Exit Facility Documents; and (iii) assignments executed in connection with any transaction occurring under the Plan.

**M.**      **Governing Law**

Except to the extent that the Bankruptcy Code, the Bankruptcy Rules or other federal law is applicable, or to the extent that an exhibit or schedule to this Plan provides otherwise, the rights and obligations arising under this Plan shall be governed by, and construed and

enforced in accordance with, the laws of Delaware, without giving effect to the principles of conflicts of law of such jurisdiction; *provided* that corporate governance matters relating to the Debtors or Reorganized Debtors, as applicable, shall be governed by the laws of the state of organization of the applicable Debtor or Reorganized Debtor, as applicable.

**N.      Tax Reporting and Compliance**

The Reorganized Debtors are hereby authorized, on behalf of the Debtors, to request an expedited determination under section 505(b) of the Bankruptcy Code of the tax liability of the Debtors are for all taxable periods ending after the Petition Date through, and including, the Effective Date.

**O.      Schedules**

All exhibits and schedules to this Plan, including the Exhibits and Plan Schedules, are incorporated and are a part of this Plan as if set forth in full herein.

**P.      No Strict Construction**

This Plan is the product of extensive discussions and negotiations between and among, *inter alia*, the Debtors and their professionals.  Each of the foregoing was represented by counsel of its choice who either participated in the formulation and documentation of, or was afforded the opportunity to review and provide comments on, this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the agreements and documents ancillary or related thereto. Accordingly, unless explicitly indicated otherwise, the general rule of contract construction known as "contra proferentem" or other rule of strict construction shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, Exhibits and Plan Schedules, and the documents ancillary and related thereto.

**Q.      Controlling Document**

In the event of an inconsistency between this Plan and the Plan Supplement, the terms of the relevant document in the Plan Supplement shall control unless otherwise specified in such Plan Supplement document.  In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control.  The provisions of this Plan and of the Confirmation Order shall be construed in a manner consistent with each other so as to effectuate the purposes of each; *provided, however*, that if there is determined to be any inconsistency between any provision of this Plan and any provision of the Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan.

*[Remainder of Page Intentionally Blank]*

Dated:  March 13, 2019

**WHITE EAGLE ASSET PORTFOLIO, LP.**

By: */s/ Miriam Martinez*\
    Name:  Miriam Martinez\
    Title:   Chief Financial Officer


**LAMINGTON ROAD DESIGNATED
ACTIVITY COMPANY**

By: */s/ David Thompson*\
    Name:  David Thompson\
    Title:   Director


**WHITE EAGLE GENERAL PARTNER, LLC**

By: */s/ Miriam Martinez*\
    Name:  Miriam Martinez\
    Title:   Chief Financial Officer

**FILED BY:**

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Richard M. Pachulski (CA Bar No. 62337)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:    rpachulski@pszjlaw.com
           ikharasch@pszjlaw.com
           mlitvak@pszjlaw.com
           crobinson@pszjlaw.com

Proposed Counsel for the Debtors
and Debtors-in-Possession