> **THIS IS NOT A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126, 11 U.S.C. §§ 1125, 1126. THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT. THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL UNDER CHAPTER 11 OF THE BANKRUPTCY CODE. THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.**

## IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | Case No. 18-12808 (KG) |
| Debtors. | Jointly Administered |

---

## DISCLOSURE STATEMENT FOR
## DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION

---

Dated:  March 13, 2019

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:    rpachulski@pszjlaw.com
           ikharasch@pszjlaw.com
           mlitvak@pszjlaw.com
           crobinson@pszjlaw.com

Proposed Counsel for the Debtors

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738).  The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

**ARTICLE I.** EXECUTIVE SUMMARY ................................................................ 7
    A.    AN OVERVIEW OF THE CHAPTER 11 PROCESS ............................ 8
    B.    SUMMARY OF THE PLAN .............................................................. 8
    C.    PURPOSE AND EFFECT OF THE PLAN ...................................... 9
        1.    Plan of Reorganization Under Chapter 11 of the
            Bankruptcy Code ............................................................. 9
        2.    Plan Overview ................................................................. 9
        3.    No Voting on the Plan .................................................. 10
        4.    Confirmation of the Plan .............................................. 10
        5.    Confirming and Consummating the Plan ...................... 11
        6.    Rules of Interpretation .................................................. 11
        7.    Distribution of Confirmation Hearing Notice to Holders of
            Claims and Equity Interests .......................................... 11
        8.    Filing of the Plan Supplement ...................................... 11
        9.    The Confirmation Hearing ............................................ 12
        10.    The Deadline for Objecting to Confirmation of the Plan ... 12
        11.    Notice Parties ................................................................ 12
        12.    Effect of Confirmation of the Plan ............................... 12
    D.    CONSUMMATION OF THE PLAN ............................................... 13
    E.    RISK FACTORS .......................................................................... 13
**ARTICLE II.** BACKGROUND TO THE CHAPTER 11 CASES AND
SUMMARY OF  BANKRUPTCY PROCEEDINGS TO DATE .......................... 13
    A.    DESCRIPTION AND HISTORY OF THE DEBTORS'
        BUSINESS .................................................................................. 13
    B.    THE DEBTORS' PREPETITION CAPITAL STRUCTURE ................... 14
    C.    EVENTS LEADING TO THE DEBTORS' BANKRUPTCY
        FILINGS ..................................................................................... 14
    D.    ADVERSARY PROCEEDING AGAINST THE PREPETITION
        LENDER AND OTHERS ............................................................... 15
    E.    FIRST DAY MOTIONS AND ORDERS .......................................... 16
    F.    RETENTION OF PROFESSIONALS .............................................. 16
    G.    DISCOVERY UNDER BANKRUPTCY RULE 2004 ........................... 17
    H.    EXCLUSIVE PERIOD FOR FILING A PLAN AND
        SOLICITING VOTES ................................................................... 17
    I.    DEADLINE TO ASSUME OR REJECT LEASES OF
        NONRESIDENTIAL REAL PROPERTY .......................................... 17
    J.    SUMMARY OF NEW EXIT FACILITY .......................................... 17
**ARTICLE III.** SUMMARY OF THE PLAN ...................................................... 18
    A.    ADMINISTRATIVE AND PRIORITY TAX CLAIMS ........................... 18
        1.    Administrative Expense Claims .................................... 18
        2.    Professional Fee Claims ................................................ 18
        3.    Priority Tax Claims........................................................ 19
    B.    CLASSIFICATION AND TREATMENT OF CLASSIFIED
        CLAIMS AND EQUITY INTERESTS .............................................. 19
        1.    Summary ........................................................................ 19
        2.    Elimination of Vacant Classes ...................................... 19

|   | 3. | Unimpairment of Claims and Equity Interests; No Solicitation or Voting | 20 |
|   | 4. | Cramdown | 20 |
| C. | | CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | 20 |
|   | 1. | Class 1 – Other Priority Claims | 20 |
|   | 2. | Class 2 – Other Secured Claims | 20 |
|   | 3. | Class 3 – Prepetition Lender Secured Claims | 21 |
|   | 4. | Class 4 – General Unsecured Claims | 22 |
|   | 5. | Class 5 – Equity Interests in the Debtors | 22 |
| D. | | SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS | 22 |
| E. | | SUBORDINATED CLAIMS | 22 |
| F. | | ACCEPTANCE OR REJECTION OF THE PLAN | 23 |
|   | 1. | Presumed Acceptance of Plan | 23 |
|   | 2. | No Presumed Rejection of Plan | 23 |
|   | 3. | No Voting Classes | 23 |
| G. | | MEANS FOR IMPLEMENTATION OF THE PLAN | 23 |
|   | 1. | General Settlement of Claims | 23 |
|   | 2. | Corporate Existence | 23 |
|   | 3. | Vesting of Assets in the Reorganized Debtors | 24 |
|   | 4. | New Exit Facility | 24 |
|   | 5. | Authorized Financing | 24 |
|   | 6. | Treatment of Vacant Classes | 25 |
|   | 7. | No Substantive Consolidation | 25 |
|   | 8. | Release of Liens, Claims and Equity Interests | 25 |
|   | 9. | Certificate of Incorporation and Bylaws | 25 |
|   | 10. | Management of Reorganized Debtors | 26 |
|   | 11. | Company Action | 26 |
|   | 12. | Cancellation of Notes, Certificates and Instruments | 27 |
|   | 13. | Cancellation of Existing Instruments Governing Security Interests | 27 |
|   | 14. | Restructuring Transactions | 27 |
|   | 15. | Plan Supplement and Other Plan Documents | 27 |
| H. | | TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES | 28 |
|   | 1. | Assumption and Rejection of Executory Contracts and Unexpired Leases | 28 |
|   | 2. | Assignment of Executory Contracts or Unexpired Leases | 28 |
|   | 3. | Rejection of Executory Contracts or Unexpired Leases | 29 |
|   | 4. | Claims on Account of the Rejection of Executory Contracts or Unexpired Leases | 29 |
|   | 5. | Cure of Defaults for Assumed Executory Contracts and Unexpired Leases | 29 |
|   | 6. | Assumption of Insurance Policies | 30 |
|   | 7. | Indemnification Provisions | 30 |
| I. | | PROVISIONS GOVERNING DISTRIBUTIONS | 30 |
|   | 1. | Dates of Distributions | 30 |

|   |   |   |
|---|---|---|
| | 2. | Distribution Agent ........................................................................31 |
| | 3. | Cash Distributions ........................................................................31 |
| | 4. | Rounding of Payments....................................................................31 |
| | 5. | *De Minimis* Distribution ...............................................................32 |
| | 6. | Distributions on Account of Claims Allowed After the Effective Date ...............................................................................32 |
| | 7. | General Distribution Procedures.....................................................32 |
| | 8. | Address for Delivery of Distributions ............................................32 |
| | 9. | Undeliverable Distributions and Unclaimed Property....................32 |
| | 10. | Withholding Taxes.........................................................................33 |
| | 11. | Setoffs ...........................................................................................33 |
| | 12. | Surrender of Cancelled Instruments or Securities ..........................33 |
| | 13. | Lost, Stolen, Mutilated or Destroyed Securities.............................33 |
| J. | | NO FILING OF PROOFS OF CLAIM EXCEPT FOR REJECTION CLAIMS .................................................................34 |
| K. | | DISPUTED CLAIMS ....................................................................34 |
| L. | | PROCEDURES REGARDING DISPUTED CLAIMS ..............34 |
| M. | | ALLOWANCE OF CLAIMS AND EQUITY INTERESTS ....34 |
| | 1. | Allowance of Claims .....................................................................34 |
| | 2. | Estimation .....................................................................................35 |
| N. | | CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN...............................................................................35 |
| | 1. | Conditions Precedent to Consummation ........................................35 |
| | 2. | Waiver of Conditions.....................................................................36 |
| | 3. | Effect of Non-Occurrence of Conditions to Consummation ..........36 |
| O. | | RELEASE, INJUNCTION AND RELATED PROVISIONS....37 |
| | 1. | General ...........................................................................................37 |
| | 2. | Release by Debtors ........................................................................37 |
| | 3. | Release by Holders of Claims and Equity Interests........................38 |
| | 4. | Discharge of Claims ......................................................................39 |
| | 5. | Exculpation ...................................................................................39 |
| | 6. | Preservation of Rights of Action ...................................................40 |
| | 7. | Injunction ......................................................................................40 |
| P. | | BINDING NATURE OF PLAN....................................................41 |
| Q. | | CONFIRMATION PROCEDURES.............................................41 |
| | 1. | Confirmation Hearing ....................................................................41 |
| | 2. | Filing Objections to the Plan .........................................................41 |
| R. | | STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN ..............................................................................41 |
| | 1. | Best Interests of Creditors Test......................................................42 |
| | 2. | Feasibility .....................................................................................43 |
| | 3. | Valuation........................................................................................44 |
| | 4. | Acceptance by Impaired Classes ....................................................44 |
| | 5. | Confirmation Without Acceptance by Impaired Classes.................45 |
| | 6. | No Unfair Discrimination ..............................................................45 |
| | 7. | Fair and Equitable Test ..................................................................45 |
| S. | | CONSUMMATION OF THE PLAN............................................46 |

**ARTICLE IV.** RISK FACTORS.........................................................................46

    A.      CERTAIN BANKRUPTCY LAW AND FUNDING
           CONSIDERATIONS.................................................................46

           1.      Parties in Interest May Object to the Debtors' Classification
                  of Claims and Equity Interests, or Designation as
                  Unimpaired. .................................................................46

           2.      The Debtors May Not Be Able to Secure Confirmation of
                  the Plan. .......................................................................46

           3.      The Conditions Precedent to the Effective Date of the Plan
                  May Not Occur. .............................................................47

           4.      Continued Risk Upon Consummation. ..............................47

           5.      Risks of Not Obtaining the Funding Under the New Exit
                  Facility. ........................................................................48

            6.      The Effective Date May Not Occur....................................48

           7.      The Chapter 11 Cases May Be Converted to Cases Under
                  Chapter 7 of the Bankruptcy Code ...................................48

            8.      Releases, Injunctions, and Exculpations Provisions May
                  Not Be Approved ...........................................................48

    B.      RISKS ASSOCIATED WITH FORWARD-LOOKING
           STATEMENTS .......................................................................49

           1.      The Financial Information Contained Herein is Based on
                  the Debtors' Books and Records and, Unless Otherwise
                  Stated, No Audit was Performed. .....................................49

            2.      Financial Projections and Other Forward-Looking
                  Statements Are Not Assured, Are Subject to Inherent
                  Uncertainty Due to the Numerous Assumptions Upon
                  Which They Are Based and, as a Result, Actual Results
                  May Vary. ......................................................................49

    C.      DISCLOSURE STATEMENT DISCLAIMER ...........................49

           1.      The Information Contained Herein is for Disclosure
                  Purposes Only.................................................................49

            2.      This Disclosure Statement was Not Approved by the
                  Securities and Exchange Commission.................................49

            3.      This Disclosure Statement Contains Forward-Looking
                  Statements.....................................................................50

            4.      No Legal or Tax Advice is Provided to You by This
                  Disclosure Statement. .....................................................50

            5.      No Admissions Are Made by This Disclosure Statement. ..............50

            6.      No Reliance Should Be Placed on Any Failure to Identify
                  Litigation Claims or Projected Objections. ........................50

            7.      Nothing Herein Constitutes a Waiver of Any Right to
                  Object to Claims or Equity Interests or Recover Transfers
                  and Assets. .....................................................................50

            8.      The Information Used Herein was Provided by the Debtors
                  and was Relied Upon by the Debtors' Advisors.................50

            9.      The Potential Exists for Inaccuracies and the Debtors Have
                  No Duty to Update..........................................................51

      10.    No Representations Made Outside the Disclosure Statement Are Authorized. ................................................................................ 51

**ARTICLE V.** ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN ....................................................................... 51

    A.    LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE ................................................................................................. 51

    B.    FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION ................................................................................. 51

**ARTICLE VI.** U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN .............................................................................................................. 52

**ARTICLE VII.** RECOMMENDATION .......................................................... 52

WHITE EAGLE ASSET PORTFOLIO, LP and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the "Company"), are sending you this document and the accompanying materials (the "Disclosure Statement") because you are a creditor in connection with the *Debtors' Joint Chapter 11 Plan of Reorganization* dated March 13, 2019, as the same may be amended from time to time (the "Plan").[2]  The Debtors have filed voluntary reorganization cases under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").  This Disclosure Statement has not yet been approved by the Bankruptcy Court as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code.  The Debtors intend to seek an order or orders of the Bankruptcy Court (I) approving this Disclosure Statement as containing adequate information and (II) confirming the Plan.

A copy of the Plan is attached hereto as **Exhibit A**.

**NO HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE ENTITLED TO VOTE ON THE PLAN BECAUSE ALL CLAIMS AND EQUITY INTERESTS ARE UNIMPAIRED UNDER THE PLAN.  ACCORDINGLY, NO HOLDERS OF CLAIMS OR EQUITY INTERESTS ARE BEING SOLICITED UNDER THIS DISCLOSURE STATEMENT.**

The Debtors believe that the Plan provides the best restructuring alternative available to these estates.  Notably, the Plan is comprised of the following key elements:

- providing a 100% recovery to Allowed General Unsecured Claims, and all creditors who are Unimpaired under the Plan;

- satisfying Prepetition Lender Secured Claims in the amount determined to be Allowed by the Bankruptcy Court, pending the resolution of ongoing litigation between the Debtors, the Prepetition Lender, and certain other parties -- all rights are preserved with respect thereto;

- implementing a new senior secured exit financing facility to refinance the Allowed Prepetition Lender Secured Claims and to provide working capital for the Reorganized Debtors; and

- preserving all of the existing equity interests in the Debtors on the basis of the substantial equity cushion in the value of the Estates' assets and unimpairment of creditor claims.  The Debtors estimate that the value of their life settlements portfolio totals over $500 million.

