THIS IS NOT A SOLICITATION OF VOTES TO ACCEPT OR REJECT THE PLAN IN ACCORDANCE WITH BANKRUPTCY CODE SECTION 1125 AND WITHIN THE MEANING OF BANKRUPTCY CODE SECTION 1126, 11 U.S.C. §§ 1125, 1126.  THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE BANKRUPTCY COURT.  THIS DISCLOSURE STATEMENT HAS BEEN SUBMITTED TO THE BANKRUPTCY COURT FOR APPROVAL UNDER CHAPTER 11 OF THE BANKRUPTCY CODE.  THE INFORMATION IN THIS DISCLOSURE STATEMENT IS SUBJECT TO CHANGE.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | ) Case No. 18-12808 (KG) |
| | ) |
| | ) Jointly Administered |
| Debtors. | ) |

---

## DISCLOSURE STATEMENT FOR
## DEBTORS' AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION

---

Dated:  May 24, 2019

PACHULSKI STANG ZIEHL & JONES LLP
Richard M. Pachulski (CA Bar No. 90073)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
Wilmington, DE  19899-8705 (Courier 19801)
Telephone: 302/652-4100
Facsimile:  302/652-4400
E-mail:  rpachulski@pszjlaw.com
         ikharasch@pszjlaw.com
         mlitvak@pszjlaw.com
         crobinson@pszjlaw.com

Counsel for the Debtors

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738).  The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

**ARTICLE I.** EXECUTIVE SUMMARY ................................................................. 6
    A.    AN OVERVIEW OF THE CHAPTER 11 PROCESS ........................... 7
    B.    SUMMARY OF THE PLAN ....................................................... 7
    C.    PURPOSE AND EFFECT OF THE PLAN ..................................... 8
        1.    Plan of Reorganization Under Chapter 11 of the
            Bankruptcy Code ............................................................ 8
        2.    Plan Overview ................................................................ 8
        3.    No Voting on the Plan ...................................................... 9
        4.    Confirmation of the Plan ................................................ 10
        5.    Confirming and Effectuating the Plan .............................. 10
        6.    Rules of Interpretation .................................................. 10
        7.    Distribution of Confirmation Hearing Notice to Holders of
            Claims and Equity Interests .......................................... 11
        8.    The Confirmation Hearing ............................................. 11
        9.    The Deadline for Objecting to Confirmation of the Plan ...... 11
        10.    Notice Parties ............................................................. 11
        11.    Effect of Confirmation of the Plan .................................. 12
    D.    EFFECTIVENESS OF THE PLAN ............................................. 12
    E.    RISK FACTORS ................................................................... 12
**ARTICLE II.** BACKGROUND TO THE CHAPTER 11 CASES AND
SUMMARY OF BANKRUPTCY PROCEEDINGS TO DATE ........................ 12
    A.    DESCRIPTION AND HISTORY OF THE DEBTORS'
        BUSINESS ......................................................................... 12
    B.    THE DEBTORS' PREPETITION CAPITAL STRUCTURE ............... 13
    C.    EVENTS LEADING TO THE DEBTORS' BANKRUPTCY
        FILINGS ........................................................................... 14
    D.    ADVERSARY PROCEEDING AGAINST THE PREPETITION
        LENDER AND OTHERS AND RELATED ESTIMATION
        MOTION ........................................................................... 14
    E.    FIRST DAY MOTIONS AND ORDERS ...................................... 15
    F.    RETENTION OF PROFESSIONALS .......................................... 16
    G.    DISCOVERY UNDER BANKRUPTCY RULE 2004 ....................... 16
    H.    EXCLUSIVE PERIOD FOR FILING A PLAN AND
        SOLICITING VOTES ............................................................ 16
    I.    DEADLINE TO ASSUME OR REJECT LEASES OF
        NONRESIDENTIAL REAL PROPERTY ...................................... 17
    J.    SUMMARY OF PREPETITION LENDER SETTLEMENT
        AGREEMENT ..................................................................... 17
**ARTICLE III.** SUMMARY OF THE PLAN ........................................................ 22
    A.    ADMINISTRATIVE AND PRIORITY TAX CLAIMS ..................... 22
        1.    Administrative Expense Claims ...................................... 22
        2.    DIP Financing Claims .................................................... 23
        3.    Professional Fee Claims ................................................ 23
        4.    Priority Tax Claims ....................................................... 24
    B.    CLASSIFICATION AND TREATMENT OF CLASSIFIED
        CLAIMS AND EQUITY INTERESTS ........................................ 24
        1.    Summary ..................................................................... 24

|       |      | 2. | Elimination of Vacant Classes | 24 |
|       |      | 3. | Unimpairment of Claims and Equity Interests; No Solicitation or Voting | 25 |
|       |      | 4. | Cramdown | 25 |
| C.    |      |    | CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS | 25 |
|       |      | 1. | Class 1 – Other Priority Claims | 25 |
|       |      | 2. | Class 2 – Other Secured Claims | 25 |
|       |      | 3. | Class 3 – Prepetition Lender Secured Claims | 26 |
|       |      | 4. | Class 4 – General Unsecured Claims | 27 |
|       |      | 5. | Class 5 – Intercompany Claims | 27 |
|       |      | 6. | Class 6 – Equity Interests in the Debtors | 28 |
| D.    |      |    | SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS | 28 |
| E.    |      |    | SUBORDINATED CLAIMS | 28 |
| F.    |      |    | ACCEPTANCE OR REJECTION OF THE PLAN | 29 |
|       |      | 1. | Presumed Acceptance of Plan | 29 |
|       |      | 2. | No Presumed Rejection of Plan | 29 |
|       |      | 3. | No Voting Classes | 29 |
| G.    |      |    | MEANS FOR IMPLEMENTATION OF THE PLAN | 29 |
|       |      | 1. | Prepetition Lender Settlement and General Settlement of Claims | 29 |
|       |      | 2. | Corporate Existence | 29 |
|       |      | 3. | Vesting of Assets in the Debtors | 31 |
|       |      | 4. | Authorized Financing / Sale | 31 |
|       |      | 5. | Treatment of Vacant Classes | 33 |
|       |      | 6. | No Substantive Consolidation | 33 |
|       |      | 7. | Release of Liens, Claims and Equity Interests | 33 |
|       |      | 8. | Certificate of Incorporation and Bylaws | 34 |
|       |      | 9. | Management of Debtors | 34 |
|       |      | 10. | Company Action | 34 |
|       |      | 11. | Cancellation of Notes, Certificates and Instruments | 35 |
|       |      | 12. | Cancellation of Existing Instruments Governing Security Interests | 36 |
|       |      | 13. | Restructuring Transactions | 36 |
|       |      | 14. | Plan Documents | 36 |
| H.    |      |    | TREATMENT OF EXECUTORY CONTRACTS | 36 |
|       |      | 1. | Assumption of Executory Contracts | 36 |
|       |      | 2. | Assignment of Executory Contracts | 37 |
|       |      | 3. | Cure of Defaults for Assumed Executory Contracts | 37 |
|       |      | 4. | Assumption of Insurance Policies | 38 |
|       |      | 5. | Indemnification Provisions | 38 |
| I.    |      |    | PROVISIONS GOVERNING DISTRIBUTIONS | 38 |
|       |      | 1. | Dates of Distributions | 38 |
|       |      | 2. | Distribution Agent | 39 |
|       |      | 3. | Disputed Claims Reserve | 39 |
|       |      | 4. | Cash Distributions | 40 |
|       |      | 5. | Rounding of Payments | 40 |

|  | 6. | *De Minimis* Distribution | 40 |
|  | 7. | Distributions on Account of Claims Allowed After the Effective Date | 40 |
|  | 8. | General Distribution Procedures | 41 |
|  | 9. | Address for Delivery of Distributions | 41 |
|  | 10. | Undeliverable Distributions and Unclaimed Property | 41 |
|  | 11. | Withholding Taxes | 41 |
|  | 12. | Setoffs | 41 |
|  | 13. | Surrender of Cancelled Instruments or Securities | 42 |
|  | 14. | Lost, Stolen, Mutilated or Destroyed Securities | 42 |
| J. | | FILING OF PROOFS OF CLAIM | 42 |
| K. | | DISPUTED CLAIMS | 42 |
| L. | | PROCEDURES REGARDING DISPUTED CLAIMS | 43 |
| M. | | ALLOWANCE OF CLAIMS AND EQUITY INTERESTS | 43 |
|  | 1. | Allowance of Claims | 43 |
|  | 2. | Estimation | 43 |
| N. | | EFFECTIVENESS OF THE PLAN | 44 |
|  | 1. | Conditions Precedent to the Effective Date | 44 |
|  | 2. | Waiver of Conditions | 45 |
|  | 3. | Effect of Non-Occurrence of Conditions to the Effectiveness | 46 |
|  | 4. | Consummation of the Plan | 46 |
| O. | | RELEASE, INJUNCTION AND RELATED PROVISIONS | 46 |
|  | 1. | General | 46 |
|  | 2. | Release by Debtors | 47 |
|  | 3. | Release by Holders of Claims and Equity Interests | 48 |
|  | 4. | Discharge of Claims | 49 |
|  | 5. | Exculpation | 49 |
|  | 6. | Preservation of Rights of Action | 50 |
|  | 7. | Injunction | 50 |
| P. | | BINDING NATURE OF PLAN | 51 |
| Q. | | CONFIRMATION PROCEDURES | 51 |
|  | 1. | Confirmation Hearing | 51 |
|  | 2. | Filing Objections to the Plan | 51 |
| R. | | STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN | 51 |
|  | 1. | Best Interests of Creditors Test | 52 |
|  | 2. | Feasibility | 53 |
|  | 3. | Valuation | 53 |
|  | 4. | Acceptance by Impaired Classes | 53 |
|  | 5. | Confirmation Without Acceptance by Impaired Classes | 54 |
|  | 6. | No Unfair Discrimination | 54 |
|  | 7. | Fair and Equitable Test | 55 |
| **ARTICLE IV.** | | RISK FACTORS | 55 |
| A. | | CERTAIN BANKRUPTCY LAW AND FUNDING CONSIDERATIONS | 56 |

1.    Parties in Interest May Object to the Debtors' Classification of Claims and Equity Interests, or Designation as Unimpaired. ...................................................................56

2.    The Debtors May Not Be Able to Secure Confirmation of the Plan. .......................................................................56

3.    The Conditions Precedent to the Effective Date of the Plan May Not Occur. ..................................................56

4.    Continued Risk Following Effectiveness. .......................56

5.    The Effective Date May Not Occur. ...............................57

6.    The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code ...............................57

7.    Releases, Injunctions, and Exculpations Provisions May Not Be Approved .........................................................57

B.    RISKS ASSOCIATED WITH FORWARD-LOOKING STATEMENTS ..................................................................57

1.    The Financial Information Contained Herein is Based on the Debtors' Books and Records and, Unless Otherwise Stated, No Audit was Performed. ....................................57

2.    Financial Projections and Other Forward-Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to the Numerous Assumptions Upon Which They Are Based and, as a Result, Actual Results May Vary. ...................................................................58

C.    DISCLOSURE STATEMENT DISCLAIMER .........................58

1.    The Information Contained Herein is for Disclosure Purposes Only. ...................................................................58

2.    This Disclosure Statement was Not Approved by the Securities and Exchange Commission. ............................58

3.    This Disclosure Statement Contains Forward-Looking Statements. .......................................................................58

4.    No Legal or Tax Advice is Provided to You by This Disclosure Statement. ....................................................58

5.    No Admissions Are Made by This Disclosure Statement. ..............59

6.    No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections. ....................59

7.    Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Equity Interests or Recover Transfers and Assets. ...................................................................59

8.    The Information Used Herein was Provided by the Debtors and was Relied Upon by the Debtors' Advisors. ............................59

9.    The Potential Exists for Inaccuracies and the Debtors Have No Duty to Update. ..................................................59

10.    No Representations Made Outside the Disclosure Statement Are Authorized. ..................................................60

ARTICLE V. ALTERNATIVES TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN ..................................................60

A.    LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY

   CODE ..................................................................................................... 60

  B.  FILING OF AN ALTERNATIVE PLAN OF

   REORGANIZATION ............................................................................... 60

**ARTICLE VI.** U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE

 PLAN ....................................................................................................... 60

**ARTICLE VII.** RECOMMENDATION ........................................................................ 61

WHITE EAGLE ASSET PORTFOLIO, LP and its debtor affiliates, as debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors" or the "Company"), are sending you this document and the accompanying materials (the "Disclosure Statement") because you are a creditor in connection with the *Debtors' Amended Joint Chapter 11 Plan of Reorganization* dated May 24, 2019, as the same may be amended from time to time (the "Plan").[2]  The Debtors have filed voluntary reorganization cases under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").  This Disclosure Statement has not yet been approved by the Bankruptcy Court as containing adequate information within the meaning of section 1125(a) of the Bankruptcy Code.  The Debtors intend to seek an order or orders of the Bankruptcy Court (I) approving this Disclosure Statement as containing adequate information and (II) confirming the Plan.

A copy of the Plan is attached hereto as **Exhibit A**.

**No Holders of Claims or Equity Interests are entitled to vote on the Plan because all Claims and Equity Interests are unimpaired under the Plan.  Accordingly, no Holders of Claims or Equity Interests are being solicited under this Disclosure Statement.**

The Debtors believe that the Plan provides the best restructuring alternative available to these estates.  Notably, the Plan is comprised of the following key elements:

- providing a 100% recovery to Allowed General Unsecured Claims, and all other Holders of Allowed Claims and Interests;

- incorporating the terms of the Prepetition Lender Settlement Documents, including the refinancing or sale of the Debtors' life settlements portfolio and the repayment of the Allowed Prepetition Lender Secured Claim;

- ensuring that the Debtors either (i) obtain adequate liquidity, either through new senior secured financing or other available means, in order to pay in cash in full the Allowed Prepetition Lender Secured Claim and the DIP Financing Claims by September 17, 2019, or (ii) consummate one or more sales of the Debtors' assets by December 30, 2019 and, if such sales do not result in payment in full of the Allowed Prepetition Lender Secured Claim and the DIP Financing Claims by December 30, 2019, the transfer of the Debtors' unsold assets to the Prepetition Agent in full satisfaction of the Allowed Prepetition Lender Claim and the DIP Financing Claims; and

- preserving all of the existing equity interests in the Debtors if the Allowed Prepetition Lender Secured Claim is paid in full, subject to and consistent with the terms of the Prepetition Lender Settlement Documents.

Through the Plan, the Debtors will be in the best possible position under the circumstances to maximize the value of their life settlements portfolio for the benefit of all constituents.

---

[2]  All capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan.  To the extent that a definition of a term in the text of this Disclosure Statement and the definition of such term in the Plan are inconsistent, the definition included in the Plan shall control and govern.

---

**Important information about this
Disclosure Statement for you to read**

---

The Debtors are providing the information in this Disclosure Statement to Holders of Claims and Equity Interests in connection with the Debtors' Amended Joint Chapter 11 Plan of Reorganization. Nothing in this Disclosure Statement may be relied upon or used by any Entity for any purpose other than with respect to confirmation of the Plan. All Holders of Claims and Equity Interests are unimpaired under the plan and therefore no one is entitled to vote on the Plan. This Disclosure Statement is provided for informational purposes only.

This Disclosure Statement has not been filed for approval with the Securities and Exchange Commission or any state authority and neither the Securities and Exchange Commission nor any state authority has passed upon the accuracy or adequacy of this Disclosure Statement or upon the merits of the Plan. Any representation to the contrary is a criminal offense. This Disclosure Statement does not constitute an offer to sell or the solicitation of an offer to buy securities in any state or jurisdiction.

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward-looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The Debtors consider all statements regarding anticipated or future matters to be forward-looking statements. Forward-looking statements may include statements about:

- the effects of insolvency proceedings on the Debtors' business and relationships with their creditors;

- business strategy;

- financial condition, revenues, cash flows, and expenses;

- financial strategy, budget, projections, and operating results;

- variation from projected operating and financial data;

- substantial capital requirements;

- availability and terms of capital;

- plans, objectives, and expectations;

- the adequacy of the Debtors' capital resources and liquidity; and

- the Debtors' ability to satisfy future cash obligations.

Statements concerning these and other matters are not guarantees of the Reorganized Debtors' future performance. There are risks, uncertainties, and other important factors that could cause the Reorganized Debtors' actual performance or achievements to be different from those they may project. The reader is cautioned that

all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements. Therefore, any analyses, estimates, or recovery projections may or may not turn out to be accurate.

Holders of Allowed Claims will not be impaired by the Plan and, as a result, the right to receive payment in full on account of existing obligations is not altered by the Plan.

This Disclosure Statement has been prepared pursuant to section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016 and is not necessarily in accordance with federal or state securities laws or other similar laws.

No legal or tax advice is provided to you by this Disclosure Statement. The Debtors urge each Holder of a Claim or an Equity Interest to consult with its own advisors with respect to any legal, financial, securities, tax or business advice in reviewing this Disclosure Statement, the Plan and each of the proposed transactions contemplated thereby. Further, the Bankruptcy Court's approval of the adequacy of disclosures contained in this Disclosure Statement does not constitute the Bankruptcy Court's approval of the merits of the Plan or a guarantee by the Bankruptcy Court of the accuracy or completeness of the information contained herein.

Pachulski Stang Ziehl & Jones LLP ("PSZ&J") is general insolvency counsel to the Debtors. PSZ&J has relied upon information provided by the Debtors in connection with preparation of this Disclosure Statement. PSZ&J has not independently verified the information contained herein.

This Disclosure Statement contains, among other things, summaries of the Plan, the Prepetition Lender Settlement Agreement, certain statutory provisions, certain events in the Debtors' Chapter 11 Cases, and certain documents related to the Plan that are attached hereto and incorporated herein by reference or that may be filed later with the Plan Supplement. Although the Debtors believe that these summaries are fair and accurate, these summaries are qualified in their entirety to the extent that the summaries do not set forth the entire text of such documents or statutory provisions or every detail of such events. In the event of any conflict, inconsistency or discrepancy between a description in this Disclosure Statement and the terms and provisions of the Plan or any other documents incorporated herein by reference, the Plan or such other documents will govern and control for all purposes. Except where otherwise specifically noted, factual information contained in this Disclosure Statement has been provided by the Debtors' management. The Debtors do not represent or warrant that the information contained herein or attached hereto is without any material inaccuracy or omission.

In preparing this Disclosure Statement, the Debtors relied on financial data derived from the Debtors' books and records and on various assumptions regarding the Debtors' business. The Debtors' management has reviewed the financial information provided in this Disclosure Statement. Although the Debtors have used their reasonable business judgment to ensure the accuracy of this financial information, the financial information contained in, or incorporated by reference into, this Disclosure Statement has not been audited (unless otherwise expressly provided herein) and no representations or warranties are made as to the accuracy of the financial information contained herein or assumptions regarding the Debtors' business and its future results. The Debtors expressly caution readers not to place undue reliance on any forward-looking statements contained herein.

- 3 -

This Disclosure Statement does not constitute, and may not be construed as, an admission of fact, liability, stipulation or waiver. Rather, this Disclosure Statement shall constitute a statement made in settlement negotiations related to potential contested matters, potential adversary proceedings and other pending or threatened litigation or actions.

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in the Disclosure Statement. Except as provided under the Plan, the Debtors or the Reorganized Debtors may seek to investigate, file and prosecute Claims and Causes of Action and may object to Claims or Equity Interests after the Confirmation or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies any such Claims or Equity Interests or objections to Claims or Equity Interests on the terms specified in the Plan.

The Debtors are generally making the statements and providing the financial information contained in this Disclosure Statement as of the date hereof where feasible, unless otherwise specifically noted. Although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so. Holders of Claims and Equity Interests reviewing this Disclosure Statement should not infer that, at the time of their review, the facts set forth herein have not changed since the Disclosure Statement was sent. Information contained herein is subject to completion, modification, or amendment. The Debtors reserve the right to file an amended or modified Plan and related Disclosure Statement from time to time.

The Debtors have not authorized any Entity to give any information about or concerning the Plan other than that which is contained in this Disclosure Statement. The Debtors have not authorized any representations concerning the Debtors or the value of their property other than as set forth in this Disclosure Statement.

Holders of Claims must rely on their own evaluation of the Debtors and their own analyses of the terms of the Plan in considering the Plan. Importantly, each Holder of a Claim should review the Plan in its entirety and consider carefully all of the information in this Disclosure Statement and any exhibits hereto, including the risk factors described in greater detail in ARTICLE IV herein, "Risk Factors."

If the Plan is confirmed by the Bankruptcy Court and the Effective Date occurs, all Holders of Claims against, and Holders of Equity Interests in, the Debtors will be bound by the terms of the Plan and the transactions contemplated thereby.

