**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1] | ) | Case No. 18-12808 (KG) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |
| | ) | **Related Docket No. 274** |
| | ) | |

**ORDER (A) AUTHORIZING THE DEBTORS TO OBTAIN SENIOR SECURED POSTPETITION FINANCING, (B) AUTHORIZING POSTPETITION USE OF CASH COLLATERAL, (C) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, AND (D) GRANTING RELATED RELIEF**

Upon the motion, dated May 22, 2019 (the "Motion"), of the above-captioned debtors (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), for the entry of an order pursuant to sections 105, 361, 362, 363 and 364 of title 11 of the United States Code (as amended, the "Bankruptcy Code"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules") and Rules 2002-1, 4001-2, 9006-1 and 9013-1 of the Local Rules of Bankruptcy Practice and Procedure for the District of Delaware (the "Local Rules") (A) authorizing the Debtors to obtain senior secured postpetition financing, (B) authorizing continued postpetition use of cash collateral, (C) granting adequate protection to prepetition secured parties, and (D) granting related relief, the Debtors sought, among other things, the following relief:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738). The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

(i)      the Court's authorization, pursuant to sections 363 and 364(c)(1), (2), (3) and (d)(1) of the Bankruptcy Code, for White Eagle Asset Portfolio, LP ("White Eagle" or the "DIP Borrower") to obtain a senior secured superpriority debtor-in-possession revolving credit facility (the "DIP Facility"), and for each of the other Debtors other than the DIP Borrower (the "DIP Guarantors") to unconditionally, on a joint and several basis, guarantee, the DIP Facility, pursuant to the DIP Credit Agreement attached hereto as **Exhibit 1** (the "DIP Credit Agreement"[2] and, collectively with this order (the "Order"), the DIP Budget (as defined below), and all other agreements, documents and instruments delivered or executed in connection herewith or therewith, in each case as amended, restated, supplemented or otherwise modified from time to time, the "DIP Loan Documents") provided by CLMG Corp., as administrative agent (in such capacity, the "DIP Agent"), and LNV Corporation, as lender (in such capacity, together with any successors and assigns permitted under the DIP Credit Agreement, the "DIP Lender" and, together with the DIP Agent, the "DIP Secured Parties"), which shall be available, subject to the terms and conditions set forth in this Order and the DIP Loan Documents, during the period from the entry of this Order until the Termination Date in the form of a revolving credit facility in an aggregate principal amount not to exceed $15,000,000 (together with all other financial accommodations and extensions of credit under the DIP Facility, the "DIP Extensions of Credit");

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the DIP Credit Agreement.

(ii)    the Court's authorization for the Debtors to execute the DIP Credit Agreement and the other DIP Loan Documents to which they are party and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(iii)    the Court's authorization for the Debtors to use DIP Extensions of Credit in accordance with the proposed budget prepared by the Debtors and annexed hereto as **Exhibit 2** (as updated from time to time in accordance with the terms of the DIP Loan Documents subject to the prior approval of the DIP Agent, the "DIP Budget"), including any permitted variances as set forth herein and in the DIP Loan Documents (the "Permitted Variances");

(iv)    the Court's authorization to grant to the DIP Agent, for the benefit of the DIP Lender, in respect of the DIP Obligations (as defined below), a superpriority administrative claim pursuant to section 364(c)(1) of the Bankruptcy Code and first priority priming liens on and security interests in all assets and property of the Debtors (now owned or hereafter acquired), pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the Bankruptcy Code, in each case as, and to the extent, set forth below;

(v)    the Court's authorization for the Debtors to use "cash collateral" as such term is defined in section 363 of the Bankruptcy Code (the "Cash Collateral") in which the Prepetition Secured Parties (as defined below) have an interest;

(vi)    the Court's authorization to grant, as of the Petition Date (as defined below), adequate protection for the benefit of the Prepetition Secured Parties, as set forth below, including the Adequate Protection Lien (as defined below) and Adequate Protection Claim (as

defined below), the payment of interest, fees and expenses to the Prepetition Agent (as defined below) for the benefit of the Prepetition Secured Parties, and the Debtors' compliance with certain reporting requirements;

(vii)    the modification or waiver by the Court of the automatic stay imposed by section 362 of the Bankruptcy Code and any other applicable stay (including Bankruptcy Rule 6004) to the extent necessary to implement and effectuate the terms and provisions of the DIP Facility, this Order, and the DIP Loan Documents and to provide for the immediate effectiveness of this Order;

(viii)    the scheduling by the Court of a hearing to consider entry of this Order granting the relief requested in the Motion and approving the form of notice with respect to the hearing and the transactions contemplated by the Motion; and

(ix)    approval of this Order.

The Debtors have served notice of the Motion as is appropriate under the circumstances, as required under sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rule 4001(b), and Local Rule 4001-2.

The Court having considered the Motion, the terms of the DIP Facility and the DIP Loan Documents, and the evidence submitted at the hearing held before this Court on June 5, 2019 to consider entry of this Order; and in accordance with Bankruptcy Rules 2002, 4001(b), (c), and (d), and 9014 and the Local Rules, due and proper notice of the Motion and the hearing having been given; and it appearing that approval of the relief provided by this Order is fair and reasonable and in the best interests of the Debtors, their creditors and their estates, and essential

for the continued operation of the Debtors' businesses; and all objections, if any, to the entry of

this Order having been withdrawn, resolved or overruled by the Court; and after due deliberation

and consideration, and for good and sufficient cause appearing therefor:

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**

     A.    **Petition Date**.  White Eagle General Partner, LLC ("WEGP") and Lamington

Road Designated Activity Company ("LRDA"), on November 14, 2018, and White Eagle, on

December 13, 2018, (each date, with respect to the applicable Debtor, the "Petition Date") filed

voluntary petitions under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

Court for the District of Delaware (the "Court").  The Debtors have continued in the

management and operation of their businesses and properties as debtors-in-possession pursuant

to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been

appointed in the Cases.  No official committee of unsecured creditors has been appointed in the

Cases.

     B.    **Jurisdiction and Venue**.  This Court has jurisdiction over this matter, pursuant to

28 U.S.C. §§ 157 and 1334, and the *Amended Standing Order of Reference from the United*

*States District Court for the District of Delaware*, dated February 29, 2012.  This matter is a core

proceeding within the meaning of 28 U.S.C. § 157(b)(2) and the Debtors have confirmed their

consent pursuant to Local Rule 9013-1(f) to the entry of a final order by the Court in connection

with the Motion to the extent that it is later determined that the Court, absent consent of the

parties, cannot enter final orders or judgments in connection herewith consistent with Article III

of the United States Constitution. Venue for the Cases and the proceedings on the Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **Final Cash Collateral Order**. On January 15, 2019, the Court entered the *Final Order (A) Authorizing the Use of Cash Collateral, (B) Providing Adequate Protection, and (C) Modifying the Automatic Stay* [Docket No. 81] (the "Final Cash Collateral Order") authorizing the Debtors to use Cash Collateral subject to the terms thereof. Paragraph 3 of the Final Cash Collateral Order included certain stipulations by the Debtors (the "Stipulations") with respect to the Prepetition Loan Documents (as defined below), the Prepetition Obligations (as defined below), and the Prepetition Liens (as defined below). The Challenge Period Termination Date (as defined in the Final Cash Collateral Order) with respect to the Stipulations occurred on March 2, 2019 with respect to all parties with standing to bring any challenges.

D.      **Prepetition Credit Facility**. White Eagle, as borrower, LNV Corporation ("LNV"), as lender, and CLMG Corp., as administrative agent (the "Prepetition Agent" and, together with LNV and any other lenders party to the Prepetition Loan Agreement from time to time, the "Prepetition Secured Parties"), are party to that certain Second Amended and Restated Loan and Security Agreement, dated as of January 31, 2017 (as amended, restated, supplemented or otherwise modified from time to time, the "Prepetition Loan Agreement"). Under the Prepetition Loan Agreement and other related Transaction Documents (as defined in the Prepetition Loan Agreement) (the "Prepetition Loan Documents"), the Prepetition Secured Parties provided a revolving facility to White Eagle of up to $370 million. The Prepetition Loan Documents were duly authorized and properly executed.

