# EXHIBIT A

**Proposed Sale Order**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[6]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12808 (KG)<br><br>Jointly Administered |

**ORDER (A) AUTHORIZING THE SALE OF THE
MAJORITY EQUITY INTERESTS IN DEBTORS WHITE EAGLE ASSET
PORTFOLIO, LP AND WHITE EAGLE GENERAL PARTNER, LLC FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B)
AUTHORIZING ASSUMPTION AND PAYMENT OF LIABILITIES OF
WHITE EAGLE ASSET PORTFOLIO, LP AND WHITE EAGLE GENERAL
PARTNER, LLC BY DEBTOR LAMINGTON ROAD DESIGNATED ACTIVITY
COMPANY; (C) APPROVING BID PROTECTIONS IN FAVOR OF THE PURCHASER
SUPPORT PARTIES, (D) GRANTING THE BUYER AND THE PURCHASER
SUPPORT PARTIES THE PROTECTIONS AFFORDED TO A GOOD FAITH
PURCHASER, AND (E) GRANTING RELATED RELIEF**

Upon the motion [Docket No. ___] (the "Motion") of the above-captioned debtors (collectively, the "Debtors") for entry of an order (this "Order"): (i) approving the sale (the "Sale") of the majority interests (representing 72.5% of the equity) in Debtors White Eagle Asset Portfolio, LP ("White Eagle") and White Eagle General Partner, LLC ("WEGP") (as such interests may be further defined in the Purchase Agreement (as defined below) collectively, the "Acquired Interests") to one or more entities or acquisition vehicles (collectively, the "Buyer") to be funded by Jade Mountain Partners and other co-investors (together, the "Purchaser Support Parties"), free and clear of all liens, claims, encumbrances, and other interests, pursuant to the terms of a Commitment Letter filed with the Court at Docket No. ___ (including the Term Sheet

---

[6] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include: White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738). The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.

1

attached thereto, the "Commitment Letter"), which is subject to definitive documentation (the "Definitive Documentation") including, but not limited to, a purchase agreement (as amended, restated, supplemented, or otherwise modified, the "Purchase Agreement"), (ii) authorizing assumption and payment of liabilities of White Eagle and WEGP by Debtor Lamington Road Designated Activity Company ("LRDAC") (iii) approving bid protections in favor of the Purchaser Support Parties, (iv) granting the Buyer and the Purchaser Support Parties the protections afforded to a good faith purchaser pursuant to section 363(m) and (n) of the Bankruptcy Code, and (v) granting certain related relief; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties-in-interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion and opportunity for objections or requests for hearing having been provided; and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing conducted before this Court (the "Sale Hearing"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**

A.  This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334(a). Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.  This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 1291. Notwithstanding Bankruptcy Rule 6004(h), this Court expressly finds that there

is no just reason for the delay in the implementation of this Order and expressly directs the entry of judgment as set forth herein.

C. The statutory predicates for the relief requested in the Motion are sections 105(a) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

D. Adequate, sufficient and appropriate notice of the Motion and the Sale and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all known interested persons and entities, and no other or further notice of the Sale is or shall be required.

E. The Debtors have articulated good and sufficient reasons for this Court to grant the relief requested in the Motion, including approval of the Bid Protections. The Purchaser Support Parties are unwilling to proceed with the Sale absent the Bid Protections, which are reasonable and appropriate under the circumstances given the substantial time and resources that the Purchaser Support Parties have devoted (and will continue to devote) to the Sale.

F. The disclosures made by the Debtors concerning the Sale were good, complete and adequate. The Sale represents the highest and best proposal for the purchase of the Acquired Interests or White Eagle's assets available to these estates under present circumstances. The consideration offered is fair and reasonably equivalent value for the Acquired Interests.

G. Each of the Purchaser Support Parties and the Buyer, prior to the Closing Date, is not an "insider" or otherwise an "affiliate" of any of the Debtors, as those terms are defined in section 101(31) of the Bankruptcy Code. The Buyer and each Purchaser Support Party is purchasing the Acquired Interests in good faith, for fair consideration and reasonably equivalent value, and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code,

and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

H.  In the absence of a stay pending appeal, the Buyer and each Purchaser Support Party will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Commitment Letter at any time on or after entry of this Order.

I.  The insured under each life insurance policy agreed with White Eagle and/or White Eagle's servicer to the ongoing release of medical records by his or her medical providers. The value of the assets owned by White Eagle is in part, dependent upon the health and life expectancy of the insureds. Therefore, in order for the Buyer to adequately assess and realize the value of the Acquired Interests, the Buyer's servicer may seek to obtain and review medical information from the health care providers of the insureds.

