**Exhibit 2**

July [12]18, 2019

To:   White Eagle Asset Portfolio, LP
      5355 Town Center Road, Suite 701
      Boca Raton, FL 33486

      White Eagle General Partner, LLC
      5355 Town Center Road, Suite 701
      Boca Raton, FL 33486

      Lamington Road Designated Company
      Grand Canal House
      2nd Floor Palmerston House
      Fenian Street
      Dublin, Ireland

      Emergent Capital, Inc.
      5355 Town Center Road, Suite 701
      Boca Raton, FL 33486

      Re:   Project Rodeo Commitment Letter

Ladies and Gentlemen,

Jade Mountain Partners ("JMP") is pleased to have the opportunity to present this binding and irrevocable commitment letter ("Commitment Letter"), subject solely to the execution of definitive documentation ("Definitive Documentation") more fully described herein and in the term sheet attached hereto as Exhibit A (the "Term Sheet") and the conditions set forth in Section 3 below, to White Eagle Asset Portfolio, LP (the "Target"), White Eagle General Partner, LLC (the "GP"), Lamington Road Designated Activity Company ("Lamington," together with Target and GP, the "Debtors") and Emergent Capital, Inc. (the "Parent," together with the Target, GP and Lamington, the "Seller Parties") for JMP and/or certain of its affiliates and/or certain investors in Target (together, the "Purchaser Support Parties") to acquire and thereafter own a 72.5% equity interest in the Target and, if agreed by the Purchaser Support Parties, a 72.5% equity interest in the GP. Capitalized terms used and not defined herein shall have the meanings assigned to such terms in the Term Sheet. Reference is hereby made to the Letter of Intent entered into by and among JMP and the Seller Parties dated May 23, 2019 (the "Letter of Intent"). Notwithstanding anything in this Commitment Letter to the contrary, as of the date of this Commitment Letter, Purchaser Support Parties have not yet determined whether the Purchaser Support Parties will purchase 72.5% of the membership interests of the GP. This Commitment Letter shall not create any obligation of the Purchaser Support Parties to purchase the GP Interests (as defined below). Moreover, it shall not be deemed a breach of this Commitment Letter by the Purchaser Support Parties if the Purchaser Support Parties elect not to purchase the GP Interests, and the Purchaser Support Parties shall still be entitled to the Commitment Letter Break Up Fee to the extent they otherwise are entitled to the Commitment Letter Break Up Fee in accordance with the terms of this Commitment Letter.

1. **Purchase and Sale**. JMP will cause the Purchaser Support Parties to acquire, and the Seller Parties agree that they will cause the Target and, if agreed by the Purchaser Support Parties, the GP to sell, in a transaction pursuant to section 363 of the Bankruptcy Code, a 72.5% equity interest in Target (collectively, the "LP Interests") and, if agreed by the Purchaser Support Parties, a 72.5% equity interest in GP (collectively, the "GP Interests" and together with the LP Interests and the Class D Interests, the "Interests"[1]), as described herein and in the Term Sheet, which as of the Closing Date will own all of the life insurance policies listed on Annex 1 to the Term Sheet together with all other assets, documents, information and proceeds related thereto (collectively, the "Assets"). The Interests and the Assets of the Target and, if applicable, the GP will be free and clear of all liens, encumbrances and other interests of third parties to the maximum extent possible provided by the Bankruptcy Code and other applicable law. The Assets of the Target on the Closing Date shall not include any policies sold, transferred or assigned prior to such date in accordance with the "Permitted Policy Disposition" section of the Term Sheet or in connection with the Lincoln Benefit settlement, as set forth in the Letter of Intent.

2. **Purchase Price and Debtors' Interests**.

    (a) The aggregate purchase price for the LP Interests and the GP Interests will be $384,250,000 (and the aggregate purchase price for the Class D Interests, to the extent such Class D Interests are requested by the Seller Parties in accordance with the Term Sheet, will be $15,250,000 (collectively, the "Purchase Price," as may be adjusted in accordance with this Commitment Letter and the Definitive Documentation, consistent with the Term Sheet). The portion of the Purchase Price allocated to each policy is indicated opposite each such policy on Schedule 1 hereto. Subject to the satisfaction and conditions set forth herein, the Purchase Price shall be due and payable in cash on or before August 6, 19, 2019 (the "Outside Date"); provided, that the Seller Parties, JMP or the Purchaser Support Parties may elect with written notice to the other parties hereto to extend the Outside Date to August 19, 2019, if the Approval Order is not yet a final, non-appealable order by August 6, 2019.

