**Exhibit 2**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>WHITE EAGLE ASSET PORTFOLIO, LP, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 18-12808 (KG)<br><br>Jointly Administered |

**ORDER (A) AUTHORIZING THE SALE OF THE
MAJORITY EQUITY INTERESTS IN DEBTORS WHITE EAGLE ASSET
PORTFOLIO, LP AND WHITE EAGLE GENERAL PARTNER, LLC FREE AND
CLEAR OF LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, (B)
AUTHORIZING ASSUMPTION AND PAYMENT OF LIABILITIES OF
WHITE EAGLE ASSET PORTFOLIO, LP AND WHITE EAGLE GENERAL
PARTNER, LLC BY DEBTOR LAMINGTON ROAD DESIGNATED ACTIVITY
COMPANY;, (C) APPROVING BID PROTECTIONS IN FAVOR OF THE PURCHASER
SUPPORT PARTIES, (D) GRANTING THE BUYER AND THE PURCHASER
SUPPORT PARTIES THE PROTECTIONS AFFORDED TO A GOOD FAITH
PURCHASER, AND (E) GRANTING RELATED RELIEF**

Upon the motion [Docket No. ~~——~~358] (the "Motion")[2] of the above-captioned debtors

(collectively, the "Debtors") for entry of an order (this "Order"): (i) approving the sale (the

"Sale") of the majority interests (representing 72.5% of the equity) in Debtors White Eagle Asset

Portfolio, LP ("White Eagle") and White Eagle General Partner, LLC ("WEGP") (as such

interests may be further defined in the Purchase Agreement (as defined below) collectively, the

"Acquired Interests") to ~~one or more entities or acquisition vehicles (collectively,~~ Palomino JV,

LP (the "Buyer") to be funded by Jade Mountain Partners and other co-investors (together with

the Buyer, Jade Mountain Partners and their respective successors and assigns, or as otherwise

expressly provided under the Definitive Documentation (as defined herein), the "Purchaser

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number include:  White Eagle Asset Portfolio, LP (0691); White Eagle General Partner, LLC (8312); and Lamington Road Designated Activity Company (7738).  The location of the Debtors' service address in these chapter 11 cases is 5355 Town Center Road, Suite 701, Boca Raton, FL 33486.⊥

[2]  Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

Support Parties"), free and clear of all liens, claims, encumbrances, and other interests, pursuant to the terms of a Commitment Letter filed with the Court at [Docket No. ——[386]] (including the Term Sheet attached thereto, the "Commitment Letter"), which is subject to definitive documentation (the "Definitive Documentation") including, but not limited to, a purchase agreement (as amended, restated, supplemented, or otherwise modified, the "Purchase Agreement"), (ii) authorizing assumption and payment of liabilities of White Eagle and WEGP by Debtor Lamington Road Designated Activity Company ("LRDAC"), (iii) approving bid protections in favor of the Purchaser Support Parties, (iv) granting the Buyer and the Purchaser Support Parties the protections afforded to a good faith purchaser pursuant to section 363(m) and (n) of the Bankruptcy Code, and (v) granting certain related relief; and it appearing that the relief requested is in the best interests of the Debtors' estates, their creditors and other parties-in-interest; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 1334; and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion and opportunity for objections or requests for hearing having been provided; and based on the statements of counsel and the evidence presented in support of the relief requested by the Debtors in the Motion at a hearing conducted before this Court (the "Sale Hearing"); and it appearing that no other notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor:

**THE COURT HEREBY FINDS THAT:**

A.      This Court has jurisdiction to hear and determine the Motion pursuant to 28 U.S.C. § 1334(a).  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§

1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28

U.S.C. § 1291.  Notwithstanding Bankruptcy Rule 6004(h), this Court expressly finds that there

is no just reason for the delay in the implementation of this Order and expressly directs the entry

of judgment as set forth herein.

C.      The statutory predicates for the relief requested in the Motion are sections 105(a)

and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 6004, and Local Rule 6004-1.

D.      Adequate, sufficient and appropriate notice of the Motion and the Sale and a

reasonable opportunity to object or be heard with respect to the Motion and the relief requested

therein has been afforded to all known interested persons and entities, and no other or further

notice of the Sale is or shall be required.

E.      The As demonstrated by (i) the evidence presented at the Sale Hearing, (ii) the

declaration of Miriam Martinez in support of the Motion, and (iii) the representations of counsel

made on the record at the Sale Hearing, the Debtors have articulated good and sufficient reasons

for this Court to grant the relief requested in the Motion, including approval of the Bid

Protections and the assumption of any and all of the White Eagle Liabilities by LRDAC, as seller

of the Acquired Interests, as set forth in this Order.  The Purchaser Support Parties are unwilling

to proceed with the Sale absent the Bid Protections as set forth in this Order, which are

reasonable and appropriate under the circumstances given the substantial time and resources that

the Purchaser Support Parties have devoted (and will continue to devote) to the Sale.