Through the Plan, the Debtors expect to reduce their ongoing cash interest expense through the new exit facility and to create a sustainable capital structure that will position the Reorganized Debtors to maximize the value of their life settlements portfolio for the benefit of all constituents.

---

[2]  All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.  To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan shall control and govern.

---

**IMPORTANT INFORMATION ABOUT THIS
DISCLOSURE STATEMENT FOR YOU TO READ**

---

THE DEBTORS ARE PROVIDING THE INFORMATION IN THIS DISCLOSURE STATEMENT TO HOLDERS OF CLAIMS AND EQUITY INTERESTS IN CONNECTION WITH THE DEBTORS' JOINT CHAPTER 11 PLAN OF REORGANIZATION. NOTHING IN THIS DISCLOSURE STATEMENT MAY BE RELIED UPON OR USED BY ANY ENTITY FOR ANY PURPOSE OTHER THAN WITH RESPECT TO CONFIRMATION OF THE PLAN. ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE UNIMPAIRED UNDER THE PLAN AND THEREFORE NO ONE IS ENTITLED TO VOTE ON THE PLAN. THIS DISCLOSURE STATEMENT IS PROVIDED FOR INFORMATIONAL PURPOSES ONLY.

THIS DISCLOSURE STATEMENT HAS NOT BEEN FILED FOR APPROVAL WITH THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE AUTHORITY AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE STATEMENT OR UPON THE MERITS OF THE PLAN. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN OFFER TO SELL OR THE SOLICITATION OF AN OFFER TO BUY SECURITIES IN ANY STATE OR JURISDICTION.

THIS DISCLOSURE STATEMENT CONTAINS "FORWARD-LOOKING STATEMENTS" WITHIN THE MEANING OF THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995. SUCH STATEMENTS CONSIST OF ANY STATEMENT OTHER THAN A RECITATION OF HISTORICAL FACT AND CAN BE IDENTIFIED BY THE USE OF FORWARD-LOOKING TERMINOLOGY SUCH AS "MAY," "EXPECT," "ANTICIPATE," "ESTIMATE" OR "CONTINUE" OR THE NEGATIVE THEREOF OR OTHER VARIATIONS THEREON OR COMPARABLE TERMINOLOGY. THE DEBTORS CONSIDER ALL STATEMENTS REGARDING ANTICIPATED OR FUTURE MATTERS TO BE FORWARD-LOOKING STATEMENTS. FORWARD-LOOKING STATEMENTS MAY INCLUDE STATEMENTS ABOUT:

- THE EFFECTS OF INSOLVENCY PROCEEDINGS ON THE DEBTORS' BUSINESS AND RELATIONSHIPS WITH THEIR CREDITORS;

- BUSINESS STRATEGY;

- FINANCIAL CONDITION, REVENUES, CASH FLOWS, AND EXPENSES;

- FINANCIAL STRATEGY, BUDGET, PROJECTIONS, AND OPERATING RESULTS;

- VARIATION FROM PROJECTED OPERATING AND FINANCIAL DATA;

- SUBSTANTIAL CAPITAL REQUIREMENTS;

- **AVAILABILITY AND TERMS OF CAPITAL;**

- **PLANS, OBJECTIVES, AND EXPECTATIONS;**

- **THE ADEQUACY OF THE DEBTORS' CAPITAL RESOURCES AND LIQUIDITY; AND**

- **THE DEBTORS' ABILITY TO SATISFY FUTURE CASH OBLIGATIONS.**

**STATEMENTS CONCERNING THESE AND OTHER MATTERS ARE NOT GUARANTEES OF THE REORGANIZED DEBTORS' FUTURE PERFORMANCE. THERE ARE RISKS, UNCERTAINTIES, AND OTHER IMPORTANT FACTORS THAT COULD CAUSE THE REORGANIZED DEBTORS' ACTUAL PERFORMANCE OR ACHIEVEMENTS TO BE DIFFERENT FROM THOSE THEY MAY PROJECT. THE READER IS CAUTIONED THAT ALL FORWARD-LOOKING STATEMENTS ARE NECESSARILY SPECULATIVE AND THERE ARE CERTAIN RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL EVENTS OR RESULTS TO DIFFER MATERIALLY FROM THOSE REFERRED TO IN SUCH FORWARD-LOOKING STATEMENTS. THEREFORE, ANY ANALYSES, ESTIMATES, OR RECOVERY PROJECTIONS MAY OR MAY NOT TURN OUT TO BE ACCURATE.**

**HOLDERS OF ALLOWED CLAIMS WILL NOT BE IMPAIRED BY THE PLAN AND, AS A RESULT, THE RIGHT TO RECEIVE PAYMENT IN FULL ON ACCOUNT OF EXISTING OBLIGATIONS IS NOT ALTERED BY THE PLAN. DURING THE CHAPTER 11 CASES, THE DEBTORS INTEND TO OPERATE THEIR BUSINESS IN THE ORDINARY COURSE.**

**THIS DISCLOSURE STATEMENT HAS BEEN PREPARED PURSUANT TO SECTION 1125 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3016 AND IS NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER SIMILAR LAWS.**

**NO LEGAL OR TAX ADVICE IS PROVIDED TO YOU BY THIS DISCLOSURE STATEMENT. THE DEBTORS URGE EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST TO CONSULT WITH ITS OWN ADVISORS WITH RESPECT TO ANY LEGAL, FINANCIAL, SECURITIES, TAX OR BUSINESS ADVICE IN REVIEWING THIS DISCLOSURE STATEMENT, THE PLAN AND EACH OF THE PROPOSED TRANSACTIONS CONTEMPLATED THEREBY. FURTHER, THE BANKRUPTCY COURT'S APPROVAL OF THE ADEQUACY OF DISCLOSURES CONTAINED IN THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE THE BANKRUPTCY COURT'S APPROVAL OF THE MERITS OF THE PLAN OR A GUARANTEE BY THE BANKRUPTCY COURT OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.**

**PACHULSKI STANG ZIEHL & JONES LLP ("PSZ&J") IS GENERAL INSOLVENCY COUNSEL TO THE DEBTORS. PSZ&J HAS RELIED UPON INFORMATION PROVIDED BY THE DEBTORS IN CONNECTION WITH PREPARATION OF THIS DISCLOSURE STATEMENT. PSZ&J HAS NOT INDEPENDENTLY VERIFIED THE INFORMATION CONTAINED HEREIN.**

THIS DISCLOSURE STATEMENT CONTAINS, AMONG OTHER THINGS, SUMMARIES OF THE PLAN, CERTAIN STATUTORY PROVISIONS, CERTAIN EVENTS IN THE DEBTORS' CHAPTER 11 CASES AND CERTAIN DOCUMENTS RELATED TO THE PLAN THAT ARE ATTACHED HERETO AND INCORPORATED HEREIN BY REFERENCE OR THAT MAY BE FILED LATER WITH THE PLAN SUPPLEMENT.  ALTHOUGH THE DEBTORS BELIEVE THAT THESE SUMMARIES ARE FAIR AND ACCURATE, THESE SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY TO THE EXTENT THAT THE SUMMARIES DO NOT SET FORTH THE ENTIRE TEXT OF SUCH DOCUMENTS OR STATUTORY PROVISIONS OR EVERY DETAIL OF SUCH EVENTS.  IN THE EVENT OF ANY CONFLICT, INCONSISTENCY OR DISCREPANCY BETWEEN A DESCRIPTION IN THIS DISCLOSURE STATEMENT AND THE TERMS AND PROVISIONS OF THE PLAN OR ANY OTHER DOCUMENTS INCORPORATED HEREIN BY REFERENCE, THE PLAN OR SUCH OTHER DOCUMENTS WILL GOVERN AND CONTROL FOR ALL PURPOSES.  EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTORS' MANAGEMENT.  THE DEBTORS DO NOT REPRESENT OR WARRANT THAT THE INFORMATION CONTAINED HEREIN OR ATTACHED HERETO IS WITHOUT ANY MATERIAL INACCURACY OR OMISSION.

IN PREPARING THIS DISCLOSURE STATEMENT, THE DEBTORS RELIED ON FINANCIAL DATA DERIVED FROM THE DEBTORS' BOOKS AND RECORDS AND ON VARIOUS ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS.  THE DEBTORS' MANAGEMENT HAS REVIEWED THE FINANCIAL INFORMATION PROVIDED IN THIS DISCLOSURE STATEMENT.  ALTHOUGH THE DEBTORS HAVE USED THEIR REASONABLE BUSINESS JUDGMENT TO ENSURE THE ACCURACY OF THIS FINANCIAL INFORMATION, THE FINANCIAL INFORMATION CONTAINED IN, OR INCORPORATED BY REFERENCE INTO, THIS DISCLOSURE STATEMENT HAS NOT BEEN AUDITED (UNLESS OTHERWISE EXPRESSLY PROVIDED HEREIN) AND NO REPRESENTATIONS OR WARRANTIES ARE MADE AS TO THE ACCURACY OF THE FINANCIAL INFORMATION CONTAINED HEREIN OR ASSUMPTIONS REGARDING THE DEBTORS' BUSINESS AND ITS FUTURE RESULTS.  THE DEBTORS EXPRESSLY CAUTION READERS NOT TO PLACE UNDUE RELIANCE ON ANY FORWARD-LOOKING STATEMENTS CONTAINED HEREIN.

THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE, AND MAY NOT BE CONSTRUED AS, AN ADMISSION OF FACT, LIABILITY, STIPULATION OR WAIVER.  RATHER, THIS DISCLOSURE STATEMENT SHALL CONSTITUTE A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS RELATED TO POTENTIAL CONTESTED MATTERS, POTENTIAL ADVERSARY PROCEEDINGS AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS.

NO RELIANCE SHOULD BE PLACED ON THE FACT THAT A PARTICULAR LITIGATION CLAIM OR PROJECTED OBJECTION TO A PARTICULAR CLAIM OR EQUITY INTEREST IS, OR IS NOT, IDENTIFIED IN THE DISCLOSURE STATEMENT.  EXCEPT AS PROVIDED UNDER THE PLAN, THE DEBTORS OR THE REORGANIZED DEBTORS MAY SEEK TO INVESTIGATE, FILE AND PROSECUTE CLAIMS AND CAUSES OF ACTION AND MAY OBJECT TO CLAIMS OR EQUITY INTERESTS AFTER THE CONFIRMATION OR EFFECTIVE DATE OF THE PLAN IRRESPECTIVE OF

WHETHER THE DISCLOSURE STATEMENT IDENTIFIES ANY SUCH CLAIMS OR EQUITY INTERESTS OR OBJECTIONS TO CLAIMS OR EQUITY INTERESTS ON THE TERMS SPECIFIED IN THE PLAN.

THE DEBTORS ARE GENERALLY MAKING THE STATEMENTS AND PROVIDING THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT AS OF THE DATE HEREOF WHERE FEASIBLE, UNLESS OTHERWISE SPECIFICALLY NOTED.  ALTHOUGH THE DEBTORS MAY SUBSEQUENTLY UPDATE THE INFORMATION IN THIS DISCLOSURE STATEMENT, THE DEBTORS HAVE NO AFFIRMATIVE DUTY TO DO SO. HOLDERS OF CLAIMS AND EQUITY INTERESTS REVIEWING THIS DISCLOSURE STATEMENT SHOULD NOT INFER THAT, AT THE TIME OF THEIR REVIEW, THE FACTS SET FORTH HEREIN HAVE NOT CHANGED SINCE THE DISCLOSURE STATEMENT WAS SENT.  INFORMATION CONTAINED HEREIN IS SUBJECT TO COMPLETION, MODIFICATION, OR AMENDMENT.  THE DEBTORS RESERVE THE RIGHT TO FILE AN AMENDED OR MODIFIED PLAN AND RELATED DISCLOSURE STATEMENT FROM TIME TO TIME.

THE DEBTORS HAVE NOT AUTHORIZED ANY ENTITY TO GIVE ANY INFORMATION ABOUT OR CONCERNING THE PLAN OTHER THAN THAT WHICH IS CONTAINED IN THIS DISCLOSURE STATEMENT.  THE DEBTORS HAVE NOT AUTHORIZED ANY REPRESENTATIONS CONCERNING THE DEBTORS OR THE VALUE OF THEIR PROPERTY OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT.

HOLDERS OF CLAIMS MUST RELY ON THEIR OWN EVALUATION OF THE DEBTORS AND THEIR OWN ANALYSES OF THE TERMS OF THE PLAN IN CONSIDERING THE PLAN.  IMPORTANTLY, EACH HOLDER OF A CLAIM SHOULD REVIEW THE PLAN IN ITS ENTIRETY AND CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, INCLUDING THE RISK FACTORS DESCRIBED IN GREATER DETAIL IN ARTICLE IV HEREIN, "RISK FACTORS."