The effectiveness of the Plan is subject to certain material conditions precedent described herein and set forth in Article IX of the Plan. There is no assurance that the Plan will be confirmed, or if confirmed, that the conditions required to be satisfied for the Plan to become effective will be satisfied (or waived).

## **EXHIBITS**

EXHIBIT A – Plan of Reorganization

EXHIBIT B – Organizational Chart of the Debtors

THE DEBTORS HEREBY ADOPT AND INCORPORATE EACH EXHIBIT
ATTACHED TO THIS DISCLOSURE STATEMENT BY REFERENCE
AS THOUGH FULLY SET FORTH HEREIN.

# ARTICLE I.
## EXECUTIVE SUMMARY

**All Holders of Claims and Equity Interests against the Debtors are Unimpaired under the Plan and, therefore, are not entitled to vote on the Plan and are deemed to accept the Plan.  This Disclosure Statement is provided for informational purposes only.**

**In the opinion of the Debtors, the Plan is preferable to the alternatives described in this Disclosure Statement because the Plan provides for the highest distribution to the Debtors' creditors and interest holders.  The Plan will effectuate an efficient and expeditious reorganization of the Debtors in accordance with the terms of the Prepetition Lender Settlement Documents.  Through the Plan, the Debtors will repay creditor claims and maximize the value of the Debtors' life settlements portfolio.  Any delay in confirmation of the Plan could result in significant administrative expenses resulting in less value available to the Debtors' constituents.  Accordingly, the Debtors recommend that all Holders of Claims support confirmation of the Plan.**

This Executive Summary is being provided to Holders of Allowed Claims and Equity Interests as an overview of the material items addressed in the Disclosure Statement and the Plan, which is qualified by reference to the entire Disclosure Statement and by the actual terms of the Plan (and including all exhibits attached hereto and to the Plan), and should not be relied upon for a comprehensive discussion of the Disclosure Statement and/or the Plan.  Section 1125 of the Bankruptcy Code requires a debtor to prepare a disclosure statement containing information of a kind, and in sufficient detail, to enable a hypothetical reasonable investor to make an informed judgment regarding acceptance or rejection of the plan of reorganization.  As such, this Disclosure Statement is being submitted in accordance with the requirements of section 1125 of the Bankruptcy Code.  This Disclosure Statement includes, without limitation, information about:

- the Debtors' operating and financial history;

- the significant events that have occurred to date;

- the Confirmation process;

- the terms and provisions of the Plan, including key aspects of the Prepetition Lender Settlement Agreement, certain effects of Confirmation of the Plan, certain risk factors relating to the Plan, and the manner in which distributions will be made under the Plan; and

- the proposed organization and financing of the Debtors if the Plan is confirmed and becomes effective.

The Company believes that any alternative to Confirmation of the Plan would result in significant delays, litigation, and additional costs, and ultimately would diminish the Company's value.  **Accordingly, the Company strongly supports confirmation of the Plan.**

## A.    AN OVERVIEW OF THE CHAPTER 11 PROCESS

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Pursuant to chapter 11 of the Bankruptcy Code, a debtor may remain in possession of its assets and business and attempt to reorganize its business for the benefit of such debtor, its creditors and other parties in interest.

The commencement of a reorganization case creates an estate comprised of all of the legal and equitable interests of a debtor in property as of the date that the bankruptcy petition is filed. Sections 1107 and 1108 of the Bankruptcy Code provide that a debtor may continue to operate its business and remain in possession of its property as a "debtor in possession," unless the bankruptcy court orders the appointment of a trustee. The filing of a bankruptcy petition also triggers the automatic stay provisions of section 362 of the Bankruptcy Code which provide, among other things, for an automatic stay of all attempts to collect prepetition claims from a debtor or otherwise interfere with its property or business. Except as otherwise ordered by the bankruptcy court, the automatic stay generally remains in full force and effect until the consummation of a plan of reorganization, following confirmation of such plan of reorganization.

The Bankruptcy Code provides that upon commencement of a chapter 11 bankruptcy case, the Office of the United States Trustee may appoint a committee of unsecured creditors and may, in its discretion, appoint additional committees of creditors or of equity interest holders if necessary to assure adequate representation. No official committees have been appointed in the Debtors' cases to date.

Upon the commencement of a chapter 11 bankruptcy case, all creditors and equity interest holders have standing to be heard on any issue in the chapter 11 proceedings pursuant to section 1109(b) of the Bankruptcy Code.

The formulation and confirmation of a plan of reorganization is the principal objective of a chapter 11 case. The plan of reorganization sets forth the means of satisfying the claims against and equity interests in the debtor.

## B.    SUMMARY OF THE PLAN

The Plan represents a significant achievement for the Company and should greatly enhance the Company's ability to reorganize successfully and expeditiously. The Plan incorporates the terms of the Prepetition Lender Settlement Documents, pursuant to which: (i) the allowed amount of the Prepetition Lender Secured Claim has been fixed, (b) a timeline and protocol for the repayment of the Prepetition Lender Secured Claim, whether as a result of a refinancing or otherwise, and the disposition of White Eagle's insurance portfolio under certain circumstances has been established, (c) a liquidation agent has been appointed and a due diligence and marketing agent has been retained to effectuate a potential sale process, if and as necessary, (d) additional financing has been made available to the Debtors to address any liquidity shortfalls during this process subject to a budget extending the existing cash collateral budget on terms that have been mutually agreed, and (e) pending litigation against the Holders of the Prepetition Lender Secured Claim and others has been dismissed (without prejudice upon entry of the Prepetition Lender Settlement Order and with prejudice upon confirmation of the Plan). As a result, the Company believes that the Plan is feasible and that the Company will have adequate liquidity (from a combination of the new financing to be provided by the Prepetition Lender and other cash recoveries) to satisfy all Allowed Claims in full, while preserving substantial value for the benefit of the Holders of Equity Interests. The Debtors estimate that the value of their life settlements portfolio totals over $500 million.

As of the date hereof, the Debtors had outstanding secured debt having a principal amount of approximately $367.9 million. The Plan will preserve the rights and benefits to which the Holders of the Prepetition Lender Secured Claim are entitled under the Prepetition Lender Settlement Documents, including such claims having been deemed allowed pursuant to sections 502 and 506 of the Bankruptcy Code against White Eagle in an amount equal to the sum of (i) $382,703,913 (i.e., 104% of the principal amount owed under the Prepetition Loan Agreement, plus (ii) the amounts of all accrued and unpaid interest at the contractual non-default rate under the Prepetition Loan Agreement until November 14, 2018 and at the contractual default rate under the Prepetition Loan Agreement (i.e., 200 basis points over the contractual non-default rate) from and after November 14, 2018, plus (iii) the amounts of all of the Prepetition Lender's and Prepetition Agent's accrued and unpaid fees, costs, and expenses, including professional fees (which shall continue to accrue until the Consummation Date). Further, the Plan reiterates that the Prepetition Lender Secured Claim is secured by a valid first priority lien on and security interest in all collateral as set forth in the Prepetition Loan Agreement and ancillary documents, including without limitation, White Eagle's portfolio of life insurance policies and the equity interests in White Eagle.

All other Classes of Allowed Claims also will be paid in full and are Unimpaired. As a result of the Unimpairment of all creditor Classes, the Holders of the Equity Interests in the Debtors will retain such interests following the Effective Date.

## C.    PURPOSE AND EFFECT OF THE PLAN

### 1.    Plan of Reorganization Under Chapter 11 of the Bankruptcy Code

The Debtors are reorganizing pursuant to chapter 11 of the Bankruptcy Code, which is the principal business reorganization chapter of the Bankruptcy Code. As a result, the confirmation of the Plan means that the Debtors will continue to operate their business going forward. However, under the Prepetition Lender Settlement Documents, if the Prepetition Lender Secured Claim is not paid in full by September 17, 2019, then the Debtors (through the actions of the Liquidating Agent) would pivot to one or more sales of substantially all of their assets, which sale must close by December 30, 2019, or the Debtors' assets will be automatically transferred to the Holders of the Prepetition Lender Secured Claims promptly thereafter.

A bankruptcy court's confirmation of a plan binds the debtor, any entity acquiring property under the plan, any holder of a claim or an equity interest in a debtor and all other entities as may be ordered by the bankruptcy court in accordance with the applicable provisions of the Bankruptcy Code to the terms and conditions of the confirmed plan, whether or not such Entity voted on the plan or affirmatively voted to reject the plan.

Here, no Entity will be entitled to vote on the Plan because all Classes of Allowed Claims and Equity Interests are Unimpaired and therefore deemed to accept the Plan.

### 2.    Plan Overview

The Plan provides for the classification and treatment of Claims against and Equity Interests in the Debtors. For classification and treatment of Claims and Equity Interests, the Plan designates Classes of Claims and Classes of Equity Interests. These Classes and Plan treatments take into account the differing nature and priority under the Bankruptcy Code of the various Claims and Equity Interests.

The following chart briefly summarizes the classification and treatment of Claims and Equity Interests under the Plan.[3] Amounts listed below are estimated.

In accordance with section 1122 of the Bankruptcy Code, the Plan provides for six (6) Classes of Claims against and/or Equity Interests in the Debtors.

**The projected recoveries set forth in the table below are estimates only and therefore are subject to change. For a complete description of the Debtors' classification and treatment of Claims or Equity Interests, reference should be made to the entire Plan and the risk factors described in ARTICLE IV below. For certain classes of Claims, the actual amount of Allowed Claims could be materially different than the estimated amounts shown in the table below.**

| Class | Type of Claim or Interest | Estimated Prepetition Claim Amount | Impairment | Entitled to Vote | Estimated Recovery Under Plan |
|---|---|---|---|---|---|
| 1 | Other Priority Claims | $0 | No | No | 100% |
| 2 | Other Secured Claims | $0 | No | No | 100% |
| 3 | Prepetition Lender Secured Claim | $382,703,913 (plus accrued interest, fees, costs, and expenses) | No | No | 100% |
| 4 | General Unsecured Claims | $0 - $50,000 (approx.) | No | No | 100% |
| 5 | Intercompany Claims | Approx. $146,000,000 | No | No | 100% (except as otherwise agreed) |
| 6 | Equity Interests in Debtors | N/A | No | No | Retain Equity Interests (except as otherwise agreed) |

3.    **No Voting on the Plan**

No Holder of an Allowed Claim or Equity Interest is entitled to vote either to accept or to reject the Plan. All Classes of Claims and Equity Interests are Unimpaired under the Plan, are each deemed to accept the Plan by operation of law, and are not entitled to vote on the Plan.

Without limiting the foregoing, if any Class of Claims or Equity Interests is determined to be entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with the terms thereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

---

[3] This chart is only a summary of the classification and treatment of Claims and Equity Interests under the Plan. References should be made to the entire Disclosure Statement and the Plan for a complete description.

4.    **Confirmation of the Plan**

(a)    Generally

"Confirmation" is the technical term for the Bankruptcy Court's approval of a plan of reorganization or liquidation.  The timing, standards and factors considered by the Bankruptcy Court in deciding whether to confirm a plan of reorganization are discussed below.

The confirmation of a plan of reorganization by the Bankruptcy Court binds the debtor, any issuer of securities under a plan of reorganization, any person acquiring property under a plan of reorganization, any creditor or equity interest holder of a debtor, and any other person or entity as may be ordered by the Bankruptcy Court in accordance with the applicable provisions of the Bankruptcy Code.  Subject to certain limited exceptions, the order issued by the Bankruptcy Court confirming a plan of reorganization discharges a debtor from any debt that arose before the confirmation of such plan of reorganization and provides for the treatment of such debt in accordance with the terms of the confirmed plan of reorganization.

(b)    The Confirmation Hearing

Section 1128(a) of the Bankruptcy Code requires the Bankruptcy Court, after notice, to hold a hearing on Confirmation of the Plan.  Section 1128(b) of the Bankruptcy Code provides that any party in interest may object to Confirmation of the Plan.

The Company will provide notice of the Confirmation Hearing to all necessary parties. The Confirmation Hearing may be adjourned from time to time without further notice except for an announcement of the adjourned date made at the Confirmation Hearing of any adjournment thereof.

5.    **Confirming and Effectuating the Plan**

It is a condition to the Effective Date of the Plan that the Bankruptcy Court shall have entered the Confirmation Order in form and substance acceptable to the Debtors and the Prepetition Agent.  Certain other conditions contained in the Plan must be satisfied or waived pursuant to the provisions of the Plan.

6.    **Rules of Interpretation**

The following rules for interpretation and construction shall apply to this Disclosure Statement:  (1) capitalized terms used in the Disclosure Statement and not otherwise defined shall have the meaning ascribed to such terms in the Plan; (2) unless otherwise specified, any reference in this Disclosure Statement to a contract, instrument, release, indenture, or other agreement or document shall be a reference to such document in the particular form or substantially on such terms and conditions described; (3) unless otherwise specified, any reference in this Disclosure Statement to an existing document, schedule, or exhibit, whether or not filed, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (4) any reference to an entity as a Holder of a Claim or Equity Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references in this Disclosure Statement to Sections are references to Sections of this Disclosure Statement; (6) unless otherwise specified, all references in this Disclosure Statement to exhibits are references to exhibits in this Disclosure Statement; (7) unless otherwise set forth in this Disclosure Statement, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (8) any term used in capitalized form in this Disclosure Statement that is not otherwise defined in this Disclosure Statement or the Plan but that is used in the Bankruptcy

Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

7. **Distribution of Confirmation Hearing Notice to Holders of Claims and Equity Interests**

As set forth above, Holders of Claims and Equity Interests are not entitled to vote on the Plan. As a result, such parties will not receive solicitation packages or ballots but, instead, will receive this Disclosure Statement, the Plan, and a notice of the Confirmation Hearing.

8. **The Confirmation Hearing**

**The Bankruptcy Court has scheduled a Confirmation Hearing Date on June 19, 2019, at 11:00 a.m. prevailing Eastern time.** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

9. **The Deadline for Objecting to Confirmation of the Plan**

**The Bankruptcy Court has set a deadline of June 17, 2019, at 4:00 p.m. prevailing Eastern time, for the filing of objections to confirmation of the Plan (the "Confirmation Objection Deadline")**. Any objection to confirmation of the Plan must:  (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the applicable Debtor, the name of the objecting party and the amount and nature of the Claim of such Entity in each applicable Chapter 11 Case or the amount of Equity Interests held by such Entity in each applicable Chapter 11 Case; (iv) state with particularity the legal and factual bases and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Confirmation Objection Deadline by the parties set forth below (the "Notice Parties").

CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE. INSTRUCTIONS WITH RESPECT TO THE CONFIRMATION HEARING AND DEADLINES WITH RESPECT TO CONFIRMATION WILL BE INCLUDED IN THE NOTICE OF CONFIRMATION HEARING APPROVED BY THE BANKRUPTCY COURT.

10. **Notice Parties**

(a) Debtors, White Eagle Asset Portfolio, LP, 5355 Town Center Road, Suite 701, Boca Raton, FL 33486 (Attn: Miriam Martinez);

(b) Counsel to the Debtors, Pachulski Stang Ziehl & Jones LLP, 919 North Market Street, 17th Floor, Wilmington, DE 19899-8705 (Courier 19801) (Attn: Richard M. Pachulski, Ira D. Kharasch, Maxim B. Litvak, and Colin R. Robinson);

(c) Counsel to the Prepetition Agent and the Prepetition Lender, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020-1095 (Attn: Thomas E Lauria, David M. Turetsky, and Andrew T. Zatz); and

- 11 -

(d)     Office of the United States Trustee for the District of Delaware, 844 King St., Suite 2207, Wilmington, DE 19801 (Attn: Juliet Sarkessian).

11.    **Effect of Confirmation of the Plan**

The Plan contains certain provisions relating to (a) the compromise and settlement of Claims and Equity Interests, (b) the release of the Released Parties by the Debtors and the Holders of Claims or Equity Interests, and each of their respective Related Persons, and (c) exculpation of certain parties.

> The Plan shall bind all Holders of Claims against and Equity Interests in the Debtors to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder (a) will receive or retain any property or interest in property under the Plan, (b) has filed a proof of claim in the chapter 11 cases, or (c) did not vote to accept or reject the Plan.

**D.    EFFECTIVENESS OF THE PLAN**

It will be a condition to the Effective Date of the Plan that all provisions, terms and conditions of the Plan are approved in the Confirmation Order unless otherwise satisfied or waived pursuant to the provisions of Article IX of the Plan.  Following confirmation, the Plan will go into effect on the Effective Date.

**E.    RISK FACTORS**

**Each Holder of a Claim or an Equity Interest is urged to consider carefully all of the information in this Disclosure Statement, including the risk factors described in ARTICLE IV herein titled, "Risk Factors."**

<h2 style="text-align:center">ARTICLE II.<br>BACKGROUND TO THE CHAPTER 11 CASES AND SUMMARY OF BANKRUPTCY PROCEEDINGS TO DATE</h2>

**A.    DESCRIPTION AND HISTORY OF THE DEBTORS' BUSINESS**

The Debtors are indirect subsidiaries of Emergent Capital, Inc. ("Emergent"), a publicly traded company.  Emergent is a global leader in the life settlements industry.  An organizational chart for Emergent and the Debtors is attached hereto as **Exhibit B**.

A life settlement is a transaction in which an individual sells an insurance policy to a third-party investor for an amount less than the policy's face value, but greater than its net cash surrender value.  The investor becomes responsible for paying future premiums on the policy and, upon the death of the individual, receives the policy's death benefits.

Life settlements allow senior insureds who can no longer afford their premiums, or who desire additional liquidity, to shed their policies for an immediate infusion of cash at a premium over the cash surrender value offered by the insurance companies.  The investor makes projections concerning the individual's probability of survival and life span, pays out the required premiums on the policy, and projects discounted cash flows for each policy.  The investor assumes the risk that the death benefit will be less than the sum of the purchase price, the aggregate future premiums, and any additional fees.  The insured receives the benefit of an immediate cash payment above that of the cash surrender value offered to the insured.

Life settlement assets are subject to uneven cash flows that can be difficult to predict, and that can lead to liquidity issues if the benefit payouts received are insufficient to cover the cash outlays from operating expenses, the required premium payments, and the interest payments on the debt needed to finance the business. However, the investment carries the benefit of cash flows that are uncorrelated to market returns.

As of December 13, 2018, Debtor White Eagle Asset Portfolio, LP ("WEAP") owned a portfolio of 586 life insurance policies – also known as life settlements – with an aggregate death benefit of approximately $2.8 billion. The Debtors estimate that the value of their life settlements portfolio totals over $500 million.

The partnership interests in WEAP are owned by Debtors White Eagle General Partner, LLC ("WEGP") and Lamington Road Designated Activity Company ("LRDA"). WEGP is the general partner of WEAP, manages WEAP, and holds 0.10% of the interests therein. LRDA is the limited partner of WEAP and holds 99.90% of the interests therein.

The Debtors do not have any employees. The Debtors are operated and administered by employees of non-Debtor Imperial Finance & Trading, LLC ("Imperial Finance"), a direct subsidiary of Emergent, under an administrative services agreement.

## B.    THE DEBTORS' PREPETITION CAPITAL STRUCTURE

WEAP, as borrower, LNV Corporation ("LNV" or the "Prepetition Lender"), as lender, and CLMG Corp. ("CLMG" or the "Prepetition Agent"), as administrative agent, are parties to that certain *Second Amended and Restated Loan and Security Agreement*, dated as of January 31, 2017 (as subsequently amended and/or restated, the "Prepetition Loan Agreement"). Additional parties to the Prepetition Loan Agreement are non-debtor affiliates of Emergent: Imperial Finance, as initial servicer, initial portfolio manager, and guarantor of certain portfolio management obligations, and Lamington Road Bermuda, Ltd., as portfolio manager. LNV and CLMG are affiliates of Beal Financial Corporation.

Under the Prepetition Loan Agreement, the total aggregate lending commitment of LNV was $370 million. As of the date hereof, approximately $367.9 million in principal obligations is due and owing to LNV. The Prepetition Loan Agreement also provides LNV with a "Participation Interest" equal to forty-five percent (45%) of the revenue generated by WEAP's life settlement portfolio (after interest, expenses, and required amortization has been paid). Such Participation Interest was subject to dispute, but now has been resolved through the Prepetition Lender Settlement Documents.

The obligations under the Prepetition Loan Agreement are secured by liens in favor of CLMG on substantially all of the assets of WEAP, including its interests in life insurance policies and the proceeds therefrom. CLMG also has control of WEAP's funds and collections from insurance policies through a custodial arrangement with Wilmington Trust, N.A. ("WT").