E.    **Prepetition Secured Obligations**. The Debtors are indebted and liable to the Prepetition Secured Parties under the Prepetition Loan Agreement in the aggregate principal amount of not less than $367.9 million (all of which reflects funds advanced by the Prepetition Secured Parties to White Eagle) as of the Petition Date plus accrued and unpaid interest, fees, costs, expenses, and all other obligations under the Prepetition Loan Documents, subject to the Settlement Order (as defined below) (collectively, the "Prepetition Obligations"). The Prepetition Loan Documents and Prepetition Obligations are legal, valid, binding, and enforceable against the Debtors.

F.    **Prepetition Liens**. Under the Prepetition Loan Documents, the Debtors granted (i) liens and security interests in favor of the Prepetition Agent (the "Prepetition Liens") on substantially all assets of the Debtors to the extent set forth in the Prepetition Loan Documents, including White Eagle's interests in life insurance policies and the proceeds therefrom, and (ii) pledges of the equity interests of White Eagle by its limited partner, LRDA, and its general partner, WEGP (the assets identified in clauses (i) and (ii), collectively, the "Prepetition Collateral"). The Prepetition Liens are legal, valid, binding, enforceable, non-avoidable, and properly perfected. As of the Petition Date, the Debtors are not aware of any liens or security interests having priority over the Prepetition Secured Parties' liens.

G.    **No Control**. None of the DIP Secured Parties or the Prepetition Secured Parties are control persons or insiders of the Debtors or any of their affiliates by virtue of any of the actions taken with respect to, in connection with, related to, or arising from the DIP Facility, the

DIP Loan Documents, this Order and/or (since the commencement of the Chapter 11 Cases) the Prepetition Loan Documents.

H.    **Settlement Agreement**.    On May 7, 2019, the Debtors and the Prepetition Secured Parties announced a settlement by and among themselves resolving a variety of disputes in the Cases (the "Settlement"). A term sheet for the Settlement was filed on the same day. The Settlement was effectuated pursuant to a Settlement Agreement, dated as of May 24, 2019 by and among the Debtors, certain of the Debtors' non-Debtor affiliates, and the Prepetition Secured Parties (the "Settlement Agreement"). On the date hereof, the Court entered an order approving the Settlement Agreement (the "Settlement Order"). By its terms, the Settlement Order incorporated by reference all of the terms of the Settlement Agreement. Pursuant to the Settlement Order, mutual releases between the Debtors and the Prepetition Secured Parties as set forth in the Settlement Agreement will be effectuated and become binding on all parties thereto. Therefore, upon effectiveness of the Settlement Agreement, there shall exist no claims or causes of action against any of the Prepetition Secured Parties or the DIP Secured Parties with respect to, in connection with, related to, or arising from the Prepetition Loan Documents that may be asserted by the Debtors or any of the other parties granting such releases under the Settlement Order.

I.    **Reservation of Rights**. This Order is without prejudice to, and nothing contained in this Order constitutes or shall be deemed a waiver (expressly or implicitly) by any Prepetition Secured Party or DIP Secured Party of, any rights, claims or defenses that it may have against the Debtors or any other party-in-interest in the Cases or otherwise, subject to the terms of the

8

Settlement Order.  The Prepetition Secured Parties and the DIP Secured Parties reserve all such rights, claims and defenses, subject to the terms of the Settlement Order, including, without limitation, the right to contest or object on any basis to (i) any right, claim, defense or proceeding asserted by the Debtors or any other party-in-interest against the Prepetition Secured Parties or the DIP Secured Parties, (ii) any further request by the Debtors for the use of Cash Collateral (including proceeds of the DIP Extensions of Credit) other than as expressly provided in this Order, including any further proposed budget in connection therewith, on the terms set forth in the Motion or otherwise, and (iii) any other motion, application, or other request or pleading by the Debtors, whether or not related to line items set forth in the DIP Budget.  Notwithstanding anything in this Order (including the DIP Budget), subject to the terms of the Settlement Agreement, all parties' rights are reserved with respect to the proper allocation of expenses set forth in the DIP Budget as between the Debtors and their non-Debtor affiliates.  Further, and without limiting any of the rights of the Prepetition Secured Parties and the DIP Secured Parties, but subject to the terms of the Settlement Agreement, the Prepetition Secured Parties and the DIP Secured Parties reserve the right to argue that any distribution to any non-Debtor affiliate in these Cases (whether through a plan, a sale or otherwise) should be offset by any amounts transferred to such non-Debtor affiliate by any Debtor during the Cases, and the Debtors reserve the right to contest any such argument.

       J.       **Findings Regarding Postpetition Financing and Use of Cash Collateral**.

       i.       **Need for Postpetition Financing and Use of Cash Collateral**.  Good cause has been shown for entry of this Order.  A need exists for the Debtors to obtain funds and

liquidity in order to fund any shortfalls after receipt of maturities of the Pledged Policies so that the Debtors can continue their operations, satisfy in full the costs and expenses of administering the Cases, and preserve the value of their estates through the end of the calendar year 2019. The ability of the Debtors to finance their operations and to preserve and maintain the value of the Debtors' assets requires the availability of the DIP Facility and the use of Cash Collateral. In the absence of the availability of such funds and liquidity in accordance with the terms hereof, the continued operation of the Debtors' businesses would not be possible as the Pledged Policies could potentially lapse if the related premiums are not timely paid, and serious and irreparable harm to the Debtors and their estates and creditors would occur. Thus, the ability of the Debtors to preserve and maintain the value of their assets and maximize the return for creditors requires the availability of working capital from the DIP Facility and the use of Cash Collateral.

ii.        **No Credit Available on More Favorable Terms**.    The Debtors have been unable to obtain on more favorable terms and conditions than those provided in this Order and in the DIP Loan Documents (a) adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, (b) credit for money borrowed with priority over any or all administrative expenses of the kind specified in sections 503(b) or 507(b) of the Bankruptcy Code, (c) credit for money borrowed secured by a lien on property of the estate that is not otherwise subject to a lien, or (d) credit for money borrowed secured by a junior lien on property of the estate which is subject to a lien. The Debtors are unable to obtain credit for borrowed money without granting the DIP Liens and the DIP Superpriority Claim (as defined below) to (or for the benefit of) the DIP Secured Parties.

     iii.     **Use of Cash Collateral and Proceeds of the DIP Extensions of Credit, DIP Collateral and Prepetition Collateral**.  The Debtors represent and stipulate that all of the Debtors' cash (including proceeds of the DIP Extensions of Credit), cash equivalents, negotiable instruments, investment property, and securities constitute Cash Collateral of the Prepetition Agent on behalf of the Prepetition Lenders.  All Cash Collateral, all proceeds of the Prepetition Collateral and the DIP Collateral (as defined below), including proceeds realized from a sale or disposition thereof, or from payment thereon, and all proceeds of the DIP Extensions of Credit (net of any amounts used to pay fees, costs and expenses payable under this Order) shall be used and/or applied in accordance with the terms and conditions of this Order, the DIP Budget (subject to the Permitted Variances) and the DIP Loan Documents for the types of expenditures in the DIP Budget and for no other purpose.

     iv.     **Adequate Protection for the Prepetition Secured Parties**.  The Prepetition Secured Parties have negotiated and acted in good faith regarding the Debtors' use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and continued operation of their businesses, in accordance with the terms hereof.  The Prepetition Secured Parties have agreed to permit the Debtors to use the Prepetition Collateral, including the Cash Collateral, in accordance with the terms hereof and the DIP Budget (subject to the Permitted Variances) and subject to the terms and conditions set forth herein, including the protections afforded parties acting in "good faith" under section 363(m) of the Bankruptcy Code.  The Prepetition Secured Parties are entitled to the adequate protection as and to the extent set forth herein pursuant to sections 361, 362 and 363 of the Bankruptcy Code.