J.  Approval of the Motion and the consummation of the transactions contemplated thereby (including the assumption of the White Eagle Liabilities by LRDAC) are in the best interests of the Debtors, their creditors, their estates and other parties-in-interest. LRDAC will receive fair consideration from the purchase price paid for the Acquired Interests in exchange for its assumption of the White Eagle Liabilities

K.  The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale.

L.  A reasonable opportunity to object or be heard with respect to the Sale and the Bid Protections has been afforded all interested persons and entities.

M.  The Debtors are the sole and lawful owners of the assets to be transferred pursuant to the Commitment Letter and the Definitive Documentation and: (a) have full power

and authority to execute the Definitive Documentation; (b) have all of the power and authority necessary to consummate the Sale, and (c) upon entry of this Order, need no consent or approval from any other person or entity to transfer the Acquired Interests, or to otherwise consummate the Sale in accordance with the Commitment Letter and the Definitive Documentation.

N. In order for the Buyer to acquire White Eagle, LRDAC will assume any and all White Eagle Liabilities on the Closing Date and White Eagle and WEGP shall thereafter be released from the White Eagle Liabilities and the Consummation Date (as defined in the Plan) shall be deemed to have occurred with regards to White Eagle and WEGP on the Closing Date.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The relief request in the Motion is granted and approved, and the Sale contemplated thereby and by the Commitment Letter and the Definitive Documentation is approved as set forth in this Order.

2. All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to this Court or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

3. The Commitment Letter, including the Bid Protections and the Definitive Documentation contemplated thereby and all of the terms and conditions thereof, are hereby approved.

4. The Bid Protections in favor of the Purchaser Support Parties are approved and the Purchaser Support Parties are hereby entitled to a superpriority administrative expense claim status, senior to all other administrative claims and subject only to the superpriority administrative expense claims of the Debtors' debtor-in-possession financing facility and

5

adequate protection superpriority administrative expense claims in favor of the Lender Parties. The Debtors shall satisfy the Bid Protections subject to the terms of the Commitment Letter and the Definitive Documentation, as applicable. In the event that the Debtors proceed with an alternative transaction to the Commitment Letter or Definitive Documentation with the Purchaser Support Parties, the Debtors are hereby authorized and required to pay the Bid Protections and any such alternative transaction will be subject to satisfaction of the Bid Protections and the Purchaser Support Parties' claim shall attach to the proceeds of such sale.

5. Pursuant to section 363(b) of the Bankruptcy Code, subject to payment of the Debtors' obligations to the Lender Parties in full, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Acquired Interests to the Buyer pursuant to and in accordance with the terms of the Commitment Letter and the Definitive Documentation, (b) close the Sale as contemplated by the Commitment Letter, the Definitive Documentation and this Order, (c) have LDRAC assume the White Eagle Liabilities and release White Eagle and WEGP from the White Eagle Liabilities, and (d) execute and deliver, perform under, consummate, implement and close fully the Commitment Letter, together with the Purchase Agreement and all additional Definitive Documentation, instruments and documents that may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Commitment Letter, the Purchase Agreement, and such other Definitive Documentation and ancillary documents.

6. This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor (including Emergent), all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of encumbrances against or on all or any portion of the Acquired Interests or assets of White Eagle, WEGP, the Buyer, the

Purchaser Support Parties, and all successors and assigns of the Buyer and the Purchaser Support Parties, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases. This Order, the Commitment Letter, and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors and the Buyer, the Purchaser Support Parties, and their respective successors and assigns.

7. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, subject to payment of the Debtors' obligations to the Lender Parties in full, the Debtors are authorized to transfer the Acquired Interests to the Buyer on the Closing Date. Subject to payment of the Debtors' obligations to the Lender Parties in full, such Acquired Interests shall be transferred to the Buyer subject to and in accordance with the Commitment Letter, the Purchase Agreement and all other Definitive Documentation upon and as of the Closing Date, and such transfer shall constitute a legal, valid, binding and effective transfer of the Acquired Interests which transfer vests or will vest in Buyer, with all right, title and interest of the Debtors to the Acquired Interests, and, upon payment of the Debtors' obligations to the Lender Parties in full, shall be free and clear of all liens, claims, encumbrances, and other interests to the maximum extent provided by section 363(f) of the Bankruptcy Code.