    (b) On the Closing Date, the Debtors or their permitted assignees will receive a 27.5% equity interest in the Target as described herein and in the Term Sheet (the "Class B Interests") and the Purchaser Support Parties or their permitted assignees will receive a 72.5% equity interest in the Target (the "Class A Interests") and, 100% of the Class D Interests (as defined in the Term Sheet) and, if applicable, the GP Interests, which will represent a 72.5% equity interest in the GP (the "GP Interests" and collectively with the Class A Interests, the "Interests"), as described herein and in the Term Sheet, in each case subject to the waterfall contemplated in the Term Sheet. The Target shall have an NAV on the Closing Date as set forth and adjusted in accordance with the Term Sheet.

    (c) If any policy matures or the Seller Parties enter into any transaction as permitted by the "Permitted Policy Disposition" section of the Term Sheet, the Purchase Price and the NAV of the Target on the Closing Date shall be adjusted in accordance with and as provided in the Term Sheet.

---

[1] To the extent that the Purchaser Support Parties elect not to purchase the GP Interests, the use of the term "Interests" hereunder shall be deemed a reference solely to the LP Interests.

3. **Conditions Precedent.** In addition to the conditions set forth in the Term Sheet, the obligations to pay the Purchase Price, purchase the Interests, enter into the Definitive Documentation and consummate the transaction are conditioned on the following:

(a) the Definitive Documentation shall include an order of the bankruptcy court satisfactory to Purchaser Support Parties approving the transaction (including, but not limited to, the assumption of all obligations and liabilities of the Target and, if applicable, the GP by Lamington and an exculpation and release of the Target and, if applicable, the GP from any and all such obligations and liabilities) and entry into the Definitive Documentation that is a final, non-appealable order and not subject to a stay (the "Approval Order");

(b) all representations and warranties contained in any of the Definitive Documentation shall be true and correct as provided therein;

(c) each of the Definitive Documentation shall be effective in accordance with its terms;

(d) the Seller Parties shall satisfy all due diligence requests of the Purchaser Support Parties relating to each Seller Party and its operations, finances, obligations, liabilities, assets (other than all life insurance policies owned by the Target, as to which the due diligence of the Purchaser Support Parties is complete), and legal risks, and such due diligence shall be satisfactory to each Purchaser Support Party in their respective sole discretion;

(e) each creditor or potential creditor of the Target and, if applicable, the GP shall have received adequate notice of the Debtors' motion seeking entry of the Approval Order as required by the Bankruptcy Code and, to the extent requested by JMP, each creditor or potential creditor of the Target and, if applicable, the GP shall have expressly consented in writing to the assumption by Lamington of the Target's and GP's obligations and liabilities; and

(f) JMP and the Purchaser Support Parties shall receive evidence satisfactory to the Purchaser Support Parties in their respective ~~commercially reasonable~~sole discretion from the Seller Parties that Lamington shall have paid, or shall have sufficient funds to pay, all administrative expense claims, general unsecured claims and all other amounts due to creditors of Lamington, Target and the GP under ~~its~~their plan of reorganization.

4. **Definitive ~~Agreement~~Documentation.** The proposed transaction is contingent solely upon receipt of the Approval Order, the conditions set forth in Section 3 above and the negotiation and execution of mutually satisfactory Definitive Documentation which shall include, but not be limited to:

(a) a purchase agreement for the Class A Interests and the Class D Interests in the Target and, if agreed by the Purchaser Support Parties, the GP Interests in the GP;

(b) an amendment and restatement of the Target's limited partnership agreement to create the Class A Interests ~~and~~, the Class B Interests and the Class D Interests, provide for the waterfall described in the Term Sheet and implement other amendments consistent with the governance and other terms set forth in the Term Sheet and, if applicable, an amendment and restatement of the GP's limited liability company agreement;

3

(c) a pledge by the holders of the Class B Interests of the Class B Interests to support the Class D Return, the indemnity obligations described in the Term Sheet and under the PSP Advance Facility contemplated by the Term Sheet, and other documentation to support the Class D Return, the indemnity obligations of Lamington, Emergent and the holders of the Class B Interests;

(d) assumption by Lamington of all obligations and liabilities of ~~White Eagle~~the Target and, if applicable, the GP as provided in the Term Sheet;

(e) the Approval Order;

(f) each party shall have completed any other party's reasonable requests for "know your customer" or other compliance requirements to the reasonable satisfaction of the requesting party;

(g) written consent in form satisfactory to the Purchaser Support Parties in their respective ~~commercially reasonable~~sole discretion of Lamington's assumption of the Target's and, if applicable, the GP's obligations and liabilities from each of the Target's and the GP's creditors and potential creditors, to the extent requested by JMP in its commercially reasonable discretion; and

(h) such other documents as may be reasonably requested by the Purchaser Support Parties in connection with the transactions described herein, the Letter of Intent and/or in the Term Sheet.