F.      The disclosures made by the Debtors concerning the Sale were good, complete

and adequate.  The Sale represents the highest and best proposal for the purchase of the Acquired

Interests or White Eagle's assets available to these estates under present circumstances.  The

consideration offered and to be received by LRDAC is fair and reasonably equivalent value for the Acquired Interests— and the assumption of any and all of the White Eagle Liabilities.  In reaching this determination, the Court has taken into account both the consideration to be realized directly by the Debtors' estates and the indirect benefits of the Sale for the Debtors' creditors.

G.    The Sale is not being entered into for the purpose of hindering, delaying or defrauding creditors of the Debtors or their equity holders under the Bankruptcy Code or under the laws of the United States or any state, district, territory, or possession thereof.  Neither the Debtors, the Buyer, nor the Purchaser Support Parties are entering into the Sale fraudulently.

H.    G. Each of the Purchaser Support Parties and the Buyer, including each of their affiliates and members, prior to the Closing Date, is not an "insider" or otherwise an "affiliate" of any of the Debtors, as those terms are defined in section 101(31) of the Bankruptcy Code.  The Buyer and each Purchaser Support Party is purchasing the Acquired Interests in good faith, for fair consideration and reasonably equivalent value, from arm's length bargaining positions, and is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the full protection of that provision, and otherwise has proceeded in good faith in all respects in connection with this proceeding.

I.    H. In the absence of a stay pending appeal, the Buyer and each Purchaser Support Party will be acting in good faith pursuant to section 363(m) of the Bankruptcy Code in closing the transactions contemplated by the Commitment Letter at any time on or after entry of this Order.

J.    I. The insured under each life insurance policy agreed with White Eagle and/or White Eagle's servicer to the ongoing release of medical records by his or her medical providers.

The value of the assets owned by White Eagle is in part, dependent upon the health and life expectancy of the insureds.  Therefore, in order for the Buyer to adequately assess and realize the value of the Acquired Interests, the Buyer's servicer may seek to obtain and review medical information from the health care providers of the insureds.

K.    ~~J.~~ Approval of the Motion and the consummation of the transactions contemplated thereby (including the assumption of any and all of the White Eagle Liabilities by LRDAC) are in the best interests of the Debtors, their creditors, their estates and other parties-in-interest. LRDAC will receive fair consideration and reasonably equivalent value from the purchase price paid for the Acquired Interests in exchange for its assumption of any and all of the White Eagle Liabilities.

L.    ~~K.~~ The Debtors have demonstrated compelling circumstances and a good, sufficient and sound business purpose and justification for the Sale.

M.    ~~L.~~ A reasonable opportunity to object or be heard with respect to the Sale and the Bid Protections has been afforded all interested persons and entities.

N.    ~~M.~~ The Debtors are the sole and lawful owners of the assets to be transferred pursuant to the Commitment Letter and the Definitive Documentation and, subject to this Order, the *Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 343] (the "Plan"), the *Order Confirming Debtors' Second Amended Joint Chapter 11 Plan of Reorganization* [Docket No. 349] (the "Confirmation Order"), the *Order Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code and Bankruptcy Rule 9019 Approving Settlement Between Debtors, Certain Non-Debtor Affiliates, and Lender Parties* [Docket No. 316] (the "Settlement Order"), and the Settlement Agreement attached as Exhibit 1 to the Settlement Order (the "Settlement Agreement"): (a) have full power and authority to execute the Definitive

Documentation; (b) have all of the power and authority necessary to consummate the Sale, and (c) upon entry of this Order, need no consent or approval from any other person or entity to transfer the Acquired Interests, or to otherwise consummate the Sale in accordance with the Commitment Letter and the Definitive Documentation.

O.      Pursuant to the Settlement Order, CLMG Corp., as agent ("CLMG"), and LNV Corporation, as lender (together with CLMG, the "Lender Parties"), have an allowed claim in the amount set forth in the Settlement Agreement, which can be satisfied subject to the terms of the Settlement Order only by payment in full in cash of the Early Payoff Amount (as defined in the Settlement Agreement) or the Payoff Amount (as defined in the Settlement Agreement), as applicable (in each case, the "Applicable Payment").  The Applicable Payment consists of the following: (i) $367,984,532 of principal, (ii) $19,500,958 of interest outstanding as of (and including) July 22, 2019 and an additional $97,209 of interest per diem thereafter, (iii) fees and expenses (including professional fees) in an amount consistent with the Settlement Agreement to be agreed by the Debtors and the Lender Parties (or, if not agreed, as determined by the Court) at least five (5) days prior to the Closing Date, and (iv) a premium of $7,359,691 if the Applicable Payment is received by the Lender Parties prior to the occurrence of a Sale Trigger Event (as defined in the Settlement Agreement) and $14,719,381 if the Applicable Payment is received by the Lender Parties on or after the occurrence of a Sale Trigger Event.