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT AND THE EFFECTIVE DATE OCCURS, ALL HOLDERS OF CLAIMS AGAINST, AND HOLDERS OF EQUITY INTERESTS IN, THE DEBTORS WILL BE BOUND BY THE TERMS OF THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO CERTAIN MATERIAL CONDITIONS PRECEDENT DESCRIBED HEREIN AND SET FORTH IN ARTICLE IX OF THE PLAN.  THERE IS NO ASSURANCE THAT THE PLAN WILL BE CONFIRMED, OR IF CONFIRMED, THAT THE CONDITIONS REQUIRED TO BE SATISFIED FOR THE PLAN TO BECOME EFFECTIVE WILL BE SATISFIED (OR WAIVED).

## **EXHIBITS**

EXHIBIT A – Plan of Reorganization

EXHIBIT B – Organizational Chart of the Debtors

THE DEBTORS HEREBY ADOPT AND INCORPORATE EACH EXHIBIT
ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE
AS THOUGH FULLY SET FORTH HEREIN.

# ARTICLE I.
## EXECUTIVE SUMMARY

**All Holders of Claims and Equity Interests against the Debtors are Unimpaired under the Plan and, therefore, are not entitled to vote on the Plan and are deemed to accept the Plan.  This Disclosure Statement is provided for informational purposes only.**

**In the opinion of the Debtors, the Plan is preferable to the alternatives described in this Disclosure Statement because the Plan provides for the highest distribution to the Debtors' creditors and interest holders.  The Plan will provide an efficient, expeditious restructuring of the Debtors' capital structure, through a reorganization funded with a new exit facility that will repay creditor claims and maximize the value of the Debtors' life settlements portfolio.  Any delay in confirmation of the Plan could result in significant administrative expenses resulting in less value available to the Debtors' constituents.  Accordingly, the Debtors recommend that all Holders of Impaired Claims support confirmation of the Plan.**

This Executive Summary is being provided to Holders of Allowed Claims and Equity Interests as an overview of the material items addressed in the Disclosure Statement and the Plan, which is qualified by reference to the entire Disclosure Statement and by the actual terms of the Plan (and including all exhibits attached hereto and to the Plan), and should not be relied upon for a comprehensive discussion of the Disclosure Statement and/or the Plan.  Section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization.  As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code.  This Disclosure Statement includes, without limitation, information about:

- the Debtors' operating and financial history;

- the significant events that have occurred to date;

- the Confirmation process;

- the terms and provisions of the Plan, including certain effects of Confirmation of the Plan, certain risk factors relating to the Debtors or the Reorganized Debtors, the Plan and the securities to be issued under the Plan, and the manner in which distributions will be made under the Plan; and

- the proposed organization and financing of the Reorganized Debtors if the Plan is confirmed and becomes effective.

In connection with developing the Plan, the Company reviewed its current business operations and compared its prospects as an ongoing business enterprise with the estimated recoveries in various scenarios.  As a result, the Company concluded that the value of its life settlements portfolio would be maximized by continuing to operate as a going concern.  The Company believes that its business and assets have significant value that would not be realized in a liquidation.  Moreover, the Company believes that any alternative to Confirmation of the Plan would result in significant delays, litigation, and additional costs, and ultimately would diminish the Company's value.  **Accordingly, the Company strongly supports confirmation of the Plan.**

- 7 -

## A.        AN OVERVIEW OF THE CHAPTER 11 PROCESS

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11 of the Bankruptcy Code, a debtor may remain in possession of its assets and business and attempt to reorganize its business for the benefit of such debtor, its creditors and other parties in interest.

The commencement of a reorganization case creates an estate comprised of all of the legal and equitable interests of a debtor in property as of the date that the bankruptcy petition is filed.  Sections 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession," unless the bankruptcy court orders the appointment of a trustee.  The filing of a bankruptcy petition also triggers the automatic stay provisions of section 362 of the Bankruptcy Code which provide, among other things, for an automatic stay of all attempts to collect prepetition claims from a debtor or otherwise interfere with its property or business.  Except as otherwise ordered by the bankruptcy court, the automatic stay generally remains in full force and effect until the effective date of a plan of reorganization, following confirmation of such plan of reorganization.

The Bankruptcy Code provides that upon commencement of a chapter 11 bankruptcy case, the Office of the United States Trustee may appoint a committee of unsecured creditors and may, in its discretion, appoint additional committees of creditors or of equity interest holders if necessary to assure adequate representation.  No official committees have been appointed in the Debtors' cases to date.

Upon the commencement of a chapter 11 bankruptcy case, all creditors and equity interest holders have standing to be heard on any issue in the chapter 11 proceedings pursuant to section 1109(b) of the Bankruptcy Code.

The formulation and confirmation of a plan of reorganization is the principal objective of a chapter 11 case.  The plan of reorganization sets forth the means of satisfying the claims against and equity interests in the debtor.

## B.        SUMMARY OF THE PLAN

The Plan represents a significant achievement for the Company and should greatly enhance the Company's ability to reorganize successfully and expeditiously.  Through confirmation of the Plan, the Company will restructure and refinance its existing secured debt through the consummation of a new exit facility.  The Plan will allow the Company to maximize the value of its life settlements portfolio with the benefit of attractive financing terms offered as part of the new exit facility.  As a result, the Company believes that the Plan is feasible and that the Company will have adequate liquidity (from a combination of the new exit facility and cash on hand) to satisfy all Allowed Claims in full, while preserving substantial value for the benefit of the Holders of Equity Interests.  The Debtors estimate that the value of their life settlements portfolio totals over $500 million.

As of the date hereof, the Debtors had outstanding secured debt having a principal amount of approximately $367.9 million.  Although the Debtors have commenced litigation with respect to the Prepetition Lender Secured Claims and reserve all rights in connection therewith, the Debtors are prepared to pay the Allowed Prepetition Lender Secured Claims in full upon the Effective Date, *provided* that the Bankruptcy Court determines that the Debtors are indebted and liable to the Holders of the Prepetition Secured Lender Claims in an amount not to exceed:  (i) the aggregate principal amount of $367.9 million (all of which reflects funds advanced by the Prepetition Lender to White Eagle), plus (ii) accrued (both before and after the Petition Date) and unpaid interest and fees payable under the Prepetition Loan Agreement and related

documentation as of the Effective Date, including any distributions to which the Prepetition Lender is entitled on account of the "Participation Interest" as of the Effective Date, based on actual recoveries from the proceeds of White Eagle's insurance policies realized as of such date.

All other Classes of Allowed Claims also will be paid in full and are Unimpaired.  As a result of the Unimpairment of all creditor Classes, the Holders of the Equity Interests in the Debtors will retain such interests following the Effective Date.

The material terms of the New Exit Facility are in the process of being negotiated and will be filed with the Bankruptcy Court as part of the Plan Supplement at a later date.

## C.     PURPOSE AND EFFECT OF THE PLAN

### 1.     Plan of Reorganization Under Chapter 11 of the Bankruptcy Code

The Debtors are reorganizing pursuant to chapter 11 of the Bankruptcy Code, which is the principal business reorganization chapter of the Bankruptcy Code.  As a result, the confirmation of the Plan means that the Reorganized Debtors will continue to operate their business going forward and does not mean that the Debtors will be liquidated or forced to go out of business.  Additionally, a bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or an equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the confirmed plan, whether or not such Entity voted on the plan or affirmatively voted to reject the plan.

Here, no Entity will be entitled to vote on the Plan because all Classes of Allowed Claims and Equity Interests are Unimpaired and therefore deemed to accept the Plan.

### 2.     Plan Overview

The Plan provides for the classification and treatment of Claims against and Equity Interests in the Debtors.  For classification and treatment of Claims and Equity Interests, the Plan designates Classes of Claims and Classes of Equity Interests.  These Classes and Plan treatments take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Equity Interests.

The following chart briefly summarizes the classification and treatment of Claims and Equity Interests under the Plan.[3]  Amounts listed below are estimated.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for five (5) Classes of Claims against and/or Equity Interests in the Debtors.

**THE PROJECTED RECOVERIES SET FORTH IN THE TABLE BELOW ARE ESTIMATES ONLY AND THEREFORE ARE SUBJECT TO CHANGE.  FOR A COMPLETE DESCRIPTION OF THE DEBTORS' CLASSIFICATION AND TREATMENT OF CLAIMS OR EQUITY INTERESTS, REFERENCE SHOULD BE MADE TO THE ENTIRE PLAN AND THE RISK FACTORS DESCRIBED IN ARTICLE IV BELOW.  FOR CERTAIN CLASSES OF CLAIMS, THE ACTUAL AMOUNT OF ALLOWED CLAIMS COULD BE MATERIALLY DIFFERENT THAN THE ESTIMATED AMOUNTS SHOWN IN THE TABLE BELOW.**

---

[3]  This chart is only a summary of the classification and treatment of Claims and Equity Interests under the Plan. References should be made to the entire Disclosure Statement and the Plan for a complete description.

| Class | Type of Claim or Interest | Estimated Prepetition Claim Amount | Impairment | Entitled to Vote | Estimated Recovery Under Plan |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | $0 | No | No | 100% |
| 2 | Other Secured Claims | $0 | No | No | 100% |
| 3 | Prepetition Lender Secured Claims | $367.9 million (plus accrued fees and interest, including disputed Participation Interest) | No | No | 100% |
| 4 | General Unsecured Claims | $250,000 - $500,000 (approx.) | No | No | 100% |
| 5 | Equity Interests in Debtors | N/A | No | No | Retain Equity Interests |

3.    **No Voting on the Plan**

No Holder of an Allowed Claim or Equity Interest is entitled to vote either to accept or to reject the Plan.  All Classes of Claims and Equity Interests are Unimpaired under the Plan, are each deemed to accept the Plan by operation of law, and are not entitled to vote on the Plan.

Without limiting the foregoing, if any Class of Claims or Equity Interests is determined to be entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

4.    **Confirmation of the Plan**

(a)    Generally

"Confirmation" is the technical term for the Bankruptcy Court's approval of a plan of reorganization or liquidation.  The timing, standards and factors considered by the Bankruptcy Court in deciding whether to confirm a plan of reorganization are discussed below.

The confirmation of a plan of reorganization by the Bankruptcy Court binds the debtor, any issuer of securities under a plan of reorganization, any person acquiring property under a plan of reorganization, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.  Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan of reorganization discharges a debtor from any debt that arose before the confirmation of such plan of reorganization and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

- 10 -

(b)      The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Company will provide notice of the Confirmation Hearing to all necessary parties. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing of any adjournment thereof.

5.      **Confirming and Consummating the Plan**

It is a condition to Confirmation of the Plan that the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors.  Certain other conditions contained in the Plan must be satisfied or waived pursuant to the provisions of the Plan.

6.      **Rules of Interpretation**

The following rules for interpretation and construction shall apply to this Disclosure Statement:  (1) capitalized terms used in the Disclosure Statement and not otherwise defined shall have the meaning ascribed to such terms in the Plan; (2) unless otherwise specified, any reference in this Disclosure Statement to a contract, instrument, release, indenture, or other agreement or document shall be a reference to such document in the particular form or substantially on such terms and conditions described; (3) unless otherwise specified, any reference in this Disclosure Statement to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references in this Disclosure Statement to Sections are references to Sections of this Disclosure Statement; (6) unless otherwise specified, all references in this Disclosure Statement to exhibits are references to exhibits in this Disclosure Statement; (7) unless otherwise set forth in this Disclosure Statement, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (8) any term used in capitalized form in this Disclosure Statement that is not otherwise defined in this Disclosure Statement or the Plan but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

7.      **Distribution of Confirmation Hearing Notice to Holders of Claims and Equity Interests**

As set forth above, Holders of Claims and Equity Interests are not entitled to vote on the Plan.  As a result, such parties will not receive solicitation packages or ballots but, instead, will receive this Disclosure Statement, the Plan, and a notice of the Confirmation Hearing.

8.      **Filing of the Plan Supplement**

The Debtors will file the Plan Supplement no later than five (5) Business Days before the Confirmation Hearing.  Parties may request (and obtain at the Debtors' expense) a copy of the Plan Supplement by contacting Debtors' counsel.

9.      **The Confirmation Hearing**

**The Bankruptcy Court has not yet scheduled a Confirmation Hearing Date.**  Once scheduled, the Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order.  Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

10.     **The Deadline for Objecting to Confirmation of the Plan**

**The Bankruptcy Court has not yet scheduled a Confirmation Objection Deadline**. Subject to order of the Bankruptcy Court, any objection to confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the applicable Debtor, the name of the objecting party and the amount and nature of the Claim of such Entity in each applicable Chapter 11 Case or the amount of Equity Interests held by such Entity in each applicable Chapter 11 Case; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Confirmation Objection Deadline by the parties set forth below (the "Notice Parties").

CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.  INSTRUCTIONS WITH RESPECT TO THE CONFIRMATION HEARING AND DEADLINES WITH RESPECT TO CONFIRMATION WILL BE INCLUDED IN THE NOTICE OF CONFIRMATION HEARING TO BE APPROVED BY THE BANKRUPTCY COURT.

11.     **Notice Parties**

(a)     Debtors, White Eagle Asset Portfolio, LP, 5355 Town Center Road, Suite 701, Boca Raton, FL 33486 (Attn: Miriam Martinez);

(b)     Counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899-8705 (Courier 19801) (Attn:  Richard M.  Pachulski, Ira D. Kharasch, Maxim B. Litvak, and Colin R. Robinson);

(c)     Counsel to the Prepetition Agent and the Prepetition Lender, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095 (Attn: Thomas Lauria, David Turetsky, and Andrew Zatz); and

(d)     Office of the United States Trustee for the District of Delaware, 844 King St., Suite 2207, Wilmington, DE 19801 (Attn: Juliet Sarkessian).