Although Debtors WEGP and LRDA are not obligors under the Prepetition Loan Agreement, they are pledgors under that certain *Partnership Interest Pledge Agreement*, dated as of May 16, 2014 (as subsequently amended and/or restated, the "Partnership Pledge"), pursuant to which WEGP and LRDA pledged their interests in WEAP in favor of CLMG, as secured party, in order to secure WEAP's obligations under the Prepetition Loan Agreement. Under the Partnership Pledge, WEGP and LRDA were required to deliver the pledged certificates representing their interests in WEAP to WT as securities intermediary for the benefit of CLMG.

## C.   EVENTS LEADING TO THE DEBTORS' BANKRUPTCY FILINGS

Beginning in 2015, WEAP and its ultimate parent, Emergent, faced liquidity problems due to a mismatch between cash inflows (death benefit payouts and fair value adjustments) and outflows (operating expenses, interest and premium payments, and legal and professional fees).

In late 2016, WEAP restructured its existing loan facility with LNV.  The Prepetition Loan Agreement executed in January 2017 is the result of such restructure.  As of the Petition Date, it was the Debtors' position that LNV had abused the discretion that it was granted under the terms of the Prepetition Loan Agreement by starving WEAP and its parent of the cash flows to which they were rightfully entitled and which were necessary to administer WEAP's insurance portfolio.  LNV and CLMG vigorously disputed the Debtors' position.

In an effort to resolve these disputes without the need for a bankruptcy filing, the Debtors and Emergent attempted to negotiate a restructuring with LNV.  This process was complicated by announcements in October and November 2018 by the leading underwriters in the life settlements industry regarding increases in projected life expectancies, which would have the effect of reducing the value of the Debtors' insurance portfolio.  As a result of these announcements and potentially other factors, the Debtors' negotiations with LNV stalled and the Debtors were required to commence chapter 11 cases for WEGP and LRDA on November 14, 2018.

Subsequent to such filings, the Debtors and LNV entered into a standstill agreement in an effort to negotiate the terms of a possible global resolution of their disputes.  The initial term of the standstill agreement was through November 26, 2018, but was subsequently extended on six occasions ultimately ending on December 13, 2018.

Because no consensual resolution was reached, WEAP commenced a chapter 11 case of its own on December 13, 2018.  In the Debtors' view, the filing of the Debtors' cases was necessary in order to prevent LNV from exercising remedies that would have allowed LNV to take possession of the pledged interests in WEAP and/or otherwise sweep the Debtors' funds and insurance proceeds.

Notwithstanding the recent changes in life expectancy projections described above, the Debtors filed these cases believing that their life settlements portfolio was valued at over $500 million, well in excess of the debt due and owing to LNV and CLMG.

The purpose of these chapter 11 cases was to ensure that the equity value in the Debtors' estates is preserved for the benefit of all stakeholders.

## D.   ADVERSARY PROCEEDING AGAINST THE PREPETITION LENDER AND OTHERS AND RELATED ESTIMATION MOTION

As noted above, the Debtors believed that LNV had abused the discretion that it was granted under the terms of the Prepetition Loan Agreement.

On January 25, 2019, the Debtors and Emergent commenced an adversary proceeding (the "Adversary Proceeding") against LNV and certain third parties for breaches of contract, breaches of fiduciary duty, and other claims.  The Debtors also challenged LNV's rights to the Participation Interest referenced in the Prepetition Loan Agreement.

On February 26, 2019, the Debtors and Emergent served their initial set of discovery requests on the defendants in the Adversary Proceeding.  On February 27, 2019, the Debtors and Emergent served third party subpoenas in connection with the litigation.

On March 8, 2019, LNV and the other defendants filed motions to dismiss each of the claims asserted in the Adversary Proceeding.

On March 17, 2019, the Debtors and Emergent filed their *Amended Complaint* [Adv. Proc. 19-50096, Docket No. 48] in the Adversary Proceeding, which the Prepetition Lender and the other defendants again moved to dismiss.

On April 11, 2019, the Debtors filed a motion to estimate a portion of the Prepetition Lender Secured Claims [Docket No. 200] (the "Estimation Motion"), including the asserted Participation Interest at $0. LNV and CLMG intended to object to the Estimation Motion on various grounds.

The Adversary Proceeding and the Estimation Motion have been dismissed (with prejudice upon entry of the Confirmation Order) and withdrawn, respectively, pursuant to the terms of the Prepetition Lender Settlement Documents.

## E.    FIRST DAY MOTIONS AND ORDERS

In order to enable the Debtors to minimize the adverse effects of the commencement of the chapter 11 cases, the Debtors requested various types of relief in certain first day motions filed on December 13, 2018, simultaneously with the commencement of WEAP's bankruptcy case.

Through a cash collateral motion, the Debtors sought the entry of interim and final orders: (a) authorizing the Debtors to use cash collateral, (b) providing adequate protection to the Prepetition Agent and the Prepetition Lender, and (c) modifying the automatic stay. The Bankruptcy Court entered an order on December 17, 2018, approving the cash collateral motion on an interim basis. The Prepetition Agent and the Prepetition Lender subsequently objected to the entry of a final order on the cash collateral motion, and propounded discovery upon the Debtors. Following the production of documents by the Debtors and several rounds of negotiations, the parties agreed upon the form of a revised budget and final cash collateral order. The Bankruptcy Court entered an order on January 15, 2019, approving the cash collateral motion on a final basis.

Pursuant to a cash management motion, the Debtors sought the entry of an order authorizing: (a) the Debtors to continue using their existing cash management system and related bank accounts in the ordinary course of business; (b) the Debtors to make intercompany transactions; and (c) a limited waiver of section 345(b) deposit and investment requirements. The Bankruptcy Court entered an order on December 17, 2018, approving the cash management motion on an interim basis, and entered an order on February 12, 2019, approving the cash management motion on a final basis.

Through a life settlements motion, the Debtors sought the entry of an order authorizing, but not directing, the Debtors to (i) maintain life settlements insurance and pay any prepetition obligations related thereto and (ii) satisfy all servicing obligations regarding life settlements in the ordinary course of business. The Bankruptcy Court entered an order on December 17, 2018, approving the life settlements motion.

The Debtors also filed a variety of procedural motions that were approved by the Bankruptcy Court.

## F.    RETENTION OF PROFESSIONALS

The Debtors have retained Pachulski Stang Ziehl & Jones LLP as general bankruptcy counsel and Kasowitz Benson Torres LLP as special litigation counsel. Over the objection of the Prepetition Agent and the Prepetition Lender, the Bankruptcy Court approved the retention of both firms by order dated February 14, 2019.

By order dated January 15, 2019, the Bankruptcy Court authorized the Debtors to retain certain ordinary course professionals, subject to various procedures set forth therein.

On the same date, the Bankruptcy Court entered an order approving certain interim compensation procedures for estate professionals.

By subsequent orders of the Bankruptcy Court, the Debtors have been authorized to retain Alvarez & Marsal Taxand, LLC (tax advisors), Reed Smith LLP (contingency special litigation counsel), Grant Thornton LLP (accounting advisors), and Elucidor, LLC (valuation expert).

## G.    DISCOVERY UNDER BANKRUPTCY RULE 2004

On January 30, 2019, the Prepetition Agent and the Prepetition Lender served a motion under Bankruptcy Rule 2004 seeking entry of an order directing discovery from the Debtors. Because the Debtors believed that the scope of the requested discovery was excessive and delved into issues relating to the Adversary Proceeding against the Prepetition Lender and others, the Debtors objected to the 2004 discovery motion.

Following a contested hearing, the Bankruptcy Court approved certain of the discovery requested by the Prepetition Agent and the Prepetition Lender by order dated February 14, 2019. The Bankruptcy Court held a further status conference on February 19, 2019, to further narrow the scope of the discovery that would be ordered.

On February 22, 2019, the Prepetition Agent and the Prepetition Lender served a subpoena on Michelle Dreyer, the independent manager of WEGP, as part of their ongoing discovery under Bankruptcy Rule 2004.

The foregoing discovery has been resolved pursuant to the terms of the Prepetition Lender Settlement Documents.

## H.    EXCLUSIVE PERIOD FOR FILING A PLAN AND SOLICITING VOTES

Under the Bankruptcy Code, a debtor has the exclusive right to file and solicit acceptance of a plan or plans of reorganization for an initial period of 120 days from the date on which the debtor filed for voluntary relief. If a debtor files a plan within this exclusive period, then the debtor has the exclusive right for 180 days from the Petition Date to solicit acceptances to the plan. During these exclusive periods, no other party in interest may file a competing plan of reorganization; however, a court may extend these periods upon request of a party in interest and "for cause."

The Bankruptcy Court granted the Debtors' initial request to extend the exclusivity period through June 14, 2019, for the filing of a plan, and August 16, 2019, for the solicitation of votes to accept such plan.

**I.    DEADLINE TO ASSUME OR REJECT LEASES OF NONRESIDENTIAL REAL PROPERTY**

Pursuant to section 365(d)(4) of the Bankruptcy Code, the time within which the Debtors must assume or reject unexpired leases of nonresidential real property is 120 days from the Petition Date, unless extended by order of the Bankruptcy Court.

The Debtors do not have any unexpired leases and have not sought to extend such deadline.

**J.    SUMMARY OF PREPETITION LENDER SETTLEMENT AGREEMENT**

The Prepetition Lender Settlement Agreement represents the culmination of the concerted efforts of the Debtors, certain non-Debtor affiliates (Emergent, Imperial Finance and Trading, LLC, Lamington Road Bermuda, LTD; OLIPP IV, LLC and Markley Asset Portfolio, LLC), the Prepetition Lender, and the Prepetition Agent (collectively, the "Settlement Parties") to reach an agreement on a global resolution of their disputes in these bankruptcy cases, including the Adversary Proceeding between the parties, the Estimation Motion, and a contested confirmation hearing.

On May 15, 2019, the Debtors filed a motion with the Bankruptcy Court to approve the Prepetition Lender Settlement Agreement. The Debtors believe that the Prepetition Lender Settlement Agreement yields substantial benefits to their estates and provides the best available mechanism for maximizing value for all constituents. First, the Prepetition Lender Settlement Agreement eliminates the costs, delays, and risks associated with litigating the amount, extent, nature, and validity of the Prepetition Lender Secured Claim and the various affirmative causes of action that the Debtors and Emergent have asserted against the Prepetition Lender and others through the Adversary Proceeding. Second, the Prepetition Lender Settlement Agreement provides the Debtors with the time and funding that they need in order to consummate a refinancing or sale transaction involving White Eagle's valuable portfolio of life insurance policies and garner the highest possible value for these assets. Third, the Prepetition Lender Settlement Agreement implements a protocol and timeline for confirmation of the Plan and resolution of the Chapter 11 Cases by the end of this calendar year, which is an important milestone for both the Debtors and the Prepetition Lender. Hence, it is the Debtors' strong business judgment that the Prepetition Lender Settlement Agreement is clearly in the best interests of all constituents.

The primary terms of the Prepetition Lender Settlement Agreement are as follows:[4]

(a)    Subject to any necessary approvals by the boards of directors of Emergent and White Eagle, and the credit committee of the Prepetition Lender, the Parties shall use their respective best efforts to seek and obtain entry by the Bankruptcy Court on or before June 7, 2019, of the following—

---

[4] This summary of the primary terms of the Prepetition Lender Settlement Agreement is provided for descriptive purposes only. Nothing herein is intended to modify the Prepetition Lender Settlement Agreement or the Prepetition Lender Settlement Order. To the extent that the terms and conditions summarized herein are inconsistent with the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, or any other settlement document, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, or such other settlement document shall govern.

Capitalized terms that are used, but not defined, in this section of the Disclosure Statement shall have the meanings ascribed to such terms in the Prepetition Lender Settlement Agreement.

(i)      an agreed order approving the Prepetition Lender Settlement Agreement and authorizing the Debtors to enter into and be bound thereby and to take all actions contemplated thereby (the "Prepetition Lender Settlement Order"), including, among other things, (A) the appointments of Joseph J. Farnan, Jr. ("Farnan") as contemplated thereby, and (B) the engagement of Maple Life Analytics, LLC and Brean Capital, LLC (together, "Maple") to perform the due diligence and marketing services as contemplated thereby,

(ii)      an agreed order dismissing the Adversary Proceeding (the "Dismissal Order"), which dismissal shall be with prejudice upon the entry by the Bankruptcy Court of an order either (A) determining that any of the Debtor Parties has materially breached their obligations under the Prepetition Lender Settlement Agreement (a "Breach Order"), or (B) confirming the Plan (the "Confirmation Order"), as the Plan shall be amended as contemplated thereby and as is otherwise acceptable to the Settlement Parties, and

(iii)      an agreed order (the "DS Order" and collectively with the Settlement Order and the Dismissal Order, the "Initial Orders") (A) approving this Disclosure Statement with respect to the Plan, and (B) setting a hearing on confirmation of the Plan on or before June 21, 2019.

(b)      Upon entry of the Initial Orders, the following events shall occur:

(i)      the Lender Parties (i.e., LNV and CLMG) shall hold, and have full right and title to, an allowed claim (pursuant to sections 502 and 506 of the Bankruptcy Code) against White Eagle in an amount equal to the sum of (i) $382,703,913 (one hundred four percent (104%) of the principal amount owed under the Prepetition Loan Agreement, plus (ii) the amounts of all accrued and unpaid interest at the contractual non-default rate under the Prepetition Loan Agreement until November 14, 2018 and at the contractual default rate under the Prepetition Loan Agreement (i.e., 200 basis points over the contractual non-default rate) from and after November 14, 2018, plus (iii) the amounts of all of the Lender Parties' accrued and unpaid fees, costs, and expenses, including professional fees (the "Allowed Claim"), which claim is secured by a valid first priority lien and security interest (the "Allowed Lien") in all collateral as set forth in the Prepetition Loan Agreement and the other Transaction Documents (as defined in the Prepetition Loan Agreement), including without limitation White Eagle's portfolio of life insurance policies (the "Collateral"), such Allowed Claim and Allowed Lien not being subject to any defense, counterclaim, offset, charge or reduction whether at law or in equity;

(ii)      the Lender Parties and the Debtor Parties (which consist of the Debtors and their non-Debtor affiliates, Emergent, Imperial Finance, Lamington Road Bermuda, LTD, OLIPP IV, LLC, and Markley Asset Portfolio, LLC) shall mutually release each other from all claims and causes of action, except as provided under the Prepetition Lender Settlement Agreement, the Debtor Parties shall continue the Estimation Motion and the Lender Parties and the other named defendants in the Adversary Proceeding shall continue their Motions to Dismiss until the conclusion of the Confirmation Hearing, and the Lender Parties shall withdraw any pending objection to the Debtors' motion to extend

exclusivity and shall not object to the Debtors' use of cash collateral to pay professionals or any other expenses consistent with any approved budgets;

(iii)     Farnan shall be appointed as (A) a liquidating agent of WEGP, (B) a liquidating agent of LRDA, and (C) a liquidating agent of White Eagle (provided, that the Settlement Parties shall implement the foregoing appointments in a fashion that gives Farnan the powers contemplated thereby without adversely impacting the existing tax attributes of the Debtor Parties); and provided that, until the occurrence of a Sale Trigger Event (as defined in section (c) below), Farnan's duties and authorities shall be limited to taking such actions as he determines in his sole and absolute discretion to be necessary or appropriate (including consulting with, directing and overseeing Maple) for White Eagle to be prepared to launch and implement the sale of the Collateral as contemplated thereby (the "Sale Process") upon the occurrence of a Sale Trigger Event;

(iv)     Maple shall be engaged as due diligence and marketing agent for sale services by White Eagle to conduct the Sale Process; provided that Maple shall receive guidance and direction solely from Farnan; and provided further that, until the occurrence of a Sale Trigger Event, Maple shall only take such actions as it shall determine in consultation with Farnan are necessary or appropriate to be able to launch and implement the Sale Process upon the occurrence of a Sale Trigger Event; and

(v)     the Debtor Parties and the Lender Parties shall be required to cooperate with and assist Farnan and Maple in performing their obligations and duties thereunder, including with respect to the preparation for the Sale Process and the consummation thereof, and will provide Farnan with reasonable access to information necessary or desirable to prepare for the Sale Process (for the avoidance of doubt, prior to the Sale Trigger Date, Farnan and Maple shall not take any action to commence the marketing of the Collateral to third parties or to otherwise contact potential buyers about the Collateral).

(c)     The Debtor Parties may at any time after the Effective Date of the Prepetition Lender Settlement Agreement through the Outside Closing Date discharge and satisfy the Allowed Claim (as it may be increased pursuant to section (g) and section (h) below) and obtain the release of the Allowed Lien by making a cash payment to the Prepetition Agent in an amount equal to the amount of the Allowed Claim plus accrued and unpaid interest, fees and costs incurred from the date of entry of the Initial Orders through the date of payment (the "Payoff Amount"); provided that, in the event that payment is made on or before the earlier to occur of a Breach Order or September 17, 2019 (each, a "Sale Trigger Event"), the Payoff Amount shall be equal to the sum of (i) $375,344,223 (i.e., one hundred two percent (102%) (in lieu of 104%) of the principal amount owed under the Prepetition Loan Agreement, plus (ii) the amounts of all accrued and unpaid interest at the contractual non-default rate under the Prepetition Loan Agreement until November 14, 2018 and at the contractual default rate under the Prepetition Loan Agreement (200 basis points over the contractual non-default rate) from and after November 14, 2018 through the date of payment, plus (iii) all of the Prepetition Agent's accrued and unpaid fees, costs, and expenses including professional fees through the date of payment, plus (iv) the amounts of any and all unpaid obligations under any

DIP Financing or other financing provided by the Lender Parties (the sum of (i)-(iv), the "Early Payoff Amount"). Prior to the occurrence of a Sale Trigger Event, the Debtors shall have the right to continue to use the proceeds from the maturities of any policy or resolution of any policy related claims to pay operating expenses consistent with any approved budgets and to reduce the Payoff Amount and the Early Payoff Amount by payment to the Lender Parties.

(d)    Upon the receipt by the Prepetition Agent of the payment in cash in full of the Early Payoff Amount or the Payoff Amount, as applicable, (i) the Allowed Claim shall be satisfied; (ii) the Allowed Lien shall be discharged and released; and (iii) if a Sale Trigger Event has previously occurred, (A) the Debtor Parties may terminate the Sale Process, the appointments of Farnan and the engagement of Maple, and (B) any Collateral not sold or subject to a binding purchase agreement may be retained by White Eagle.

(e)    If the Debtors fail to pay the Early Payoff Amount on or before the occurrence of a Sale Trigger Event, on the next business day, the following shall occur:

(i)    Farnan shall automatically and without further order or corporate action have sole power to act on behalf of the Debtors with respect to the actions set forth in the Prepetition Lender Settlement Documents and shall take all actions as he determines in his sole and absolute discretion are necessary or appropriate to promptly implement and complete the Sale Process (with the Settlement Agreement structured to preserve the Settling Parties' existing tax attributes);

(ii)    Farnan shall maximize the proceeds from the sale of the Collateral in whatever fashion he determines to be appropriate in his sole and absolute discretion and consistent with traditional fiduciary duties owed to constituents of bankruptcy estates subject to complying with the Sale Process in all respects as set forth in section (f) below; and

(iii)    Maple shall, subject to Farnan's direction and in consultation with the Parties, promptly launch and conduct the Sale Process as it determines to be appropriate.

(f)    The Sale Process shall include the following features:

(i)    the Collateral shall be marketed in one or more packages as determined by Farnan in his sole and absolute discretion, based on the advice of Maple;

(ii)    the sale of all of the Collateral must close and the proceeds of such sale be received by the Prepetition Agent on or before December 30, 2019 at 12:00 noon (Eastern time) (the "Outside Closing Date");

(iii)    until the Allowed Claim as required to be satisfied in accordance with the Early Payoff Amount or the Payoff Amount is paid in cash in full, promptly upon the closing and funding of the sale of any portion of the Collateral, the proceeds therefrom (after the payment of any fees owed to Maple as a result of such sale) shall be paid to the Prepetition Agent to reduce the Allowed Claim dollar for dollar;

(iv)     if the sale of any portion of the Collateral has not closed or the proceeds of such sale have not been received by the Prepetition Agent by the Outside Closing Date, (A) if the Payoff Amount has not then been paid in cash in full, such Collateral shall be transferred on or before December 31, 2019 at 12:00 noon (Eastern time) to the Prepetition Agent (or its designee) in full satisfaction of the remaining unpaid portion of the Allowed Claim, or (B) if the Payoff Amount has been paid in cash in full, such Collateral may be retained by White Eagle or sold through the Sale Process, at the Debtor Parties' sole and absolute discretion;

(v)     dates for (A) the execution of non-disclosure agreements by interested parties, (B) the submission of non-binding expressions of interest, (C) the conducting and completion of diligence; (D) the submission of binding bids, including binding stalking horse bids (if appropriate); and (E) the conducting of an auction, if appropriate as determined by Farnan in his sole and absolute discretion based on the advice of Maple, shall be set so as to ensure that all sales are completed by the Outside Closing Date; and

(vi)     the Prepetition Agent may only submit one or more credit bids for all of the Collateral, or any package thereof, in the event that third party bids in the aggregate do not exceed the full amount of the Early Payoff Amount or the Payoff Amount, as applicable (provided that, if the Prepetition Agent's credit bid is the high bid with respect to any package, the amount of such credit bid shall, upon closing, reduce the Payoff Amount remaining to be paid from the proceeds of the remaining packages). Notwithstanding the above, the Lender Parties have a right to credit bid for any package of Collateral until the Lender Parties have received the Early Payoff Amount or the Payoff Amount, as applicable. In addition, in the event White Eagle sells any Collateral prior to the Sale Trigger Date which is less than the Early Payoff Amount, the Lender Parties shall have the right to credit bid and any credit bid or sales proceeds shall offset against the Early Payoff Amount or the Payoff Amount, as applicable.