Based on the Motion and on the record presented to the Court at the hearing on the Motion, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including the Cash Collateral) are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the Prepetition Agent's consent thereto; provided that nothing in this Order or the DIP Loan Documents shall (x) be construed as a consent by any Prepetition Secured Party that it would be adequately protected in the event debtor-in-possession financing is provided by a third party (i.e., other than the DIP Lender) or a consent to the terms of any other such financing, including the consent to any lien encumbering the Prepetition Collateral (whether senior or junior) or to the use of Cash Collateral (except under the terms hereof), or (y) prejudice, limit or otherwise impair the rights of the Prepetition Agent (for the benefit of the Prepetition Secured Parties) to seek new, different or additional adequate protection under any circumstances.

v. **Section 552**. In light of, as applicable, the subordination of the Prepetition Liens and the Adequate Protection Lien of the Prepetition Secured Parties to the DIP Liens and the Carve-Out, and the granting of the DIP Liens on the Prepetition Collateral, and as provided for in the Final Cash Collateral Order, the Prepetition Secured Parties are each entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, and the "equities of the case" exception shall not apply.

vi. **Extension of Financing**. The DIP Secured Parties have indicated a willingness to provide financing to the Debtors in accordance with the DIP Credit Agreement and the other DIP Loan Documents (including the DIP Budget) and subject to (i) the entry of this

Order, (ii) approval of the Milestones, and (iii) findings by this Court that such financing is essential to the Debtors' estates, that the DIP Secured Parties are good faith financiers, and that the reversal or modification on appeal of the authorization hereunder for the Debtors to incur the debt under the DIP Facility, or the grant hereunder of the priority of the DIP Liens and the Adequate Protection Lien, does not affect the validity of such debt, or any priority of any such lien so granted as provided in section 364(e) of the Bankruptcy Code.

        vii.        **Business Judgment and Good Faith Pursuant to Section 364(e)**.

        a.        The terms and conditions of the DIP Facility, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment, and are supported by reasonably equivalent value and consideration;

        b.        the DIP Facility was negotiated in good faith and at arm's length among the Debtors and the DIP Secured Parties;

        c.        the use of the proceeds to be extended under the DIP Facility will be so extended in good faith and for valid business purposes and uses, as a consequence of which the DIP Secured Parties are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code; and

        d.        the Prepetition Secured Parties and the DIP Secured Parties have acted in good faith, and the Debtors are not aware of any negligence, misconduct or violation of public policy or law, in respect of all actions taken by the Prepetition Secured Parties and the DIP Secured Parties in connection with or related in any way to negotiating, implementing,

documenting or obtaining requisite approvals of the DIP Facility and the use of Cash Collateral, including in respect of the granting of the DIP Liens (as defined below) and Adequate Protection Lien, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to and all transactions contemplated by the foregoing.

        viii.    **Relief Essential; Best Interest**.  The relief requested in the Motion (and provided in this Order) is necessary, essential and appropriate for the continued operation of the Debtors' businesses and the management and preservation of the Debtors' assets and property.  It is in the best interest of the Debtors' estates that the Debtors be allowed to enter into the DIP Facility, incur the DIP Obligations and use the Cash Collateral as contemplated herein.

        **NOW, THEREFORE,** on the Motion of the Debtors and the record before this Court with respect to the Motion, including the record made during the hearing on the Motion, and with the consent of the Debtors, the Prepetition Secured Parties, and the DIP Secured Parties, and good and sufficient cause appearing therefor,

        **IT IS ORDERED** that:

1.    **Disposition**.  The Motion is granted on the terms set forth herein.  Any objections to the relief sought in the Motion, and any reservations of rights with respect to such relief, that have not been previously resolved or withdrawn are overruled on the merits.  This Order shall be valid, binding, and enforceable on all parties in interest and fully effective immediately upon entry. The Final Cash Collateral Order is superseded and replaced in its entirety by this Order except as otherwise set forth herein.

2.      **Effect of Stipulations.**  As set forth above in paragraph C, the Challenge Period

(as defined in the Final Cash Collateral Order) has expired with respect to all persons and

entities, without a challenge being brought by any such person or entity, or a final resolution of a

challenge brought in compliance with the provisions of the Final Cash Collateral Order and

applicable law within the Challenge Period.  Accordingly, all of the Stipulations, except as

modified by the Settlement Order, are irrevocably binding on all persons and entities, including

the Debtors, all of the Debtors' affiliates, and any of the Debtors' successors, including, without

limitation, any chapter 7 or chapter 11 trustee, responsible person, examiner with expanded

powers, or other estate representative, and each other party-in-interest in these Cases and all of

its successors-in-interest and assigns.

3.      **DIP Facility**.

a.      **DIP Obligations, etc**.    The Debtors are expressly and immediately

authorized and empowered to enter into the DIP Facility and to incur and to perform the DIP

Obligations in accordance with and subject to this Order and the DIP Loan Documents, to

execute and/or deliver all DIP Loan Documents and all other related instruments, certificates,

agreements and documents, and to take all actions which may be reasonably required or

otherwise necessary for the performance by the Debtors under the DIP Facility, including the

creation and perfection of the DIP Liens described and provided for herein.  The Debtors are

hereby authorized and directed to pay all principal, interest, fees, costs, and expenses,

indemnities and other amounts described herein and in the DIP Loan Documents as such shall

accrue and become due hereunder or thereunder, including, without limitation, the reasonable

and documented fees and expenses of the attorneys and financial and other advisors and consultants of the DIP Agent and the DIP Lender as, and to the extent, provided for herein and in the DIP Loan Documents (collectively, all loans, advances, extensions of credit, financial accommodations, fees, expenses and other liabilities and obligations (including indemnities and similar obligations) in respect of DIP Extensions of Credit, the DIP Facility and the DIP Loan Documents, the "DIP Obligations"); provided that payment of any invoices of the DIP Agent's and the DIP Lender' professionals for fees and expenses that the DIP Agent or the DIP Lenders seek to have paid after entry of this Order shall be subject to the notice and objection provisions of paragraph 5(d) of this Order. The DIP Loan Documents and all DIP Obligations shall represent, constitute and evidence, as the case may be, valid and binding obligations of the Debtors, enforceable against the Debtors, their estates and any successors thereto in accordance with their terms. No obligation, payment, transfer or grant of security under the DIP Loan Documents as approved under this Order shall be voided, voidable or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim. The term of the DIP Facility shall commence on the date of entry of this Order and end on the Termination Date, subject to the terms and conditions set forth herein and in the DIP Loan Documents. The term "Termination Date" shall mean the earlier to occur of (i) 12:00 noon (New York time) on December 30, 2019 or (ii) the date of acceleration of the loans or termination of the Commitment by the DIP Agent following an Event of Default in accordance with the DIP Loan Documents.

b.    **Authorization to Borrow, etc**.   In order to continue to operate its business, subject to the terms and conditions of this Order and the DIP Loan Documents (including the DIP Budget), the DIP Borrower is hereby authorized to borrow under, and the DIP Guarantors are authorized to guarantee, the DIP Facility; provided that the DIP Borrower may only borrow, at any given time, an amount up to the lesser of (i) the unused Commitment under the DIP Facility at such time and (ii) $15,000,000 less the Debtors' Available Cash (as defined in the DIP Credit Agreement).

c.    **Conditions Precedent**.  The DIP Lender shall have no obligation to make any DIP Extension of Credit or any other financial accommodation hereunder or under the DIP Loan Documents (and the Debtors shall not make any request therefor) unless all conditions precedent to making DIP Extensions of Credit under the DIP Loan Documents have been satisfied or waived in accordance with the terms of the DIP Loan Documents.