8. Except as expressly permitted or otherwise specifically provided in the Commitment Letter, the Purchase Agreement, the Definitive Documentation or this Order, subject to payment of the Debtors' obligations to the Lender Parties in full, all persons or entities holding liens, claims, encumbrances, or other interests in all or any portion of the Acquired Interests or any assets owned by White Eagle or WEGP, arising under or out of, in connection with, or in any way relating to the Debtors, White Eagle's assets, WEGP's assets, the White

Eagle Liabilities, the Acquired Interests, the operation of the Debtors' business prior to the Closing Date or the transfer of the Acquired Interests to the Buyer, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyer or any Purchaser Support Party or their successors or assigns, their property such persons' or entities' liens, claims, encumbrances, or other interests in and to the Acquired Interests or the assets of White Eagle or WEGP.  Upon consummation of the transactions set forth in the Purchase Agreement and the Definitive Documentation and subject to payment of the Debtors' obligations to the Lender Parties in full, the Buyer and Debtors shall each be authorized to file termination statements or lien terminations in any required jurisdiction to remove any record, notice filing, or financing statement recorded to attach, perfect or otherwise notice any lien or encumbrance with respect to the Acquired Interests or White Eagle's or WEGP's assets that is extinguished or otherwise released pursuant to this Order under section 363 and the related provisions of the Bankruptcy Code and take all other actions as may be deemed necessary or appropriate to consummate the Sale pursuant to the terms of the Commitment Letter and the Definitive Documentation and execute and deliver, perform under, consummate, and implement the Sale.

9. Subject to payment of the Debtors' obligations to the Lender Parties in full, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Interests to the Buyer or for LRDAC to assume the White Eagle Liabilities in accordance with the terms of the Commitment Letter, the Purchase Agreement, and this Order. All persons currently in possession of any or all of the Acquired Interests are hereby directed to surrender possession of such Acquired Interests or assets of White Eagle or WEGP to the Buyer on the Closing Date.

10. Subject to payment of the Debtors' obligations to the Lender Parties in full, all persons and entities that are in possession of some or all of the Acquired Interests or any assets of White Eagle and WEGP on the Closing Date are directed to surrender possession of such Acquired Interests or assets of White Eagle and WEGP to the Buyer or its assignee or designee.

11. Subject to payment of the Debtors' obligations to the Lender Parties in full, the provisions of this Order authorizing the Sale of the Acquired Interests by the Debtors free and clear of liens, claims, encumbrances, and other interests and the assumption by LRDAC of the White Eagle Liabilities shall be self-executing, and none of the Debtors, the Buyer, or any other party shall be required to execute or file releases, termination statements, assignments, cancellations, consents or other instruments to effectuate, consummate, and/or implement the provisions hereof with respect to the Sale; *provided*, *however*, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under the Commitment Letter and the Definitive Documentation.

12. Subject to payment of the Debtors' obligations to the Lender Parties in full, this Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, foreign governments and all other persons or entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any Acquired Interest or asset of White Eagle or WEGP; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to

9

consummate the transactions contemplated by the Commitment Letter and the Definitive Documentation.

13. Subject to payment of the Debtors' obligations to the Lender Parties in full, any and all governmental recording offices, boards, bureaus, agencies and all other parties, persons or entities are authorized to accept this Order for recordation on or after the Closing Date as conclusive evidence of the free and clear, and unencumbered, transfer of all right, title, interest and ownership in and to the Acquired Interests conveyed by LRDAC to the Buyer on the Closing Date.

14. From and after the Closing Date, White Eagle and any subsequent owner of a life insurance policy shall continue to have all rights that White Eagle previously had under existing authorizations to obtain updated medical and personal information from time to time regarding each insured under each life insurance policy and any health care providers or insured contacts who receive a copy of such authorizations together with a copy of this Order and a written request by White Eagle or any subsequent owner of a life insurance policy shall be permitted to rely on this Order in releasing copies of medical records or contact information or physician information to White Eagle, Buyer or any subsequent owner of such life insurance policy to the extent permitted by such authorizations.

15. Except as otherwise expressly set forth in this Order, the Commitment Letter, or the Definitive Documentation, subject to payment of the Debtors' obligations to the Lender Parties in full, based on the record before this Court, the Buyer and each Purchaser Support Party: (i) does not, pursuant to the Definitive Documentation or otherwise, assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations of or assets of the Debtors

10

on or prior to the Closing Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity; and (iii) shall not have any successor or transferee liability of any kind or character.  All White Eagle Liabilities are expressly assumed by LRDAC as of the Closing Date and each of White Eagle and WEGP are hereby released from such White Eagle Liabilities.

16.	Subject to the terms of the Definitive Documentation and payment of the Debtors' obligations to the Lender Parties in full, the Acquired Interests purchased thereunder and all assets owned by White Eagle and WEGP shall be transferred to and vest in the Buyer (or remain in White Eagle or WEGP, as applicable) free and clear of all claims (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code).  The Acquired Interests and all assets of White Eagle and WEGP shall specifically be taken free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever, whether contingent, unliquidated, unmatured or otherwise, in respect of LRDAC or any property of LRDAC.