JMP and the Seller Parties agree that, until the termination of this Commitment Letter in accordance with its terms, they shall negotiate the Definitive Documentation in good faith and use commercially reasonable efforts to take all other actions required (including, but not limited to, obtaining the Approval Order and entering into the Definitive Documentation) to consummate the transactions described herein, the Letter of Intent and in the Term Sheet. The parties acknowledge that the Definitive Documentation will contain customary terms for transactions of this type, including, without limitation, representations and warranties with respect to each of the life insurance policies owned by the Target, capitalization of the Target, ownership and title to the equity interests thereof, the Assets of the Target and the transaction, covenants and indemnities in favor of the Purchaser Support Parties as described in the Term Sheet.

5. **Bankruptcy Court Approval**. Promptly upon (and in any event no later than one week following) receipt of this letter executed by JMP, the Debtors shall file all necessary motions (including, without limitation, motions for shortened notice) and seek entry of all necessary orders to approve entry into this Commitment Letter, granting of the Bid Protections described below (including, but not limited to, superpriority administrative expense claim status, subject only to any debtor-in-possession financing and adequate protection superpriority administrative expense claims), and entry into the Definitive Documentation, which motions shall all be in manner, form and substance reasonably acceptable to the Debtors and the Purchaser Support Parties and the Debtors shall seek to have such motion heard on shortened notice. The Debtors shall provide JMP and the Purchaser Support Parties with a reasonable opportunity to review and comment on any motions relating to this Commitment Letter, the Definitive Documentation, the Bid Protections or this transaction prior to filing and shall consider any such comments in good faith. The Term Sheet, details of transaction, confidential and proprietary information will be redacted/filed under seal to

4

the maximum extent possible. The transaction will not be subject to traditional 363 auction or plan support process, but the transaction will receive the benefits and protections afforded by section 363 and other protections to transferees of property under the Bankruptcy Code and the Approval Order will include bankruptcy court approval of the assumption of all obligations and liabilities of the Target and, if applicable, GP by Lamington and an exculpation and release of the Target and, if applicable, GP from any and all such obligations and liabilities.

6. **Due Diligence**. JMP and the Purchaser Support Parties shall continue to have access to the data room maintained by the Seller Parties until the Outside Date and that the Seller Parties shall use commercially reasonable efforts to respond to JMP's diligence inquiries and to deliver such additional documentation and respond to such diligence requests as JMP or the Purchaser Support Parties may reasonably request, including, but not limited to, financial, legal, tax and operational diligence of any Seller Party. The Seller Parties shall respond to JMP's diligence request related to the Target, the GP and the Seller Parties sent on July 3, 2019 no later than July 10, 15, 2019. JMP has identified and may continue to identify certain investors as the Purchaser Support Parties and will manage all aspects of the Purchaser Support Parties investment including the selection and allocation among the Purchaser Support Parties. Upon the request of JMP, the Seller Parties each agrees to participate in meetings and calls relating to the investment by the Purchaser Support Parties upon reasonable notice. Each Seller Party agrees to keep (and cause its representatives to keep) the identity of each Purchaser Support Party confidential. Each Seller Party represents and covenants to each Purchaser Support Party and JMP that (i) except as provided in clause (ii), it has provided all material documentation and information related to each policy and Asset to JMP, (ii) it has stored certain documents with Iron Mountain and Seller Parties shall cause such documents to be delivered to JMP (and JMP is permitted to make such documents available to each other Purchaser Support Party) as soon as possible, and with respect to such documents, each Seller Party represents and covenants to each Purchaser Support Party and that such documents do not contain any materials or information that include adverse facts, circumstances or characteristics that bear on the enforceability, transferability, value, servicing or ownership of the Assets, and (iii) all information related to the Assets, the Target, the GP, Lamington, the Parent, or the Interests which has been or is hereafter provided directly or indirectly by a Seller Party or any of its representatives to JMP or any Purchaser Support Party in connection with the transactions contemplated hereunder and by the Term Sheet (the "Information") and is and will be complete and correct in all material respects and does not and will not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements contained therein not misleading and has been and will be prepared in good faith based upon assumptions that are believed by the preparer thereof to be reasonable at the time made. Each Seller Party agrees that if any time prior to the Closing Date, any of the representations in the preceding sentence would be incorrect in any material respect if the Information were being furnished, and such representations were being made, at such time, then the Seller Parties will promptly supplement, or cause to be supplemented, the Information so that such representations will be correct in all material respects under those circumstances. Each Purchaser Support Party's obligations hereunder are subject to its satisfaction, in its sole discretion, with its diligence investigation (including legal, financial and operational diligence) of each Seller Party as provided in Section 3(d).