P.      N.In order for the Buyer to acquire White Eaglethe Acquired Interests, LRDAC will assume any and all of the White Eagle Liabilities on the Closing Date and, automatically upon and contemporaneously with payment in full in cash of the Applicable Payment to the Lender Parties, White Eagle and WEGP shall thereafter be released from any and all of the White Eagle Liabilities and the Consummation Date (as defined in the Plan) shall be deemed to have

occurred with regards to White Eagle and WEGP ~~on~~upon the Closing Date and the Lender Parties' contemporaneous receipt of the Applicable Payment in full in cash.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.       The relief request in the Motion is granted and approved, and the Sale contemplated thereby and by the Commitment Letter and the Definitive Documentation is approved as set forth in this Order.

2.       All objections to the Motion or the relief requested therein that have not been withdrawn, waived or settled as announced to this Court or by stipulation filed with this Court, and all reservations of rights included therein, are hereby overruled on the merits.

3.       The Commitment Letter, including the Bid Protections and the Definitive Documentation contemplated thereby and all of the terms and conditions thereof, are hereby approved as set forth in this Order.

4.       The Bid Protections in favor of the Purchaser Support Parties are approved and the Purchaser Support Parties are hereby entitled to a ~~superpriority administrative expense claim status, senior to all other administrative claims and subject only to the superpriority administrative expense claims of the Debtors' debtor-in-possession financing facility and adequate protection superpriority administrative expense claims in favor of the Lender Parties. The Debtors shall satisfy the Bid Protections subject to the terms of the Commitment Letter and the Definitive Documentation, as applicable. In the event that the Debtors proceed with an alternative transaction to the Commitment Letter or Definitive Documentation with~~ the Purchaser Support Parties, ~~the Debtors are hereby authorized and required to pay the Bid Protections and any such alternative transaction will be subject to satisfaction of the Bid Protections and the~~

~~Purchaser Support Parties' claim shall attach to the proceeds of such sale~~ claim against the Debtors on account of the Bid Protections (such claim, together with the Bid Protections, the "Bid Package") subject to the terms and limitations below.  Notwithstanding anything in this Order, the Motion, the Commitment Letter, or any of the Definitive Documentation to the contrary (including any provision that purports to be preemptory), but without limiting any obligations of Emergent under the Commitment Letter or Definitive Documentation, the Debtors are hereby authorized and required to pay the Bid Protections as set forth in this Order in the event that (A) any of the Debtors or Emergent enter into, before the Outside Date (i.e., August 19, 2019, as set forth in the Commitment Letter, which can *only* be extended beyond September 17, 2019 with the prior written consent of the Lender Parties in their sole and absolute discretion as set forth in paragraph 6 hereof), an agreement to directly or indirectly sell, assign, finance, refinance or transfer a substantial portion of any of its respective assets or any interest in any Debtor to any person other than the Buyer or a Purchaser Support Party in an alternative transaction to the Sale contemplated by the Commitment Letter and the Definitive Documentation (an "Alternative Transaction") and consummate such Alternative Transaction before September 17, 2019 (the "Sale Deadline") or such later consummation date as may be agreed *only* with the prior written consent of the Lender Parties in their sole and absolute discretion, (B) any Debtor or Emergent breaches the Commitment Letter or any Definitive Documentation before the Outside Date or (C) the conversion of the Debtors' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code before the Outside Date; *provided* that, in the case of clause (A) above, the Bid Package shall *only* be paid to the extent, and at such time, that there are cash proceeds of the Alternative Transaction (together with the Debtors' cash on hand at the time of the closing of such Alternative Transaction) remaining after payment in full in cash of the

Applicable Payment to the Lender Parties and all other amounts owed pursuant to, and in connection with, the Settlement Agreement and the Plan (other than amounts due or assets distributed to Emergent, LRDAC, or any other equity holder of the Debtors) and, in the case of clauses (B) and (C) above, the Bid Package shall ***only*** be paid to the extent, and at such time, that the Debtors have sufficient cash prior to December 30, 2019 to pay the Bid Protections after payment in full in cash of the Applicable Payment to the Lender Parties and all other amounts owed pursuant to, and in connection with, the Settlement Agreement and the Plan (other than amounts due or assets to be distributed to Emergent, LRDAC, or any other equity holder of the Debtors); *provided, further,* that (i) without limiting the Debtors' obligations to pay the Bid Package in accordance with this paragraph 4, the Purchaser Support Parties' right to the Bid Package from the Debtors, and any liability or obligation on the part of the Debtors with respect to the Bid Package, shall automatically terminate on December 30, 2019 to the extent the Bid Package has not been paid by December 30, 2019 in accordance with this paragraph 4 (except with respect to any failure by the Debtors to pay the Bid Protections when due and payable to the extent required pursuant to this paragraph 4) and (ii) in no event shall the Lender Parties be responsible for payment of any of the Bid Package.  This Order shall be evidence of the Purchaser Support Parties' claim against the Debtors with respect to the Bid Protections and the Purchaser Support Parties shall not be required to file any proof of claim to assert its right to payment against the Debtors on account of the Bid Protections in accordance with this Order.