12.     **Effect of Confirmation of the Plan**

The Plan contains certain provisions relating to (a) the compromise and settlement of Claims and Equity Interests, (b) the release of the Released Parties by the Debtors and the Holders of Claims or Equity Interests, and each of their respective Related Persons, and (c) exculpation of certain parties.

THE PLAN SHALL BIND ALL HOLDERS OF CLAIMS AGAINST AND
EQUITY INTERESTS IN THE DEBTORS TO THE MAXIMUM EXTENT PERMITTED
BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER
(A) WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY
UNDER THE PLAN, (B) HAS FILED A PROOF OF CLAIM IN THE CHAPTER 11
CASES, OR (C) DID NOT VOTE TO ACCEPT OR REJECT THE PLAN.

## D.    CONSUMMATION OF THE PLAN

It will be a condition to confirmation of the Plan that all provisions, terms and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of Article IX of the Plan.  Following confirmation, the Plan will be consummated on the Effective Date.

## E.    RISK FACTORS

**EACH HOLDER OF A CLAIM OR AN EQUITY INTEREST IS URGED TO CONSIDER CAREFULLY ALL OF THE INFORMATION IN THIS DISCLOSURE STATEMENT, INCLUDING THE RISK FACTORS DESCRIBED IN ARTICLE IV HEREIN TITLED, "RISK FACTORS."**

## ARTICLE II.
## BACKGROUND TO THE CHAPTER 11 CASES AND SUMMARY OF BANKRUPTCY PROCEEDINGS TO DATE

## A.    DESCRIPTION AND HISTORY OF THE DEBTORS' BUSINESS

The Debtors are indirect subsidiaries of Emergent Capital, Inc. ("Emergent"), a publicly traded company.  Emergent is a global leader in the life settlements industry.  An organizational chart for Emergent and the Debtors is attached hereto as **Exhibit B**.

A life settlement is a transaction in which an individual sells an insurance policy to a third-party investor for an amount less than the policy's face value, but greater than its net cash surrender value.  The investor becomes responsible for paying future premiums on the policy and, upon the death of the individual, receives the policy's death benefits.

Life settlements allow senior insureds who can no longer afford their premiums, or who desire additional liquidity, to shed their policies for an immediate infusion of cash at a premium over the cash surrender value offered by the insurance companies.  The investor makes projections concerning the individual's probability of survival and life span, pays out the required premiums on the policy, and projects discounted cash flows for each policy.  The investor assumes the risk that the death benefit will be less than the sum of the purchase price, the aggregate future premiums, and any additional fees.  The insured receives the benefit of an immediate cash payment above that of the cash surrender value offered to the insured.

Life settlement assets are subject to uneven cash flows that can be difficult to predict, and that can lead to liquidity issues if the benefit payouts received are insufficient to cover the cash outlays from operating expenses, the required premium payments, and the interest payments on the debt needed to finance the business.  However, the investment carries the benefit of cash flows that are uncorrelated to market returns.

As of December 13, 2018, Debtor White Eagle Asset Portfolio, LP ("WEAP") owned a portfolio of 586 life insurance policies – also known as life settlements – with an aggregate death benefit of approximately $2.8 billion.  The Debtors estimate that the value of their life settlements portfolio totals over $500 million.

The partnership interests in WEAP are owned by Debtors White Eagle General Partner, LLC ("WEGP") and Lamington Road Designated Activity Company ("LRDA").  WEGP is the general partner of WEAP, manages WEAP, and holds 0.10% of the interests therein.  LRDA is the limited partner of WEAP and holds 99.90% of the interests therein.

The Debtors do not have any employees.  The Debtors are operated and administered by employees of non-Debtor Imperial Finance & Trading, LLC ("Imperial Finance"), a direct subsidiary of Emergent, under an administrative services agreement.

## B.    THE DEBTORS' PREPETITION CAPITAL STRUCTURE

WEAP, as borrower, LNV Corporation ("LNV" or the "Prepetition Lender"), as lender, and CLMG Corp. ("CLMG" or the "Prepetition Agent"), as administrative agent, are parties to that certain *Second Amended and Restated Loan and Security Agreement*, dated as of January 31, 2017 (as subsequently amended and/or restated, the "Prepetition Loan Agreement").  Additional parties to the Prepetition Loan Agreement are non-debtor affiliates of Emergent:  Imperial Finance, as initial servicer, initial portfolio manager, and guarantor of certain portfolio management obligations, and Lamington Road Bermuda, Ltd., as portfolio manager.  LNV and CLMG are affiliates of Beal Financial Corporation.

Under the Prepetition Loan Agreement, the total aggregate lending commitment of LNV was $370 million.  As of the date hereof, approximately $367.9 million in principal obligations is due and owing to LNV.  The Prepetition Loan Agreement also provides LNV with a "Participation Interest" equal to forty-five percent (45%) of the revenue generated by WEAP's life settlement portfolio (after interest, expenses, and required amortization has been paid).  Such Participation Interest is subject to dispute.

The obligations under the Prepetition Loan Agreement are secured by purported liens in favor of CLMG on substantially all of the assets of WEAP, including its interests in life insurance policies and the proceeds therefrom.  CLMG also purportedly has control of WEAP's funds and collections from insurance policies through a custodial arrangement with Wilmington Trust, N.A. ("WT")

Although Debtors WEGP and LRDA are not obligors under the Prepetition Loan Agreement, they are pledgors under that certain *Partnership Interest Pledge Agreement*, dated as of May 16, 2014 (as subsequently amended and/or restated, the "Partnership Pledge"), pursuant to which WEGP and LRDA pledged their interests in WEAP in favor of CLMG, as secured party, in order to secure WEAP's obligations under the Prepetition Loan Agreement.  Under the Partnership Pledge, WEGP and LRDA were required to deliver the pledged certificates representing their interests in WEAP to WT as securities intermediary for the benefit of CLMG.  Upon the occurrence of an event of default and absent a bankruptcy filing, CLMG could instruct WT to deliver the pledged certificates to CLMG, effectively taking ownership of WEAP and its valuable life insurance policies.

## C.    EVENTS LEADING TO THE DEBTORS' BANKRUPTCY FILINGS

Beginning in 2015, WEAP and its ultimate parent, Emergent, faced liquidity problems due to a mismatch between cash inflows (death benefit payouts and fair value adjustments) and outflows (operating expenses, interest and premium payments, and legal and professional fees).

In late 2016, WEAP restructured its existing loan facility with LNV. The Prepetition Loan Agreement executed in January 2017 is the result of such restructure. Unfortunately, it is the Debtors' position that LNV has abused the discretion that it was granted under the terms of the Prepetition Loan Agreement by starving WEAP and its parent of the cash flows to which they are rightfully entitled and which are necessary to administer WEAP's insurance portfolio.

In an effort to resolve these disputes without the need for a bankruptcy filing, the Debtors and Emergent attempted to negotiate a restructuring with LNV. This process was complicated by announcements in October and November 2018 by the leading underwriters in the life settlements industry regarding increases in projected life expectancies, which would have the effect of reducing the value of the Debtors' insurance portfolio. As a result of these announcements and potentially other factors, the Debtors' negotiations with LNV stalled and the Debtors were required to commence chapter 11 cases for WEGP and LRDA on November 14, 2018.

Subsequent to such filings, the Debtors and LNV entered into a standstill agreement in an effort to negotiate the terms of a possible global resolution of their disputes. The initial term of the standstill agreement was through November 26, 2018, but was subsequently extended on six occasions ultimately ending on December 13, 2018.

Because no consensual resolution was reached, WEAP commenced a chapter 11 case of its own on December 13, 2018. The filing of the Debtors' cases was necessary in order to prevent LNV from exercising remedies that would have allowed LNV to take possession of the pledged interests in WEAP and/or otherwise sweep the Debtors' funds and insurance proceeds.

Notwithstanding the recent changes in life expectancy projections described above, it should be undisputed that LNV is substantially oversecured. LNV's own valuation firm has concluded that the fair value of the insurance portfolio is $552 million as of October 31, 2018, an equity cushion of approximately $184 million, subject to a reservation of rights to assert a downward adjustment based on revised life expectancy models that are currently pending. The Debtors also filed these cases with an aggregate cash balance of approximately $33 million.

The purpose of these chapter 11 cases is to ensure that the equity value in the Debtors' estates is preserved for the benefit of all stakeholders, and not just LNV.

## D.    ADVERSARY PROCEEDING AGAINST THE PREPETITION LENDER AND OTHERS

As noted above, the Debtors believe that LNV has abused the discretion that it was granted under the terms of the Prepetition Loan Agreement.

For example, pursuant to section 5.2 of the Prepetition Loan Agreement, available amounts collected from matured life insurance policies are distributed through a waterfall. Certain fees and costs, including fees to the custodian, securities intermediary, and CLMG are paid first. Then LNV as lender is entitled to receive the "Required Amortization," which is equal to the cash available at that point in the waterfall multiplied by a percentage (*i.e.*, the "Cash Flow Sweep Percentage") that varies based on the loan-to-value of WEAP's policy portfolio. Specifically, if the loan-to-value is greater than 65% – meaning that the outstanding amount of the loan equals more than 65% of the value of the policies as determined by LNV (in its discretion) – 100% of the cash available for distribution at that point in the waterfall must be paid entirely to LNV as amortization of the principal due under the facility. LNV has improperly exercised its discretion by undervaluing the insurance portfolio and LNV has charged excessive fees in order to disallow any distributions to WEAP.

- 15 -

On January 25, 2019, the Debtors and Emergent commenced an adversary proceeding against LNV and its co-conspirators for breaches of contract, breaches of fiduciary duty, and other claims. The Debtors also have challenged LNV's rights to the Participation Interest referenced in the Prepetition Loan Agreement.

On February 26, 2019, the Debtors and Emergent served their initial set of discovery requests on the defendants in the adversary proceeding. On February 27, 2019, the Debtors and Emergent served third party subpoenas in connection with the litigation.

On March 8, 2019, LNV and the other defendants filed motions to dismiss each of the claims asserted in the adversary proceeding. The Debtors intend to vigorously contest such motions.

## E.    FIRST DAY MOTIONS AND ORDERS

In order to enable the Debtors to minimize the adverse effects of the commencement of the chapter 11 cases, the Debtors requested various types of relief in certain first day motions filed on December 13, 2018, simultaneously with the commencement of WEAP's bankruptcy case.

Through a cash collateral motion, the Debtors sought the entry of interim and final orders: (a) authorizing the Debtors to use cash collateral, (b) providing adequate protection to the Prepetition Agent and the Prepetition Lender, and (c) modifying the automatic stay. The Bankruptcy Court entered an order on December 17, 2018, approving the cash collateral motion on an interim basis. The Prepetition Agent and the Prepetition Lender subsequently objected to the entry of a final order on the cash collateral motion, and propounded discovery upon the Debtors. Following the production of documents by the Debtors and several rounds of negotiations, the parties agreed upon the form of a revised budget and final cash collateral order. The Bankruptcy Court entered an order on January 15, 2019, approving the cash collateral motion on a final basis.

Pursuant to a cash management motion, the Debtors sought the entry of an order authorizing: (a) the Debtors to continue using their existing cash management system and related bank accounts in the ordinary course of business; (b) the Debtors to make intercompany transactions; and (c) a limited waiver of section 345(b) deposit and investment requirements. The Bankruptcy Court entered an order on December 17, 2018, approving the cash management motion on an interim basis, and entered an order on February 12, 2019, approving the cash management motion on a final basis.

Through a life settlements motion, the Debtors sought the entry of an order authorizing, but not directing, the Debtors to (i) maintain life settlements insurance and pay any prepetition obligations related thereto and (ii) satisfy all servicing obligations regarding life settlements in the ordinary course of business. The Bankruptcy Court entered an order on December 17, 2018, approving the life settlements motion.

The Debtors also filed a variety of procedural motions that were approved by the Bankruptcy Court.

## F.    RETENTION OF PROFESSIONALS

The Debtors have retained Pachulski Stang Ziehl & Jones LLP as general bankruptcy counsel and Kasowitz Benson Torres LLP as special litigation counsel. Over the objection of the Prepetition Agent and the Prepetition Lender, the Bankruptcy Court approved the retention of both firms by order dated February 14, 2019.

By order dated January 15, 2019, the Bankruptcy Court authorized the Debtors to retain certain ordinary course professionals, subject to various procedures set forth therein.

On the same date, the Bankruptcy Court entered an order approving certain interim compensation procedures for estate professionals.

## G.    DISCOVERY UNDER BANKRUPTCY RULE 2004

On January 30, 2019, the Prepetition Agent and the Prepetition Lender served a motion under Bankruptcy Rule 2004 seeking entry of an order directing discovery from the Debtors. Because the Debtors believed that the scope of the requested discovery was excessive and delved into issues relating to the pending adversary proceeding against the Prepetition Lender and others, the Debtors objected to the 2004 discovery motion.

Following a contested hearing, the Bankruptcy Court approved certain of the discovery requested by the Prepetition Agent and the Prepetition Lender by order dated February 14, 2019. The Bankruptcy Court held a further status conference on February 19, 2019, to further narrow the scope of the discovery that would be ordered.

On February 22, 2019, the Prepetition Agent and the Prepetition Lender served a subpoena on Michelle Dreyer, the independent manager of WEGP, as part of their ongoing discovery under Bankruptcy Rule 2004.