(g)     Subject to negotiation of mutually-agreed upon terms and conditions, the Lender will provide the Debtors a revolving $15 million of debtor in possession financing ("the "DIP Financing") with a maturity date of the Outside Closing Date to fund any shortfalls after receipt of maturities, and the use of cash collateral under an agreed budget through the Outside Closing Date.

(h)     (i)     If prior to the Sale Trigger Event White Eagle indicates that it anticipates a liquidity shortfall to occur, the Settling Parties shall work together in good faith to try to agree on how such shortfall should be addressed.

(ii)     If a liquidity shortfall arises after the occurrence of a Sale Trigger Event, Farnan shall have full authority to negotiate and enter into all necessary documentation regarding additional DIP financing following the Sale Trigger Event on behalf of the Debtors as contemplated thereby and to seek and obtain all Bankruptcy Court relief required in connection therewith, with Emergent having all rights to contest or comment on any such proposed financing before the Bankruptcy Court.

(iii)    In the event that the Lender Parties provide DIP financing as contemplated by section (g), section (h(ii)) or otherwise, the Early Payoff Amount or the Payoff Amount shall be increased by the amount of the unpaid obligations owed under such DIP Financing.

(i)    The Lender Parties and Emergent shall each have the right to object to any proposed sale of some or all of the Collateral pursuant to the Sale Process by filing an objection to such sale with the Bankruptcy Court.  So long as the Lender Parties and Emergent receive at least seven (7) days' notice of the proposed sale of some or all of the Collateral pursuant to the Sale Process, the filing of such an objection shall not stay any proposed sale but, rather, the burden shall be on the objecting party to obtain expedited consideration of such objection (to which any opposing party shall not unreasonably object).  At the hearing on any such objection, the burden shall be on the objecting party to prove that the sale does not satisfy the requirements of section 363 of the Bankruptcy Code; provided that such objection shall not challenge the adequacy of the Sale Process as contemplated thereby.  None of the filing, the pendency nor the determination of such an objection shall prevent or stay the Collateral from being transferred pursuant to section (f)(iv)).

**ARTICLE III.**
**SUMMARY OF THE PLAN**

THIS ARTICLE III IS INTENDED ONLY TO PROVIDE A SUMMARY OF THE MATERIAL TERMS OF THE PLAN AND IS QUALIFIED BY REFERENCE TO THE ENTIRE DISCLOSURE STATEMENT AND THE PLAN AND SHOULD NOT BE RELIED ON FOR A COMPREHENSIVE DISCUSSION OF THE PLAN.  TO THE EXTENT THERE ARE ANY INCONSISTENCIES OR CONFLICTS BETWEEN THIS ARTICLE III AND THE PLAN, THE TERMS AND CONDITIONS SET FORTH IN THE PLAN SHALL CONTROL AND GOVERN.

## A.    ADMINISTRATIVE AND PRIORITY TAX CLAIMS

### 1.    Administrative Expense Claims

On the later of the Effective Date or the date on which an Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or, in each such case, as soon as practicable thereafter, each Holder of an Allowed Administrative Expense Claim (other than Professional Fee Claims) will receive, in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Administrative Expense Claim either (i) payment in full in Cash for the unpaid portion of such Allowed Administrative Expense Claim; or (ii) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder; *provided, however*, that Administrative Expense Claims incurred by the Debtors in the ordinary course of business may be paid in the ordinary course of business in the discretion of the Debtors or Reorganized Debtors, as applicable, in accordance with such applicable terms and conditions relating thereto without further notice to or order of the Bankruptcy Court.  All statutory fees payable under 28 U.S.C. § 1930(a) shall be paid as such fees become due.

In the event that an Administrative Expense Claim (other than a Professional Fee Claim) is not paid by the Debtors in the ordinary course, the Holder of such Administrative Expense Claim must File, on or before the applicable Administrative Expense Claims Bar Date, and serve on the Debtors or the Reorganized Debtors, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court, an application for allowance and payment of such Administrative Expense Claim.

Objections to any Administrative Expense Claim (other than a Professional Fee Claim) must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, and the requesting party by the Administrative Expense Claims Objection Deadline. Each Holder of an Allowed Administrative Expense Claim will be paid by the Debtors or the Reorganized Debtors, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

2.    **DIP Financing Claims**

The DIP Financing Claims are hereby deemed Allowed in an amount pursuant to the DIP Financing Documents. The DIP Financing Claims shall be satisfied by the Debtors in accordance with the terms of the DIP Financing Documents, and the Prepetition Lender Settlement Documents.

3.    **Professional Fee Claims**

Professionals or other Entities asserting a Professional Fee Claim for services rendered through the Effective Date must submit fee applications under sections 328, 329 and 330 of the Bankruptcy Code and, upon entry of an order of the Bankruptcy Court granting such fee applications, such Professional Fee Claim shall promptly be paid in Cash in full to the extent provided in such order.

Professionals or other Entities asserting a Professional Fee Claim for services rendered from the Effective Date through the Consummation Date must File, on or before the Professional Fee Claims Bar Date, and serve on the Debtors or the Reorganized Debtors, as applicable, and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Bankruptcy Court an application for final allowance of such Professional Fee Claim; *provided* that the Debtors or the Reorganized Debtors, as applicable, will pay Professionals in the ordinary course of business, for any work performed after the Consummation Date, including those fees and expenses incurred by Professionals in connection with the implementation, effectiveness, and consummation of the Plan, in each case without further application or notice to or order of the Bankruptcy Court in full, in Cash, in such amounts as are Allowed by the Bankruptcy Court in accordance with the order(s) relating to or allowing any such Professional Fee Claim; *provided, further*, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered before the Consummation Date, without further Bankruptcy Court order, pursuant to the Ordinary Course Professionals Order.

Objections to any Professional Fee Claim must be Filed and served on the Debtors or the Reorganized Debtors, as applicable, and the requesting party by the Professional Fee Claim Objection Deadline. Each Holder of an Allowed Professional Fee Claim will be paid by the Debtors or the Reorganized Debtors, as applicable, in Cash within ten (10) Business Days of entry of the order approving such Allowed Professional Fee Claim.

4.      **Priority Tax Claims**

On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Priority Tax Claim, at the election of the Debtors or Reorganized Debtors:  (a) Cash in an amount equal to the amount of such Allowed Priority Tax Claim; or (b) such other less favorable treatment as agreed to in writing by the Debtors or Reorganized Debtors, as applicable, and such Holder.  Payment of statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) will be made at all appropriate times until the entry of a final decree; *provided, however*, that the Debtors may prepay any or all such Claims at any time, without premium or penalty.

**B.      CLASSIFICATION AND TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS**

1.      **Summary**

All Claims and Equity Interests, except Administrative Expense Claims and Priority Tax Claims, are classified in the Classes set forth below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified.

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes including, without limitation, confirmation and distribution pursuant to the Plan and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  The Plan deems a Claim or Equity Interest to be classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and will be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class.  A Claim or Equity Interest is in a particular Class only to the extent that any such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled (in each case, by the Debtors or any other Entity) prior to the Effective Date.

### Summary of Classification and Treatment of Classified Claims and Equity Interests

| Class | Claim | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition Lender Secured Claim | Unimpaired | Deemed to Accept |
| 4 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 5 | Intercompany Claims | Unimpaired | Deemed to Accept |
| 6 | Equity Interests in Debtors | Unimpaired | Deemed to Accept |

2.      **Elimination of Vacant Classes**

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one Holder of a Claim or Equity Interest that is Allowed in an amount greater than zero for voting purposes shall be considered vacant, deemed eliminated from the Plan for purposes of

voting to accept or reject the Plan, and disregarded for purposes of determining whether the Plan satisfies section 1129(a)(8) of the Bankruptcy Code with respect to such Class.

3.    **Unimpairment of Claims and Equity Interests; No Solicitation or Voting**

All Holders of Allowed Claims and Equity Interests are Unimpaired, are not entitled to vote on the Plan, and are deemed to accept the Plan.

4.    **Cramdown**

If any Class of Claims or Equity Interests is deemed to reject the Plan or is determined to be entitled to vote on the Plan and does not vote to accept the Plan, the Debtors may (i) seek confirmation of the Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify the Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Equity Interests, or any class of Claims or Equity Interests, are impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

C.    **CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS**

1.    **Class 1 – Other Priority Claims**

- *Classification*: Class 1 consists of the Other Priority Claims.

- *Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 1 Claim is an Allowed Class 1 Claim on the Effective Date or (ii) the date on which such Class 1 Claim becomes an Allowed Class 1 Claim, each Holder of an Allowed Class 1 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 1 Claim, at the election of the Debtors: (A) Cash equal to the amount of such Allowed Class 1 Claim; (B) such other less favorable treatment as to which the Debtors and the Holder of such Allowed Class 1 Claim will have agreed upon in writing; or (C) such other treatment rendering such Claim Unimpaired.

  Any Allowed Class 1 Claims becoming due after the Effective Date through the Consummation Date will be paid in full in Cash in the ordinary course.

- *Impairment and Voting*: Class 1 is Unimpaired, and the Holders of Class 1 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 1 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

2.    **Class 2 – Other Secured Claims**

- *Classification*: Class 2 consists of the Other Secured Claims.

- *Treatment*: On or as soon as reasonably practicable after the later of (i) the Initial Distribution Date if such Class 2 Claim is an

Allowed Class 2 Claim on the Effective Date or (ii) the date on which such Class 2 Claim becomes an Allowed Class 2 Claim, each Holder of an Allowed Class 2 Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, such Allowed Class 2 Claim, at the election of the Debtors: (A) Cash equal to the amount of such Allowed Class 2 Claim; (B) such other less favorable treatment as to which the Debtors and the Holder of such Allowed Class 2 Claim will have agreed upon in writing; (C) return of such portion of the collateral securing such Allowed Class 2 Claim with a value sufficient to fully satisfy such Claim; or (D) such other treatment rendering such Claim Unimpaired. Except with respect to Claims that are treated in accordance with the preceding clause (C), each Holder of an Allowed Other Secured Claim will retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final payment of such Allowed Other Secured Claim is made as provided in the Plan.

- *Impairment and Voting*: Class 2 is Unimpaired, and the Holders of Class 2 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 2 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

3.      **Class 3 – Prepetition Lender Secured Claims**

- *Classification*: Class 3 consists of the Prepetition Lender Secured Claims.

- *Allowance and Treatment*: The Holders of the Prepetition Lender Secured Claim have an Allowed Claim against White Eagle in an amount equal to the sum of (i) $382,703,913 (i.e., one hundred four percent (104%) of the principal amount owed under the Prepetition Loan Agreement, plus (ii) the amounts of all accrued and unpaid interest at the contractual non-default rate under the Prepetition Loan Agreement until November 14, 2018 and at the contractual default rate under the Prepetition Loan Agreement (i.e., 200 basis points over the contractual non-default rate) from and after November 14, 2018 (which shall continue to accrue until the Consummation Date), plus (iii) the amounts of all accrued and unpaid fees, costs, and expenses, including professional fees (which shall continue to accrue until the Consummation Date).

The Prepetition Lender Secured Claim is secured by the Prepetition Lender Lien.

The Prepetition Lender Secured Claim and the Prepetition Lender Lien are not subject to any defense, counterclaim, offset, charge, or reduction of any kind, whether at law or in equity.

Immediately upon the Effective Date, the Holders of the Prepetition Lender Secured Claim will receive in full satisfaction, settlement, discharge and release of, and in exchange for, the Prepetition Lender Secured Claim, all rights and distributions to

- 26 -

which such Holder is entitled under the terms of the Prepetition Lender Settlement Documents, and the DIP Financing Documents (including adequate protection payments as set forth therein through the Consummation Date).

Solely as set forth in the Prepetition Lender Settlement Documents, the Prepetition Lender Secured Claim and the Prepetition Lender Lien will be fully released, terminated, extinguished and discharged (i) upon the payment in full in Cash of the Early Payoff Amount or the Payoff Amount, as applicable, or (ii) upon the transfer of all unsold Collateral to the Prepetition Agent or its designee.

- *Impairment and Voting*: Class 3 is Unimpaired, and the Holders of Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 3 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

4.    **Class 4 – General Unsecured Claims**

- *Classification*: Class 4 consists of the General Unsecured Claims.

- *Treatment*: Each Holder of an Allowed Class 4 Claim, in full satisfaction, settlement, discharge and release of, and in exchange for, such Claim shall receive Cash in an amount equal to such Allowed Class 4 Claim on the later of: (a) the Effective Date, or as soon as practicable thereafter; or (b) the date due in the ordinary course of business in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Class 4 Claim.

  Notwithstanding anything to the contrary in the Plan, after the Effective Date and subject to the other provisions of the Plan, the Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any General Unsecured Claim, except with respect to any General Unsecured Claim Allowed by order of the Bankruptcy Court.

- *Impairment and Voting*: Class 4 is Unimpaired, and the Holders of Class 4 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 4 Claims are not entitled to vote to accept or reject the Plan and will not be solicited.

5.    **Class 5 – Intercompany Claims**

- *Classification*: Class 5 consists of the Intercompany Claims.

- *Treatment*: As agreed to by the Debtors and the Non-Debtor Affiliates, pursuant to the terms of the Prepetition Lender Settlement Documents, (i) each Holder of an Allowed Class 5 Claim, in full satisfaction, settlement, discharge and release of, and

in exchange for, such Claim shall receive its Pro Rata share of Cash remaining, if any, upon the Consummation Date after the payment in full in Cash of all other Allowed Claims, including DIP Financing Claims, the Prepetition Lender Secured Claim in Class 3 and Allowed General Unsecured Claims in Class 4 and (ii) if unsold Collateral is transferred to the Agent (or its designee) as set forth in the Prepetition Lender Settlement Documents, Holders of Allowed Class 5 Claims shall not receive any distribution hereunder.

- *Impairment and Voting*: Class 5 is Unimpaired, and the Holders of Class 5 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, the Holders of Class 5 Claims are not entitled to vote to accept or reject the Plan and will not be solicited

6.    **Class 6 – Equity Interests in the Debtors**

- *Classification*: Class 6 consists of the Equity Interests in the Debtors.

- *Treatment*: Pursuant to the Prepetition Lender Settlement Documents, the Holders of the Equity Interests in each of the Debtors as of the Petition Date have agreed that such Equity Interests may be sold or transferred as set forth in the Prepetition Lender Settlement Documents and, if such Equity Interests have not been sold or transferred upon the Consummation Date, such Holders shall retain such Equity Interests in each of the Reorganized Debtors.

- *Impairment and Voting*: Class 6 is Unimpaired, and the Holders of Class 6 Equity Interests in the Debtors will be conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, Holders of Class 5 Equity Interests in the Debtors are not entitled to vote to accept or reject the Plan and will not be solicited.

## D.    SPECIAL PROVISION GOVERNING UNIMPAIRED CLAIMS

Except as otherwise provided in the Plan and subject to and consistent with the terms of the Prepetition Lender Settlement Documents, nothing under the Plan will affect the Debtors' rights in respect of any Unimpaired Claims, including, without limitation, all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claims, including the right to cure any arrears or defaults that may exist with respect to contracts to be assumed under the Plan.

## E.    SUBORDINATED CLAIMS

The allowance, classification, and treatment of all Claims under the Plan shall take into account and conform to the contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Under section 510 of the Bankruptcy Code, upon written notice, the Debtors and the Reorganized Debtors reserve the right to re-classify, or to seek to subordinate, any Claim in accordance with any contractual, legal, or equitable subordination

relating thereto, and the treatment afforded any Claim under the Plan that becomes a subordinated Claim at any time shall be modified to reflect such subordination.

## F.    ACCEPTANCE OR REJECTION OF THE PLAN

### 1.    Presumed Acceptance of Plan

All Classes of Claims and Equity Interests are Unimpaired under the Plan, and are, therefore, presumed to have accepted the Plan pursuant to section 1126 of the Bankruptcy Code.

### 2.    No Presumed Rejection of Plan

No Class of Claims or Equity Interests is deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

### 3.    No Voting Classes

No Class of Claims or Equity Interests will be entitled to vote to accept or reject the Plan.

## G.    MEANS FOR IMPLEMENTATION OF THE PLAN

### 1.    Prepetition Lender Settlement and General Settlement of Claims

The Plan hereby expressly incorporates all of the terms of the Prepetition Lender Settlement Documents as if fully set forth therein.  The Prepetition Lender Settlement Agreement became binding on all parties thereto and all parties in interest in the Chapter 11 Cases upon entry of the Prepetition Lender Settlement Order, which shall continue to be enforceable and binding in all respects on and after the Effective Date.  The Prepetition Lender Settlement Documents are essential and integral to the Plan.  As set forth in the Prepetition Lender Settlement Documents, no Party to the Prepetition Lender Settlement Agreement may seek to reject the Prepetition Lender Settlement Agreement or the Plan under section 365 of the Bankruptcy Code (or otherwise) in the Chapter 11 Cases or any other Insolvency or Liquidation Proceeding.

Further, pursuant to section 1123 of the Bankruptcy Code, and in consideration for the classification, distributions, releases and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan will constitute a good faith compromise and settlement of all Claims and Equity Interests and controversies resolved pursuant to the Plan, subject to and consistent with the terms of the Prepetition Lender Settlement Documents.  Except with respect to the DIP Financing Claims, the DIP Liens, the Prepetition Lender Secured Claim, the Prepetition Lender Lien, and any other Claim or Lien expressly Allowed under the Plan, nothing in the Plan or the other Plan Documents constitutes an admission by the Debtors as to the existence, merits, or amount of the Debtors' actual present or future liability on account of any Claim or Lien in accordance with the Confirmation Order effective as of the Effective Date.

### 2.    Corporate Existence

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, the Debtors will continue to exist after the Effective Date as separate legal entities, with all of the powers of corporations, limited liability companies, and partnerships pursuant to the applicable law in their states or country of incorporation or organization pursuant to the Amended Constituent Documents.

As set forth in the Prepetition Lender Settlement Documents, the Liquidation Agent has been appointed at each Debtor to do the following:

(i)    prior to the occurrence of a Sale Trigger Event, take such actions as the Liquidation Agent determines in his sole and absolute discretion to be necessary or appropriate (including consulting with, directing, and overseeing Maple) for White Eagle to be prepared to launch and implement the Sale Process upon the occurrence of a Sale Trigger Event; *provided* that, prior to the occurrence of a Sale Trigger Event, the Liquidation Agent shall not take any action to commence the marketing of the Collateral to third parties or to otherwise contact potential buyers about the Collateral; and

(ii)    if the Debtors do not pay the Early Payoff Amount in full in Cash to the Prepetition Agent prior to the occurrence of a Sale Trigger Event, the Liquidation Agent shall, automatically on the next Business Day after the occurrence of such Sale Trigger Event and without further order or corporate or other action by the Debtor Parties, the Lender Parties, or any other Person, have the sole authority and the express mandate to (a) conduct the Sale Process, (b) select winning bids for the Collateral, (c) close sale transactions on behalf of the Debtors with respect to the Collateral; *provided* that the Liquidation Agent may not cause the Debtors to transfer any Collateral to a purchaser without first (or simultaneously) receiving the proceeds of such sale (with any credit bid by the Lender Parties being deemed simultaneous receipt of proceeds), (d) prohibit the Debtors from making any expenditure not specified in any such DIP Budget (as defined in the Prepetition Lender Settlement Agreement) unless such expenditure is approved in writing by the Lender Parties, (e) obtain DIP Financing (as defined in the Prepetition Lender Settlement Agreement) in accordance with the Prepetition Lender Settlement Agreement, (f) take all other actions as he determines in his sole and absolute discretion are necessary and appropriate to promptly implement and complete the Sale Process and preserve and protect the Collateral (including the commencement, defense and settlement of litigation, if necessary), and (g) exercise veto rights over any action to be taken by the Debtors that is inconsistent with, or that would interfere with or delay timely completion of, the Sale Process.