d.    **DIP Collateral**.  As used herein, "DIP Collateral" shall mean all now owned or hereafter acquired assets and property in which the Debtors and their respective estates have an interest, whether real or personal, tangible or intangible, or otherwise, whenever acquired, including, without limitation, the DIP Borrower's portfolio of life settlement policies, the DIP Guarantors' respective equity interests in the DIP Borrower, all Prepetition Collateral, all assets and property pledged under the DIP Loan Documents, all cash, any investment of such cash, inventory, accounts receivable, including intercompany accounts (and all rights associated therewith), other rights to payment whether arising before or after the Petition Date, contracts, contract rights, chattel paper, goods, investment property, inventory, deposit accounts (including

the Professional Fees Account (as defined below)), "core concentration accounts," "cash collateral accounts", and in each case all amounts on deposit therein from time to time, equity interests, securities accounts, securities entitlements, securities, commercial tort claims, books, records, plants, equipment, general intangibles, documents, instruments, interests in leases and leaseholds, interests in real property, fixtures, payment intangibles, tax or other refunds, insurance proceeds, letters of credit, letter of credit rights, supporting obligations, machinery and equipment, patents, copyrights, trademarks, tradenames, other intellectual property, all licenses therefor, all causes of action, and all proceeds, rents, profits, products and substitutions, if any, of any of the foregoing.

     e.  **DIP Liens**.  Subject and subordinate to the Carve-Out, as set forth more fully in this Order, the DIP Agent for the ratable benefit of the DIP Secured Parties is hereby granted the following security interests and liens, which shall immediately be valid, binding, perfected, continuing, enforceable and non-avoidable (all liens and security interests granted to the DIP Agent for the benefit of the DIP Secured Parties pursuant to this Order and the DIP Loan Documents, the "DIP Liens"):

     i.   pursuant to section 364(c)(2) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable first priority liens on and security interests in all DIP Collateral that was not encumbered by valid, enforceable, perfected and non-avoidable liens as of the Petition Date, or which were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code;

ii.        pursuant to section 364(c)(3) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in (x) all DIP Collateral which is unencumbered by the Prepetition Liens but on which a third party, i.e., not the Prepetition Secured Parties (a "Third Party Lienholder"), had a pre-existing lien on the Petition Date and (y) all DIP Collateral encumbered by the Prepetition Liens on which a Third Party Lienholder had a pre-existing lien on the Petition Date that was senior to the Prepetition Liens, in each case immediately junior only to any such liens and security interests of Third Party Lienholders, but solely to the extent that such liens and security interests of Third Party Lienholders were in each case valid, enforceable, perfected and non-avoidable as of the Petition Date (or were perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code) (the "Senior Third Party Liens"); and

iii.        pursuant to section 364(d) of the Bankruptcy Code, valid, enforceable, perfected and non-avoidable liens on and security interests in all Prepetition Collateral, which liens and security interests shall be senior to and prime the Prepetition Liens and the liens of all Third Party Lienholders which are junior and subject to the Prepetition Liens.

f.        **Other Provisions Relating to the DIP Liens**.  The DIP Liens shall secure all of the DIP Obligations.  It shall be a material breach of the Debtors' obligations under the DIP Loan Documents if the DIP Liens are, without the consent of the DIP Agent, made subject to, or *pari passu* with, any other lien or security interest, other than to the extent expressly provided herein and to the Carve-Out, by any Court order heretofore or hereafter entered in the Cases.  The DIP Liens shall be valid and enforceable against any trustee appointed in the Cases,

upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (such cases or proceedings, "Successor Cases"), and/or upon the dismissal of any of the Cases. The DIP Liens and the Adequate Protection Lien shall not be subject to sections 510, 549, 550 or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code or section 506(c) of the Bankruptcy Code. If the granting of the DIP Liens against any of the DIP Collateral are in any way prohibited or restricted under any agreement or document, including the Debtors' organizational documents, any such agreement or document is hereby modified solely to permit the granting of the DIP Liens.

g.   **Superpriority Administrative Claim Status**. The DIP Obligations shall, pursuant to section 364(c)(1) of the Bankruptcy Code, at all times constitute an allowed superpriority claim (the "DIP Superpriority Claim") of the DIP Agent for the benefit of the DIP Secured Parties, and be payable from and have recourse to all DIP Collateral. The DIP Superpriority Claim shall have, to the fullest extent permitted under the Bankruptcy Code, priority over any and all administrative expenses, adequate protection claims, priority claims, unsecured claim, and other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, provided that such claims shall not have priority over claims of the type specified in sections 507(a)(1) of the Bankruptcy Code, and shall be subject and subordinate to the Carve-Out. Other than as expressly provided herein, including in paragraph 6 hereof with respect to the Carve-Out, no costs or expenses of administration,

including, without limitation, professional fees allowed and payable under sections 328, 330 and 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings or in any Successor Cases, except those arising under section 507(a)(1) of the Bankruptcy Code, and no priority claims are, or will be, senior to, prior to, or *pari passu* with the DIP Liens, the DIP Superpriority Claim, or any of the DIP Obligations, or with any other claims of the DIP Secured Parties arising hereunder or under any of the other DIP Loan Documents, or otherwise in connection with the DIP Facility.

h.  **Release**.  Subject to the Settlement Order, the Debtors forever and irrevocably release, discharge, and acquit all former, current and future (a) DIP Secured Parties, (b) Prepetition Secured Parties, (c) Affiliates of the DIP Secured Parties and Prepetition Secured Parties, and (d) officers, employees, directors, agents, representatives, owners, members, partners, financial and other advisors and consultants, legal advisors, shareholders, managers, consultants, accountants, attorneys, and predecessors and successors in interest of each of the DIP Secured Parties, the Prepetition Secured Parties and each of their respective Affiliates, in each case acting in such capacity (collectively, the "Releasees") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness and obligations, rights, assertions, allegations, actions, suits, controversies, proceedings, losses, damages, injuries, attorneys' fees, costs, expenses, or judgments of every type, whether known, unknown, asserted, unasserted, suspected, unsuspected, accrued, unaccrued, fixed, contingent, pending or threatened including, without limitation, all legal and equitable theories of recovery, arising under common law, statute or regulation or by contract, of every nature and description,

arising out of, in connection with, or relating to the DIP Facility, the DIP Loan Documents, the Prepetition Loan Documents and/or the transactions contemplated hereunder or thereunder including, without limitation, (x) any so-called "lender liability" or equitable subordination claims or defenses, (y) any and all claims and causes of action arising under the Bankruptcy Code, and (z) any and all claims and causes of action with respect to the validity, priority, perfection or avoidability of the liens or claims of any of the Prepetition Secured Parties and/or the DIP Secured Parties arising under the Prepetition Loan Documents or the DIP Loan Documents. The Debtors further waive and release any defense, right of counterclaim, right of setoff or deduction to the payment of the Prepetition Secured Obligations and the DIP Obligations which the Debtors now have or may claim to have against the Releasees arising out of, connected with, or relating to any and all acts, omissions or events occurring prior to the entry of this Order. Notwithstanding anything to the contrary in this paragraph, the Debtors do not release, discharge, or acquit the DIP Lenders from their obligations under the DIP Loan Documents, the Settlement Agreement, the Settlement Order, or this Order.

4.     **Authorization and Approval to Use Cash Collateral and Proceeds of DIP Facility.**

a.     Subject to the terms and conditions of this Order and the DIP Loan Documents, and to the adequate protection granted to or for the benefit of the Prepetition Secured Parties as hereinafter set forth, the Debtors are authorized to (a) use the Cash Collateral and (b) request and use proceeds of the DIP Extensions of Credit, in each case in the amounts and for the line item expenditures set forth in the DIP Budget (subject to the Permitted

Variances).  The DIP Budget may only be amended, supplemented, modified, restated, replaced, or extended in accordance with the DIP Loan Documents and the prior written consent of the DIP Agent without further order of the Court; provided that any such amended, supplemented, modified, restated, replaced, or extended DIP Budget shall, within three (3) Business Days, be filed with the Court and served on the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").  The budget provided for in the Final Cash Collateral Order shall be superseded and replaced by the DIP Budget, and the DIP Budget shall govern the Debtors' use of any Cash Collateral, whether constituting DIP Facility proceeds or otherwise. Notwithstanding anything herein to the contrary, subject only to the Carve-Out, the Debtors' right to request or use proceeds of DIP Extensions of Credit or to use Cash Collateral shall terminate on the Termination Date (the period from the entry of this Order until the Termination Date, the "DIP Budget Period"), subject to the terms and conditions set forth in the DIP Credit Agreement.  Nothing in this Order shall authorize the disposition of any assets of the Debtors or their estates or proceeds resulting therefrom outside the ordinary course of business, except as permitted herein (subject to any required Court approval).  Upon the expiration of the DIP Budget Period, the Debtors' authorization to use Cash Collateral (including proceeds of the DIP Extensions of Credit) shall automatically terminate.