17.	Subject to the terms of the Definitive Documentation and payment of the Debtors' obligations to the Lender Parties in full, from and after the Closing Date, LRDAC shall assume all White Eagle Liabilities and White Eagle and WEGP shall thereafter each be deemed exculpated and released of any and all such White Eagle Liabilities.

18.	Neither Buyer nor any Purchaser Support Party nor or any of their respective affiliates, shall be deemed, as a result of any action taken in connection with the Sale, the consummation of the transactions contemplated by the Definitive Documentation, or the transfer or operation of the relevant purchased assets (a) to be a legal successor, or otherwise be deemed

a successor to the Debtors; (b) to have, de facto or otherwise, merged with or into the Debtors; (c) to be an alter ego or a continuation of the Debtors; or (d) to have any responsibility for any obligations based on any theory of successor or similar theories of liability.

19. Without limiting the generality of the foregoing, except as otherwise expressly provided in the Definitive Documentation or this Order, neither, Buyer nor any Purchaser Support Party nor, after the Closing Date, White Eagle nor WEGP, nor any of their respective affiliates, shall be liable for any claims against or in the Acquired Interests purchased under the Definitive Documentation or against the Debtors or any of their predecessors or affiliates or the White Eagle Liabilities, and the Buyer and each Purchaser Support Party and their respective affiliates shall not have successor, transferee, derivative, or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or their affiliates or any obligations of the Debtors or their affiliates arising prior to the Closing Date, including, but not limited to: (a) any foreign, federal, state, or local revenue, pension, ERISA (as defined below), tax (including, without limitation, taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the purchased assets prior to the Closing Date), labor, employment, antitrust, environmental, or other law, rule, or regulation (including without limitation filing requirements under any such laws, rules or regulations); (b) any products liability law, rule, regulation, or doctrine with respect to any Debtor's liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (c) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which any Debtor is a party; (d) any pension, welfare, compensation, or other benefit plans, agreements,

practices, and programs, including, without limitation, any pension plan of any Debtor; (e) the cessation of any Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (i) the Employee Retirement Income Security Act of 1974 ("ERISA"), (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employment Act of 1967, (vii) the Americans with Disabilities Act of 1990, or (viii) Section 4980B of the Internal Revenue Code and Part 6 of Title I of ERISA; (f) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (g) any liabilities, debts, or obligations of or required to be paid by any Debtor for any taxes of any kind for any period prior to the Closing Date; (h) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of White Eagle, WEGP, White Eagle's assets, WEGP's assets, or the Acquired Interests purchased under the Definitive Documentation prior to the Closing Date; (i) any bulk sale law; and (j) any litigation.

20.  The transactions contemplated by the Commitment Letter and the Definitive Documentation are undertaken by the Buyer and each Purchaser Support Party without collusion as that term is defined in section 363(n) of the Bankruptcy Code, and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not

affect the validity of the Sale unless such authorization and consummation of the sale are duly stayed pending such appeal. The Buyer and each Purchaser Support Party is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

21. The Sale and transactions contemplated in the Commitment Letter and the Purchase Agreement may not be avoided, and no damages may be assessed against the Buyer, White Eagle, WEGP or any Purchaser Support Party under section 363(n) of the Bankruptcy Code.

22. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind (including any order dismissing the Debtors' bankruptcy cases) entered in (a) these chapter 11 cases, (b) any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c) any related preceding subsequent to the entry of this Order, shall conflict with or derogate from the provisions of the Commitment Letter, the Purchase Agreement, the Definitive Documentation, or this Order.

23. Pursuant to Bankruptcy Rules 6004(h) and 9014, this Order shall be effective immediately upon entry and the Debtors are authorized to close the Sale immediately upon entry of this Order or as otherwise provided in the Definitive Documentation.

24. No bulk sales law or any similar law of any state or jurisdiction applies in any way to the Sale.

25. The failure to specifically include any particular provision of the Commitment Letter or the Definitive Documentation in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Commitment Letter and the Definitive Documentation be authorized and approved in their entirety.

26. The Commitment Letter, the Purchase Agreement, the Definitive Documentation and any related agreements, documents or other instruments (other than this Order) may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any creditor constituent.

27. To the extent there are any inconsistencies between the terms of this Order and the Commitment, the terms of this Order shall govern. To the extent there are any inconsistencies between the terms of this Order and the Definitive Documentation, the terms of the Definitive Documentation shall govern.

28. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

29. This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms of this Order, the Commitment Letter, and the Definitive Documentation, all amendments thereto and any waivers and consents thereunder and each of the Definitive Documentation and other agreements executed in connection therewith to which any Debtor is a party or which had been assigned by any Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes relating in any way to the Sale.

Dated: _____, 2019

                                            Honorable Kevin Gross
                                            United States Bankruptcy Judge