7. **Bid Protections**.

(a) <u>Commitment Letter Break Up Fee</u>. During the period beginning on the date hereof through and until the Outside Date (as may be extended in accordance with this

5

~~Commitment Letter) each~~Each Seller Party agrees (in the case of the Debtors only, to the extent necessary, subject to approval of the Bankruptcy Court, and then automatically upon such Bankruptcy Court approval), jointly and severally, to pay, and the Purchaser Support Parties shall be entitled to receive: (x) a break-up fee equal to 1.75% of $530,000,000 plus (y) expense reimbursement of $500,000 ((x) and (y) together, the "Commitment Letter Break Up Fee"), which in each case shall become immediately due and payable on the applicable date set forth below upon the earlier to occur of (i) any Seller Party's breach of this Commitment Letter (including, but not limited to, the obligation to negotiate the Definitive Documentation in good faith and use commercially reasonable efforts to take all other actions required (including, but not limited to, obtaining the Approval Order) to consummate the transactions described herein and in the Term Sheet), (ii) if any Seller Party or any of its affiliates enters into a transaction to directly or indirectly sell, assign, finance, or transfer a substantial portion of any of its assets or equity or any direct or indirect interest in Target or any Seller Party to any other person other than the Purchaser Support Parties (any such transaction, an "Alternative Transaction") between the date hereof and the Outside Date, or (iii) the conversion of the Debtors' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code prior to or on the Outside Date; provided, that, in the case of (i) or (ii), the Commitment Letter Break Up Fee shall be payable on the earlier to occur of (A) the closing of an Alternative Transaction and (B) December 31, 2019, and in the case of (iii), the Commitment Letter Break Up Fee shall be immediately due and payable upon the occurrence of such conversion. JMP's commitment hereunder shall terminate upon the first to occur of written notice by JMP that it is terminating its commitment as a result of (i), (ii) or (iii) above and the Outside Date, unless the Closing Date shall have occurred on or before such date, provided that such termination shall not affect the Seller Parties' obligations to pay the Commitment Letter Break Up Fee which obligation expressly survives such termination.

(b)     The Seller Parties acknowledge that this Commitment Letter and the Term Sheet provides a direct benefit to the Debtors and that Purchaser Support Parties and JMP have already incurred, and each intends to incur, substantial resources to the completion of its potential investment in the transaction contemplated by the Term Sheet and that the Commitment Letter Break Up Fee is reasonable and fair consideration in light of such benefit to the Debtors and the Parent and the expenditure of time, resources and expenses by the Purchaser Support Parties. The Seller Parties and JMP acknowledge and agree that the provisions of this Section 7 are intended for the benefit of, and shall be enforceable by, the Purchaser Support Parties, each of which is an intended third-party beneficiary of this Section 7.

(c)     Notwithstanding the foregoing, the Purchaser Support Parties shall not be entitled to the Commitment Letter Break Up Fee (as applicable) in connection with the Seller Parties disposition of the policies described in the "Permitted Policy Dispositions" section of the Term Sheet, or in connection with the settlement between Debtors and Lincoln Benefit Life Company ("Lincoln Benefit"), under which settlement, among other things, Lincoln Benefit will be settling its claims with respect to several of the policies issued by Lincoln Benefit by paying the Debtors certain settlement amounts relating to those policies, and agreeing not to challenge any other policies in the future so long as premiums are timely paid and there has been no misstatements of the insured's age.

8.     **Binding Effect; No Assignment; Entire Agreement**. This Commitment Letter shall confirm that JMP and each Seller Party, by their signatures below, hereby accept and agree to the terms and conditions set forth in this Commitment Letter. For the avoidance of doubt, the obligations of the Parent and the Debtors to pay the Commitment Letter Break Up Fee shall