5.     Pursuant to section 363(b) of the Bankruptcy Code, subject to contemporaneous payment of the ~~Debtors' obligations~~Applicable Payment to the Lender Parties in full in cash as set forth in this Order, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale of the Acquired Interests to the Buyer

pursuant to and in accordance with the terms of this Order, the Commitment Letter, and the Definitive Documentation, (b) close the Sale as contemplated by the Commitment Letter, the Definitive Documentation and this Order, (c) have LDRAC upon the Closing Date, have LRDAC assume any and all of the White Eagle Liabilities, and release White Eagle and WEGP from any and all of the White Eagle Liabilities, and (d (so long as LRDAC has on the Closing Date, and retains following the Closing Date, sufficient cash to satisfy in full all White Eagle Liabilities owed pursuant to, or in connection with, the Plan and the Settlement Agreement), and (c) execute and deliver, perform under, consummate, implement and close fully the Commitment Letter, together with the Purchase Agreement and all additional Definitive Documentation, instruments and documents that may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Commitment Letter, the Purchase Agreement, and such other Definitive Documentation and ancillary documents.

6.    Notwithstanding anything in this Order, the Motion, the Commitment Letter or the Definitive Documentation to the contrary, (i) the Sale of the Acquired Interests to the Buyer shall be conditioned on contemporaneous payment by the Buyer in cash of the purchase price for the Acquired Interests directly to CLMG up to the Applicable Payment and contemporaneous payment by the Debtors of the remaining amount of the Applicable Payment in full in cash directly to CLMG, (ii) none of the Acquired Interests may be sold to any of the Buyer or the Purchaser Support Parties (or any of their respective designees or assignees) unless the transfer of such Acquired Interests contemporaneously results in the payment to the Lender Parties of the Applicable Payment in full in cash in accordance with this Order or is otherwise in accordance with the Settlement Agreement (including the requirement for further Court order and the Lender Parties' objection and credit bid rights, as applicable), (iii) the Outside Date cannot be extended

beyond the Sale Deadline (i.e., September 17, 2019, which Sale Deadline may *only* be extended with the prior written consent of the Lender Parties in their sole and absolute discretion) and, as a result, if the Sale has not been consummated in accordance with this Order (including the payment in full in cash of the Applicable Payment to the Lender Parties) by the Sale Deadline, the Commitment Letter and the Definitive Documentation shall automatically terminate (if not previously terminated in accordance with the terms thereof) on the Sale Deadline (without prejudice to any party's rights under the Settlement Agreement or the Purchaser Support Parties rights with regards to the Bid Package, if applicable), (iv) the Lender Parties' Allowed Lien (as defined in the Settlement Agreement) shall remain valid and enforceable with respect to the Debtors' assets (whether or not such assets are Acquired Assets) and shall only be released upon the receipt by the Lender Parties of the Applicable Payment in full in cash, and (v) the payment by the Buyer and the Debtors of the Applicable Payment in full in cash to the Lender Parties shall constitute a legal, valid, binding, effective, and irrevocable payment in satisfaction of all of the Lender Parties' claims and liens with respect to the Debtors and no portion of the Applicable Payment (or the payment thereof) shall be subject to any challenge, recovery, avoidance, disgorgement, setoff, or counterclaim by any of the Debtors, the Buyer, any Purchaser Support Party, or any other person or entity under any theory of law or equity against the Lender Parties or any of their affiliates.

7.    6. This Order shall be binding in all respects upon the Debtors, their estates, all creditors, all holders of equity interests in any Debtor (including Emergent), all holders of any Claim(s) (whether known or unknown) against any Debtor, any holders of encumbrances against or on all or any portion of the Acquired Interests or assets of White Eagle, WEGP, the Buyer, the Purchaser Support Parties, and all successors and assigns of the Buyer and the Purchaser Support

Parties, and any trustees, if any, subsequently appointed in any of the Debtors' chapter 11 cases or upon a conversion to chapter 7 of the Bankruptcy Code of any of the Debtors' cases.  This Order, the Commitment Letter, and the Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors and the Buyer, the Purchaser Support Parties, and their respective successors and assigns.