## H.    EXCLUSIVE PERIOD FOR FILING A PLAN AND SOLICITING VOTES

Under the Bankruptcy Code, a debtor has the exclusive right to file and solicit acceptance of a plan or plans of reorganization for an initial period of 120 days from the date on which the debtor filed for voluntary relief. If a debtor files a plan within this exclusive period, then the debtor has the exclusive right for 180 days from the Petition Date to solicit acceptances to the plan. During these exclusive periods, no other party in interest may file a competing plan of reorganization; however, a court may extend these periods upon request of a party in interest and "for cause."

## I.    DEADLINE TO ASSUME OR REJECT LEASES OF NONRESIDENTIAL REAL PROPERTY

Pursuant to section 365(d)(4) of the Bankruptcy Code, the time within which the Debtors must assume or reject unexpired leases of nonresidential real property is 120 days from the Petition Date, unless extended by order of the Bankruptcy Court.

## J.    SUMMARY OF NEW EXIT FACILITY

The Debtors are in the process of negotiating the definitive terms of the New Exit Facility. It is anticipated that the New Exit Facility (a) will be secured by a first priority lien on all or substantially all of the Debtors' assets, including WEAP's life settlements portfolio and (b) will include sufficient funding to refinance the Allowed Prepetition Secured Lender Claims on the Effective Date of the Plan. The proceeds of the New Exit Facility (along with the Debtors' cash on hand) will be utilized to repay the Allowed Prepetition Secured Lender Claims and to provide working capital to the Reorganized Debtors following the Effective Date. The Debtors anticipate that the New Exit Facility will include customary market terms to be negotiated and incorporated in definitive documents that will be filed with the Plan Supplement.

The New Exit Facility Lenders are expected to be third parties who are wholly unaffiliated with the Debtors.

# ARTICLE III.
## SUMMARY OF THE PLAN

**THIS ARTICLE III IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE MATERIAL TERMS OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN.  TO THE EXTENT THERE ARE ANY INCONSISTENCIES OR CONFLICTS BETWEEN THIS ARTICLE III AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN SHALL CONTROL AND GOVERN.**

## A.    ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### 1.    Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; *provided, however*, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtors or Reorganized Debtors in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

### 2.    Professional Fee Claims

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must File, within sixty (60) days after the Effective Date, and serve on the Reorganized Debtors and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim; *provided* that the Reorganized Debtors will pay Professionals in the ordinary course of business, for any work performed after the Effective Date, including those fees and expenses incurred by Professionals in connection with the implementation and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order(s) relating to or allowing any such Professional Fee Claim; *provided, further*, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Effective Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

Objections to any Professional Fee Claim must be Filed and served on the Reorganized Debtors and the requesting party by the later of (a) ninety (90) days after the Effective Date and (b) thirty (30) days after the Filing of the applicable request for payment of the Professional Fee Claim.  Each Holder of an Allowed Professional Fee Claim will be paid by the Reorganized

Debtors in Cash within five (5) Business Days of entry of the order approving such Allowed Professional Fee Claim.

 3.  **Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or Reorganized Debtors:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtors may prepay any or all such Claims at any time, without premium or penalty.

**B. CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

 1.  **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date.

**Summary of Classification and Treatment of Classified Claims and Equity Interests**

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Lender Secured Claims | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 5 | Equity Interests in Debtors | Unimpaired | Deemed to Accept |

 2.  **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of

voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

### 3. Unimpairment of Claims and Equity Interests; No Solicitation or Voting

All Holders of Allowed Claims and Equity Interests are Unimpaired, are not entitled to vote on the Plan, and are deemed to accept the Plan.

### 4. Cramdown

If any Class of Claims or Equity Interests is deemed to reject the Plan or is determined to be entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with the terms thereof and the Bankruptcy Code.  If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## C.    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 1.    Class 1 – Other Priority Claims

- *Classification*:  Class 1 consists of the Other Priority Claims.

- *Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date or (ii) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.

- *Impairment and Voting*:  Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

### 2.    Class 2 – Other Secured Claims

- *Classification*:  Class 2 consists of the Other Secured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 2 Claim is an Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange

for, such Allowed Class 2 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (C) return of such portion of the collateral securing such Allowed Class 2 Claim with a value sufficient to fully satisfy such Claim; or (D) such other treatment rendering such Claim Unimpaired. Except with respect to Claims that are treated in accordance with the preceding clause (C), each Holder of an Allowed Other Secured Claim will retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment of such Allowed Other Secured Claim is made as provided in the Plan.

- *Impairment and Voting*:  Class 2 is Unimpaired, and the Holders of Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

3.  **Class 3 – Prepetition Lender Secured Claims**

- *Classification*:  Class 3 consists of the Prepetition Lender Secured Claims.

- *Treatment*:  On or as soon as reasonably practicable after the Effective Date, each Holder of an Allowed Class 3 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 3 Claim, at the election of the Debtors or Reorganized Debtors:  (A) Cash equal to the amount of such Allowed Class 3 Claim or (B) such other less favorable treatment as to which the Debtors or Reorganized Debtors and the Holder of such Allowed Class 3 Claim will have agreed upon in writing.  Upon payment of the Allowed Prepetition Lender Secured Claims as provided herein, all Liens securing the Allowed Prepetition Lender Secured Claims shall be extinguished and released.  Notwithstanding the foregoing, the Debtors expressly reserve any and all rights to:  (A) assert rights, claims, and defenses against the Prepetition Agent and the Prepetition Lender with respect to the Prepetition Lender Secured Claims or otherwise and (B) contest, dispute, or otherwise challenge any Prepetition Lender Secured Claims including with respect to the "Aggregate Participation Interest", the "Participation Interest", and any other terms utilized to reflect such component of the Prepetition Lender Secured Claims in the Prepetition Loan Agreement (collectively, the "<u>Participation Interest</u>").

- *Impairment and Voting*:  Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

4. **Class 4 – General Unsecured Claims**

- *Classification*:  Class 4 consists of the General Unsecured Claims.

- *Treatment*:  Each Holder of an Allowed Class 4 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive Cash in an amount equal to such Allowed Class 4 Claim on the later of: (a) the Effective Date, or as soon as practicable thereafter; or (b) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 4 Claim.  Notwithstanding anything to the contrary in the Plan, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by order of the Bankruptcy Court.

- *Impairment and Voting*:  Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

5. **Class 5 – Equity Interests in the Debtors**

- *Classification*:  Class 5 consists of the Equity Interests in the Debtors.

- *Treatment*:  On the Effective Date, the Holders of the Equity Interests in each of the Debtors as of the Petition Date shall retain such Equity Interests in each of the Reorganized Debtors.

- *Impairment and Voting*:  Class 5 is Unimpaired, and the Holders of Class 5 Equity Interests in the Debtors will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, Holders of Class 5 Equity Interests in the Debtors are not entitled to vote to accept or reject the Plan and will not be solicited.

## D.    SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS

Except as otherwise provided in the Plan, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to contracts to be assumed under the Plan.

## E.    SUBORDINATED CLAIMS

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the

Bankruptcy Code, or otherwise.  Under section 510 of the Bankruptcy Code, upon written notice, the Reorganized Debtors reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## F.     ACCEPTANCE OR REJECTION OF THE PLAN

### 1.     Presumed Acceptance of Plan

All Classes of Claims and Equity Interests are Unimpaired under the Plan, and are, therefore, presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

### 2.     No Presumed Rejection of Plan

No Class of Claims or Equity Interests is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 3.     No Voting Classes

No Class of Claims or Equity Interests will be entitled to vote to accept or reject the Plan.

## G.     MEANS FOR IMPLEMENTATION OF THE PLAN

### 1.     General Settlement of Claims

Pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan.

### 2.     Corporate Existence

The Debtors will continue to exist after the Effective Date as separate legal entities, with all of the powers of corporations, limited liability companies, and partnerships pursuant to the applicable law in their states or country of incorporation or organization pursuant to the Amended Organizational Documents.  On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may take such action not inconsistent with the Plan and as permitted by applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing:  (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Effective Date or any time thereafter.

On the Effective Date or as soon thereafter as is reasonably practicable, the Reorganized Debtors may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, including, without limitation:  (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan and the Plan Documents and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment,

assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (iii) the filing of appropriate certificates or articles of incorporation and amendments thereto; (iv) reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable law; and (v) all other actions that the applicable entities determine to be necessary or appropriate, including, without limitation, making filings or recordings that may be required by applicable law.

       3.      **Vesting of Assets in the Reorganized Debtors**

Except as otherwise provided in the Plan or the Confirmation Order, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action and, unless otherwise waived or released pursuant to an order of the Bankruptcy Court or the Plan, Avoidance Actions) and any property and Assets acquired by the Debtors pursuant to the Plan will vest in the Reorganized Debtors, free and clear of all Liens, Claims, charges or other encumbrances.  Except as may be otherwise provided in the Plan, on and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and the Confirmation Order.  Without limiting the foregoing, the Reorganized Debtors will pay the charges that they incur after the Effective Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

       4.      **New Exit Facility**

The Debtors shall enter into the New Exit Facility on or before the Effective Date. The Confirmation Order shall be deemed approval of the New Exit Facility and the New Exit Facility Documents, as applicable, and all transactions contemplated thereby, and all actions to be taken, undertakings to be made, and obligations to be incurred by the Reorganized Debtors in connection therewith, including the payment of all fees, indemnities, and expenses provided for therein, and authorization of the Reorganized Debtors to enter into and execute the New Exit Facility Documents and such other documents as may be required to effectuate the treatment afforded by the New Exit Facility.  On the Effective Date, all of the Liens and security interests to be granted in accordance with the New Exit Facility Documents (a) shall be deemed to be granted, (b) shall be legal, binding, and enforceable Liens on, and security interests in, the collateral granted thereunder in accordance with the terms of the New Exit Facility Documents, (c) shall be deemed perfected and first priority on the Effective Date, subject only to such Liens and security interests as may be permitted under the New Exit Facility Documents, and (d) shall not be subject to recharacterization or equitable subordination for any purposes whatsoever and shall not constitute preferential transfers or fraudulent conveyances under the Bankruptcy Code or any applicable non-bankruptcy law.

The New Exit Facility shall provide, as of the Effective Date, sufficient funding or deemed funding, together with the Debtors' Cash on hand, to satisfy the Prepetition Lender Secured Claims in full.

       5.      **Authorized Financing**

On the Effective Date, the applicable Reorganized Debtors shall be and are authorized to execute and deliver the New Exit Facility Documents and any related loan documents, and shall be and are authorized to execute, deliver, file, record and issue any other notes, guarantees, deeds

of trust, security agreements, documents (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity, subject to the lien limitations set forth herein.  Any holder of a lien or security interest whose claim is satisfied under the Plan, shall be required to file terminations of any perfection instruments.

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Reorganized Debtors to make payments required pursuant to the Plan will be obtained from the New Exit Facility and the Reorganized Debtors' Cash balances, including Cash from operations.  Cash payments to be made pursuant to the Plan will be made by the Reorganized Debtors.

6.    **Treatment of Vacant Classes**

Any Claim or Equity Interest in a Class considered vacant under Article III.B. of the Plan shall receive no Plan Distribution.

7.    **No Substantive Consolidation**

The Plan does not provide for substantive consolidation of the Debtors.  Each of the Estates of the Debtors shall remain separate and distinct for all purposes under the Plan, including for purposes of classifying and treating Claims under the Plan.

8.    **Release of Liens, Claims and Equity Interests**

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, on the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.  Any Entity holding such Liens or Equity Interests will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Reorganized Debtors such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Reorganized Debtors.

9.    **Certificate of Incorporation and Bylaws**

The Amended Organizational Documents shall amend or succeed the certificates or articles of incorporation, by-laws and other organizational documents of the Reorganized Debtors to satisfy the provisions of the Plan and the Bankruptcy Code, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan and the transactions contemplated herein.  After the Effective Date, the Reorganized Debtors may amend and restate their certificates or articles of incorporation and by-laws, and other applicable organizational documents, as permitted by applicable law.

10.    **Management of Reorganized Debtors**

As of the Effective Date, the initial officers of the Reorganized Debtors will be the officers of the Debtors existing immediately prior to the Effective Date.  Except as set forth in the Plan, any other directors, managers, or officers of the Debtors shall be deemed removed as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, prior to the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial board of directors or as a manager or officer of the Reorganized Debtors, and, to the extent such Person is an insider other than by virtue of being a director, manager or officer, the nature of any compensation for such Person.  Each such director and each officer will serve from and after the Effective Date pursuant to applicable law and the terms of the Amended Organizational Documents and the other constituent and organizational documents of the Reorganized Debtors.

11.    **Company Action**

Each of the Debtors and the Reorganized Debtors, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan, including, without limitation, the distribution of the securities to be issued pursuant hereto in the name of and on behalf of the Reorganized Debtors and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the Debtors or the Reorganized Debtors and as applicable or by any other Person (except for those expressly required pursuant to the Plan).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, managers or members of any Debtor (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, managers or members of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

All matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtor, as applicable, and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtor, as applicable, or by any other Person.  On the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtor, as applicable, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and each Reorganized Debtor, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person.  The secretary and any assistant secretary of each

Debtor and each Reorganized Debtor, as applicable, will be authorized to certify or attest to any of the foregoing actions.

12.     **Cancellation of Notes, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. Notwithstanding such cancellation and discharge, the Prepetition Loan Agreement shall continue in effect to the extent necessary to: (1) allow the Prepetition Lender and the Prepetition Agent to receive Plan Distributions on account of the Allowed Prepetition Lender Secured Claims and (2) allow the Reorganized Debtors to make distributions pursuant to the Plan. The commitments and obligations (if any) of the Prepetition Lender to extend any further or future credit or financial accommodations to any of the Debtors or any of their respective successors or assigns under the Prepetition Loan Agreement shall fully terminate and be of no further force or effect on the Effective Date.