Subject to the foregoing exclusive authority and mandate granted to the Liquidation Agent, the existing management of the Debtors shall retain all of their other respective management and decision-making powers on behalf of the Debtors. The Liquidation Agent shall exercise the exclusive powers granted under the Prepetition Lender Settlement Agreement in the role of Bankruptcy Court-appointed independent liquidation agent and he shall not be an officer, employee, manager, or director of any of the Debtors.

The Liquidation Agent shall maximize the proceeds from the sale of the Collateral in the manner that he determines to be appropriate in his sole and absolute discretion and, in any event, consistent with traditional fiduciary duties owed by directors and officers of corporations under Delaware law to constituents of bankruptcy estates subject to complying with the Sale Process in all respects as set forth in the Prepetition Lender Settlement Documents; *provided* that the Liquidation Agent may not, in exercising his rights and duties, contest the Sale Process (including the Sale Deadlines), in any way or seek any relief from the Bankruptcy Court to modify the Sale Process (including the Sale Deadlines), or take any other action inconsistent with the terms of the Prepetition Lender Settlement Documents.

On the Effective Date or as soon thereafter as is reasonably practicable, subject to and consistent with the terms of the Prepetition Lender Settlement Documents, the Debtors (including, as appropriate as set forth in the Prepetition Lender Settlement Agreement, at the

- 30 -

direction of the Liquidation Agent) may take all actions as may be necessary or appropriate to effect any transaction described in, approved by, or necessary or appropriate to effectuate the Plan, including, without limitation: (i) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (ii) the filing of appropriate certificates or articles of incorporation and amendments thereto; and (iii) all other actions that the applicable entities determine to be necessary or appropriate, including, without limitation, making filings or recordings that may be required by applicable law.

On or after the Consummation Date, subject to the Prepetition Lender Settlement Documents, and without prejudice to the rights of any party to a contract or other agreement with any Reorganized Debtor, each Reorganized Debtor may take such action not inconsistent with the Plan and as permitted by applicable law and such Reorganized Debtor's organizational documents, as such Reorganized Debtor may determine is reasonable and appropriate, including, without limitation, causing: (i) a Reorganized Debtor to be merged into another Reorganized Debtor or an affiliate of a Reorganized Debtor; (ii) a Reorganized Debtor to be dissolved; (iii) the legal name of a Reorganized Debtor to be changed; or (iv) the closure of a Reorganized Debtor's Chapter 11 Case on the Consummation Date or any time thereafter, in each case subject to and consistent with the terms of the Prepetition Lender Settlement Documents.

3.    **Vesting of Assets in the Debtors**

Except as otherwise provided in the Plan or the Confirmation Order and subject to and consistent with the terms of the Prepetition Lender Settlement Documents, on or after the Effective Date, all property and Assets of the Estates (including, without limitation, Causes of Action and, unless otherwise waived or released pursuant to an order of the Bankruptcy Court or the Plan, Avoidance Actions) will vest in the Debtors, free and clear of all Liens, Claims, charges or other encumbrances pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under the Plan upon the Effective Date (including the Prepetition Lender Secured Claim, the Prepetition Lender Lien, the DIP Financing Claim, and the DIP Liens). Notwithstanding the vesting of such property and Assets in the Debtors on the Effective Date, the Debtors shall remain obligated to sell or transfer the Collateral in accordance with the Prepetition Lender Settlement Documents.

Except as may be otherwise provided in the Plan or the Confirmation Order and subject to and consistent with the terms of the Prepetition Lender Settlement Documents, on or after the Consummation Date, the Reorganized Debtors may operate their business and may use, acquire or dispose of property and compromise or settle any Claims without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. Without limiting the foregoing, the Reorganized Debtors will pay the charges that they incur after the Consummation Date for Professionals' fees, disbursements, expenses or related support services (including reasonable fees relating to the preparation of Professional fee applications) in the ordinary course of business and without application or notice to, or order of, the Bankruptcy Court.

4.    **Authorized Financing / Sale**

As set forth in the Prepetition Lender Settlement Documents, until the occurrence of a Sale Trigger Event, the Liquidation Agent's duties and authorities shall be limited to taking such actions as he determines in his sole and absolute discretion to be necessary or appropriate (including consulting with, directing, and overseeing Maple) for White Eagle to be prepared to launch and implement the Sale Process. Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, if the Debtors fail to pay the Early Payoff Amount to

- 31 -

the Prepetition Agent on or before the occurrence of a Sale Trigger Event, on the next Business Day, the Liquidation Agent shall have sole power to act on behalf of the Debtors with as provided in Article V.B.(ii) of the Plan automatically and without further order or corporate action and shall take all actions as he determines in his sole and absolute discretion as necessary or appropriate to exercise his rights and perform his duties in accordance with the terms set forth in the Prepetition Lender Settlement Documents.

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, from and after the Effective Date through the occurrence of a Sale Trigger Event, the Debtors may not sell or transfer any Collateral without approval of the Bankruptcy Court; *provided* that, if the Debtors attempt to sell any Collateral prior to the occurrence of a Sale Trigger Event for an amount which is less than the Early Payoff Amount, the proceeds therefrom (after the payment of any fees owed to Maple as a result of such sale, as applicable) shall be paid to the Prepetition Agent to reduce the Allowed Prepetition Lender Claim dollar for dollar (first in satisfaction of accrued and unpaid interest, fees, costs, and expenses and, then, in satisfaction of principal); *provided, further*, that the Lender Parties' credit bid and objection rights are fully preserved with respect to any such proposed sale or transfer. If any such sale or transfer is approved by the Bankruptcy Court after notice and a hearing, the Debtors are authorized, pursuant to section 1123(a) of the Bankruptcy Code and notwithstanding any otherwise applicable nonbankruptcy law, to enter into and consummate such transaction.

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, after the occurrence of a Sale Trigger Event and notwithstanding any applicable nonbankruptcy law, the Debtors, at the direction of the Liquidation Agent based on the advice of Maple, may sell any or all of their Assets or property (including the equity interests in White Eagle) without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. The Lender Parties and Emergent shall each have the right to object to any proposed sale of some or all of the Collateral pursuant to the Sale Process by filing an objection to such sale with the Bankruptcy Court. So long as the Lender Parties and Emergent receive at least seven (7) days' notice of the proposed sale of some or all of the Collateral pursuant to the Sale Process, the filing of such an objection shall not stay any proposed sale. The burden shall be on the objecting party to obtain expedited consideration of such objection (to which any opposing party shall not unreasonably object). At the hearing before the Bankruptcy Court to consider any such objection, the burden shall be on the objecting party to prove that the sale does not satisfy the requirements of section 363 of the Bankruptcy Code; *provided* that such objection shall not challenge the adequacy of the Sale Process as contemplated by the Prepetition Lender Settlement Documents. None of the filing, the pendency, nor the determination of any such objection shall prevent or stay the Collateral from being transferred to the Lender Parties on or promptly after the Outside Closing Date pursuant to the Prepetition Lender Settlement Documents.

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, from and after the Effective Date and notwithstanding any applicable nonbankruptcy law, the Debtors and the Liquidation Agent, as applicable, shall be and are authorized to execute and deliver any loan, financing, and ancillary documents, and shall be and are authorized to execute, deliver, file, record and issue any other notes, guarantees, deeds of trust, security agreements, documents (including UCC financing statements), amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity; *provided* that, as set forth in the Prepetition Lender Settlement Documents, the Debtors may not incur any additional funded indebtedness after the Effective Date and through the Consummation Date except to the extent the proceeds of which shall be used simultaneously to pay the DIP Financing Claims and the Prepetition Lender Secured Claim

in full in Cash. Any holder of a lien or security interest whose claim is satisfied under the Plan, shall be required to file terminations of any perfection instruments.

Except as otherwise provided in the Plan or the Confirmation Order, all Cash necessary for the Debtors and the Reorganized Debtors to make payments required pursuant to the Plan will be obtained pursuant to the DIP Financing Documents and the Debtors and the Reorganized Debtors' Cash balances, including Cash from the receipt of Insurance Policy proceeds; *provided* that, notwithstanding anything to the contrary in the Plan, the Debtors shall remain subject to the DIP Financing Documents for the use of Cash Collateral (including proceeds of DIP Financing) through the Consummation Date, including the budget and permitted variances and requirement to make adequate protection payments included in the DIP Financing Documents through the Consummation Date. Cash payments to be made pursuant to the Plan will be made by the Debtors or the Reorganized Debtors, as applicable.

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, from and after the Consummation Date and notwithstanding any applicable nonbankruptcy law, the Reorganized Debtors, at the direction of management, shall be and are authorized to execute and deliver any sale and ancillary documents with respect to the Reorganized Debtors' assets, and shall be and are authorized to execute, deliver, file, record and issue any other purchase agreements, bills of sale, assignment and transfer documents, amendments to the foregoing, or agreements in connection therewith, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity, subject to the limitations set forth in the Plan.

### 5.      Treatment of Vacant Classes

Any Claim or Equity Interest in a Class considered vacant under Article III.B of the Plan shall receive no Plan Distribution.

### 6.      No Substantive Consolidation

The Plan does not provide for substantive consolidation of the Debtors. Each of the Estates of the Debtors shall remain separate and distinct for all purposes under the Plan, including for purposes of classifying and treating Claims under the Plan.

### 7.      Release of Liens, Claims and Equity Interests

Except as otherwise provided in the Plan or in any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan and subject to and consistent with the terms of the Prepetition Lender Settlement Documents, from and after the Effective Date and concurrently with the applicable distributions made pursuant to the Plan, all Liens, Claims, Equity Interests, mortgages, deeds of trust, or other security interests against the property of the Estates (other than the Prepetition Lender Secured Claim, the Prepetition Lender Lien, the DIP Financing Claims and the DIP Liens) will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity. Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, any Entity holding such Liens or Equity Interests extinguished pursuant to the prior sentence will, pursuant to section 1142 of the Bankruptcy Code, promptly execute and deliver to the Debtors or the Reorganized Debtors, as applicable, such instruments of termination, release, satisfaction and/or assignment (in recordable form) as may be reasonably requested by the Debtors or the Reorganized Debtors, as applicable.

Solely as set forth in the Prepetition Lender Settlement Documents, the Prepetition Lender Secured Claim, the Prepetition Lender Lien, the DIP Financing Claims and the DIP Liens will be fully released, terminated, extinguished and discharged, in each case (i) upon the payment in full in Cash of the Early Payoff Amount or the Payoff Amount, as applicable, to the Prepetition Agent or (ii) upon the transfer of all unsold Collateral to the Prepetition Agent or its designee.

8.      **Certificate of Incorporation and Bylaws**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, the Debtors shall have executed the Amended Constituent Documents (including the granting of duties and powers to the Liquidation Agent as set forth in the Prepetition Lender Settlement Agreement).

After the Consummation Date, the Reorganized Debtors shall amend or succeed the Amended Constituent Documents to satisfy the provisions of the Plan and the Bankruptcy Code and the Prepetition Lender Settlement Documents, and will (i) include, among other things, pursuant to section 1123(a)(6) of the Bankruptcy Code, a provision prohibiting the issuance of non-voting equity securities, but only to the extent required by section 1123(a)(6) of the Bankruptcy Code, and (ii) to the extent necessary or appropriate, include such provisions as may be needed to effectuate and consummate the Plan (including the Prepetition Lender Settlement Agreement) and the transactions contemplated therein.

9.      **Management of Debtors**

As of the Effective Date, the initial officers, directors, and managers of the Debtors (except the Independent Manager as defined in the Prepetition Loan Agreement) will be the officers of the Debtors existing immediately prior to the Effective Date, subject to and consistent with the terms of the Prepetition Lender Settlement Documents. Except as set forth in the Plan, any other directors, managers, or officers of the Debtors shall be deemed removed as of the Effective Date, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtors will disclose, prior to the Confirmation Hearing, the identity and affiliations of any Person proposed to serve on the initial board of directors or as a manager or officer of the Debtors and to the extent such Person is an insider other than by virtue of being a director, manager or officer, the nature of any compensation for such Person. Each such director and each officer will serve from and after the Effective Date pursuant to applicable law and the terms of the Amended Constituent Documents and the other constituent and organizational documents of the Debtors.

10.     **Company Action**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, each of the Debtors, the Reorganized Debtors and the Liquidation Agent, as applicable, may take any and all actions to execute, deliver, File or record such contracts, instruments, releases and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan or the Prepetition Lender Settlement Documents, as applicable, in the name of and on behalf of the Debtors or the Reorganized Debtors, as applicable, and in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of the

Debtors or the Reorganized Debtors and as applicable or by any other Person (except for those expressly required pursuant to the Plan or the Prepetition Lender Settlement Documents).

Prior to, on or after the Effective Date (as appropriate), all matters provided for pursuant to the Plan that would otherwise require approval of the stockholders, directors, managers or members of any Debtor or any Affiliate thereof (as of prior to the Effective Date) will be deemed to have been so approved and will be in effect prior to, on or after the Effective Date (as appropriate) pursuant to applicable law and without any requirement of further action by the stockholders, directors, managers or members of such Debtors, or the need for any approvals, authorizations, actions or consents of any Person.

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, all matters provided for in the Plan involving the legal or corporate structure of any Debtor or any Reorganized Debtor, as applicable, and any legal or corporate action required by any Debtor or any Reorganized Debtor as applicable, in connection with the Plan, will be deemed to have occurred and will be in full force and effect in all respects, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by the security holders, officers or directors of any Debtor or any Reorganized Debtor, as applicable, or by any other Person. Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, on the Effective Date, the appropriate officers of each Debtor and each Reorganized Debtor, as applicable, as well as the Liquidation Agent, are authorized to issue, execute, deliver, and consummate the transactions contemplated by, the contracts, agreements, documents, guarantees, pledges, consents, securities, certificates, resolutions and instruments contemplated by or described in the Plan in the name of and on behalf of the Debtor and each Reorganized Debtor, as applicable, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. The secretary and any assistant secretary of each Debtor and each Reorganized Debtor, as applicable, will be authorized to certify or attest to any of the foregoing actions.

11.    **Cancellation of Notes, Certificates and Instruments**

Except for the purpose of evidencing a right to a distribution under the Plan and except as otherwise set forth in the Plan and subject to and consistent with the terms of the Prepetition Lender Settlement Documents, on the Effective Date, all agreements, instruments, Securities and other documents evidencing any prepetition Claim or Equity Interest and any rights of any Holder in respect thereof shall be deemed cancelled, discharged, and of no force or effect. The holders of or parties to such cancelled instruments, Securities, and other documentation will have no rights arising from or related to such instruments, Securities, or other documentation or the cancellation thereof, except the rights provided for pursuant to the Plan and the obligations of the Debtors thereunder or in any way related thereto will be fully released, terminated, extinguished and discharged, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or any requirement of further action, vote or other approval or authorization by any Person. Notwithstanding such cancellation and discharge, the Prepetition Loan Agreement shall continue in effect to the extent necessary to: (1) allow the Prepetition Lender and the Prepetition Agent to receive Plan Distributions on account of the Allowed Prepetition Lender Secured Claim and (2) allow the Debtors and the Reorganized Debtors to make distributions pursuant to the Plan and in accordance with the Prepetition Lender Settlement Documents.

12.     **Cancellation of Existing Instruments Governing Security Interests**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, upon payment or other satisfaction of an Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim, or promptly thereafter, the Holder of such Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim shall deliver to the Debtors or Reorganized Debtors, as applicable, any collateral or other property of a Debtor held by such Holder, together with any termination statements, instruments of satisfaction, or releases of all security interests with respect to its Allowed Other Secured Claim or Allowed Prepetition Lender Secured Claim that may be reasonably required to terminate any related financing statements, mortgages, mechanics' or other statutory Liens, or lis pendens, or similar interests or documents.

13.     **Restructuring Transactions**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, on the Effective Date or as soon as reasonably practicable thereafter, the Debtors or Reorganized Debtors, as applicable, may take all actions consistent with the Plan as may be necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Restructuring Transactions under and in connection with the Plan.

14.     **Plan Documents**

The documents, if any, to be Filed as part of the Plan Documents, including any amendments, restatements, supplements, or other modifications to such documents, and any consents, waivers, or other deviations under or from any such documents, shall be incorporated in the Plan by reference (including to the applicable definitions in Article I of the Plan) and fully enforceable as if stated in full therein.

## H.     TREATMENT OF EXECUTORY CONTRACTS

1.     **Assumption of Executory Contracts**

On the Effective Date, all Executory Contracts of the Debtors will be deemed assumed in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts (including, without limitation, employment agreements) that:

- have previously expired or terminated pursuant to their own terms or by agreement of the parties thereto; or

- have been rejected by order of the Bankruptcy Court.

The Debtors do not have any Unexpired Leases.  Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, entry of the Confirmation Order by the Bankruptcy Court will constitute approval of such assumptions pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  To the extent any provision in any Executory Contract assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the Debtors' assumption of such Executory Contract, then such provision will be deemed modified such that the transactions contemplated by the Plan will not entitle the non-debtor party thereto to terminate such Executory Contract or to exercise any other default-related rights with respect thereto.  Each Executory Contract assumed pursuant to this Article of the Plan will revest in and be fully enforceable by the Debtors and the Reorganized Debtors in accordance with its terms,

except as modified by the provisions of the Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

The Prepetition Lender Settlement Agreement may not be rejected by the Debtors or the Non-Debtor Affiliates in the Chapter 11 Cases or any other Insolvency or Liquidation Proceeding.

2.      **Assignment of Executory Contracts**

Executory Contracts may only be assigned by the Debtors prior to the Consummation Date with the prior written consent of the Lender Parties.  In the event of an assignment of an Executory Contract, at least ten (10) days prior to the Confirmation Hearing, the Debtors will serve upon counterparties to such Executory Contracts a notice of the proposed assumption and assignment that will:  (a) list the applicable cure amount, if any; (b) identify the party to which the Executory Contract will be assigned; (c) describe the procedures for filing objections thereto; and (d) explain the process by which related disputes will be resolved by the Bankruptcy Court; additionally, the Debtors will file with the Bankruptcy Court a list of such Executory Contracts to be assigned and the proposed cure amounts.  Any applicable cure amounts will be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or on such other terms as the parties to such Executory Contracts may otherwise agree.

Any objection by a counterparty to an Executory Contract to a proposed assignment or any related cure amount must be Filed, served and actually received by the Debtors at least three (3) Business Days prior to the Confirmation Hearing.  Any counterparty to an Executory Contract that fails to object timely to the proposed assignment or cure amount will be deemed to have consented to such assignment of its Executory Contract.  The Confirmation Order will constitute an order of the Bankruptcy Court approving any proposed assignments of Executory Contracts pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

In the event of a dispute regarding (a) the amount of any cure payment, (b) the ability of any assignee to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract to be assigned or (c) any other matter pertaining to assignment, the applicable cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assignment.  The Debtors, in their sole option, reserve the right to reject such Executory Contract at any time in lieu of assuming and assigning it.

3.      **Cure of Defaults for Assumed Executory Contracts**

Any monetary amounts by which any Executory Contract to be assumed hereunder is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or Reorganized Debtors, as applicable, upon assumption thereof, by payment of the default amount in Cash as and when due in the ordinary course or on such other terms as the parties to such Executory Contracts may otherwise agree.  Any Claims arising under Executory Contracts between the Debtors and their Affiliates shall be treated as Intercompany Claims under the Plan. The Debtors may serve a notice on parties to executory contracts to be assumed reflecting the Debtors' intention to assume the contract or lease in connection with the Plan and setting forth the proposed Cure Amount (if any).  If a counterparty to any executory contract that the Debtors or Reorganized Debtors, as applicable intend to assume does not receive such a notice, the proposed Cure Amount for such executory contract shall be deemed to be zero dollars ($0).

In the event of a dispute regarding (1) the amount of any payments to cure a default, (2) the ability of the Debtors, the Reorganized Debtors or any assignee to provide "adequate

assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract to be assumed or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code will be made following the entry of a Final Order or orders resolving the dispute and approving the assumption. The Debtors or Reorganized Debtors, as applicable, in their sole option, reserve the right to reject such Executory Contract at any time in lieu of assuming it.

4.      **Assumption of Insurance Policies**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, upon the Effective Date, the Debtors will assume all of the Insurance Policies pursuant to section 365(a) of the Bankruptcy Code and all such Insurance Policies shall vest in the Debtors. Unless previously effectuated by separate order entered by the Bankruptcy Court, entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtors' foregoing assumption of each of the Insurance Policies and all such Insurance Policies shall continue in full force and effect thereafter in accordance with their respective terms. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan will not impair or otherwise modify any rights of the Debtors or the Reorganized Debtors under the Insurance Policies.