      b.    **Disbursements Subject to DIP Budget**.  The Debtors are only authorized to use Cash Collateral (including proceeds of the DIP Extensions of Credit) during the DIP Budget Period in a manner consistent with the DIP Budget; provided that disbursements may occur later than the dates forecasted in the DIP Budget so long as such disbursements occur

during the DIP Budget Period.  Cash Collateral (including proceeds of the DIP Extensions of Credit) shall be only used for the purposes permitted under the DIP Budget, including (i) to provide working capital needs of the Debtors and general corporate purposes of the Debtors, (ii) to make the payments or fund amounts otherwise permitted in this Order and the DIP Budget, (iii) to fund amounts necessary to pay Statutory Fees (as defined below, which shall not be subject to the DIP Budget or to any other budget), and (iv) to fund amounts necessary to pay Professional Fees (as defined below) in accordance with the DIP Budget and paragraph 6 hereof, and for no other purpose.  Each of the Debtors shall not be permitted to transfer any Cash Collateral (including proceeds of the DIP Extensions of Credit), directly or indirectly, to any other Debtor or to any non-Debtor affiliate of the Debtors other than as (a) explicitly set forth in the DIP Budget and only in the amounts necessary to pay for such actual expenses or (b) consented to in writing beforehand by the DIP Agent and the Prepetition Agent. Notwithstanding the foregoing, disbursements by the Debtors for "Total Disbursements" on an aggregate basis during any four-week period of the DIP Budget Period may not exceed 15% from the amounts specified in the DIP Budget (taking into account any Professional Fees carried forward from prior weeks as contemplated below); provided that (i) disbursements under the "Overhead/Operating Costs" line item in the DIP Budget may not exceed the amounts specified in the DIP Budget during the DIP Budget Period (i.e., there shall not be any permitted variance for such line item, but disbursements may occur later than the dates forecasted in the DIP Budget), (ii) subject to the limitation in prong (i) above, disbursements listed in the "Overhead/Operating Costs Summary" page of the DIP Budget on a line item basis may not

exceed 10% from the amounts specified on such page of the DIP Budget during any four-week period of the DIP Budget Period, (iii) disbursements to any of the Debtors' Professionals (as defined below) may not exceed 5% from the amounts specified in the DIP Budget for such line items during any four-week period of the DIP Budget Period (with any budgeted but unspent Professional Fees in any week being carried forward to the following weeks for variance testing purposes) and (iv) the Debtors may not use surplus amounts from any line item in the DIP Budget to pay amounts for any other line item in the DIP Budget; provided, further, that the Debtors may only use Cash Collateral (including proceeds of the DIP Extensions of Credit) for the purposes set forth in the DIP Budget and the Carve-Out.

c.     Prior to the delivery of Carve-Out Trigger Notice (as defined below), in any given week, *if* the amounts set forth in the DIP Budget for Professional Fees for such week exceed the amount of Professional Fees allowed by Court order and payable under section 328, 330, and 331 of the Bankruptcy Code and any interim compensation procedures order that are actually paid in such week, *then* the amounts set forth in the DIP Budget for Professional Fees for such week in excess of such allowed and paid Professional Fees may be deposited by the Debtors in a deposit account of the Debtors to be used solely to pay future Professional Fees in accordance with this Order when allowed (the "Professional Fees Account"). Prior to the delivery of Carve-Out Trigger Notice, *if* the amount of Professional Fees allowed by Court order and payable under sections 328, 330, and 331 of the Bankruptcy Code and any interim compensation procedures order to be actually paid in such week exceeds the amounts set forth in the DIP Budget for Professional Fees for such week, *then* the amount of such allowed and

payable Professional Fees in excess of the amounts set forth in the DIP Budget for Professional Fees for such week shall be paid by the Debtors from the Professional Fees Account (to the extent available). Subject to the foregoing, the Prepetition Agent and the DIP Agent, for the benefit of the Prepetition Secured Parties and DIP Secured Parties, respectively, are hereby granted security interests in, and liens on, the Professional Fees Account.

5. **Adequate Protection for Prepetition Secured Parties**. Each of the Prepetition Secured Parties is entitled, pursuant to sections 361, 362(d) and 363(e) of the Bankruptcy Code, to adequate protection of its respective interests in the Debtors' property for an amount equal to the aggregate diminution in the value of such Prepetition Secured Party's interests in the Debtors' property (including Cash Collateral) (the "Diminution in Value") resulting from, or arising from, or which is attributable to, among other things, the use, sale or lease by the Debtors of the Cash Collateral (including proceeds of the DIP Extensions of Credit) and any other Prepetition Collateral and/or the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Prepetition Agent, for the benefit of the Prepetition Secured Parties, is hereby granted the following:

a. **Adequate Protection Lien**. The Adequate Protection Lien granted (and as defined) in the Final Cash Collateral Order (the "Adequate Protection Lien") shall remain in full force and effect, is hereby further granted, and shall continue to secure any Diminution in Value having occurred since the Petition Date (whether or not such Diminution in Value occurred before or after entry of this Order) subject to the limitations set forth in the Final Cash Collateral Order (including, for the avoidance of doubt, the subordination of the Adequate

Protection Lien to the Carve-Out). The Adequate Protection Lien shall be junior and subject to the DIP Liens, any Senior Third Party Liens, and the Carve-Out.

b. **Adequate Protection Claim**. The Adequate Protection Claim granted (and as defined) in the Final Cash Collateral Order (the "Adequate Protection Claim") shall remain in full force and effect, is hereby further granted, and shall continue to reflect any Diminution in Value having occurred since the Petition Date (whether or not such Diminution in Value occurred before or after entry of this Order) subject to the limitations set forth in the Final Cash Collateral Order (including, for the avoidance of doubt, the subordination of the Adequate Protection Claim to the Carve-Out); provided that the Prepetition Secured Parties shall not receive or retain any payments, property, distribution, or other amounts in respect of the Adequate Protection Claim unless and until the DIP Obligations and (without duplication) the DIP Superpriority Claim and the Carve-Out have been paid in full in cash.

c. As further adequate protection and up to the amounts set forth in the DIP Budget, the Debtors shall pay to the Prepetition Agent (on behalf of the Prepetition Secured Parties) in cash, when due, all accrued but unpaid interest on the Prepetition Obligations, and all fees and disbursements owing by the Debtors under the Prepetition Loan Agreement, at the rates provided for therein; provided that to the extent that any such interest, fees and disbursements exceed the amounts set forth in the DIP Budget, such interest, fees and disbursements shall continue to accrue subject to the terms of the Prepetition Loan Documents and the Settlement Order.