6

become immediately binding upon the Parent and the Debtors upon execution of the Commitment Letter as set forth in the Letter of Intent (unless Bankruptcy Court approval is required, with regards to the Debtors only, in which case immediately and automatically upon such approval) and shall survive the termination of this Commitment Letter, the Term Sheet, or the parties' discussions regarding the transactions contemplated by the Term Sheet. This Commitment Letter may not be assigned by any of the Seller Parties without JMP's prior written consent (and any purported assignment without such consent shall be null and void), is intended to be solely for the benefit of the Seller Parties and is not intended to confer any benefits upon, or create any rights in favor of, any person other than the Seller Parties (except as otherwise set forth in Section 7(b)). This Commitment Letter, when executed and delivered by each of the parties hereto, shall constitute the entire agreement among the parties hereto concerning the subject matter hereof and shall supersede any prior agreements or understandings with respect thereto, including without limitation the Letter of Intent. <ins>For the avoidance of doubt, this Commitment Letter supersedes the Project Rodeo Commitment Letter dated June 30, 2019 by and among JMP and the Seller Parties.</ins>

9.  **No Fiduciary Relationship**. JMP, the Purchaser Support Parties and their respective affiliates may have economic interests that conflict with those of the Seller Parties. Each Seller Party agrees that each of JMP and the Purchaser Support Parties is an independent contractor and that nothing in this Commitment Letter, the Term Sheet or the Definitive Documentation or otherwise will be deemed to create an advisory, fiduciary or agency relationship or other implied duty between or among any of JMP, the Purchaser Support Parties and the Seller Parties. Each Seller Party agrees that the transactions contemplated by this Commitment Letter, the Term Sheet and the Definitive Documentation are arms'-length commercial transactions. Each Seller Party acknowledges and agrees that it is responsible for making its own independent judgment with respect to such transactions and the process thereto.

10. **Counterparts**. This Commitment Letter may be executed by the parties by electronic or pdf signature hereto in any number of separate counterparts, and all of said counterparts taken together shall be deemed to constitute one and the same instrument.

11. **Governing Law; Waiver of Jury Trial**.

    (a)  This Commitment Letter and the rights and obligations of the parties hereunder shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York (without regard to any conflict of law rule that might apply the laws of any other jurisdiction). Any legal action or proceeding with respect to this Commitment Letter shall be brought in the United States District Court for the Southern District of New York (or if jurisdiction is not available in such court, then in a state court of the State of New York sitting in New York county), and, by execution and delivery of this letter, each of the parties hereto hereby accepts, generally and unconditionally, the exclusive jurisdiction of the aforesaid courts <u>provided</u>, <u>that</u>, upon entry of the Approval Order, without limiting any parties' right to appeal any order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Commitment Letter against the Debtors and to decide any claims or disputes against the Debtors which may arise or result from, or be connected with, this Commitment Letter or any breach or default hereunder and (ii) any and all claims relating to the foregoing clause (i) shall be filed and maintained only in the Bankruptcy Court, provided, however, that if the Debtors' bankruptcy cases have closed, all actions and proceeding arising out of or relating to this Commitment Letter against the Debtors shall be heard and determined as provided above.

7

(b) EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO THIS COMMITMENT LETTER AND ALL LEGAL ACTIONS OR PROCEEDINGS (WHETHER BASED IN CONTRACT, TORT OR OTHERWISE) ARISING OUT OF OR RELATING TO THIS COMMITMENT LETTER, ANY OF THE TRANSACTIONS CONTEMPLATED BY THIS COMMITMENT LETTER OR THE TERM SHEET OR ANY OF THE ACTS OR OMISSIONS OF JMP, THE PURCHASER SUPPORT PARTIES OR THE SELLER PARTIES IN THE NEGOTIATION, ADMINISTRATION, PERFORMANCE OR ENFORCEMENT HEREOF OR THEREOF, AS THE CASE MAY BE. EACH PARTY HERETO (I) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HERETO HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY HERETO WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (II) ACKNOWLEDGES THAT IT AND THE OTHER PARTIES HERETO HAVE BEEN INDUCED TO ENTER INTO THIS COMMITMENT LETTER BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 11(B).

**[remainder of page intentionally omitted]**

If you are in agreement with the foregoing, please sign and return this Commitment Letter as soon as possible to JMP.

Very truly yours,

JADE MOUNTAIN PARTNERS

By: _____
Name: _____
Title: _____

Acknowledged this \_\_ day of \_\_\_\_, 2019

WHITE EAGLE ASSET PORTFOLIO, L.P.

By: _____
Name: _____
Title: _____

WHITE EAGLE GENERAL PARTNER, LLC

By: _____
Name: _____
Title: _____

LAMINGTON ROAD DESIGNATED ACTIVITY COMPANY

By: _____
Name: _____
Title: _____

EMERGENT CAPITAL, INC.

By: _____
Name: _____
Title: _____

# EXHIBIT A

# TERM SHEET

**Please see attached**