8.    7. Pursuant to sections 105(a) and 363 of the Bankruptcy Code, subject to payment of the Debtors' obligations the terms of this Order and automatically upon and contemporaneously with payment in full in cash to the Lender Parties in full of the Applicable Payment, the Debtors are authorized to transfer the Acquired Interests to the Buyer on the Closing Date.  Subject to and automatically upon and contemporaneously with payment of the Debtors' obligations Applicable Payment to the Lender Parties in full in cash, such Acquired Interests shall be transferred to the Buyer subject to and in accordance with this Order, the Commitment Letter, the Purchase Agreement and all other Definitive Documentation upon and as of the Closing Date, and such transfer shall constitute a legal, valid, binding and effective transfer of the Acquired Interests which transfer vests or will vest in Buyer, with all right, title and interest of the Debtors to the Acquired Interests, and, upon payment of the Debtors' obligations Applicable Payment to the Lender Parties in full in cash, shall be free and clear of all liens, claims, encumbrances, and other interests to the maximum extent provided by section 363(f) of the Bankruptcy Code.

9.    8. Except as expressly permitted or otherwise specifically provided in the Commitment Letter, the Purchase Agreement, the Definitive Documentation or this Order, subject to contemporaneous payment of the Debtors' obligations Applicable Payment to the Lender Parties in full in cash, all persons or entities holding liens, claims, encumbrances, or other

interests against or in all or any portion of the Acquired Interests, White Eagle, WEGP or any

assets owned by White Eagle or WEGP, arising under or out of, in connection with, or in any

way relating to the Debtors, White Eagle's assets, WEGP's assets, the White Eagle Liabilities,

the Acquired Interests, the operation of the Debtors' business prior to the Closing Date or the

transfer of the Acquired Interests to the Buyer, hereby are forever barred, estopped and

permanently enjoined from asserting against the Buyer or any Purchaser Support Party or their

successors or assigns, their property such persons' or entities' liens, claims, encumbrances, or

other interests in and to the Acquired Interests or the assets of White Eagle or WEGP.  Upon

consummation of the transactions set forth in this Order, the Purchase Agreement and the other

Definitive Documentation and subject to contemporaneous payment of the Debtors'

obligationsApplicable Payment to the Lender Parties in full in cash, the Buyer and Debtors shall

each be authorized to file termination statements or lien terminations in any required jurisdiction

to remove any record, notice filing, or financing statement recorded to attach, perfect or

otherwise notice any lien or encumbrance with respect to the Acquired Interests or White Eagle's

or WEGP's assets that is extinguished or otherwise released pursuant to this Order under section

363 and the related provisions of the Bankruptcy Code and take all other actions as may be

deemed necessary or appropriate to consummate the Sale pursuant to the terms of this Order, the

Commitment Letter and the Definitive Documentation and execute and deliver, perform under,

consummate, and implement the Sale.

 10.    9. Subject to contemporaneous payment of the Debtors' obligationsApplicable

Payment to the Lender Parties in full in cash, all persons and entities are hereby forever

prohibited and enjoined from taking any action that would adversely affect or interfere with (a)

the ability of the Debtors to sell and transfer the Acquired Interests to the Buyer or for LRDAC to

assume any and all of the White Eagle Liabilities in accordance with the terms of the

Commitment Letter, the Purchase Agreement, and this Order. All persons currently in

possession of any or all or (b) the Buyer's or Purchaser Support Parties' use and enjoyment of the

Acquired Interests are hereby directed to surrender possession of such Acquired Interests or

assets of White Eagle or WEGP to the Buyer on the Closing Date.

      11.     10. Subject to contemporaneous payment of the Debtors' obligationsApplicable

Payment to the Lender Parties in full in cash, all persons and entities that are in possession of

some or all of the Acquired Interests or any assets of White Eagle and WEGP onas of or after the

Closing Date are hereby directed to surrender and deemed to have surrendered, possession of

such Acquired Interests or assets of White Eagle and WEGP to the Buyer or its assignee or

designee on the Closing Date or at such time thereafter as the Buyer may request.  The Debtors

agree to exercise reasonable best efforts to assist the Buyer in assuring that all persons that are

presently, or on the Closing Date may be, in possession of some or all of the Acquired Interests

or any assets of White Eagle and WEGP in which White Eagle and WEGP hold an interest will

surrender possession of the Acquired Interests or assets of White Eagle and WEGP to the Buyer

on the Closing Date.

      12.     11. Subject to the contemporaneous payment of the Debtors'

obligationsApplicable Payment to the Lender Parties in full in cash, the provisions of this Order

authorizing the Sale of the Acquired Interests by the Debtors free and clear of liens, claims,

encumbrances, and other interests and the assumption by LRDAC of any and all of the White

Eagle Liabilities, in each case on the Closing Date, shall be self-executing, and none of the

Debtors, the Buyer, or any other party shall be required to execute or file releases, termination

statements, assignments, cancellations, consents or other instruments to effectuate, consummate,

and/or implement the provisions hereof with respect to the Sale; *provided*, *however*, that this paragraph shall not excuse such parties from performing any and all of their respective obligations under this Order, the Commitment Letter and the Definitive Documentation.

13.    12. Subject to contemporaneous payment of the Debtors' obligationsApplicable Payment to the Lender Parties in full in cash, this Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, foreign governments and all other persons or entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any Acquired Interest or asset of White Eagle or WEGP; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by this Order, the Commitment Letter and the Definitive Documentation.