13.     **Cancellation of Existing Instruments Governing Security Interests**

Upon payment or other satisfaction of an Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim, or promptly thereafter, the Holder of such Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any Collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

14.     **Restructuring Transactions**

On the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with the Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.

15.     **Plan Supplement and Other Plan Documents**

The documents to be Filed as part of the Plan Supplement and the other Plan Documents, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated herein by this reference (including to the applicable definitions in Article I of the Plan) and fully enforceable as if stated in full in the Plan.

**H.    TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

1.    **Assumption and Rejection of Executory Contracts and Unexpired Leases**

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including, without limitation, employment agreements) and Unexpired Leases that:

- have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto;

- have been rejected by order of the Bankruptcy Court;

- are the subject of a motion to reject pending on the Effective Date;

- are identified in the Rejected Executory Contract/Unexpired Lease List; or

- are rejected pursuant to the terms of the Plan.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions and rejections pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any provision in any Executory Contract or Unexpired Lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Reorganized Debtors' assumption of such Executory Contract or Unexpired Lease, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights with respect thereto.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Reorganized Debtors in accordance with its terms, except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

2.    **Assignment of Executory Contracts or Unexpired Leases**

In the event of an assignment of an Executory Contract or Unexpired Lease, at least ten (10) days prior to the Confirmation Hearing, the Debtors will serve upon counterparties to such Executory Contracts and Unexpired Leases a notice of the proposed assumption and assignment that will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract or Unexpired Lease will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors will file with the Bankruptcy Court a list of such Executory Contracts and Unexpired Leases to be assigned and the proposed cure amounts.  Any applicable cure amounts will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assignment or any related cure amount must be Filed, served and actually received by the Debtors at least three (3) Business Days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the

proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract or Unexpired Lease.  The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts or Unexpired Leases pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  The Reorganized Debtors, in their sole option, reserve the right to reject such Executory Contract or Unexpired Lease at any time in lieu of assuming and assigning it.

3.    **Rejection of Executory Contracts or Unexpired Leases**

All Executory Contracts and Unexpired Leases identified in the Rejected Executory Contract/Unexpired Lease List shall be deemed rejected as of the Effective Date.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejections identified in the Rejected Executory Contract/Unexpired Lease List and this Article of the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

4.    **Claims on Account of the Rejection of Executory Contracts or Unexpired Leases**

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after notice of such rejection.  The Debtors or Reorganized Debtors, as the case may be, will provide notice of such rejection and specify the appropriate deadline for the filing of such Proof of Claim.

Any Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so will be forever barred, estopped and enjoined from asserting such Claim, and such Claim will not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and property will be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan.  All such Claims will, as of the Effective Date, be subject to the permanent injunction set forth in Article X.G. of the Plan.  All Claims arising from the rejection of any Executory Contract or Unexpired Lease shall be treated as General Unsecured Claims, subject to any applicable limitation or defense under the Bankruptcy Code and applicable law.

5.    **Cure of Defaults for Assumed Executory Contracts and Unexpired Leases**

Any monetary amounts by which any Executory Contract or Unexpired Lease to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or Reorganized Debtors, as applicable, upon assumption thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Following the Petition Date, the Debtors may serve a notice on parties to executory contracts and unexpired leases to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with the Plan and setting forth the proposed Cure Amount (if any).  If a counterparty to any executory contract or unexpired lease that the Debtors or Reorganized

Debtors, as applicable intend to assume does not receive such a notice, the proposed Cure Amount for such executory contract or unexpired lease shall be deemed to be zero dollars ($0).

Any objection by a counterparty to an Executory Contract or Unexpired Lease to a proposed assumption must be Filed, served and actually received by the Debtors at least five (5) Business Days prior to the Confirmation Hearing. Any counterparty to an Executory Contract and Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have assented and will be deemed to have forever released and waived any objection to the proposed assumption other than with respect to any alleged cure amount, which may be asserted at any time. In the event of a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. The Debtors or Reorganized Debtors, as applicable, in their sole option, reserve the right to reject such Executory Contract or Unexpired Lease at any time in lieu of assuming it.

6.    **Assumption of Insurance Policies**

The Debtors and, upon the Effective Date, the Reorganized Debtors, will assume all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and all such Insurance Policies shall vest in the Reorganized Debtors. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies and all such Insurance Policies shall continue in full force and effect thereafter in accordance with their respective terms. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Reorganized Debtors under the Insurance Policies.

7.    **Indemnification Provisions**

All indemnification provisions currently in place (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the directors, officers and managers of the Debtors who served in such capacity as of the Petition Date with respect to or based upon any act or omission taken or omitted in such capacities, for or on behalf of the Debtors, will be Reinstated (or assumed, as the case may be), and will survive effectiveness of the Plan. No such Reinstatement or assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable.

I.    **PROVISIONS GOVERNING DISTRIBUTIONS**

1.    **Dates of Distributions**

Except as otherwise provided in the plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtors shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Equity Interests in the applicable Class and in the manner provided herein. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed

- 30 -

Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Reorganized Debtors shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Confirmation Order. All payments and all distributions made by the Distribution Agent under the Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Reorganized Debtors.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtors and the Equity Interests in the Debtors shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests. The Reorganized Debtors and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the Transfer of any Claims against the Debtors or Equity Interests in the Debtors occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

2.    **Distribution Agent**

Except as provided therein, all distributions under the Plan shall be made by the Reorganized Debtors as Distribution Agent, or by such other Entity designated by the Debtors as a Distribution Agent on the Effective Date or thereafter. The Reorganized Debtors, or such other Entity designated by the Debtors to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

The Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions thereof.

3.    **Cash Distributions**

Distributions of Cash may be made either by check drawn on a domestic bank or wire transfer from a domestic bank, at the option of the Reorganized Debtors, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

4.    **Rounding of Payments**

Whenever the Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash to be distributed under the Plan remains undistributed as a result of the

aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under the Plan.

### 5.   *De Minimis* Distribution

Except as to any Allowed Claim that is Unimpaired under the Plan, none of the Reorganized Debtors or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in Article VIII.K of the Plan within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim.  *De minimis* distributions for which no such request is timely received shall revert to the Reorganized Debtors.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Notwithstanding any other provision of the Plan, none of the Reorganized Debtors or any Distribution Agent shall have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

### 6.   **Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

### 7.   **General Distribution Procedures**

The Reorganized Debtors, or any other duly appointed Distribution Agent, shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise.  All Cash and other property held by the Reorganized Debtors for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan.

### 8.   **Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim Filed by such Holders (to the extent such proofs of claim are Filed in the Chapter 11 Cases), (2) at the addresses set forth in any written notices of address change delivered to the Debtors, or (3) at the addresses in the Debtors' books and records.

### 9.   **Undeliverable Distributions and Unclaimed Property**

If the distribution to the Holder of any Allowed Claim is returned to the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder, and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder, unless and until the Reorganized Debtors is notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within one (1) year from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Reorganized Debtors.

10.    **Withholding Taxes**

In connection with the Plan, to the extent applicable, the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements.  The Reorganized Debtors shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  As a condition to receiving any distribution under the Plan, the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Reorganized Debtors to comply with applicable tax reporting and withholding laws.  Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

11.    **Setoffs**

The Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Reorganized Debtors of any such claims, rights and causes of action that the Reorganized Debtors possesses against such Holder.

12.    **Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to Article V of the Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Reorganized Debtors or another applicable Distribution Agent unless waived in writing by the Debtors or the Reorganized Debtors, as applicable.

13.    **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Reorganized Debtors and other applicable Distribution Agent:  (x) evidence reasonably satisfactory to the Reorganized Debtors and other applicable Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Reorganized Debtors and other applicable Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim.  Upon compliance with Article VII.**Error! Reference source not found.** of the Plan as determined by the Debtors or Reorganized Debtors by a Holder of a Claim evidenced by

a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to Reorganized Parent and other applicable Distribution Agent.

## J.    NO FILING OF PROOFS OF CLAIM EXCEPT FOR REJECTION CLAIMS

Except with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases or as otherwise provided under the Plan, Holders of Claims shall not be required to file a Proof of Claim and no parties should file a Proof of Claim. Unless disputed by the Holder of a Claim, the amount set forth in the applicable Debtor's books and records, subject to any limitations on allowance imposed by section 502 of the Bankruptcy Code, shall constitute the Allowed amount of such Holder's Claim.

## K.    DISPUTED CLAIMS

The Reorganized Debtors intend to attempt to resolve Disputed Claims, aside from Prepetition Lender Secured Claims, consensually or through judicial means outside the Bankruptcy Court. The Allowed amount, if any, of the Prepetition Lender Secured Claims will be determined by the Bankruptcy Court. The Reorganized Debtors may, in their discretion, file with the Bankruptcy Court an objection to the allowance of any other Disputed Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, *provided, however*, that the Reorganized Debtors, may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court. Unless otherwise provided in the Confirmation Order, the Reorganized Debtors are authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan. Under no circumstances will any distributions be made on account of any Claim that is not an Allowed Claim.

## L.    PROCEDURES REGARDING DISPUTED CLAIMS

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by order of the Bankruptcy Court or by stipulation between the Debtors and the Holder of the Claim.

## M.    ALLOWANCE OF CLAIMS AND EQUITY INTERESTS

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Reorganized Debtors shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

The Equity Interests in the Debtors existing as of the Petition Date are deemed allowed.

### 1.    Allowance of Claims

Notwithstanding anything to the contrary herein, after the Effective Date and subject to the other provisions of the Plan, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim will become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim.

### 2. Estimation

The Debtors, prior to the Effective Date, and the Reorganized Debtors, after the Effective Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code, and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding.

## N. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### 1. Conditions Precedent to Consummation

Consummation of the Plan will be conditioned upon the satisfaction or waiver pursuant to the provisions of Article IX.**Error! Reference source not found.**. of the Plan of the following:

- The Bankruptcy Court shall have determined that the Debtors are indebted and liable to the Holders of the Prepetition Secured Lender Claims in an amount not to exceed: (i) the aggregate principal amount of $367.9 million (all of which reflects funds advanced by the Prepetition Lender to White Eagle), plus (ii) accrued (both before and after the Petition Date) and unpaid interest and fees payable under the Prepetition Loan Agreement and related documentation as of the Effective Date, including any distributions to which the Prepetition Lender is entitled on account of the Participation Interest as of the Effective Date, based on actual recoveries from the proceeds of White Eagle's insurance policies realized as of such date.

- The Bankruptcy Court will have entered a Final Order in form and in substance satisfactory to the Debtors approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Confirming the Plan.

- The Plan and Plan Supplement and all schedules, documents, supplements and exhibits to the Plan will have been Filed in form and substance acceptable to the Debtors.

- The Confirmation Order shall have been entered, shall be a Final Order, and shall be in form and substance acceptable to the Debtors. The Confirmation Order shall provide that, among other things, (a) the Debtors or the Reorganized Debtors, as appropriate, are authorized to take all actions necessary or appropriate to consummate the Plan and the Restructuring Transactions, including, without limitation, (i) entering into, implementing and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in the Plan, (ii) making all distributions and issuances as required under the Plan; and (iii) entering into any agreements and transactions as set forth in the Plan Supplement, including the New Exit Facility; (b) the provisions

of the Confirmation Order and the Plan are nonseverable and mutually dependent; (c) the implementation of the Plan in accordance with its terms is authorized; and (d) pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of Assets contemplated under the Plan, shall not be subject to any Stamp or Similar Tax.

- All documents and agreements necessary to implement the Plan, including without limitation, the New Exit Facility Documents, in each case in form and substance acceptable to the Debtors, will have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements will have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement the Plan, including, without limitation, the Amended Organizational Documents, will have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent Consummation of the Restructuring.

2. **Waiver of Conditions**

The conditions to Consummation of the Plan set forth in this Article IX may be waived by the Debtors without notice, leave or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan. The failure to satisfy or waive a condition to Consummation may be asserted by the Debtors or the Reorganized Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtors or Reorganized Debtors to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

3. **Effect of Non-Occurrence of Conditions to Consummation**

If the Consummation of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, any Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders or any other Entity in any respect.

### O.    RELEASE, INJUNCTION AND RELATED PROVISIONS

1.    **General**

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

In accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code, without any further notice to or action, order or approval of the Bankruptcy Court, after the Effective Date (1) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Claims against them and (2) the Reorganized Debtors may, in their sole and absolute discretion, compromise and settle Causes of Action against other Entities.

For purposes of the following release and exculpation provisions:

The "Releasing Parties" are, collectively, each in its capacity as such, Holders of Claims and Equity Interests that are Unimpaired under the Plan and the Related Persons thereof.

The "Releasing Debtor Parties" means the Debtors and Reorganized Debtors, in their individual capacities and as debtors-in-possession, and their respective Related Persons.

The "Released Parties" are, collectively, each in its capacity as such:  (a) the Debtors; (b) the Reorganized Debtors; (c) the New Exit Facility Lenders; and (d) the Related Persons of each of (a) through (c) of the foregoing.

The "Exculpated Parties" are, collectively, the Debtors, the Reorganized Debtors, and their Related Persons who served in such capacity during the Chapter 11 Cases.