5.      **Indemnification Provisions**

All indemnification provisions currently in place (whether in the by-laws, certificate of incorporation, board resolutions, contracts, or otherwise) for the directors, officers and managers of the Debtors who served in such capacity as of the Petition Date with respect to or based upon any act or omission taken or omitted in such capacities, for or on behalf of the Debtors, will be Reinstated (or assumed, as the case may be), and will survive effectiveness of the Plan. The Liquidation Agent shall be the beneficiary of any such indemnity provisions or, to the extent such indemnity provisions are not applicable, a separate indemnity agreement to be agreed by the Debtors and the Liquidation Agent. No such Reinstatement or assumption shall in any way extend the scope or term of any indemnification provision beyond that contemplated in the underlying contract or document as applicable.

I.      **PROVISIONS GOVERNING DISTRIBUTIONS**

1.      **Dates of Distributions**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, and except as otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or if a Claim is not an Allowed Claim or Equity Interest on the Effective Date, on the date that such Claim or Equity Interest becomes an Allowed Claim or Equity Interest, or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Equity Interest against the Debtors shall receive the full amount of the distributions that the Plan or the Prepetition Lender Settlement Documents, as applicable, provides for Allowed Claims or Equity Interests in the applicable Class and in the manner provided in the Plan. In the event that any payment or act under the Plan is required to be made or performed on a date that is not on a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent there are Disputed Claims or Equity Interests, distributions on account of any such Disputed Claims or Equity Interests shall be made pursuant to the provisions provided in the Plan. Except as otherwise provided in the Plan, the Prepetition Lender Settlement Documents, Holders of Claims and Equity Interests shall not be entitled to interest, dividends or accruals on the distributions provided for therein, regardless of whether distributions are delivered on or at any time after the Effective Date.

- 38 -

Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to the Plan and the Debtors shall have no liability on account of any Claims or Equity Interests except as set forth in the Plan and in the Confirmation Order. Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, all payments and all distributions made by the Distribution Agent under the Plan shall be in full and final satisfaction, settlement and release of all Claims and Equity Interests against the Debtors and the Reorganized Debtors.

At the close of business on the Distribution Record Date, the transfer ledgers for the Claims against the Debtors and the Equity Interests in the Debtors shall be closed, and there shall be no further changes in the record holders of such Claims and Equity Interests. The Debtors, the Reorganized Debtors, and the Distribution Agent, and each of their respective agents, successors, and assigns shall have no obligation to recognize the Transfer of any Claims against the Debtors or Equity Interests in the Debtors occurring after the Distribution Record Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date irrespective of the number of distributions to be made under the Plan to such Persons or the date of such distributions.

2.    **Distribution Agent**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, and except as provided in the Plan, all distributions under the Plan shall be made by the Debtors or the Reorganized Debtors, as applicable, as Distribution Agent, or by such other Entity designated by the Debtors or the Reorganized Debtors, as applicable, as a Distribution Agent on the Effective Date or thereafter. The Debtors or the Reorganized Debtors, as applicable, or such other Entity designated by the Debtors or the Reorganized Debtors, as applicable, to be the Distribution Agent, shall not be required to give any bond or surety or other security for the performance of such Distribution Agent's duties unless otherwise ordered by the Bankruptcy Court.

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, the Distribution Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Distribution Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Distribution Agent to be necessary and proper to implement the provisions thereof.

3.    **Disputed Claims Reserve**

Prior to, or concurrently with, the occurrence of the Consummation Date, if the Debtors have paid in full the Early Payoff Amount or the Payoff Amount to the Prepetition Agent, the Debtors shall establish, fund, and maintain a reserve in an amount determined by the Debtors in good faith to be sufficient to pay all Disputed Claims and accrued and unpaid Administrative Expense Claims and Professional Fee Claims (the "Disputed Claims Reserve"). Any payments to be made under this Plan after the Consummation Date shall be paid from the Disputed Claims Reserve. Upon the resolution of all Disputed Claims, Administrative Expense Claims filed by the applicable Administrative Expense Claims Bar Date, and Professional Fee Claims filed by the Professional Fee Claims Bar Date, funds remaining in the Disputed Claims Reserve shall be remitted to the Reorganized Debtors.

If unsold Collateral is transferred to the Agent (or its designee) pursuant to the terms of the Prepetition Lender Settlement Documents, (i) the Debtors and the Lender Parties shall

determine in good faith an amount sufficient to pay all Disputed Claims and accrued and unpaid Administrative Expense Claims and Professional Fee Claims (and if no such agreement can be reached, the Bankruptcy Court shall determine the appropriate amount) and such amount shall not be transferred to the Agent (or its designee) but, rather, shall be deposited in the Disputed Claims Reserve, (ii) the Disputed Claims Reserve shall be under the control of, and managed by, an independent third party mutually agreeable to the Debtors and the Lender Parties or, if no such agreement can be reached, selected by the Bankruptcy Court, (iii) the Lender Parties shall be granted a lien over the Disputed Claims Reserve, and (iv) upon the resolution of all Disputed Claims, Administrative Expense Claims filed by the Administrative Expense Claims Bar Date, and Professional Fee Claims filed by the Professional Fee Claims Bar Date, funds remaining in the Disputed Claims Reserve shall be remitted to the Agent (or its designee).

4.    **Cash Distributions**

Distributions of Cash may be made by wire transfer from a domestic bank, except that Cash payments made to foreign Creditors may be made in such funds and by such means as are necessary or customary in a particular foreign jurisdiction.

5.    **Rounding of Payments**

Whenever the Plan would otherwise call for, with respect to a particular Person, payment of a fraction of a dollar, the actual payment or distribution shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down. To the extent that Cash to be distributed under the Plan remains undistributed as a result of the aforementioned rounding, such Cash or stock shall be treated as "Unclaimed Property" under the Plan.

6.    *De Minimis* **Distribution**

Except as to any Allowed Claim that is Unimpaired under the Plan, none of the Debtors, the Reorganized Debtors, or the Distribution Agent shall have any obligation to make any Plan Distributions with a value of less than $100, unless a written request therefor is received by the Distribution Agent from the relevant recipient at the addresses set forth in Article XIII K of the Plan within 120 days after the later of the (i) Effective Date and (ii) the date such Claim becomes an Allowed Claim. *De minimis* distributions for which no such request is timely received shall revert to the Debtors or the Reorganized Debtors, as applicable. Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically deemed satisfied, discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

Notwithstanding any other provision of the Plan, none of the Debtors, the Reorganized Debtors, or any Distribution Agent shall have any obligation to make a particular distribution to a specific Holder of an Allowed Claim if such Holder is also the Holder of a Disputed Claim.

7.    **Distributions on Account of Claims Allowed After the Effective Date**

Except as otherwise agreed by the Holder of a particular Claim or as provided in the Plan, all distributions shall be made pursuant to the terms of the Plan and the Confirmation Order. Distributions to any Holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for U.S. federal income tax purposes and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising accrued but unpaid interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

8. **General Distribution Procedures**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, the Debtors or the Reorganized Debtors, as applicable, or any other duly appointed Distribution Agent, shall make all distributions of Cash or other property required under the Plan, unless the Plan specifically provides otherwise. All Cash and other property held by the Debtors or the Reorganized Debtors, as applicable, for distribution under the Plan shall not be subject to any claim by any Person, except as provided under the Plan, the DIP Financing Documents, and the Prepetition Lender Settlement Documents.

9. **Address for Delivery of Distributions**

Distributions to Holders of Allowed Claims, to the extent provided for under the Plan, shall be made (1) at the address set forth on any proofs of claim Filed by such Holders (to the extent such proofs of claim are Filed in the Chapter 11 Cases), (2) at the addresses set forth in any written notices of address change delivered to the Debtors, or (3) at the addresses in the Debtors' books and records.

10. **Undeliverable Distributions and Unclaimed Property**

If the distribution to the Holder of any Allowed Claim is returned to the Debtors or the Reorganized Debtors as undeliverable, no further distribution shall be made to such Holder, and the Debtors and the Reorganized Debtors shall have no obligation to make any further distribution to the Holder, unless and until the Debtors or the Reorganized Debtors are notified in writing of such Holder's then current address.

Any Entity that fails to claim any Cash within one (1) year from the date upon which a distribution is first made to such entity shall forfeit all rights to any distribution under the Plan. Entities that fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtors or the Reorganized Debtors or against any Holder of an Allowed Claim to whom distributions are made by the Debtors or the Reorganized Debtors.

11. **Withholding Taxes**

In connection with the Plan, to the extent applicable, the Debtors and the Reorganized Debtors shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions made pursuant to the Plan shall be subject to such withholding and reporting requirements. The Debtors and the Reorganized Debtors shall be entitled to deduct any U.S. federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate. As a condition to receiving any distribution under the Plan, the Debtors and the Reorganized Debtors may require that the Holder of an Allowed Claim entitled to receive a distribution pursuant to the Plan provide such Holder's taxpayer identification number and such other information and certification as may be deemed necessary for the Debtors or the Reorganized Debtors to comply with applicable tax reporting and withholding laws. Any amounts withheld pursuant hereto shall be deemed to have been distributed to and received by the applicable recipient for all purposes of the Plan.

12. **Setoffs**

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, the Debtors and the Reorganized Debtors may, to the extent permitted under applicable law, setoff against any Allowed Claim (other than the Prepetition Lender Secured Claim or the DIP Financing Claims) and any distributions to be made pursuant to the Plan on account of such Allowed Claim, the claims, rights and causes of action of any nature that the Debtors or the

Reorganized Debtors may hold against the Holder of such Allowed Claim that are not otherwise waived, released or compromised in accordance with the Plan; *provided, however*, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or the Reorganized Debtors of any such claims, rights and causes of action that the Debtors or the Reorganized Debtors possesses against such Holder.

13.    **Surrender of Cancelled Instruments or Securities**

As a condition precedent to receiving any distribution pursuant to the Plan on account of an Allowed Claim evidenced by negotiable instruments, securities, or notes canceled pursuant to Article V of the Plan, the Holder of such Claim will tender the applicable negotiable instruments, securities, or notes evidencing such Claim (or a sworn affidavit identifying the negotiable instruments, securities, or notes formerly held by such Holder and certifying that they have been lost), to the Debtors or the Reorganized Debtors, as applicable, or another applicable Distribution Agent unless waived in writing by the Debtors or the Reorganized Debtors, as applicable.

14.    **Lost, Stolen, Mutilated or Destroyed Securities**

In addition to any requirements under any applicable agreement and applicable law, any Holder of a Claim evidenced by a security or note that has been lost, stolen, mutilated, or destroyed will, in lieu of surrendering such security or note to the extent required by the Plan, deliver to the Debtors or the Reorganized Debtors, as applicable, and other applicable Distribution Agent: (x) evidence reasonably satisfactory to the Debtors or the Reorganized Debtors, as applicable, and other applicable Distribution Agent of such loss, theft, mutilation, or destruction; and (y) such security or indemnity as may be required by the Debtors or the Reorganized Debtors, as applicable, and other applicable Distribution Agent to hold such party harmless from any damages, liabilities, or costs incurred in treating such individual as a Holder of an Allowed Claim. Upon compliance with Article VII L of the Plan as determined by the Debtors or Reorganized Debtors, as applicable, by a Holder of a Claim evidenced by a security or note, such Holder will, for all purposes under the Plan, be deemed to have surrendered such security or note to the Debtors or the Reorganized Debtors, as applicable, and other applicable Distribution Agent.

**J.    FILING OF PROOFS OF CLAIM**

Each Holder of a Claim shall be required to file a Proof of Claim on or prior to the Bar Date, unless such Claim appears in the Schedules and is not listed as disputed, contingent, or unliquidated, or such Claim has otherwise been Allowed or paid. Unless disputed by the Holder of a Claim, the amount set forth in the Schedules, subject to any limitations on allowance imposed by section 502 of the Bankruptcy Code, shall constitute the Allowed amount of such Holder's Claim. The Prepetition Lenders have an Allowed Claim as set forth in the Prepetition Lender Settlement Documents and the Plan and, therefore, do not need to file a Proof of Claim.

**K.    DISPUTED CLAIMS**

The Debtors shall not seek to resolve or settle any Disputed Claim with respect to any Pledged Policy for an amount that represents a reduction greater than the lesser of (i) $2 million of the face amount of such Pledged Policy or (ii) 20% of the face amount of such Pledged Policy without the prior written consent of the Lender Parties (not to be unreasonably withheld); *provided* that the Lender Parties' consent shall not be required with respect to the Lincoln Benefit Settlement Agreement; *provided further* that the Lincoln Benefit Settlement Agreement shall not be binding on, or effective as to, White Eagle unless and until it is approved by the Bankruptcy Court after notice and a hearing, and the Lender Parties' right to object to such Bankruptcy Court approval of the Lincoln Benefit Settlement is fully preserved.

Other than as set forth in the preceding paragraph, following the Effective Date, (i) each of the Debtors or the Reorganized Debtors, as applicable, and the Lender Parties may, in their discretion, file with the Bankruptcy Court an objection to the allowance of any Disputed Claim or any other appropriate motion or adversary proceeding with respect thereto. All such objections shall be litigated to Final Order, *provided, however*, that the Debtors or the Reorganized Debtors, as applicable, may compromise, settle, withdraw or resolve any objections to Claims without further order of the Bankruptcy Court but, with respect to asserted Claims in excess of $1,000,000, only with the prior written consent of the Lender Parties and (ii) unless otherwise provided in the Confirmation Order, the Debtors or the Reorganized Debtors, as applicable, are authorized to settle, or withdraw any objections to, any Disputed Claim following the Effective Date without further notice to Creditors or authorization of the Bankruptcy Court but, with respect to asserted Claims in excess of $1,000,000, only with the prior written consent of the Lender Parties, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of the Plan.

Under no circumstances will any distributions be made on account of any Claim that is not an Allowed Claim.

## L.    PROCEDURES REGARDING DISPUTED CLAIMS

No payment or other distribution or treatment shall be made on account of a Disputed Claim, even if a portion of the Claim is not disputed, unless and until such Disputed Claim becomes an Allowed Claim and the amount of such Allowed Claim is determined by order of the Bankruptcy Court or by stipulation between the Debtors and the Holder of the Claim.

## M.    ALLOWANCE OF CLAIMS AND EQUITY INTERESTS

Following the date on which a Disputed Claim becomes an Allowed Claim after the Distribution Date, the Debtors or the Reorganized Debtors, as applicable, shall pay directly to the Holder of such Allowed Claim the amount provided for under the Plan, as applicable, and in accordance therewith.

The Equity Interests in the Debtors existing as of the Petition Date are deemed Allowed.

### 1.    Allowance of Claims

After the Consummation Date and subject to the other provisions of the Plan and the Prepetition Lender Settlement Documents, the Reorganized Debtors will have and will retain any and all rights and defenses under bankruptcy or nonbankruptcy law that the Debtors had with respect to any Claim. Except as expressly provided in the Plan or in any order entered in the Chapter 11 Cases prior to the Effective Date (including, without limitation, the Confirmation Order), no Claim will become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code or the Bankruptcy Court has entered an order, including, without limitation, the Confirmation Order, in the Chapter 11 Cases allowing such Claim. As set forth in Section III.E.3 of the Plan and the Prepetition Lender Settlement Documents, the Prepetition Lender Secured Claim is Allowed.

### 2.    Estimation

Subject to the other provisions of the Plan and the Prepetition Lender Settlement Documents, the Debtors, prior to the Consummation Date, and the Reorganized Debtors, after the Consummation Date, may, at any time, request that the Bankruptcy Court estimate (a) any Disputed Claim pursuant to applicable law and (b) any contingent or unliquidated Claim pursuant to applicable law, including, without limitation, section 502(c) of the Bankruptcy Code,

- 43 -

and the Bankruptcy Court will retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any Disputed Claim, contingent Claim or unliquidated Claim, including during the litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection. All of the aforementioned objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court. The rights and objections of all parties are reserved in connection with any such estimation proceeding. The Prepetition Lender Secured Claim and the DIP Financing Claim are Allowed and not Disputed and, therefore, the Prepetition Lender Secured Claim and the DIP Financing Claim are not (and shall not be) subject to estimation (whether by the Debtors, the Reorganized Debtors, or any other Person).

## N.   EFFECTIVENESS OF THE PLAN

### 1.   Conditions Precedent to the Effective Date

The Effective Date of the Plan will be conditioned upon the satisfaction or waiver by the Debtors and the Lender Parties pursuant to the provisions of Article IX B of the Plan of the following:

- The Bankruptcy Court shall have approved the Prepetition Lender Settlement Agreement and shall have entered the Prepetition Lender Settlement Order, which shall be a Final Order.

- The Bankruptcy Court will have entered an order in form and in substance satisfactory to the Debtors and the Lender Parties approving the Disclosure Statement with respect to the Plan as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Confirming the Plan.

- The Plan and the Plan Documents and all schedules, documents, supplements and exhibits to the Plan will have been Filed in form and substance acceptable to the Debtors and the Lender Parties.

- The Confirmation Order shall have been entered, shall be a Final Order, and shall be in form and substance acceptable to the Debtors and the Lender Parties. The Confirmation Order shall provide that, among other things, (a) the Debtors, the Reorganized Debtors, or the Liquidation Agent, on behalf of the Debtors, as appropriate, are authorized to take all actions necessary or appropriate to effectuate and consummate the Plan and the Restructuring Transactions, including, without limitation, (i) entering into, implementing, effectuating, and consummating the contracts, instruments, releases, and other agreements or documents created in connection with or described in the Plan and the Prepetition Lender Settlement Documents, (ii) making all distributions and issuances as required under the Plan; and (iii) entering into any agreements and transactions as set forth in the Plan Documents, including the Prepetition Lender Settlement Documents; (b) the provisions of the Confirmation Order, the Plan, and the Prepetition Lender Settlement Documents are nonseverable and mutually dependent; (c) the implementation of the Plan in accordance with its terms is authorized; (d) pursuant to section 1146 of the Bankruptcy Code, the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any

disposition or transfer of Assets contemplated under the Plan, shall not be subject to any Stamp or Similar Tax; (e) the vesting of the Debtors' Assets and property in the Debtors as of the Effective Date free and clear of liens and claims to the fullest extent permissible under applicable law pursuant to section 1141(c) of the Bankruptcy Code except with respect to such Liens, Claims, charges and other encumbrances that are specifically preserved under this Plan upon the Effective Date (including the Prepetition Lender Secured Claim, the Prepetition Lender Lien, the DIP Financing Claim, and the DIP Liens); (f) the Debtors and the Non-Debtor Affiliates shall comply with the Prepetition Lender Settlement Documents and shall not take any actions in contravention thereof; (g) from and after a Sale Trigger Event, any sale or transfer of the Debtors' Assets and property (including the equity interests in White Eagle) may be effectuated by the Debtors, at the direction of the Liquidation Agent (based on the advice of Maple) without any further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any Entity, (h) the Debtors may not make any payments or other transfers of Cash that are not specifically identified in the budget included in the DIP Financing Documents, subject to permitted variances; (i) no Party to the Prepetition Lender Settlement Agreement may seek to reject the Prepetition Lender Settlement Agreement or the Plan under section 365 of the Bankruptcy Code (or otherwise) in the Chapter 11 Cases or any other Insolvency or Liquidation Proceeding; (j) notwithstanding the occurrence of the Effective Date, until the Consummation Date, the DIP Financing Documents shall remain in full force and effect and the Debtors shall remain obligated to comply therewith; and (k) the Debtors may not file another case under the Bankruptcy Code or any other Insolvency or Liquidation Proceeding prior to the Consummation Date.

- All documents and agreements necessary to implement the Plan, including without limitation, the Prepetition Lender Settlement Documents, in each case in form and substance acceptable to the Debtors and the Prepetition Agent, will have (a) been tendered for delivery, and (b) been effected by, executed by, or otherwise deemed binding upon, all Entities party thereto and shall be in full force and effect. All conditions precedent to such documents and agreements will have been satisfied or waived pursuant to the terms of such documents or agreements.

- All authorizations, consents, actions, documents, approvals (including any governmental approvals), certificates and agreements necessary to implement the Plan or the Prepetition Lender Settlement Documents, including, without limitation, the Amended Constituent Documents, will have been obtained, effected or executed and delivered to the required parties and, to the extent required, filed with the applicable governmental units in accordance with applicable laws and any applicable waiting periods shall have expired without any action being taken or threatened by any competent authority that would restrain or prevent effectiveness or Consummation of the Restructuring.

2.    **Waiver of Conditions**

The conditions to effectiveness of the Plan set forth in this Article IX may be waived by the Debtors and the Prepetition Agent without notice, leave or order of the Bankruptcy Court or

any formal action other than proceeding to confirm or effectuate the Plan. The failure to satisfy or waive a condition to the Effective Date may be asserted by the Debtors, the Reorganized Debtors, or the Prepetition Agent regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of the Debtors, the Reorganized Debtors, or the Prepetition Agent to exercise any of the foregoing rights will not be deemed a waiver of any other rights, and each right will be deemed an ongoing right that may be asserted at any time.