d.        As further adequate protection and up to the amounts set forth in the DIP Budget, the Debtors shall pay all reasonable and documented fees, costs, and expenses (excluding any success fees, completion fees, or bonus compensation) incurred by the Prepetition Secured Parties' respective legal, financial, and other advisors (including: (a) White & Case LLP, (b) Schulte Roth & Zabel LLP, (c) any Delaware counsel to the Prepetition Secured Parties; (d) any financial advisor and/or investment banker to the Prepetition Secured Parties; and (e) such other consultants or other professionals as may be retained by the Prepetition Secured Parties) (collectively, the "Secured Party Professionals") after the Petition Date in connection with the Cases (the "Secured Party Professional Fees"); provided that to the extent that any Secured Party Professional Fees exceed the amounts set forth in the DIP Budget, such Secured Party Professional Fees shall continue to accrue subject to the terms of the Prepetition Loan Documents and the Settlement Order.  The Prepetition Secured Parties and the Secured Party Professionals (x) shall not be required to comply with the U.S. Trustee fee guidelines or file any fee applications with the Court, and (y) shall provide copies of invoices for Secured Party Professionals to counsel to the Debtors, with a copy to the U.S. Trustee (collectively, the "Fee Notice Parties") for any fees and expenses incurred through the effective date of a confirmed chapter 11 plan.  The invoices to be provided to the Fee Notice Parties shall contain a general description of the nature of the matters worked on (other than any privileged, confidential or commercially or strategically sensitive information), a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours each professional billed and, with respect to the invoices of law firms, the year of law

school graduation for each attorney; provided that the U.S. Trustee reserves the right to seek to

obtain copies of invoices with detailed time entries and/or unredacted copies of such invoices

and the Prepetition Secured Parties and the Secured Party Professionals reserve the right to

contest, or otherwise respond to, any such request.  The provision of such invoices shall not

constitute a waiver of the attorney-client privilege or any benefits of the attorney work product

doctrine.  If no objection to payment of the requested Secured Party Professional Fees are made,

in writing, by any of the Fee Notice Parties within ten (10) calendar days after delivery of such

invoices (the "Fee Objection Period"), then, without further order of, or application to, the Court

or notice to any other party, such Secured Party Professional Fees shall be promptly paid by the

Debtors up to the amounts set forth in the DIP Budget (but, in any event, by no later than four (4)

Business Days after the expiration of the Fee Objection Period).  If an objection (solely as to

reasonableness) is made by any of the Fee Notice Parties within the Fee Objection Period to

payment of the requested fees and expenses, then only the disputed portion of such fees and

expenses shall not be paid until the objection is resolved by the applicable parties in good faith or

by order of the Court.  Nothing in this Order shall be construed to limit the Prepetition Secured

Parties' respective rights and remedies under the Prepetition Loan Documents or applicable law

regarding engagement and reimbursement of expenses of professionals and advisors.

      e.     As further adequate protection, the Debtors shall (i) provide the

Prepetition Agent with copies of all reports, information and other materials that are required to

be provided under the Prepetition Loan Agreement at the times set forth in the Prepetition Loan

Agreement, (ii) provide the Prepetition Agent, on the Friday of each calendar week, a variance

report comparing, on a line item basis, actual results for the previous individual week, the previous four-week period, and cumulative weeks to the amounts set forth in the DIP Budget for such previous week and since the Petition Date, including a narrative explanation with reasonable detail for each material variance, (iii) continue to coordinate with MLF LexServ, L.P. ("LexServ") to (A) obtain, as soon as is reasonably practicable, updated life expectancy reports from ITM TwentyFirst LLC for each insured life which has been previously underwritten by ITM TwentyFirst LLC, using the new underwriting methodology and mortality tables announced and adopted by ITM TwentyFirst LLC during October 2018 and (B) provide such reports to the Debtors and the Prepetition Agent within one (1) Business Day after receipt, and (iv) continue to coordinate with LexServ to (A) obtain as soon as is reasonably practicable, updated life expectancy reports from AVS Underwriting, LLC for each insured life which has been previously underwritten by AVS Underwriting, LLC, using the new underwriting methodology and mortality tables announced and adopted by AVS Underwriting, LLC during October and November 2018, and (B) to provide to the Debtors and the Prepetition Agent a summary of such reports on the Friday of each week.

      6.     **Payment of Statutory Fees; Professionals; Carve-Out; Funding Thereof**.

      a.     **Payments of Professional Fees and Statutory Fees**. The Debtors shall be permitted to pay (x) statutory fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) and any chapter 7 trustee or chapter 11 trustee appointed in the Cases pursuant to section 326 of the Bankruptcy Code, together with the statutory rate of interest, and any fees payable to the Clerk of the Court, (collectively, "Statutory Fees") which shall not be subject to

any budget and (y) prior to the delivery of the Carve-Out Trigger Notice (as defined below) under this Order, professional fees and expenses incurred by attorneys, accountants and other professionals, including ordinary course professionals, retained by the Debtors under section 327 of the Bankruptcy Code (each, a "Professional" and together, the "Professionals," and the fees and expenses incurred by the Professionals, the "Professional Fees"), solely (i) to the extent allowed by Court order and payable under sections 328, 330 and 331 of the Bankruptcy Code and any interim compensation procedures order, (ii) in amounts not exceeding the amounts set forth in the DIP Budget for each such Professional's Professional Fees, and (iii) subject to paragraph 4.c hereof.

b.    **Carve-Out**. Payment of any amounts on account of the Prepetition Obligations, the Prepetition Liens, the Adequate Protection Lien, the Adequate Protection Claim, the DIP Obligations, the DIP Liens, and DIP Superiority Claim, and any other claims and liens granted by this Order, shall be subject and subordinate in all respects to the payment of the following (collectively, the "Carve-Out"): (i) Statutory Fees; (ii) the unpaid and outstanding reasonable fees and expenses actually incurred by Professionals on or after the Petition Date and prior to the date of delivery of a Carve-Out Trigger Notice (defined below), up to the amounts set forth for each Professional in the DIP Budget for such period, to the extent allowed by Court order and payable under sections 328, 330 and 331 of the Bankruptcy Code and any interim compensation procedures order; and (iii) the unpaid and outstanding reasonable fees and expenses actually incurred by the Professionals from or after the day following the delivery of a Carve-Out Trigger Notice, to the extent allowed by Court order and payable under sections 328,

330, and 331 of the Bankruptcy Code and any interim compensation procedures order, in an aggregate amount not to exceed $250,000 (the amounts set forth in this clause (iii) being the "Post Carve-Out Trigger Notice Cap"); provided further that the Post Carve-Out Trigger Notice Cap shall be reduced, dollar-for-dollar, by the amount of any prepetition retainers received by any Professional and not previously applied to fees and expenses of such Professional.  For purposes of the foregoing, "Carve-Out Trigger Notice" shall mean a written notice delivered by electronic mail (or other electronic means) by the DIP Agent to the Debtors and the U.S. Trustee of the occurrence and continuation of an Event of Default, stating that the Post Carve-Out Trigger Notice Cap has been invoked.

      c.    **Funding of Carve-Out**.  Upon delivery of a Carve-Out Trigger Notice, the Debtors shall deposit into the Professional Fees Account an aggregate amount equal to the sum of the Post Carve-Out Trigger Notice Cap.

      d.    The funds in the Professional Fees Account shall be used solely to pay Professional Fees as and when allowed by order of the Court in accordance with paragraph 6(a) hereof.  To the extent the Court does not approve any of the Professional Fees that were to be paid from funds held in the Professional Fees Account, or any amounts in the Professional Fees Account are ultimately not used for such purposes, such unused amounts shall be returned to the Debtors, subject to the rights, liens, and claims of the Prepetition Secured Parties and the DIP Secured Parties under the Prepetition Loan Documents and DIP Loan Documents, respectively, and this Order.

e.      The Prepetition Secured Parties and the DIP Secured Parties shall not be responsible for the direct payment or reimbursement of any Professional Fees, any Statutory Fees or the fees or expenses of any other party incurred in connection with these Cases or any successor case.  The appearance of any Professional Fees in the DIP Budget are for purposes of estimated accruals only.  Neither the appearance of any Professional Fees in the DIP Budget nor the deposit of any funds in the Professional Fees Account (x) shall be deemed an authorization for the Debtors to pay any Professional Fees absent a Court order authorizing such payment or (y) shall, in any way, be probative (or otherwise have any impact) with respect to the allowance of the payment of any such Professional Fees or any party's right to object to the payment of such Professional Fees.  This Order does not, and shall not be deemed to, itself authorize the payment of any Professional Fees.