14.    13. Subject to contemporaneous payment of the Debtors' obligationsApplicable Payment to the Lender Parties in full in cash, any and all governmental recording offices, boards, bureaus, agencies and all other parties, persons or entities are authorized to accept this Order for recordation on or after the Closing Date as conclusive evidence of the free and clear, and unencumbered, transfer of all right, title, interest and ownership in and to the Acquired Interests conveyed by LRDAC to the Buyer on the Closing Date.

15.    14. From and after the Closing Date, White Eagle and any subsequent owner of a life insurance policy shall continue to have all rights that White Eagle previously had under

existing authorizations to obtain updated medical and personal information from time to time regarding each insured under each life insurance policy and any health care providers or insured contacts who receive a copy of such authorizations together with a copy of this Order and a written request by White Eagle or any subsequent owner of a life insurance policy shall be permitted to rely on this Order in releasing copies of medical records or contact information or physician information to White Eagle, Buyer or any subsequent owner of such life insurance policy to the extent permitted by such authorizations.

16.    15. Except as otherwise expressly set forth in this Order, the Commitment Letter, or the Definitive Documentation, subject to contemporaneous payment of the Debtors' obligationsApplicable Payment to the Lender Parties in full in cash, based on the record before this Court, the Buyer and each Purchaser Support Party:  (i) does not, pursuant to the Definitive Documentation or otherwise, assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations of or assets of the Debtors on or prior to the Closing Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity; and (iii) shall not have any successor or transferee liability of any kind or character.  AllAny and all of the White Eagle Liabilities are expressly assumed by LRDAC as of the Closing Date and the contemporaneous payment of the Applicable Payment to the Lender Parties in full in cash, and each of White Eagle and WEGP are hereby released from any and all of such White Eagle Liabilities. as of such date (so long as LRDAC has on the Closing Date, and retains following the Closing Date, sufficient cash to satisfy in full theWhite Eagle Liabilities owed pursuant to, or in connection with, the Plan and the Settlement Agreement); *provided* that nothing contained in this Order shall be deemed a waiver by the Buyer or any Purchaser Support Party of any

obligation under the Definitive Documents for LRDAC to assume any and all of the White Eagle Liabilities

17.    16. Subject to the terms of this Order and the Definitive Documentation and following payment of the Debtors' obligationsApplicable Payment to the Lender Parties in full, in cash, on the Closing Date, (i) the Acquired Interests purchased thereunder and all assets owned by White Eagle and WEGP shall be transferred to and vest in the Buyer (or remain in White Eagle or WEGP, as applicable) free and clear of all claims (including, without limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code). The and (ii) the Acquired Interests and all assets of White Eagle and WEGP shall specifically be taken free and clear of all liens, claims (as defined in section 101(5) of the Bankruptcy Code), encumbrances, obligations, liabilities, contractual commitments or interests of any kind or nature whatsoever, whether contingent, unliquidated, unmatured or otherwise, in respect of LRDAC or any property of LRDAC.

18.    17. Subject to the terms of this Order and the Definitive Documentation and contemporaneously with payment of the Debtors' obligationsApplicable Payment to the Lender Parties in full in cash, from and after the Closing Date, LRDAC shall assume any and all of the White Eagle Liabilities and White Eagle and WEGP shall thereafter each be deemed exculpated and released of any and all such White Eagle Liabilities (so long as LRDAC has on the Closing Date, and retains following the Closing Date, sufficient cash to satisfy in full all White Eagle Liabilities owed pursuant to, or in connection with, the Plan and the Settlement Agreement).

19.    18. Neither Buyer nor any Purchaser Support Party nor or any of their respective affiliates, shall be deemed, as a result of any action taken in connection with the Sale, the consummation of the transactions contemplated by this Order and the Definitive Documentation,

or the transfer or operation of the relevant purchased assets (a) to be a legal successor, or otherwise be deemed a successor to the Debtors; (b) to have, de facto or otherwise, merged with or into the Debtors; (c) to be an alter ego or a continuation of the Debtors; or (d) to have any responsibility for any obligations based on any theory of successor or similar theories of liability.

20.    19. Without limiting the generality of the foregoing, except as otherwise expressly provided in the Definitive Documentation or this Order and subject to contemporaneous payment to the Lender Parties in full in cash of the Applicable Payment, neither, Buyer nor any Purchaser Support Party nor, after the Closing Date, White Eagle nor WEGP, nor any of their respective affiliates other than LRDAC (so long as, in the case of White Eagle, WEGP, and their respective affiliates other than LRDAC, LRDAC has on the Closing Date, and retains following the Closing Date, sufficient cash to satisfy in full any and all of the White Eagle Liabilities owed pursuant to, or in connection with, the Plan and the Settlement Agreement), shall be liable for any claims against or in the Acquired Interests purchased under the Definitive Documentation or against the Debtors or any of their predecessors or affiliates or the White Eagle Liabilities, and the Buyer and each Purchaser Support Party and their respective affiliates shall not have successor, transferee, derivative, or vicarious liabilities of any kind or character, whether known or unknown as of the Closing Date, then existing or hereafter arising, whether fixed or contingent, asserted or unasserted, liquidated or unliquidated, with respect to the Debtors or their affiliates or any obligations of the Debtors or their affiliates arising prior to the Closing Date, including, but not limited to:  (a) any foreign, federal, state, or local revenue, pension, ERISA (as defined below), tax (including, without limitation, taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of the purchased assets prior to the Closing Date), labor, employment, antirust, environmental, or other law, rule, or regulation