2.    **Release by Debtors**

EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION PROVIDED BY EACH OF THE RELEASED PARTIES, THE ADEQUACY OF WHICH IS HEREBY ACKNOWLEDGED AND CONFIRMED, THE RELEASING DEBTOR PARTIES SHALL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER PROVIDED A FULL DISCHARGE, WAIVER AND RELEASE TO THE RELEASED PARTIES (AND EACH SUCH RELEASED PARTY SO RELEASED SHALL BE DEEMED FOREVER RELEASED, WAIVED AND DISCHARGED BY THE RELEASING DEBTOR PARTIES) AND THEIR RESPECTIVE PROPERTIES FROM ANY AND ALL CLAIMS, INTERESTS, CAUSES OF ACTION, LITIGATION CLAIMS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, AT EQUITY, WHETHER FOR TORT, CONTRACT, OR OTHERWISE, BASED IN WHOLE OR IN PART UPON ANY ACT OR OMISSION, TRANSACTION, OR OTHER OCCURRENCE OR CIRCUMSTANCES EXISTING OR TAKING PLACE PRIOR TO OR ON THE EFFECTIVE DATE ARISING FROM OR RELATED IN ANY WAY IN WHOLE OR IN PART TO THE DEBTORS, THE CHAPTER 11 CASES, THE DISCLOSURE STATEMENT, OR THE PLAN THAT SUCH RELEASING DEBTOR PARTIES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT (WHETHER INDIVIDUALLY

OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT FOR OR ON BEHALF OF THE DEBTORS, THEIR ESTATES OR THE REORGANIZED DEBTORS (WHETHER DIRECTLY OR DERIVATIVELY) AGAINST ANY OF THE RELEASED PARTIES; *PROVIDED, HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY CAUSES OF ACTION EXPRESSLY SET FORTH IN AND PRESERVED BY THE PLAN OR THE PLAN SUPPLEMENT; (II) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; (III) THE RIGHTS OF SUCH RELEASING DEBTOR PARTY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT; AND/OR (IV) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY OF THE RESTRUCTURING TRANSACTIONS, OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.  THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.  NOTWITHSTANDING THE FOREGOING, THE DEBTORS ARE NOT RELEASING THE DEBTORS (BUT THEY ARE RELEASING THE RELATED PERSONS TO THE DEBTORS PURSUANT TO THIS PARAGRAPH).

3.   **Release by Holders of Claims and Equity Interests**

EFFECTIVE AS OF THE EFFECTIVE DATE, FOR GOOD AND VALUABLE CONSIDERATION, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, INCLUDING, WITHOUT LIMITATION, THE SERVICE OF THE RELEASED PARTIES TO FACILITATE THE REORGANIZATION OF THE DEBTORS AND THE IMPLEMENTATION OF THE RESTRUCTURING AND THE RESTRUCTURING TRANSACTIONS, AND EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR IN THE CONFIRMATION ORDER, THE RELEASED PARTIES SHALL BE DEEMED CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED BY THE RELEASING PARTIES, FROM ANY AND ALL CLAIMS, INTERESTS, CAUSES OF ACTION, LITIGATION CLAIMS AND ANY OTHER DEBTS, OBLIGATIONS, RIGHTS, SUITS, DAMAGES, ACTIONS, LOSSES, REMEDIES, AND LIABILITIES WHATSOEVER, INCLUDING ANY DERIVATIVE CLAIMS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, EXISTING OR AS OF THE EFFECTIVE DATE OR THEREAFTER ARISING, IN LAW, EQUITY, OR OTHERWISE, THAT SUCH RELEASING PARTIES OR THEIR AFFILIATES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR ON BEHALF OF THE RELEASING PARTIES, BASED ON OR RELATING TO, OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE CHAPTER 11 CASES, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR INTEREST THAT IS TREATED IN THE PLAN, THE RESTRUCTURING, THE RESTRUCTURING OF ANY CLAIM OR EQUITY INTEREST BEFORE OR DURING THE CHAPTER 11 CASES, THE RESTRUCTURING TRANSACTIONS, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE DISCLOSURE STATEMENT, THE RESTRUCTURING SUPPORT AGREEMENT, THE PLAN, THE NEW EXIT FACILITY DOCUMENTS, AND RELATED AGREEMENTS, INSTRUMENTS, AND OTHER

DOCUMENTS (INCLUDING THE PLAN DOCUMENTS), OR ANY OTHER ACT OR OMISSION; *PROVIDED, HOWEVER*, THAT THE FOREGOING PROVISIONS OF THIS RELEASE SHALL NOT OPERATE TO WAIVE OR RELEASE (I) ANY CAUSES OF ACTION ARISING FROM FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT AS DETERMINED BY FINAL ORDER OF THE BANKRUPTCY COURT OR ANY OTHER COURT OF COMPETENT JURISDICTION; (II) THE RIGHTS OF SUCH RELEASING PARTY TO ENFORCE THE PLAN AND THE CONTRACTS, INSTRUMENTS, RELEASES, AND OTHER AGREEMENTS OR DOCUMENTS DELIVERED UNDER OR IN CONNECTION WITH THE PLAN OR ASSUMED PURSUANT TO THE PLAN OR ASSUMED PURSUANT TO FINAL ORDER OF THE BANKRUPTCY COURT; AND/OR (III) ANY POST-EFFECTIVE DATE OBLIGATIONS OF ANY PARTY OR ENTITY UNDER THE PLAN, ANY OF THE RESTRUCTURING TRANSACTIONS, OR ANY DOCUMENT, INSTRUMENT OR AGREEMENT (INCLUDING THOSE SET FORTH IN THE PLAN SUPPLEMENT) EXECUTED TO IMPLEMENT THE PLAN.  THE FOREGOING RELEASE SHALL BE EFFECTIVE AS OF THE EFFECTIVE DATE WITHOUT FURTHER NOTICE TO OR ORDER OF THE BANKRUPTCY COURT, ACT OR ACTION UNDER APPLICABLE LAW, REGULATION, ORDER, OR RULE OR THE VOTE, CONSENT, AUTHORIZATION OR APPROVAL OF ANY PERSON.

4.    **Discharge of Claims**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests.  Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

5.    **Exculpation**

The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation or Consummation of the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; *provided, further*, that each Exculpated Party will be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions, Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan or the Plan Supplement.

6.      **Preservation of Rights of Action**

(a)      <u>Maintenance of Causes of Action</u>

Except as otherwise provided in Article X or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Reorganized Debtors will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases.  The Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court.

(b)      <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>

Unless a Cause of Action or Litigation Claim against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action or Litigation Claim for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the confirmation of the Plan or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action or Litigation Claims have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article X of the Plan) or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

7.      **Injunction**

EXCEPT AS OTHERWISE PROVIDED IN THE PLAN, FROM AND AFTER THE EFFECTIVE DATE, ALL ENTITIES ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY SUIT, ACTION OR OTHER PROCEEDING, OR CREATING, PERFECTING OR ENFORCING ANY LIEN OF ANY KIND, ON ACCOUNT OF OR RESPECTING ANY CLAIM, DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST, OR REMEDY RELEASED OR TO BE RELEASED, EXCULPATED OR TO BE EXCULPATED, OR DISCHARGED OR TO BE DISCHARGED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.  BY ACCEPTING DISTRIBUTIONS PURSUANT TO THE PLAN, EACH HOLDER OF AN ALLOWED CLAIM OR EQUITY INTEREST WILL BE DEEMED TO HAVE SPECIFICALLY CONSENTED TO THIS INJUNCTION.  ALL INJUNCTIONS OR STAYS PROVIDED FOR IN THE CHAPTER 11 CASES UNDER SECTION 105 OR 362 OF THE BANKRUPTCY CODE, OR OTHERWISE, AND IN EXISTENCE ON THE CONFIRMATION DATE, WILL REMAIN IN FULL FORCE AND EFFECT UNTIL THE EFFECTIVE DATE.

## P.    BINDING NATURE OF PLAN

ON THE EFFECTIVE DATE, AND EFFECTIVE AS OF THE EFFECTIVE DATE, THE PLAN WILL BIND, AND WILL BE DEEMED BINDING UPON, ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS AND SUCH HOLDER'S RESPECTIVE SUCCESSORS AND ASSIGNS, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NOTWITHSTANDING WHETHER OR NOT SUCH HOLDER WILL RECEIVE OR RETAIN ANY PROPERTY OR INTEREST IN PROPERTY UNDER THE PLAN.

## Q.    CONFIRMATION PROCEDURES

### 1.    Confirmation Hearing

**The date has not yet been set for the Confirmation Hearing.**  Once scheduled, the Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order.  Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

**The date has not yet been set for the Confirmation Objection Deadline**.

All Confirmation Objections must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in accordance with the Disclosure Statement Order on or before the Confirmation Objection Deadline once it is set.

> CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

### 2.    Filing Objections to the Plan

Any objection to confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount and nature of the Claim or the amount of Equity Interests held by such Entity; (iv) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Confirmation Objection Deadline (once set) by the Notice Parties.

## R.    STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code.  The Debtors believe that:  (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtors have complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith. Specifically, the Debtors believe that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Debtors have complied and will comply with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment:  (a) made before the confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after confirmation of the Plan;

- The Debtors will disclose the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtors, an affiliate of the Debtors participating in the plan with the Debtors, or a successor to the Debtors under the Plan.  The appointment to, or continuance in, such office by such individual, will be consistent with the interests of creditors and equity security holders and with public policy and the Debtors will have disclosed the identity of any insider that the Reorganized Debtors will employ or retain, and the nature of any compensation for such insider;

- Each Class of Claims or Equity Interests will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims and Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable;

- Confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor thereto under the Plan;

- The Debtors have paid or will pay all fees payable under section 1930 of title 28, and the Plan provides for the payment of all such fees on the Effective Date; and

- The Plan provides for the continuation after the Effective Date of payment of all retiree benefits.

1.    **Best Interests of Creditors Test**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation of a chapter 11 plan, that each holder of a claim or equity interest in each impaired class:  (i) has accepted the plan; or (ii) among other things, will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such Person would receive if each of the debtors were liquidated under chapter 7 of the Bankruptcy Code.  To make these findings, the Bankruptcy Court must:  (1) estimate the Cash proceeds (the "<u>Liquidation Proceeds</u>") that a chapter 7 trustee would generate if each Debtor's Chapter 11 Case were converted to a chapter 7 case on the Effective Date and the assets of such Debtor's Estate were liquidated; (2) determine the distribution (the "<u>Liquidation Distribution</u>") that each non-accepting Holder of a Claim or

Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (3) compare each Holder's Liquidation Distribution to the distribution under the Plan that such Holder would receive if the Plan were confirmed and consummated.

Because there are no Impaired Classes under the Plan, the requirements of section 1129(a)(7) of the Bankruptcy Code are not applicable to the Plan.

2.    **Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that confirmation is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization, unless the plan contemplates such liquidation. For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtors have analyzed the ability of the Reorganized Debtors to meet their obligations under the Plan and to retain sufficient liquidity and capital resources to conduct their business.

The Debtors believe that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtors analyzed their ability to satisfy their financial obligations while maintaining sufficient liquidity and capital resources. The Debtors are in the process of developing a business plan and financial projections for future fiscal years (the "Financial Projections"), which will be filed along with the Plan Supplement.

In general, as illustrated by the Financial Projections, the Debtors believe that with the capital structure provided under the Plan and the added funding availability under the New Exit Facility, the Reorganized Debtors should have sufficient Cash flow and Cash on hand to make all payments required pursuant to the Plan while conducting ongoing business operations. The Debtors believe that confirmation and Consummation is, therefore, not likely to be followed by the liquidation or further reorganization of the Reorganized Debtors. Accordingly, the Debtors believe that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

THE FINANCIAL PROJECTIONS TO BE FILED WITH THE PLAN SUPPLEMENT, INCLUDING THE UNDERLYING ASSUMPTIONS THERETO, SHOULD BE CAREFULLY REVIEWED IN EVALUATING THE PLAN. WHILE THE DEBTORS BELIEVE THAT THE ASSUMPTIONS UNDERLYING THE FINANCIAL PROJECTIONS, WHEN CONSIDERED ON AN OVERALL BASIS, WILL BE REASONABLE IN LIGHT OF CURRENT CIRCUMSTANCES AND EXPECTATIONS, NO ASSURANCE CAN BE GIVEN THAT THE FINANCIAL PROJECTIONS WILL BE REALIZED. THE DEBTORS MAKE NO REPRESENTATION OR WARRANTY AS TO THE ACCURACY OF THE FINANCIAL PROJECTIONS.

The Financial Projections will not be examined or compiled by independent accountants. The Debtors make no representation as to the accuracy of the Financial Projections or the Company's ability to achieve the projected results. Many of the assumptions on which the projections will be based are inherently subject to significant economic uncertainties and contingencies beyond the control of the Debtors and their management. Inevitably, some assumptions will not materialize and unanticipated events and circumstances may affect the actual financial results. Therefore, the actual results achieved may vary from the projected results in the Financial Projections and the variations may be material. All Holders of Claims and Equity Interests are urged to examine carefully all of the assumptions on which the financial projections are based in connection with their evaluation of the Plan.

3.       **Valuation**

In order to provide information and full disclosure to parties in interest regarding the Debtors' assets, the Debtors estimate that the value of the Company and its life settlements portfolio under the Plan total in excess of $500 million.

At the Confirmation Hearing, the Debtors will be prepared to present a third party independent valuation of their life settlements portfolio that will reflect substantial equity value in these Estates.