### 3.   Effect of Non-Occurrence of Conditions to the Effectiveness

If the Effective Date of the Plan does not occur, the Plan will be null and void in all respects and nothing contained in the Plan or the Disclosure Statement will: (a) constitute a waiver or release of any claims by or Claims against or Equity Interests in the Debtors; (b) prejudice in any manner the rights of the Debtors, the Prepetition Agent, the Prepetition Lender, any other Holders or any other Entity; (c) constitute an Allowance of any Claim or Equity Interest; provided that the Prepetition Lender Secured Claim shall be an Allowed Claim as set forth in the Prepetition Lender Settlement Documents; or (d) constitute an admission, acknowledgment, offer or undertaking by the Debtors, the Prepetition Agent, the Prepetition Lender, any other Holders or any other Entity in any respect.

### 4.   Consummation of the Plan

Following the Effective Date, the Plan shall be "substantially consummated" pursuant to section 1101 of the Bankruptcy Code and the Consummation Date shall be deemed to occur, in each case solely on the date on which the Prepetition Lender Secured Claim and the DIP Financing Claims have been satisfied in full consistent with the terms of this Plan and the Prepetition Lender Settlement Documents, either by (i) the payment in full in Cash of the Early Payoff Amount or the Payoff Amount, as applicable, or (ii) the transfer of all unsold Collateral to the Prepetition Agent on or after the Outside Closing Date in accordance with the Prepetition Lender Settlement Documents. Until the Consummation Date, the Debtors shall not be permitted to emerge from, or seek to close, the Chapter 11 Cases. Notwithstanding the occurrence of the Effective Date, until the Consummation Date, the DIP Financing Documents shall remain in full force and effect and the Debtors shall remain obligated to comply therewith (including with respect to any budget (subject to permitted variances) or adequate protection payments required thereunder). The Prepetition Lender Settlement Documents shall remain in full force and effect regardless of the occurrence of the Effective Date or the Consummation Date. The Debtors may not file another case under the Bankruptcy Code or any other Insolvency or Liquidation Proceeding prior to the Consummation Date.

## O.   RELEASE, INJUNCTION AND RELATED PROVISIONS

### 1.   General

Notwithstanding anything contained in the Plan to the contrary, the allowance, classification and treatment of all Allowed Claims and Equity Interests and their respective distributions and treatments under the Plan shall take into account the relative priority and rights of the Claims and the Equity Interests in each Class in connection with any contractual, legal and equitable subordination rights relating thereto whether arising under general principles of equitable subordination, section 510 of the Bankruptcy Code, or otherwise.

Subject to and consistent with the terms of the Prepetition Lender Settlement Agreement and the Prepetition Lender Settlement Order, and in accordance with the provisions of the Plan and pursuant to section 363 of the Bankruptcy Code, without any further notice to or action,

- 46 -

order or approval of the Bankruptcy Court, after the Consummation Date (1) the Reorganized Debtors may compromise and settle Claims against them and (2) the Reorganized Debtors may compromise and settle Causes of Action against other Entities.

For purposes of the following release and exculpation provisions:

The "Releasing Parties" means, collectively, each in its capacity as such, Holders of Claims, including the Prepetition Agent and the Prepetition Lender, and the Holders of Equity Interests, including the Non-Debtor Affiliates, that are Unimpaired under the Plan and the Related Persons thereof.

The "Releasing Debtor Parties" means each of the Debtors and each of the Reorganized Debtors, each in their individual capacities and as debtors-in-possession, and each of their respective Related Persons.

The "Released Parties" means, collectively, each in its capacity as such: (a) the Debtors; (b) the Reorganized Debtors; (c) the Non-Debtor Affiliates; (d) the Lender Parties; and (e) the Related Persons of each of (a) through (d) of the foregoing.

The "Exculpated Parties" means, collectively, the Debtors, the Reorganized Debtors, the Liquidation Agent, Maple, the Lender Parties, and each of their Related Persons who served in such capacity during the Chapter 11 Cases.

2.     **Release by Debtors**

*Effective as of the Effective Date, for good and valuable consideration provided by each of the Released Parties, the adequacy of which is hereby acknowledged and confirmed, the Releasing Debtor Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever provided a full discharge, waiver and release to the Released Parties (and each such Released Party so released shall be deemed forever released, waived and discharged by the Releasing Debtor Parties) and their respective properties from any and all Claims, interests, Causes of Action, litigation claims and any other debts, accounts, offsets, liens, obligations, indemnities, guaranties, powers, privileges, licenses, franchise, demands, rights, defenses, suits, controversies, damages, actions, judgments, losses, remedies and liabilities whatsoever, including any derivative claims, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether absolute, inchoate, or contingent; whether determined or undetermined, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets, or otherwise; whether for compensation, relief, protection, punishment, or any other remedy of result of any kind, character, or nature; whether based upon any intentional or negligent conduct, strict liability, or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleadings, by motion, by notice, or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum, or with any federal, state, county, municipal, or other governmental authority, agency, or official; whether arising at law, in equity, or otherwise, including the Adversary Proceeding (and the related complaint and amended complaint and LNV's motion to dismiss) and the Estimation Motion; whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtors, the Chapter 11 Cases, the Disclosure Statement or the Plan that such releasing Debtor Parties or their Affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or that any Holder of a Claim or Equity interest or other Entity would have been*

- 47 -

*legally entitled to assert for or on behalf of the Debtors, their estates or the Reorganized Debtors (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this release shall not operate to waive or release (i) any Causes of Action expressly set forth in and preserved by the Plan, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, or the Plan Documents; (ii) any Causes of Action arising from fraud, gross negligence, or willful misconduct as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (iii) the rights of such Releasing Debtor party to enforce the Plan, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, and the contracts, instruments, releases, and other agreements or documents delivered under or in connection with the Plan, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court; and/or (iv) any post-Effective Date obligations of any party or Entity under the Plan, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, any of the restructuring transactions, or any document, instrument or agreement (including those set forth in the Plan Documents) executed to implement the Plan. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any person. Notwithstanding the foregoing, the Debtors are not releasing the Debtors (but they are releasing the related persons to the Debtors pursuant to this paragraph).*

3. **Release by Holders of Claims and Equity Interests**

*Effective as of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the service of the Released Parties to facilitate the reorganization of the Debtors and the implementation of the restructuring and the restructuring transactions, and except as otherwise provided in the Plan or in the Confirmation Order, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Releasing Parties, from any and all Claims, interests, Causes of Action, litigation claims and any other debts, accounts, offsets, liens, obligations, indemnities, guaranties, powers, privileges, licenses, franchise, demands, rights, defenses, suits, controversies, damages, actions, judgments, losses, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, in law, at equity, whether absolute, inchoate, or contingent; whether determined or undetermined, proven or unproven; whether held individually, jointly, or jointly and severally; whether arising indirectly, derivatively, or by way of any legal or equitable right of subrogation, contribution, indemnity, estoppel, marshalling of assets, or otherwise; whether for compensation, relief, protection, punishment, or any other remedy of result of any kind, character, or nature; whether based upon any intentional or negligent conduct, strict liability, or upon any other grounds or upon any other theory whatsoever; whether asserted or subject to assertion by complaint, cross-complaint, counterclaim, affirmative defense, or other pleadings, by motion, by notice, or otherwise; whether asserted or subject to assertion in any jurisdiction, in any court or other forum, or with any federal, state, county, municipal, or other governmental authority, agency, or official; whether arising at law, in equity, or otherwise, including the Adversary Proceeding (and the related complaint and amended complaint and LNV's motion to dismiss) and the Estimation Motion; whether for tort, contract, or otherwise, based in whole or in part upon any act or omission, transaction, or other occurrence or circumstances existing or taking place prior to or on the Effective Date arising from or related in any way in whole or in part to the Debtors, the Chapter 11 Cases, the subject matter of, or the transactions or events giving rise to, any claim or interest that is treated in the Plan, the restructuring, the restructuring of any claim or equity interest before or during the Chapter 11 Cases, the restructuring transactions, the negotiation, formulation, or preparation of the Disclosure Statement, the Plan, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, and related agreements, instruments, and other documents (including the Plan*

*Documents), or any other act or omission that such releasing Debtor Parties or their Affiliates would have been legally entitled to assert (whether individually or collectively) or that any Holder of a Claim or Equity interest or other Entity would have been legally entitled to assert for or on behalf of the Debtors, their estates or the Reorganized Debtors (whether directly or derivatively) against any of the Released Parties; provided, however, that the foregoing provisions of this release shall not operate to waive or release (i) any causes of action arising from fraud, gross negligence, or willful misconduct as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; (ii) the rights of such Releasing Party to enforce the Plan, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, and the contracts, instruments, releases, and other agreements or documents delivered under or in connection with the Plan or assumed pursuant to the Plan or assumed pursuant to Final Order of the Bankruptcy Court; and/or (iii) any post-Effective Date obligations of any party or Entity under the Plan, the Prepetition Lender Settlement Agreement, the Prepetition Lender Settlement Order, any of the Restructuring Transactions, or any document, instrument or agreement (including those set forth in the Plan Documents) executed to implement the Plan. The foregoing release shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or the vote, consent, authorization or approval of any person.*

4.      **Discharge of Claims**

To the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code, except as otherwise expressly provided by the Plan or the Confirmation Order, all consideration distributed under the Plan will be in exchange for, and in complete satisfaction, settlement, discharge, and release of, all Claims and Equity Interests of any kind or nature whatsoever against the Debtors or any of their Assets or properties, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Equity Interests. Except as otherwise expressly provided by the Plan or the Confirmation Order, upon the Effective Date, the Debtors and their Estates will be deemed discharged and released under and to the fullest extent provided under section 1141(d)(1)(A) and other applicable provisions of the Bankruptcy Code from any and all Claims and Equity Interests of any kind or nature whatsoever, including, but not limited to, demands and liabilities that arose before the Confirmation Date, and all debts of the kind specified in section 502(g), 502(h), or 502(i) of the Bankruptcy Code.

5.      **Exculpation**

The Exculpated Parties will neither have nor incur any liability to any Entity for any claims or Causes of Action arising before, on or after the Petition Date and prior to or on the Effective Date for any act taken or omitted to be taken in connection with, or related to formulating, negotiating, preparing, disseminating, implementing, administering, confirming or affecting the effectiveness and Consummation of the Plan, the Disclosure Statement, the Prepetition Lender Settlement Documents, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other prepetition or postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or confirmation, effectiveness, or Consummation of the Plan; *provided, however*, that the foregoing provisions will have no effect on the liability of any Entity that results from any such act or omission that is determined in a Final Order of the Bankruptcy Court or other court of competent jurisdiction to have constituted gross negligence or willful misconduct; *provided, further*, that each Exculpated Party will be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions; *provided, further*, however that the foregoing provisions will not apply to any acts, omissions,

Claims, Causes of Action or other obligations expressly set forth in and preserved by the Plan, the Prepetition Lender Settlement Documents, or the Plan Documents.

6.    **Preservation of Rights of Action**

(a)    <u>Maintenance of Causes of Action</u>

Subject to and consistent with the terms of the Prepetition Lender Settlement Documents, and except as otherwise provided in Article X or elsewhere in the Plan or the Confirmation Order, after the Effective Date, the Debtors will retain all rights to commence, pursue, litigate or settle, as appropriate, any and all Causes of Action and Litigation Claims, whether existing as of the Petition Date or thereafter arising, in any court or other tribunal including, without limitation, in an adversary proceeding Filed in the Chapter 11 Cases.

After the Consummation Date, the Reorganized Debtors, as the successors in interest to the Debtors and the Estates, may, and will have the exclusive right to, enforce, sue on, settle, compromise, transfer or assign (or decline to do any of the foregoing) any or all of the Litigation Claims without notice to or approval from the Bankruptcy Court.

(b)    <u>Preservation of All Causes of Action Not Expressly Settled or Released</u>

Unless a Cause of Action or Litigation Claim against a Holder of a Claim or an Equity Interest or other Entity is expressly waived, relinquished, released, compromised or settled in the Plan, the Prepetition Lender Settlement Documents, or any Final Order (including, without limitation, the Confirmation Order), the Debtors expressly reserve such Cause of Action or Litigation Claim for later adjudication by the Debtors or the Reorganized Debtors (including, without limitation, Causes of Action and Litigation Claims not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable or otherwise) or laches will apply to such Causes of Action or Litigation Claims upon or after the confirmation, effectiveness, or Consummation of the Plan based on the Disclosure Statement, the Plan or the Confirmation Order, except where such Causes of Action or Litigation Claims have been expressly released in the Plan (including, without limitation, and for the avoidance of doubt, the releases contained in Article X of the Plan) or any other Final Order (including, without limitation, the Confirmation Order).  In addition, the Debtors and the Reorganized Debtors expressly reserve the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor is a plaintiff, defendant or an interested party, against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

7.    **Injunction**

Except as otherwise provided in the Plan, from and after the Effective Date, all Entities are permanently enjoined from commencing or continuing in any manner, any suit, action or other proceeding, or creating, perfecting or enforcing any lien of any kind, on account of or respecting any claim, demand, liability, obligation, debt, right, Cause of Action, Equity Interest, or remedy released or to be released, exculpated or to be exculpated, or discharged or to be discharged pursuant to the Plan, the Prepetition Lender Settlement Documents, or the Confirmation Order.  By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Equity Interest will be deemed to have specifically consented to this injunction.  All injunctions or stays provided for in the Chapter 11 Cases under section 105 or 362 of the

- 50 -

Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Consummation Date.

## P.   BINDING NATURE OF PLAN

On the Effective Date, and effective as of the Effective Date, the Plan will bind, and will be deemed binding upon, all Holders of Claims against and Equity Interests in the Debtors and such Holder's respective successors and assigns, to the maximum extent permitted by applicable law, notwithstanding whether or not such Holder will receive or retain any property or interest in property under the Plan.

## Q.   CONFIRMATION PROCEDURES

### 1.   Confirmation Hearing

**The Bankruptcy Court has set June 19, 2019, at 11:00 a.m. prevailing Eastern time for the Confirmation Hearing.** The Confirmation Hearing may be continued from time to time by the Bankruptcy Court or the Debtors without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Bankruptcy Court and served on such parties as the Bankruptcy Court may order. Moreover, the Plan may be modified or amended, if necessary, pursuant to section 1127 of the Bankruptcy Code, prior to, during or as a result of the Confirmation Hearing, without further notice to parties-in-interest.

**The Bankruptcy Court has set June 17, 2019, at 4:00 p.m. prevailing Eastern time as the Confirmation Objection Deadline**.

All Confirmation Objections must be filed with the Bankruptcy Court and served on the Debtors and certain other parties in accordance with the Disclosure Statement Order on or before the Confirmation Objection Deadline once it is set.

> CONFIRMATION OBJECTIONS NOT TIMELY FILED AND SERVED IN THE MANNER SET FORTH HEREIN MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT AND MAY BE OVERRULED WITHOUT FURTHER NOTICE.

### 2.   Filing Objections to the Plan

Any objection to confirmation of the Plan must: (i) be in writing; (ii) conform to the Bankruptcy Rules and the Local Rules; (iii) state the name of the objecting party and the amount and nature of the Claim or the amount of Equity Interests held by such Entity; (iv) state with particularity the basis and nature of any objection to the Plan and, if practicable, a proposed modification to the Plan that would resolve such objection; and (v) be filed, contemporaneously with a proof of service, with the Bankruptcy Court and served so that it is **actually received** no later than the Confirmation Objection Deadline by the Notice Parties.

## R.   STATUTORY REQUIREMENTS FOR CONFIRMATION OF THE PLAN

At the Confirmation Hearing, the Bankruptcy Court will determine whether the Plan satisfies the requirements of section 1129 of the Bankruptcy Code. The Debtors believe that: (i) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (ii) the Debtors have complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (iii) the Plan has been proposed in good faith.

Specifically, the Debtors believe that the Plan satisfies or will satisfy the applicable confirmation requirements of section 1129 of the Bankruptcy Code set forth below.

- The Plan complies with the applicable provisions of the Bankruptcy Code;

- The Debtors have complied and will comply with the applicable provisions of the Bankruptcy Code;

- The Plan has been proposed in good faith and not by any means forbidden by law;

- Any payment made or promised under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the case, has been or will be disclosed to the Bankruptcy Court, and any such payment: (a) made before the confirmation of the Plan is reasonable; or (b) is subject to the approval of the Bankruptcy Court as reasonable if it is to be fixed after confirmation of the Plan;

- The Debtors will disclose the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director or officer of the Debtors, an affiliate of the Debtors participating in the plan with the Debtors, or a successor to the Debtors under the Plan. The appointment to, or continuance in, such office by such individual, will be consistent with the interests of creditors and equity security holders and with public policy and the Debtors will have disclosed the identity of any insider that the Reorganized Debtors will employ or retain, and the nature of any compensation for such insider;

- Each Class of Claims or Equity Interests will not be Impaired under the Plan, or the Plan can be confirmed without the approval of such voting Class pursuant to section 1129(b) of the Bankruptcy Code;

- Except to the extent that the Holder of a particular Claim will agree to a different treatment of its Claim, the Plan provides that Administrative Expense Claims and Priority Claims will be paid in full in Cash on the Effective Date, or as soon thereafter as is reasonably practicable;

- Confirmation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtors or any successor thereto under the Plan;

- The Debtors have paid or will pay all fees payable under section 1930 of title 28, and the Plan provides for the payment of all such fees on the Effective Date; and

- The Plan provides for the continuation after the Effective Date of payment of all retiree benefits.

1.    **Best Interests of Creditors Test**

Often called the "best interests" test, section 1129(a)(7) of the Bankruptcy Code requires that the bankruptcy court find, as a condition to confirmation of a chapter 11 plan, that each holder of a claim or equity interest in each impaired class: (i) has accepted the plan; or (ii) among other things, will receive or retain under the plan property of a value, as of the effective date of the plan, that is not less than the amount that such Person would receive if each of the debtors were liquidated under chapter 7 of the Bankruptcy Code. To make these findings, the Bankruptcy Court must: (1) estimate the Cash proceeds (the "Liquidation Proceeds") that a

chapter 7 trustee would generate if each Debtor's Chapter 11 Case were converted to a chapter 7 case on the Effective Date and the assets of such Debtor's Estate were liquidated; (2) determine the distribution (the "Liquidation Distribution") that each non-accepting Holder of a Claim or Equity Interest would receive from the Liquidation Proceeds under the priority scheme dictated in chapter 7; and (3) compare each Holder's Liquidation Distribution to the distribution under the Plan that such Holder would receive if the Plan were confirmed and consummated.

Because there are no Impaired Classes under the Plan, the requirements of section 1129(a)(7) of the Bankruptcy Code are not applicable to the Plan.

2.    **Feasibility**

Section 1129(a)(11) of the Bankruptcy Code requires that the bankruptcy court find that confirmation is not likely to be followed by the liquidation of the Reorganized Debtors or the need for further financial reorganization, unless the plan contemplates such liquidation. For purposes of demonstrating that the Plan meets this "feasibility" standard, the Debtors have analyzed the ability of the Reorganized Debtors to meet their obligations under the Plan and to retain sufficient liquidity and capital resources to conduct their business.

The Debtors believe that the Plan meets the feasibility requirement set forth in section 1129(a)(11) of the Bankruptcy Code. In connection with the development of the Plan and for the purposes of determining whether the Plan satisfies this feasibility standard, the Debtors analyzed their ability to satisfy their financial obligations while maintaining sufficient liquidity and capital resources. Pursuant to the terms of the Prepetition Lender Settlement Agreement, the Debtors and the Prepetition Agent will agree upon a budget through the end of calendar year 2019 and the Debtors will have access to a new financing facility to be provided by the Prepetition Lender.

The Debtors believe that with the capital structure provided under the Plan and the added funding that will be made available by the Prepetition Lender, the Reorganized Debtors should have sufficient Cash flow and Cash on hand to make all payments required pursuant to the Plan. The Debtors believe that confirmation and effectiveness of the Plan is, therefore, not likely to be followed by the liquidation or further reorganization of the Reorganized Debtors. Accordingly, the Debtors believe that the Plan satisfies the feasibility requirement of section 1129(a)(11) of the Bankruptcy Code.

3.    **Valuation**

In order to provide information and full disclosure to parties in interest regarding the Debtors' assets, the Debtors estimate that the value of the Company and its life settlements portfolio under the Plan total in excess of $500 million.