7.      **DIP Lien and Adequate Protection Replacement Lien Perfection**.  This Order shall be sufficient and conclusive evidence of the validity, perfection and priority of the DIP Liens and the Adequate Protection Lien without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect the DIP Liens and the Adequate Protection Lien or to entitle the DIP Liens and the Adequate Protection Lien to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent and the Prepetition Agent may, in its sole discretion, file such financing statements, deeds of trust, mortgages, security agreements, notices of liens and other similar documents, and the Debtors shall cooperate with and assist in such process.  Each of the DIP Agent and the

Prepetition Agent is hereby granted a special power of attorney to act in the name, place, and stead of the applicable Debtors for the purposes of taking any such action and relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, deeds of trust, mortgages, security agreements, notices and other agreements or documents shall be deemed to have been filed or recorded at the time and on the date of the commencement of the Cases.  The Debtors shall execute and deliver to each of the DIP Agent and the Prepetition Agent all such financing statements, mortgages, security agreements, notices and other documents as the DIP Agent or Prepetition Agent may reasonably request to evidence, confirm, validate or perfect, or to insure the contemplated priority of the DIP Liens and the Adequate Protection Lien, respectively.  Each of the DIP Agent and the Prepetition Agent, in its sole discretion, may file a photocopy of this Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which the Debtors have real or personal property and, in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Order. To the extent that the Prepetition Agent is the secured party under any account control agreements, listed as loss payee under any of the Debtors' insurance policies or is the secured party under any Prepetition Loan Document, the DIP Agent is also hereby deemed to be the secured party under such account control agreements, loss payee under the Debtors' insurance policies and the secured party under each such Prepetition Loan Document, and shall have all rights and powers attendant to that position (including, without limitation, rights of enforcement) and shall act in that capacity and distribute any proceeds recovered or received in accordance

with the terms of this Order and the DIP Loan Documents.  The Prepetition Agent shall serve as

agent for the DIP Agent for purposes of perfecting the DIP Agent's security interests and liens

on all DIP Collateral that is of a type such that perfection of a security interest therein may be

accomplished only by possession or control by a secured party.

8.    **Credit Bid Rights**.  The DIP Agent and the Prepetition Agent (independently or

together) shall each have, subject to section 363(k) of the Bankruptcy Code, the right to credit

bid (x) up to the full amount of the DIP Obligations and the Prepetition Secured Obligations,

respectively, and (y) the DIP Superpriority Claim and the Adequate Protection Claim,

respectively, without the need for further Court order authorizing the same, subject in each case

to the terms of the Settlement Order.

9.    **Payment of Compensation**.  No professional fees shall be paid absent a Court

order allowing such payment, pursuant to a fee application on notice, or other procedure

permitted by any Court order allowing interim compensation or the payment of fees of ordinary

course professionals.  So long as no Event of Default exists that has not been waived in writing,

the Debtors shall be permitted to pay compensation and reimbursement of expenses allowed by

the Court and payable under sections 330 and 331 of the Bankruptcy Code or compensation

procedures approved by the Court and in form and substance reasonably acceptable to the

Debtors and the DIP Secured Parties, as the same may be due and payable, and the same shall

not reduce the Post Carve-Out Trigger Notice Cap.

10.    **Collateral Rights; Limitations in Respect of Subsequent Court Orders**.

Without limiting any other provisions of this Order, unless the DIP Agent and the Prepetition

Agent have provided their prior written consent or as otherwise permitted by the Settlement Agreement, it shall be a material breach of the Debtors' obligations under the DIP Loan Documents for there to be entered in these Cases, or in any Successor Case, any order which authorizes (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral and/or entitled to priority administrative status which is superior to or *pari passu* with those granted pursuant to this Order to or for the benefit of the DIP Secured Parties or the Prepetition Secured Parties, or (ii) the use of Cash Collateral (including proceeds of the DIP Extensions of Credit) for any purpose other than as set forth in this Order or in the DIP Budget.

11.    **Proceeds of Subsequent Financing**. Without limiting the provisions and protections of paragraph 10 hereof, if at any time prior to the indefeasible repayment and satisfaction in full in cash of all DIP Obligations and the termination of the DIP Secured Parties' obligations to make DIP Extensions of Credit, including subsequent to the confirmation of any chapter 11 plan (the "Plan") with respect to the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this Order or the DIP Loan Documents, then the first cash proceeds derived from such credit or debt and all Cash Collateral in the amount necessary to satisfy all DIP Obligations then outstanding shall immediately be turned over to the DIP Agent for the indefeasible repayment and satisfaction in full in cash of all DIP Obligations then outstanding.

12.     **Cash Management**.  The Debtors' cash management system shall at all times be maintained (i) in accordance with the terms of the *Final Order Authorizing (A) Continuance of Existing Cash Management System, (B) Intercompany Transactions, (C) Limited Waiver of Section 345(b) Deposit and Investment Requirements, and (D) Granting Related Relief* [Docket No. 114] and the DIP Loan Documents, and (ii) in a manner which in any event shall be reasonably satisfactory to the DIP Agent.  The DIP Agent shall be deemed to have "control" over all cash management accounts for all purposes of perfection under the Uniform Commercial Code.   Until the occurrence of the Termination Date, all amounts collected in the cash collection accounts may be used in accordance with this Order, the DIP Budget and the DIP Loan Documents; and after the occurrence and during the continuance of the Termination Date, subject only to the funding of the Carve-Out.

13.     **Disposition of DIP Collateral**.   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as permitted by the DIP Loan Documents, the Settlement Order, the Settlement Agreement, or as otherwise consented to in writing by the Prepetition Agent and the DIP Agent.

14.     **Survival of Certain Provisions**.  In the event of the entry of any order converting any of these Cases into a Successor Case, the DIP Liens, the DIP Superpriority Claim, the Adequate Protection Lien, the Adequate Protection Claim and the Carve-Out shall continue in these proceedings and in any Successor Case, and such DIP Liens, DIP Superpriority Claim, Adequate Protection Lien, Adequate Protection Claim and Carve-Out shall remain enforceable and maintain their respective priorities as provided by this Order.

15.     **Events of Default; Rights and Remedies Upon Event of Default.**  Upon a

determination by the Prepetition Secured Parties and/or the DIP Secured Parties that any of the

Events of Default set forth in section 6 of the DIP Credit Agreement (whether or not any DIP

Obligations remain outstanding and whether or not the Commitment or the DIP Facility has been

terminated), including, but not limited to, a failure by any of the Debtors to perform or observe

any provisions of this Order, has occurred, (i) the DIP Secured Parties may, in their sole and

absolute discretion, terminate the Commitment and/or cease funding under the DIP Facility

and/or (ii) the Prepetition Secured Parties and/or the DIP Secured Parties shall be granted, within

three (3) Business Days of delivery of a notice to the Debtors, the U.S. Trustee, and the DIP

Borrower of such Event of Default (which notice shall also serve as the Carve-Out Trigger

Notice), an expedited hearing for entry of an order of this Court determining that an Event of

Default has occurred (a "Breach Order"); provided that none of the Debtors (or any of the

Debtors' affiliates) may oppose such request for an expedited hearing of a Breach Order or the

commencement of the Sale Process (as defined in the Settlement Order) upon entry of the Breach

Order; provided, further, that the foregoing right of the Prepetition Secured Parties and/or the

DIP Secured Parties to seek entry of a Breach Order shall be without prejudice to (A) the ability

of the Prepetition Secured Parties and/or the DIP Secured Parties to request a temporary

restraining order pending a hearing on entry of a Breach Order or (B) any other rights or

remedies the Prepetition Secured Parties and/or the DIP Secured Parties may have, including the

right to seek relief from the automatic stay of section 362 under the Bankruptcy Code.  Upon the

entry of the Breach Order, the Sale Process (as defined in the Settlement Order) shall automatically commence in accordance with the Settlement Order.