(including without limitation filing requirements under any such laws, rules or regulations); (b) any products liability law, rule, regulation, or doctrine with respect to any Debtor's liability under such law, rule, regulation, or doctrine, or under any product warranty liability law or doctrine; (c) any employment or labor agreements, consulting agreements, severance arrangements, change-in-control agreements, or other similar agreement to which any Debtor is a party; (d) any pension, welfare, compensation, or other benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of any Debtor; (e) the cessation of any Debtor's operations, dismissal of employees, or termination of employment or labor agreements or pension, welfare, compensation, or other employee benefit plans, agreements, practices and programs, obligations that might otherwise arise from or pursuant to (i) the Employee Retirement Income Security Act of 1974 ("ERISA"), (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employment Act of 1967, (vii) the Americans with Disabilities Act of 1990, or (viii) Section 4980B of the Internal Revenue Code and Part 6 of Title I of ERISA; (f) environmental liabilities, debts, claims, or obligations arising from conditions first existing on or prior to the Closing Date (including, without limitation, the presence of hazardous, toxic, polluting, or contamination substances or wastes), which may be asserted on any basis, including, without limitation, under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601 et seq.; (g) any liabilities, debts, or obligations of or required to be paid by any Debtor for any taxes of any kind for any period prior to the Closing Date; (h) any liabilities, debts, commitments, or obligations for any taxes relating to the operation of White Eagle, WEGP, White Eagle's assets, WEGP's assets, or the Acquired Interests purchased under the Definitive Documentation prior to the Closing Date; (i) any bulk

sale law; and (j) any litigation, all of which (a)-(j) are expressly assumed by LRDAC as White Eagle Liabilities.

21.    20. The transactions contemplated by this Order, the Commitment Letter and the Definitive Documentation are undertaken by the Buyer and each Purchaser Support Party without collusion as that term is defined in section 363(n) of the Bankruptcy Code, and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale unless such authorization and consummation of the sale are duly stayed pending such appeal.  The Buyer and each Purchaser Support Party is a good faith buyer within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.

22.    21. The Sale and transactions contemplated in the Commitment Letter and the Purchase Agreement may not be avoided, and no damages may be assessed against the Buyer, White Eagle, WEGP or any Purchaser Support Party under section 363(n) of the Bankruptcy Code.

23.    Except for the assumption by LRDAC of the White Eagle Liabilities as set forth in this Order, nothing in this Order is intended, or shall be construed, to modify or otherwise effect the obligations of the Debtors or any other party under the Plan, the Confirmation Order, the Settlement Agreement, or the Settlement Order.  To the extent of any conflict between the terms of the Plan, the Confirmation Order, the Settlement Agreement, and/or the Settlement Order, on the one hand, and the terms of this Order, the Motion, the Commitment Letter, and/or any of the Definitive Documentation, on the other hand (including any provision that purports to be preemptory), the terms of the Plan, the Confirmation Order, the Settlement Agreement and the

Settlement Order shall prevail; *provided* that nothing contained in this Order shall modify the obligations of Emergent under the Commitment Letter.  This Order shall not in any way impair or modify (i) the requirement of the Debtors to seek Court approval of certain sales of assets (including any sale of any of the Debtors' assets to any of the Buyer or the Purchaser Support Parties (or any of their respective designees or assignees) other than a sale of all Acquired Interests in conjunction with the contemporaneous payment in full in cash of the Applicable Amount to the Lender Parties) or (ii) the Lender Parties' rights to object to, or credit bid in connection with, any such proposed sale (other than the Sale of all Acquired Interests as described in the Motion and as provided in this Order, the Commitment Letter and the Definitive Documents in conjunction with the contemporaneous payment in full in cash of the Applicable Amount to the Lender Parties), in each case as set forth in the Settlement Agreement.

24. 22. Nothing contained in any plan of reorganization or liquidation, or order of any type or kind (including any order dismissing the Debtors' bankruptcy cases) entered in (a) theseThe provisions of this Order shall be binding upon the Debtors, the Purchaser Support Parties, and all other parties and entities whether in the Debtors' chapter 11 cases, (b)in any subsequent chapter 7 case into which any such chapter 11 case may be converted, or (c)in any related precedingother proceeding subsequent to the entry of this Order, shall conflict with or derogate from the provisions of the Commitment Letter, the Purchase Agreement, the Definitive Documentation, or this Order.

25. 23. Pursuant to Bankruptcy Rules 6004(h) and 9014, this Order shall be effective immediately upon entry and the Debtors are authorized to close the Sale immediately upon entry of this Order or as otherwise provided in the Definitive Documentation.

26.    ~~24.~~ No bulk sales law or any similar law of any state or jurisdiction applies in any way to the Sale.

27.    ~~25.~~ The failure to specifically include any particular provision of the Commitment Letter or the Definitive Documentation in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Commitment Letter and the Definitive Documentation be authorized and approved in their entirety as set forth in this Order.

~~26.    The Commitment Letter, the Purchase Agreement, the Definitive Documentation and any related agreements, documents or other instruments (other than this Order) may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of this Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates or any creditor constituent.~~

~~27.    To the extent there are any inconsistencies between the terms of this Order and the Commitment, the terms of this Order shall govern.  To the extent there are any inconsistencies between the terms of this Order and the Definitive Documentation, the terms of the Definitive Documentation shall govern.~~

28.    To the extent there are any inconsistencies between the terms of this Order, on the one hand, and the Commitment Letter and/or any of the Definitive Documentation, on the other hand (including any provision that purports to be preemptory), the terms of this Order shall govern.

29.    The Debtors shall provide the Lender Parties with a draft of the Definitive Documentation at least seven (7) days prior to the Closing Date, and the Debtors shall thereafter

provide updated versions of the Definitive Documentation to the Lender Parties to the extent of any modifications at least three (3) days prior to the Closing Date.  The Lender Parties shall have the right to file an objection on the grounds that any of the terms of such draft Definitive Documentation (or any of such updated versions) (i) has a material adverse effect on the Debtors' estates or any creditor constituent, *provided, that* LRDAC's assumption of any and all of the White Eagle Liabilities consistent with the terms of this Order shall not be a material adverse effect, (ii) is inconsistent with the terms of the Commitment Letter or (iii) impairs the Debtors' ability to perform under the Settlement Agreement, Settlement Order, Plan or Confirmation Order or the Lender Parties' rights thereunder.  Any Definitive Documentation subject to any such objection shall not become effective and the Closing Date shall not occur unless and until any such objection is resolved by agreement of the Lender Parties or further order of this Court.  Any hearing of the Court to resolve any such objection shall be held on an expedited basis within two (2) business days after the filing of such objection or such later date as the Court is available.

30.    Pursuant to section 1145 of the Bankruptcy Code and Article V.D of the Plan, (i) the offering, issuance, and distribution of the Acquired Interests, as contemplated by this Order, shall be exempt from the registration requirements of section 5 of the Securities Act and any other applicable law requiring registration prior to the offering, issuance, distribution, or sale of Securities (as defined in the Bankruptcy Code) and (ii) the Acquired Interests shall be transferable in compliance with (A) applicable securities laws and any rules and regulations of the Securities and Exchange Commission, if any, applicable at the time of any future transfer of such Securities or instruments and (B) any restrictions in the Definitive Documentation.  To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers of property under this Order (as contemplated by Article V.D of the Plan) or pursuant to: (1) the issuance,

distribution, transfer, or exchange of any debt, equity security, or other interest in the Debtors; (2) the grant of collateral as security for the Debtors' obligations under and in connection with the Definitive Documentation; or (3) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, this Order, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to this Order, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, personal property transfer tax, sales or use tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment and, upon entry of the Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment.  All filing or recording officers (or any other person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

31.    28. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

32.    29. This Court shall retain jurisdiction to, among other things, interpret, implement and enforce the terms of this Order (including, without limitation, resolving any

dispute with respect to the Applicable Payment in accordance with paragraph O hereof), the Commitment Letter, and the Definitive Documentation, all amendments thereto and any waivers and consents thereunder and each of the Definitive Documentation and other agreements executed in connection therewith to which any Debtor is a party or which had been assigned by any Debtor to the Buyer, and to adjudicate, if necessary, any and all disputes relating in any way to the Sale.

Dated: _____, 2019

_____
Honorable Kevin Gross
United States Bankruptcy Judge

Document comparison by Workshare 9.5 on Monday, July 22, 2019 10:53:39 AM

| Input: | |
|---|---|
| Document 1 ID | PowerDocs://DOCS_SF/101303/11 |
| Description | DOCS_SF-#101303-v11-White_Eagle_-_Rodeo_Sale_Motion |
| Document 2 ID | PowerDocs://DOCS_SF/101303/12 |
| Description | DOCS_SF-#101303-v12-White_Eagle_-_Rodeo_Sale_Motion |
| Rendering set | Standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 164 |
| Deletions | 82 |
| Moved from | 8 |
| Moved to | 8 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 262 |