4.       **Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan.  A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required.  A class is "impaired" unless the plan:  (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default— (A) cures any such default that occurred before or after the commencement of the Chapter 11 Cases, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan and are not insiders.  Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance.  Section 1126(d) of the Bankruptcy Code, except as otherwise provided in section 1126(e) of the Bankruptcy Code, defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of equity interests in that class actually voting to accept or to reject the plan.

Here, all Classes of Claims and Equity Interests are Unimpaired under the Plan, and, as a result, the Holders of such Claims and Equity Interests are deemed to have accepted the Plan and are not entitled to vote on the Plan.

Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in any voting class must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Class, and without considering whether the Plan "discriminates unfairly" with respect to such Class, as both standards are described herein.  As stated above, all Classes of Claims and Equity Interests are deemed to accept the Plan and are not entitled to vote on the Plan.

5.      **Confirmation Without Acceptance by Impaired Classes**

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, *provided* that the plan has been accepted by at least one impaired class of claims.  Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Debtors' request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan.

6.      **No Unfair Discrimination**

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan.  The test does not require that the treatment be the same or equivalent, but that such treatment be "fair."  In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character).  Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

7.      **Fair and Equitable Test**

This test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class.  As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that:  (a) the Holders of such Secured Claims retain the liens securing such Claims to the extent of the Allowed amount of the Claims, whether the property subject to the liens is retained by the debtors or transferred to another entity under the Plan; and (b) each Holder of a Secured Claim in the Class receives deferred Cash payments totaling at least the Allowed amount of such Claim with a present value, as of the Effective Date of the Plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such Claim; or (b) the Holder of any Claim or Equity Interest that is junior to the Claims of such Class will not receive or retain under the plan on account of such junior Claim or Equity Interest any property.

The condition that a plan be "fair and equitable" to a non accepting Class of Equity Interests includes the requirements that either: (a) the plan provides that each Holder of an Equity Interest in that Class receives or retains under the plan, on account of that Equity Interest, property of a value, as of the Effective Date of the plan, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which such Holder is entitled, (ii) any fixed redemption price to which such Holder is entitled, or (iii) the value of such interest; or (b) if the Class does not receive such an amount as required under (a), no Class of Equity Interests junior to the non-accepting Class may receive a distribution under the plan.

To the extent that any class of Claims or Class of Equity Interests is determined to be Impaired or is deemed to have rejected the Plan, the Debtors reserve the right to seek (a) confirmation of the Plan under section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan in accordance with Article XIII.C of the Plan.

The Debtors believe that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

## S.    CONSUMMATION OF THE PLAN

The Plan will be consummated on the Effective Date.  For a more detailed discussion of the conditions precedent to the consummation of the Plan and the impact of failure to meet such conditions, see Article IX of the Plan.

## ARTICLE IV.
## RISK FACTORS

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT.  THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' BUSINESS OR THE PLAN AND ITS IMPLEMENTATION.

## A.    CERTAIN BANKRUPTCY LAW AND FUNDING CONSIDERATIONS

1.    **Parties in Interest May Object to the Debtors' Classification of Claims and Equity Interests, or Designation as Unimpaired.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class.  The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class.  Nevertheless, there can be no assurance that the Holders of Claims or Equity Interests or the Bankruptcy Court will reach the same conclusion.

There is also a risk that the Holders of Claims or Equity Interests could object to the Debtors' designation of Claims or Equity Interests as Unimpaired, and the Bankruptcy Court could reach the same conclusion.

2.    **The Debtors May Not Be Able to Secure Confirmation of the Plan.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, findings by the bankruptcy court that:  (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to Holders of Claims within a

- 46 -

particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the Bankruptcy Court will confirm the Plan. The Bankruptcy Court could decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met.

The Debtors reserve the right to modify the terms and conditions of the Plan as necessary for confirmation. Section 1127 of the Bankruptcy permits the Debtors to modify the Plan at any time before confirmation, but not if such modified Plan fails to meet the requirements for confirmation. The Debtors or the Reorganized Debtors may modify the Plan at any time after confirmation of the Plan and before substantial consummation of the Plan if circumstances warrant such modification and the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, but not if such modified Plan fails to meet the requirements for confirmation. The Debtors will comply with the disclosure requirements set forth in section 1125 of the Bankruptcy Code with respect to any modified Plan.

3.     **The Conditions Precedent to the Effective Date of the Plan May Not Occur.**

As more fully set forth in Article IX of the Plan, the Effective Date of the Plan is subject to a number of conditions precedent. If such conditions precedent are not waived or not met, the Effective Date will not take place.

Specifically, consummation of the Plan is conditioned upon, among other requirements, the Bankruptcy Court determining that the Debtors are indebted and liable to the Holders of the Prepetition Secured Lender Claims in an amount not to exceed: (i) the aggregate principal amount of $367.9 million (all of which reflects funds advanced by the Prepetition Lender to White Eagle), plus (ii) accrued (both before and after the Petition Date) and unpaid interest and fees payable under the Prepetition Loan Agreement and related documentation as of the Effective Date, including any distributions to which the Prepetition Lender is entitled on account of the Participation Interest as of the Effective Date, based on actual recoveries from the proceeds of White Eagle's insurance policies realized as of such date. The Bankruptcy Court may refuse to cap the Prepetition Secured Lender Claims in this fashion, which could significantly delay consummation of the Plan or preclude the Debtors from consummating the Plan as currently proposed.

4.     **Continued Risk Upon Consummation.**

Even if the Plan is consummated, the Debtors will continue to face a number of risks, including certain risks that are beyond their control, such as changes in life expectancies, challenges by insurers to pending claims, potential revaluing of the Debtors' assets, and increasing expenses. Some of these concerns and effects typically become more acute when a case under the Bankruptcy Code continues for a protracted period without indication of how or when the case may be completed. As a result of these risks and others, there is no guarantee that a chapter 11 plan of reorganization reflecting the Plan will achieve the Debtors' stated goals.

In addition, at the outset of the Chapter 11 Cases, the Bankruptcy Code provides the Debtors with the exclusive right to propose the Plan and prohibits creditors and others from proposing a plan. The Debtors will have retained the exclusive right to propose the Plan upon filing their petitions. If the Bankruptcy Court terminates that right, however, or the exclusivity period expires, there could be a material adverse effect on the Debtors' ability to achieve confirmation of the Plan in order to achieve the Debtors' stated goals.

Further, even if the Debtors' debts are reduced and/or discharged through the Plan, the Debtors may need to raise additional funds through public or private debt or equity financing or other various means to fund the Debtors' business after the completion of the proceedings related to the Chapter 11 Cases. Adequate funds may not be available when needed or may not be available on favorable terms

     5.     **Risks of Not Obtaining the Funding Under the New Exit Facility.**

The Plan is predicated on, among other things, consummation of the New Exit Facility. There can be no assurance that the Debtors will receive any or all of the funding contemplated under the New Exit Facility, or that the New Exit Facility will be consummated.

     6.     **The Effective Date May Not Occur.**

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

     7.     **The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in the Plan because of (a) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than reorganizing or selling the business and the life settlement portfolio at a later time in a controlled manner, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, including Claims resulting from the rejection of Unexpired Leases and other Executory Contracts in connection with cessation of operations.

There is also a possibility that the Chapter 11 Cases could be dismissed as a two-party dispute or a bad faith filing. The Debtors believe that this result is unlikely under present circumstances and given the progress made in these cases to date.

     8.     **Releases, Injunctions, and Exculpations Provisions May Not Be Approved**

Article X of the Plan provides for certain releases, injunctions, and exculpations that may otherwise be asserted against the Debtors, Reorganized Debtors, or Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan. The releases provided to the Released Parties and the exculpation provided to the Exculpated Parties are necessary to the success of the Debtors' reorganization because the Released Parties and Exculpated Parties have made significant contributions to the Debtors' reorganization efforts.

## B.     RISKS ASSOCIATED WITH FORWARD-LOOKING STATEMENTS

1.      **The Financial Information Contained Herein is Based on the Debtors' Books and Records and, Unless Otherwise Stated, No Audit was Performed.**

**The financial information contained in this Disclosure Statement has not been audited**.  In preparing this Disclosure Statement, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation.  Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement and, while the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

2.      **Financial Projections and Other Forward-Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to the Numerous Assumptions Upon Which They Are Based and, as a Result, Actual Results May Vary.**

This Disclosure Statement (and the Plan Supplement to come) will contain various projections concerning the financial results of the Reorganized Debtors' operations, including the Financial Projections, that are, by their nature, forward-looking, and which projections will be necessarily based on certain assumptions and estimates.  Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtors may turn out to be different from the financial projections.

Specifically, the projected financial results will reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtors, some of which may not materialize, including, without limitation, assumptions concerning:  (a) the timing of confirmation and Consummation of the Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtors, including, without limitation, receipts from the Debtors' life settlement portfolio; and (c) general business and economic conditions.

DUE TO THE INHERENT UNCERTAINTIES ASSOCIATED WITH PROJECTING FINANCIAL RESULTS GENERALLY, THE FINANCIAL PROJECTIONS SHOULD NOT BE CONSIDERED ASSURANCES OR GUARANTEES OF THE AMOUNT OF FUNDS OR THE AMOUNT OF CLAIMS THAT MAY BE ALLOWED IN THE VARIOUS CLASSES. WHILE THE DEBTORS BELIEVE THAT THE FINANCIAL PROJECTIONS WILL BE REASONABLE, THERE CAN BE NO ASSURANCE THAT THEY WILL BE REALIZED.

## C.     DISCLOSURE STATEMENT DISCLAIMER

1.      **The Information Contained Herein is for Disclosure Purposes Only.**

The information contained in this Disclosure Statement is for purposes of disclosure in connection with the Plan and may not be relied upon for any other purposes.

2.      **This Disclosure Statement was Not Approved by the Securities and Exchange Commission.**

Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

3.      **This Disclosure Statement Contains Forward-Looking Statements.**

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

4.      **No Legal or Tax Advice is Provided to You by This Disclosure Statement.**

**This Disclosure Statement is not legal or tax advice to You**. The contents of this Disclosure Statement should not be construed as legal, business or tax advice, and are not personal to any person or entity. Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than as a disclosure of certain information to determine how to vote on the Plan or object to confirmation of the Plan.

5.      **No Admissions Are Made by This Disclosure Statement.**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, the Reorganized Debtors, Holders of Allowed Claims or Equity Interests or any other parties in interest.

6.      **No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement. The Debtors or the Reorganized Debtors may seek to investigate, file and prosecute litigation rights and claims against any third parties and may object to Claims after the Confirmation Date or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such litigation claims or objections to Claims or Equity Interests.

7.      **Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Equity Interests or Recover Transfers and Assets.**

The Debtors or the Reorganized Debtors (or any party in interest, as the case may be) reserve any and all rights to object to that Holder's Allowed Claim regardless of whether any Claims or Causes of Action of the Debtors or their Estates are specifically or generally identified herein.

8.      **The Information Used Herein was Provided by the Debtors and was Relied Upon by the Debtors' Advisors.**

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtors have performed certain limited

due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

9. **The Potential Exists for Inaccuracies and the Debtors Have No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

10. **No Representations Made Outside the Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtors, the Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. You should promptly report unauthorized representations or inducements to the counsel to the Debtors and the United States Trustee.

## ARTICLE V.
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

## A.    LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

If no chapter 11 plan can be confirmed, some or all of the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which case, a trustee would be elected or appointed to liquidate the Debtors' assets. The Debtors believe that liquidation under chapter 7 would result in (i) smaller distributions being made to creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of unexpired leases and executory contracts in connection with the cessation of the Debtors' operations, and (iii) the failure to realize greater value from all of the Debtors' assets, including their life settlement portfolio.

## B.    FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION

If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different plan of reorganization. Such a plan might involve either a reorganization and continuation of the Debtors' business or an orderly liquidation of the Debtors' assets. Prior to the filing of the Plan, the Debtors explored various alternatives to the Plan.

The Debtors believe that the Plan will enable the Debtors to emerge from chapter 11 successfully and expeditiously, preserves the Debtors' business and allows stakeholders to realize the highest recoveries under the circumstances.

## ARTICLE VI.
## U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The Debtors' position is that the Claims and Equity Interests addressed by the Plan are Unimpaired and, hence, there should be no federal income tax consequences to the Holders thereof as a result of the Consummation of the Plan.

The Debtors have not requested, and will not request, a ruling from the Internal Revenue Service (the "IRS") or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than the foregoing.

**ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR FOR THE U.S. FEDERAL, STATE, LOCAL, AND NON-U.S. INCOME, ESTATE AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## ARTICLE VII.
## RECOMMENDATION

In the opinion of the Debtors, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for the highest distribution to the Debtors' creditors and interest holders. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims and Equity Interests than that which is proposed under the Plan. Accordingly, the Debtors recommend that all Holders of Claims and Equity Interests support confirmation of the Plan.

Dated:  March 13, 2019

WHITE EAGLE ASSET PORTFOLIO, LP.

By: */s/ Miriam Martinez*
     Name:  Miriam Martinez
     Title:   Chief Financial Officer

LAMINGTON ROAD DESIGNATED ACTIVITY COMPANY

By: */s/ David Thompson*
     Name:  David Thompson
     Title:   Director

WHITE EAGLE GENERAL PARTNER, LLC

By: */s/ Miriam Martinez*
     Name:  Miriam Martinez
     Title:   Chief Financial Officer

**FILED BY:**

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Richard M. Pachulski (CA Bar No. 62337)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:     rpachulski@pszjlaw.com
        ikharasch@pszjlaw.com
        mlitvak@pszjlaw.com
        crobinson@pszjlaw.com

Proposed Counsel for the Debtors
and Debtors-in-Possession