4.    **Acceptance by Impaired Classes**

The Bankruptcy Code requires, as a condition to confirmation, that, except as described in the following section, each class of claims or equity interests that is impaired under a plan, accept the plan. A class that is not "impaired" under a plan is deemed to have accepted the plan and, therefore, solicitation of acceptances with respect to such class is not required. A class is "impaired" unless the plan: (1) leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest; or (2) notwithstanding any contractual provision or applicable law that entitles the holder of such claim or interest to demand or receive accelerated payment of such claim or interest after the occurrence of a default— (A) cures any such default that occurred before or after the commencement of the Chapter 11 Cases, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code or of a kind that section 365(b)(2) expressly does not require to be cured; (B) reinstates the

maturity of such claim or interest as such maturity existed before such default; (C) compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; (D) if such claim or such interest arises from any failure to perform a nonmonetary obligation, other than a default arising from failure to operate a nonresidential real property lease subject to section 365(b)(1)(A), compensates the holder of such claim or such interest (other than the debtor or an insider) for any actual pecuniary loss incurred by such holder as a result of such failure; and (E) does not otherwise alter the legal, equitable, or contractual rights to which such claim or interest entitles the holder of such claim or interest.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds in dollar amount and more than one-half in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the plan and are not insiders. Thus, a class of claims will have voted to accept the plan only if two-thirds in amount and a majority in number actually voting cast their ballots in favor of acceptance. Section 1126(d) of the Bankruptcy Code, except as otherwise provided in section 1126(e) of the Bankruptcy Code, defines acceptance of a plan by a class of impaired equity interests as acceptance by holders of at least two-thirds in amount of equity interests in that class actually voting to accept or to reject the plan.

Here, all Classes of Claims and Equity Interests are Unimpaired under the Plan, and, as a result, the Holders of such Claims and Equity Interests are deemed to have accepted the Plan and are not entitled to vote on the Plan.

Pursuant to section 1129 of the Bankruptcy Code, the Holders of Claims in any voting class must accept the Plan for the Plan to be confirmed without application of the "fair and equitable test" to such Class, and without considering whether the Plan "discriminates unfairly" with respect to such Class, as both standards are described herein. As stated above, all Classes of Claims and Equity Interests are deemed to accept the Plan and are not entitled to vote on the Plan.

5.     **Confirmation Without Acceptance by Impaired Classes**

Section 1129(b) of the Bankruptcy Code allows a bankruptcy court to confirm a plan even if less than all impaired classes entitled to vote on the plan have accepted it, *provided* that the plan has been accepted by at least one impaired class of claims. Pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding an impaired Class's rejection or deemed rejection of the Plan, the Plan will be confirmed, at the Debtors' request, in a procedure commonly known as "cram down," so long as the Plan does not "discriminate unfairly" and is "fair and equitable" with respect to each Class of Claims or Equity Interests that is impaired under, and has not accepted, the Plan.

6.     **No Unfair Discrimination**

This test applies to classes of claims or equity interests that are of equal priority and are receiving different treatment under the Plan. The test does not require that the treatment be the same or equivalent, but that such treatment be "fair." In general, bankruptcy courts consider whether a plan discriminates unfairly in its treatment of classes of claims of equal rank (e.g., classes of the same legal character). Bankruptcy courts will take into account a number of factors in determining whether a plan discriminates unfairly and, accordingly, a plan could treat two classes of unsecured creditors differently without unfairly discriminating against either class.

7.    **Fair and Equitable Test**

This test applies to classes of different priority and status (e.g., secured versus unsecured) and includes the general requirement that no class of claims receive more than 100% of the amount of the allowed claims in such class. As to the dissenting class, the test sets different standards depending on the type of claims or equity interests in such class:

The condition that a plan be "fair and equitable" to a non-accepting Class of Secured Claims includes the requirements that: (a) the Holders of such Secured Claims retain the liens securing such Claims to the extent of the Allowed amount of the Claims, whether the property subject to the liens is retained by the debtors or transferred to another entity under the Plan; and (b) each Holder of a Secured Claim in the Class receives deferred Cash payments totaling at least the Allowed amount of such Claim with a present value, as of the Effective Date of the Plan, at least equivalent to the value of the secured claimant's interest in the debtor's property subject to the liens.

The condition that a plan be "fair and equitable" with respect to a non-accepting Class of unsecured Claims includes the requirement that either: (a) the plan provides that each Holder of a Claim of such Class receive or retain on account of such Claim property of a value, as of the Effective Date of the plan, equal to the allowed amount of such Claim; or (b) the Holder of any Claim or Equity Interest that is junior to the Claims of such Class will not receive or retain under the plan on account of such junior Claim or Equity Interest any property.

The condition that a plan be "fair and equitable" to a non accepting Class of Equity Interests includes the requirements that either: (a) the plan provides that each Holder of an Equity Interest in that Class receives or retains under the plan, on account of that Equity Interest, property of a value, as of the Effective Date of the plan, equal to the greater of (i) the allowed amount of any fixed liquidation preference to which such Holder is entitled, (ii) any fixed redemption price to which such Holder is entitled, or (iii) the value of such interest; or (b) if the Class does not receive such an amount as required under (a), no Class of Equity Interests junior to the non-accepting Class may receive a distribution under the plan.

To the extent that any class of Claims or Class of Equity Interests is determined to be Impaired or is deemed to have rejected the Plan, the Debtors reserve the right to seek (a) confirmation of the Plan under section 1129(b) of the Bankruptcy Code and/or (b) modify the Plan in accordance with Article XIII.C of the Plan.

The Debtors believe that the Plan and the treatment of all Classes of Claims and Equity Interests under the Plan satisfy the foregoing requirements for non-consensual confirmation of the Plan.

## ARTICLE IV.
## RISK FACTORS

ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD READ AND CONSIDER CAREFULLY THE RISK FACTORS SET FORTH HEREIN, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. THESE FACTORS SHOULD NOT BE REGARDED AS CONSTITUTING THE ONLY RISKS PRESENT IN CONNECTION WITH THE DEBTORS' BUSINESS OR THE PLAN AND ITS IMPLEMENTATION.

A.    **CERTAIN BANKRUPTCY LAW AND FUNDING CONSIDERATIONS**

1.    **Parties in Interest May Object to the Debtors' Classification of Claims and Equity Interests, or Designation as Unimpaired.**

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an equity interest in a particular class only if such claim or equity interest is substantially similar to the other claims or equity interests in such class. The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because the Debtors created Classes of Claims and Equity Interests, each encompassing Claims or Equity Interests, as applicable, that are substantially similar to the other Claims and Equity Interests in each such Class. Nevertheless, there can be no assurance that the Holders of Claims or Equity Interests or the Bankruptcy Court will reach the same conclusion.

There is also a risk that the Holders of Claims or Equity Interests could object to the Debtors' designation of Claims or Equity Interests as Unimpaired, and the Bankruptcy Court could reach the same conclusion.

2.    **The Debtors May Not Be Able to Secure Confirmation of the Plan.**

Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation of a chapter 11 plan and requires, among other things, findings by the bankruptcy court that: (a) such plan "does not unfairly discriminate" and is "fair and equitable" with respect to any non-accepting classes; (b) confirmation of such plan is not likely to be followed by a liquidation or a need for further financial reorganization unless such liquidation or reorganization is contemplated by the plan; and (c) the value of distributions to Holders of Claims within a particular class under such plan will not be less than the value of distributions such holders would receive if the debtor was liquidated under chapter 7 of the Bankruptcy Code.

There can be no assurance that the Bankruptcy Court will confirm the Plan. The Bankruptcy Court could decline to confirm the Plan if it found that any of the statutory requirements for confirmation had not been met.

3.    **The Conditions Precedent to the Effective Date of the Plan May Not Occur.**

As more fully set forth in Article IX of the Plan, the Effective Date of the Plan is subject to a number of conditions precedent. If such conditions precedent are not waived or not met, the Effective Date will not take place.

Specifically, effectiveness of the Plan is conditioned upon, among other requirements, the Bankruptcy Court approving the Prepetition Lender Settlement Agreement and entering the Prepetition Lender Settlement Order, which shall be a Final Order.

4.    **Continued Risk Following Effectiveness.**

Even if the Effective Date of the Plan occurs, the Debtors will continue to face a number of risks, including certain risks that are beyond their control, such as changes in life expectancies, challenges by insurers to pending claims, potential revaluing of the Debtors' assets, and increasing expenses. Some of these concerns and effects typically become more acute when a case under the Bankruptcy Code continues for a protracted period without indication of how or when the case may be completed. As a result of these risks and others, there is no guarantee that a chapter 11 plan of reorganization reflecting the Plan will achieve the Debtors' stated goals.

In addition, at the outset of the Chapter 11 Cases, the Bankruptcy Code provides the Debtors with the exclusive right to propose the Plan and prohibits creditors and others from proposing a plan. The Debtors will have retained the exclusive right to propose the Plan upon filing their petitions. If the Bankruptcy Court terminates that right, however, or the exclusivity period expires, there could be a material adverse effect on the Debtors' ability to achieve confirmation of the Plan in order to achieve the Debtors' stated goals.

Further, even if the Debtors' debts are reduced and/or discharged through the Plan, the Debtors may need to raise additional funds through public or private debt or equity financing or other various means to fund the Debtors' business after the completion of the proceedings related to the Chapter 11 Cases. Adequate funds may not be available when needed or may not be available on favorable terms

5.    **The Effective Date May Not Occur.**

Although the Debtors believe that the Effective Date may occur quickly after the Confirmation Date, there can be no assurance as to such timing or as to whether the Effective Date will, in fact, occur.

6.    **The Chapter 11 Cases May Be Converted to Cases Under Chapter 7 of the Bankruptcy Code**

If the Bankruptcy Court finds that it would be in the best interest of creditors and/or the debtor in a chapter 11 case, the Bankruptcy Court may convert a chapter 11 bankruptcy case to a case under chapter 7 of the Bankruptcy Code. In such event, a chapter 7 trustee would be appointed or elected to liquidate the debtor's assets for distribution in accordance with the priorities established by the Bankruptcy Code. The Debtors believe that liquidation under chapter 7 would result in significantly smaller distributions being made to creditors than those provided for in the Plan because of (a) the likelihood that the assets would have to be sold or otherwise disposed of in a disorderly fashion over a short period of time, rather than reorganizing or selling the business and the life settlement portfolio at a later time in a controlled manner, (b) additional administrative expenses involved in the appointment of a chapter 7 trustee, and (c) additional expenses and Claims, some of which would be entitled to priority, that would be generated during the liquidation, including Claims resulting from the rejection of Executory Contracts in connection with cessation of operations.

7.    **Releases, Injunctions, and Exculpations Provisions May Not Be Approved**

Consistent with the Prepetition Lender Settlement Agreement, Article X of the Plan provides for certain releases, injunctions, and exculpations that may otherwise be asserted against the Debtors, Reorganized Debtors, or Released Parties, as applicable. The releases, injunctions, and exculpations provided in the Plan may not be approved. If the releases are not approved, certain Released Parties may withdraw their support for the Plan. The releases provided to the Released Parties and the exculpation provided to the Exculpated Parties are necessary to the success of the Debtors' reorganization because the Released Parties and Exculpated Parties have made significant contributions to the Debtors' reorganization efforts.

## B.    RISKS ASSOCIATED WITH FORWARD-LOOKING STATEMENTS

1.    **The Financial Information Contained Herein is Based on the Debtors' Books and Records and, Unless Otherwise Stated, No Audit was Performed.**

**The financial information contained in this Disclosure Statement has not been audited**. In preparing this Disclosure Statement, the Debtors relied on financial data derived

from their books and records that was available at the time of such preparation. Although the Debtors have used their reasonable business judgment to ensure the accuracy of the financial information provided in this Disclosure Statement and, while the Debtors believe that such financial information fairly reflects the financial condition of the Debtors, the Debtors are unable to warrant or represent that the financial information contained herein and attached hereto is without inaccuracies.

    2.    **Financial Projections and Other Forward-Looking Statements Are Not Assured, Are Subject to Inherent Uncertainty Due to the Numerous Assumptions Upon Which They Are Based and, as a Result, Actual Results May Vary.**

This Disclosure Statement contains various projections concerning the financial results of the Reorganized Debtors' operations that are, by their nature, forward-looking, and which projections will be necessarily based on certain assumptions and estimates. Should any or all of these assumptions or estimates ultimately prove to be incorrect, the actual future experiences of the Reorganized Debtors may turn out to be different from any financial projections.

Specifically, the projected financial results will reflect numerous assumptions concerning the anticipated future performance of the Reorganized Debtors, some of which may not materialize, including, without limitation, assumptions concerning: (a) the timing of confirmation and effectiveness of the Plan in accordance with its terms; (b) the anticipated future performance of the Reorganized Debtors, including, without limitation, receipts from the Debtors' life settlement portfolio; and (c) general business and economic conditions.

**C.    DISCLOSURE STATEMENT DISCLAIMER**

    1.    **The Information Contained Herein is for Disclosure Purposes Only.**

The information contained in this Disclosure Statement is for purposes of disclosure in connection with the Plan and may not be relied upon for any other purposes.

    2.    **This Disclosure Statement was Not Approved by the Securities and Exchange Commission.**

Neither the SEC nor any state regulatory authority has passed upon the accuracy or adequacy of this Disclosure Statement, or the exhibits or the statements contained herein, and any representation to the contrary is unlawful.

    3.    **This Disclosure Statement Contains Forward-Looking Statements.**

This Disclosure Statement contains "forward-looking statements" within the meaning of the Private Securities Litigation Reform Act of 1995. Such statements consist of any statement other than a recitation of historical fact and can be identified by the use of forward looking terminology such as "may," "expect," "anticipate," "estimate" or "continue" or the negative thereof or other variations thereon or comparable terminology. The reader is cautioned that all forward-looking statements are necessarily speculative and there are certain risks and uncertainties that could cause actual events or results to differ materially from those referred to in such forward-looking statements.

    4.    **No Legal or Tax Advice is Provided to You by This Disclosure Statement.**

**This Disclosure Statement is not legal or tax advice to You**. The contents of this Disclosure Statement should not be construed as legal, business or tax advice, and are not

personal to any person or entity. Each Holder of a Claim or an Equity Interest should consult his or her own legal counsel and accountant with regard to any legal, tax and other matters concerning his or her Claim or Equity Interest. This Disclosure Statement may not be relied upon for any purpose other than as a disclosure of certain information to determine how to vote on the Plan or object to confirmation of the Plan.

5. **No Admissions Are Made by This Disclosure Statement.**

The information and statements contained in this Disclosure Statement will neither (a) constitute an admission of any fact or liability by any Entity (including, without limitation, the Debtors) nor (b) be deemed evidence of the tax or other legal effects of the Plan on the Debtors, the Reorganized Debtors, Holders of Allowed Claims or Equity Interests or any other parties in interest.

6. **No Reliance Should Be Placed on Any Failure to Identify Litigation Claims or Projected Objections.**

No reliance should be placed on the fact that a particular litigation claim or projected objection to a particular Claim or Equity Interest is, or is not, identified in this Disclosure Statement. The Debtors or the Reorganized Debtors may seek to investigate, file and prosecute litigation rights and claims against any third parties and may object to Claims after the Confirmation Date or Effective Date of the Plan irrespective of whether the Disclosure Statement identifies such litigation claims or objections to Claims or Equity Interests.

7. **Nothing Herein Constitutes a Waiver of Any Right to Object to Claims or Equity Interests or Recover Transfers and Assets.**

The Debtors or the Reorganized Debtors (or any party in interest, as the case may be) reserve any and all rights to object to that Holder's Allowed Claim regardless of whether any Claims or Causes of Action of the Debtors or their Estates are specifically or generally identified herein.

8. **The Information Used Herein was Provided by the Debtors and was Relied Upon by the Debtors' Advisors.**

Counsel to and other advisors retained by the Debtors have relied upon information provided by the Debtors in connection with the preparation of this Disclosure Statement. Although counsel to and other advisors retained by the Debtors have performed certain limited due diligence in connection with the preparation of this Disclosure Statement, they have not verified independently the information contained herein.

9. **The Potential Exists for Inaccuracies and the Debtors Have No Duty to Update.**

The statements contained in this Disclosure Statement are made by the Debtors as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has not been a change in the information set forth herein since that date. While the Debtors have used their reasonable business judgment to ensure the accuracy of all of the information provided in this Disclosure Statement and in the Plan, the Debtors nonetheless cannot, and do not, confirm the current accuracy of all statements appearing in this Disclosure Statement. Further, although the Debtors may subsequently update the information in this Disclosure Statement, the Debtors have no affirmative duty to do so unless ordered to do so by the Bankruptcy Court.

10.     **No Representations Made Outside the Disclosure Statement Are Authorized.**

No representations concerning or relating to the Debtors, the Chapter 11 Cases or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. You should promptly report unauthorized representations or inducements to the counsel to the Debtors and the United States Trustee.

## ARTICLE V.
## ALTERNATIVES TO CONFIRMATION AND EFFECTIVENESS OF THE PLAN

### A.     LIQUIDATION UNDER CHAPTER 7 OF THE BANKRUPTCY CODE

If no chapter 11 plan can be confirmed, some or all of the Chapter 11 Cases may be converted to cases under chapter 7 of the Bankruptcy Code in which case, a trustee would be elected or appointed to liquidate the Debtors' assets. The Debtors believe that liquidation under chapter 7 would result in (i) smaller distributions being made to creditors than those provided for in the Plan because of the additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee, (ii) additional expenses and claims, some of which would be entitled to priority, which would be generated during the liquidation and from the rejection of executory contracts in connection with the cessation of the Debtors' operations, and (iii) the failure to realize greater value from all of the Debtors' assets, including their life settlement portfolio.

### B.     FILING OF AN ALTERNATIVE PLAN OF REORGANIZATION

If the Plan is not confirmed, the Debtors or any other party in interest could attempt to formulate a different plan of reorganization. Such a plan might involve either a reorganization and continuation of the Debtors' business or an orderly liquidation of the Debtors' assets. Prior to the filing of the Plan, the Debtors explored various alternatives to the Plan.

The Debtors believe that the Plan will enable the Debtors to emerge from chapter 11 successfully and expeditiously and allows stakeholders to realize the highest recoveries under the circumstances.

## ARTICLE VI.
## U.S. FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

The Debtors' position is that the Claims and Equity Interests addressed by the Plan are Unimpaired and, hence, there should be no federal income tax consequences to the Holders thereof as a result of the effectiveness and Consummation of the Plan.

The Debtors have not requested, and will not request, a ruling from the Internal Revenue Service (the "IRS") or an opinion of counsel with respect to any of the tax aspects of the Plan. Thus, no assurance can be given that the IRS would not assert, or that a court would not sustain, a different position than the foregoing.

**ACCORDINGLY, EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS URGED TO CONSULT ITS OWN TAX ADVISOR FOR THE U.S. FEDERAL, STATE, LOCAL, AND NON-U.S. INCOME, ESTATE AND OTHER TAX CONSEQUENCES APPLICABLE UNDER THE PLAN.**

## ARTICLE VII.
## RECOMMENDATION

In the opinion of the Debtors, the Plan is preferable to the alternatives described in this Disclosure Statement because it provides for the highest distribution to the Debtors' creditors and interest holders.  In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to Holders of Allowed Claims and Equity Interests than that which is proposed under the Plan. Accordingly, the Debtors recommend that all Holders of Claims and Equity Interests support confirmation of the Plan.

Dated:  May [24], 2019

          **WHITE EAGLE ASSET PORTFOLIO, LP.**

          By: */s/ Miriam Martinez*
              Name:  Miriam Martinez
              Title:    Chief Financial Officer

          **LAMINGTON ROAD DESIGNATED ACTIVITY COMPANY**

          By: */s/ David Thompson*
              Name:  David Thompson
              Title:    Director

          **WHITE EAGLE GENERAL PARTNER, LLC**

          By: */s/ Miriam Martinez*
              Name:  Miriam Martinez
              Title:    Chief Financial Officer

**FILED BY:**

PACHULSKI STANG ZIEHL & JONES LLP

*/s/ Colin R. Robinson*
Richard M. Pachulski (CA Bar No. 62337)
Ira D. Kharasch (CA Bar No. 109084)
Maxim B. Litvak (CA Bar No. 215852)
Colin R. Robinson (DE Bar No. 5524)
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705 (Courier 19801)
Telephone: (302) 652-4100
Facsimile:  (302) 652-4400
E-mail:     rpachulski@pszjlaw.com
            ikharasch@pszjlaw.com
            mlitvak@pszjlaw.com
            crobinson@pszjlaw.com

Counsel for the Debtors
and Debtors-in-Possession

## EXHIBIT A

### AMENDED PLAN OF REORGANIZATION

[FILED SEPARATELY]

**EXHIBIT B**

**ORGANIZATIONAL CHART OF THE DEBTORS**

## Corporate Organizational Chart



*The above chart excludes certain other non-debtor direct and indirect subsidiaries of Emergent Capital, Inc. outside of the ownership structure of the Debtors.