16.   **Other Rights and Obligations**.

a.   **Expenses**.  To the fullest extent provided in the DIP Loan Documents, the Prepetition Loan Documents and this Order, the Debtors will pay all expenses incurred by the DIP Secured Parties and the Prepetition Secured Parties (including, without limitation, the reasonable and documented fees and disbursements of their counsel, any other local counsel that they shall retain and any internal or third-party appraisers, consultants, financial, restructuring or other advisors and auditors advising any such counsel) in connection with (i) the preparation, execution, delivery, funding and administration of the DIP Loan Documents, including, without limitation, all due diligence fees and expenses incurred or sustained in connection with the DIP Loan Documents, (ii) the administration of the Prepetition Loan Documents, (iii) the Cases or any Successor Case, or (iv) enforcement of any rights or remedies under the DIP Loan Documents or the Prepetition Loan Documents, in each case whether or not the transactions contemplated hereby are fully consummated.  The Prepetition Secured Parties and the DIP Secured Parties, and their advisors and professionals, shall comply with the notice and objection provisions of paragraph 5(d) of this Order in seeking payment of fees and expenses that the Prepetition Secured Parties and the DIP Secured Parties seek to have paid after entry of this Order.

b.   **No Waiver**.  The failure of the DIP Secured Parties or the Prepetition Secured Parties to seek relief or otherwise exercise their rights and remedies under this Order,

the DIP Loan Documents or the Prepetition Loan Documents or otherwise, as applicable, shall not constitute a waiver of any of the DIP Secured Parties' or Prepetition Secured Parties' rights hereunder, thereunder or otherwise. Notwithstanding anything herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights, claims, privileges, objections, defenses or remedies of the DIP Secured Parties or the Prepetition Secured Parties under the Bankruptcy Code or under non-bankruptcy law against any other person or entity in any court, including without limitation, the rights of the DIP Agent and the Prepetition Agent (i) to request conversion of any of the Cases to cases under chapter 7 of the Bankruptcy Code, dismissal of any of the Cases, or the appointment of a trustee in any of the Cases, or (ii) to propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Plan, or (iii) to exercise any of the rights, claims or privileges (whether legal, equitable or otherwise) on behalf of the DIP Secured Parties or the Prepetition Secured Parties.

c.    **No Marshaling/Application of Proceeds**.    Neither the DIP Secured Parties nor the Prepetition Secured Parties shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the Prepetition Collateral or DIP Collateral, as the case may be. The proceeds of any Prepetition Collateral or DIP Collateral shall be received and applied in accordance with this Order.

d.    **Section 552(b)**.    The DIP Secured Parties and the Prepetition Secured Parties shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code, including in respect of postpetition revenues and payment in connection with (and as proceeds of) any Prepetition Collateral or DIP Collateral, and the "equities of the case" exception

under section 552(b) of the Bankruptcy Code shall not apply to any of the DIP Secured Parties or the Prepetition Secured Parties with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral or the DIP Collateral.

       e.      **Section 506(c) Claims**.  As a further condition of the DIP Facility, any obligation of the DIP Secured Parties to make DIP Extensions of Credit, and the Debtors' authorization to use the Cash Collateral (including proceeds of the DIP Extensions of Credit), the Debtors (and any successors thereto or any representatives thereof, including any trustees appointed in the Cases or any Successor Case) shall be deemed to have waived any rights, benefits or causes of action under 506(c) of the Bankruptcy Code as they may relate to or be asserted against the DIP Secured Parties, the DIP Liens, the DIP Collateral, the Prepetition Secured Parties, the Adequate Protection Lien, the Prepetition Liens, or the Prepetition Collateral.  Save and except for the Carve-Out, nothing contained in this Order or in the DIP Loan Documents shall be deemed a consent by the Prepetition Secured Parties or the DIP Secured Parties to any charge, lien, assessment or claim against, or in respect of, the DIP Collateral or the Prepetition Collateral under 506(c) of the Bankruptcy Code or otherwise.

       f.      **Good Faith Under Sections 363(m) and 364(e) of the Bankruptcy Code; No Modification or Stay of this Order**.  Each of the Prepetition Secured Parties and DIP Secured Parties has acted in good faith for the purposes of section 363(m) of the Bankruptcy Code in connection with this Order and its reliance on this Order has been and is in good faith. Based on the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility as approved by this Order, the reversal

or modification on appeal of the authorization hereunder for the Debtors to obtain the DIP Facility, or the grant hereunder of the DIP Liens and the Adequate Protection Lien, shall not affect the validity of such debt incurred or the priority or liens granted.

g. **Modification of Automatic Stay**. The automatic stay under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Order, including, without limitation, to: (a) permit the Debtors to grant the DIP Liens and Adequate Protection Lien and incur the DIP Superpriority Claim and Adequate Protection Claim; (b) permit the Debtors to perform such acts as may be needed to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations under the terms of this Order; and (d) authorize the Debtors to pay, and the Prepetition Secured Parties and the DIP Secured Parties to retain and apply, any payments made in accordance with the terms of this Order.

h. **Preservation of Rights Under This Order and Survival of Order**. The provisions of this Order and any actions taken pursuant hereto shall survive, and shall not be modified, impaired or discharged by an entry of any order (i) confirming any Plan in any of the Cases, (ii) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code, (iii) to the extent authorized by applicable law, dismissing any of the Cases, (iv) withdrawing of the reference of any of the Cases from this Court or (v) providing for abstention from handling or retaining of jurisdiction of any of the Cases in this Court. The terms and provisions of this Order, the DIP Loan Documents and the Prepetition Loan Documents, including the DIP Liens and DIP Superpriority Claim granted pursuant to this Order, the DIP Loan Documents and the

Prepetition Loan Documents and any priorities and protections granted to or for the benefit of the

DIP Secured Parties and Prepetition Secured Parties (including the Adequate Protection Lien and

the Adequate Protection Claim) hereunder and thereunder, shall continue in full force and effect

to the fullest extent provided by section 364(e) of the Bankruptcy Code.

    i.  **Binding Effect; Successors and Assigns**.  The provisions of this Order,

including all findings herein, shall be binding upon all parties interest in the Cases, including

without limitation, the DIP Secured Parties, the Prepetition Secured Parties, and the Debtors, and

their respective successors and assigns (including any chapter 7 or chapter 11 trustee or other

fiduciary hereinafter appointed or elected as a legal representative of the Debtors or with respect

to the property of the estates of the Debtors), and shall inure to the benefit of the DIP Secured

Parties, the Prepetition Secured Parties, and the Debtors, and their respective successors and

assigns, whether in the Cases, in any Successor Case, or upon dismissal of any such chapter 11

or chapter 7 case.

    j.  **No Third Party Rights**.  Except as explicitly provided for herein, this

Order does not create any rights for the benefit of any third party, creditor, equity holder or any

direct, indirect, third party or incidental beneficiary.

    k.  **Amendment**.  The Debtors and the DIP Agent (with prior written consent

of the requisite DIP Secured Parties as provided in and consistent with their respective rights

under the DIP Loan Documents) may amend, modify, or supplement or waive any provision of

the DIP Loan Documents without further notice to or approval of the Court; provided that any

modification or amendment that (x) increases the interest rate (other than as a result of the

imposition of the default rate), (y) increases the commitments of the DIP Lender to make DIP Extensions of Credit under the DIP Loan Documents, or (z) otherwise is materially adverse to the interests of the Debtors or their estates must, in each case, be set forth in writing, signed by, or on behalf of, the Debtors and the DIP Agent (after having obtained the approval of the requisite DIP Secured Parties as provided in the DIP Loan Documents) and approved by the Court after notice to parties in interest.

l.    **Effectiveness**.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution of effectiveness of this Order as provided in such Rules.

m.    **Priority of Terms**.  To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, or any other agreements, on the one hand, and (b) the terms and provisions of this Order, on the other hand, unless such term or provision herein is phrased in terms of "defined in" or "as set forth in" the DIP Credit Agreement, the terms and provisions of this Order prevail.

n.    **No Waivers or Modification of Order**.  The Debtors irrevocably waive any right to seek any modification or extension of this Order without the prior written consent of the DIP Agent and the Prepetition Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent or the Prepetition Agent.  The Debtors may not seek to modify or to alter relative lien priority of the DIP Liens, the Prepetition Liens and the Adequate Protection Lien set forth in this Order.

o.    **Retention of Jurisdiction**.  The Court has and will retain jurisdiction to enforce this Order according to its terms.

SO ORDERED by the Court on June 5, 2019.

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE